# EXHIBIT 1

Stuart J. Purdy, CA Bar No. 239878
Erica L. Falkner, CA Bar No. 286007
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone (562) 590-3400
Facsimile (562) 590-3412

John M. Caron, Esq., CA Bar No. 130633
**THE LAW OFFICE OF WORTHINGTON & CARON, P. C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

Attorneys for Plaintiff

**Electronically FILED by Superior Court of California, County of Los Angeles 10/24/2023 1:32 PM David W. Slayton, Executive Officer/Clerk of Court, By G. Carini, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

**PATRICIA SNEIDER,**

Plaintiff

vs.

**AVON PRODUCTS, INC.; BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG; **BEAUTY 21 COSMETICS, INC.; BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.; **CHANEL, INC.; CHARLES B. CHRYSTAL COMPANY, INC.; CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.; **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC; **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its

Case No. 23STCV25951

THIS ACTION CONSTITUTES COMPLEX ASBESTOS LITIGATION – SUBJECT TO THE GENERAL ORDERS CONTAINED IN FILE NO. C 700000 – DEPT. 59

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS (NEGLIGENCE, STRICT LIABILITY, AND FRAUD)**

subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE;
**ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC.;
**IMI FABI (DIANA) LLC;**
**IMI FABI, LLC;**
**IMI FABI (USA) INC.;**
**KENVUE INC.;**
**L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT;
**MAYBELLINE LLC;**
**MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES;
**MINERALS TECHNOLOGIES INC.;**
**NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY;
**PFIZER INC.;**
**PHYSICIANS FORMULA, INC.;**
**PRESPERSE CORPORATION**, sued individually and d/b/a PRESPERSE INTERNATIONAL CORP;
**THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY;
**SEPHORA USA, INC.;**
**SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.;
**SUMITOMO CORPORATION OF AMERICAS;**
**THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.;
**YVES SAINT LAURENT AMERICA, INC.**,
and
**DOES 1-450,**
Defendants.

## GENERAL ALLEGATIONS

COMES NOW Plaintiff **PATRICIA SNEIDER** (hereinafter "Plaintiff") and complains and alleges as follows:

1. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 450, inclusive, are unknown to

Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiff as hereinafter alleged.

2. At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of their Co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants: **AVON PRODUCTS, INC.**; **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG; **BEAUTY 21 COSMETICS, INC.**; **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.; **CHANEL, INC.**; **CHARLES B. CHRYSTAL COMPANY, INC.**; **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.; **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC; **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE; **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC.; **IMI FABI (DIANA) LLC**; **IMI FABI, LLC**; **IMI FABI (USA) INC.**; **KENVUE INC.**; **L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT; **MAYBELLINE LLC**; **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES; **MINERALS TECHNOLOGIES INC.**; **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY; **PFIZER INC.**; **PHYSICIANS FORMULA, INC.**; **PRESPERSE CORPORATION**, sued individually

and d/b/a PRESPERSE INTERNATIONAL CORP; **THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY; **SEPHORA USA, INC.**; **SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.; **SUMITOMO CORPORATION OF AMERICAS**; **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.; **YVES SAINT LAURENT AMERICA, INC.**; and **DOES 1-450** inclusive, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of LOS ANGELES, State of California.

3. Plaintiff PATRICIA SNEIDER alleges that she developed malignant mesothelioma as a result of her exposure to asbestos from Defendants' raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics including: **AVON PRODUCTS, INC.** (*for asbestos-containing Avon talcum powder products and Avon cosmetics*); **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG (*for asbestos-containing Dr. Scholl's Foot Powder*); **BEAUTY 21 COSMETICS, INC.** (*for asbestos-containing L.A. Girl cosmetics*); **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC. (*as a supplier of asbestos-containing talc*); **CHANEL, INC.** (*for asbestos-containing Chanel cosmetics and Chanel talcum powder products*); **CHARLES B. CHRYSTAL COMPANY, INC.** (*as a supplier of asbestos-containing talc*); **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC. (*for asbestos-containing Clinique cosmetics and Clinique talcum*

*powder products*); **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC (*for asbestos-containing Dr. Scholl's Foot Powder*); **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC. (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **IMI FABI (DIANA) LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI, LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI (USA) INC.** (*as a supplier of asbestos-containing talc*); **KENVUE INC.** (*for asbestos-containing Neutrogena cosmetics*); **L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT (*for asbestos-containing Dermablend cosmetics, Maybelline cosmetics, NYX Professional Makeup cosmetics, and Yves Saint Laurent Opium talcum powder*); **MAYBELLINE LLC** (*for asbestos-containing Maybelline cosmetics*); **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES (*for asbestos-containing Dr. Scholl's Foot Powder*); **MINERALS TECHNOLOGIES INC.** (*as an entity who managed, directed, ordered, supervised, and controlled the mining, production, and supply of the asbestos-containing talc of its subsidiary*); **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY (*for asbestos-containing CoverGirl cosmetics*); **PFIZER INC.** (*as a supplier of asbestos-containing talc*); **PHYSICIANS FORMULA, INC.** (*for asbestos-containing Physicians Formula cosmetics*); **PRESPERSE CORPORATION**, sued individually and d/b/a PRESPERSE INTERNATIONAL CORP (*as a supplier of asbestos-containing talc*); **THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY (*for asbestos-containing CoverGirl cosmetics*); **SEPHORA USA, INC.** (*as a supplier of asbestos-containing talcum powder and cosmetic products*); **SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC. (*as a supplier of asbestos-containing talc*); **SUMITOMO**

**CORPORATION OF AMERICAS** (*as a supplier of asbestos-containing talc*); **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC. (*as a supplier of asbestos-containing talcum powder and cosmetic products*), and **YVES SAINT LAURENT AMERICA, INC.** (*for asbestos-containing Yves Saint Laurent Opium talcum powder*).

## FIRST CAUSE OF ACTION

(Negligence)

PLAINTIFF COMPLAINS OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:

4. Plaintiff incorporates herein by reference, as though fully set forth therein, the general allegations set forth above.

5. At all times herein mentioned, each of the named Defendants and DOES 1 through 450 were the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics including, but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketed, warranted, re-branded, manufactured for others and advertised raw asbestos fiber of various kinds and

grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics. The following Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiff's remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| BAYER HEALTHCARE LLC | BAYER AG |
| BRENNTAG SPECIALTIES LLC | BRENNTAG SPECIALTIES, INC.<br>MINERAL PIGMENT SOLUTIONS, INC.<br>WHITTAKER CLARK & DANIELS, INC. |
| CLINIQUE LABORATORIES LLC | CLINIQUE LABORATORIES, INC.<br>THE ESTEE LAUDER COMPANIES INC. |
| DR. SCHOLL'S LLC | BAYER SAMSON II LLC |
| THE ESTEE LAUDER COMPANIES, INC. | LEN-RON MANUFACTURING CO. INC.<br>CLINIQUE LABORATORIES INC.<br>CLINIQUE |
| ESTEE LAUDER, INC. | THE ESTEE LAUDER COMPANIES, INC. |
| L'OREAL USA, INC. | DERMABLEND<br>MAYBELLINE LLC<br>NYX PROFESSIONAL MAKEUP |

| | |
|---|---|
| | YVES SAINT LAURENT |
| MERCK & CO., INC. | MERCK SHARP & DOHME LABORATORIES |
| NOXELL CORPORATION | COTY INC.<br>NOXZEMA CHEMICAL COMPANY |
| PRESPERSE CORPORATION | PRESPERSE INTERNATIONAL CORP |
| THE PROCTER & GAMBLE COMPANY | NOXZEMA CHEMICAL COMPANY |
| SPECIALTY MINERALS INC. | MINERALS TECHNOLOGIES INC. |
| THE VONS COMPANIES INC. | ALBERTSONS COMPANIES, INC. |

6. At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics (hereinafter collectively referred to as "Defendants' Products").

7. At all times herein mentioned, Defendants, their "alternate entities", and each of them singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to recall and/or retrofit, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products including, but not limited to, those Products identified in paragraph 3 above, in that the Defendants' Products

were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, bystanders, household members, and others, including Plaintiff PATRICIA SNEIDER herein (hereinafter collectively called "exposed persons"). Defendants' Products were used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate entities," and each of them, thereby rendering Defendants' Products unsafe and dangerous for use by "exposed persons." Plaintiff herein alleges that Plaintiff PATRICIA SNEIDER's exposures to Defendants' Products including, but not limited to, those products identified in paragraph 3 above, were a substantial contributing factor in the development of her mesothelioma and therefore proximately caused Plaintiff's illnesses, injuries, disabilities, and damages.

8. Defendants, their "alternate entities", and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each Defendant breached said duty of reasonable care in that Defendants, and each of them failed to safely and adequately design, manufacture and/or sell Defendants' Products; failed to test Defendants' Products; failed to investigate the hazards of Defendants' Products; failed to warn "exposed persons," including Plaintiff PATRICIA SNEIDER of the health hazards of using Defendants' Products; failed to disclose the known or knowable dangers of using Defendants' Products; failed to warn of the harmful exposures caused by the use of Defendants' Products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

9. Defendants' Products were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff's position personally using, applying, and in close proximity to Defendants' Products, and since on or before 1930, the hazards and dangerous propensities of Defendants' Products were both known and knowable to the Defendants, their "alternate entities", and each of them, through the use of medical and/or scientific data and other knowledge available to Defendants, their "alternate entities", and each of them, at the time of Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection,

service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for others, packaging and advertising of Defendants' Products, which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to users, handlers, bystanders, and household members, including Plaintiff PATRICIA SNEIDER, of Defendants' Products through the intended and reasonably foreseeable use of Defendants' Products.

10. Defendants, their "alternate entities", and each of them knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

11. Defendants, their "alternate entities", and each of them knew, or reasonably should have known, that Defendants' Products would be personally used, removed, mixed, scraped, swept, broken, "ripped out," and/or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed persons", including Plaintiff PATRICIA SNEIDER herein, would be exposed to hazardous and dangerous asbestos fibers. Defendants, their "alternate entities," and each of them knew or reasonably should have known that users and bystanders such as Plaintiff PATRICIA SNEIDER, and others in her position personally using, applying, or otherwise exposed to dust from Defendants' Products would not realize or know the dangers. Defendants, their "alternate entities", and each of them negligently failed to adequately warn or instruct of the dangers of Defendants' Products and failed to recall and/or retrofit Defendants' Products. A reasonable designer, manufacturer, distributor, seller, installer, buyer, or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities", and each of them, to warn was a substantial factor in causing harm to Plaintiff PATRICIA SNEIDER, the nature of which is set forth in Exhibit "B" which is attached hereto and incorporated by reference herein.

12. Plaintiff PATRICIA SNEIDER personally used, handled, applied, and/or was in close proximity to or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to Defendants, and each of them. Plaintiff's exposure to Defendants' Products occurred at various locations set forth in Exhibit "A" which is attached hereto and incorporated by reference herein.

13. As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Plaintiff PATRICIA SNEIDER's exposures to asbestos from personally using Defendant's Products and/or around others using Defendant's Products, caused severe and permanent injury to the Plaintiff, the nature of which along with the date of Plaintiff's diagnosis and the date she learned such injuries were attributable to exposure to Defendants' Products are set forth in Exhibit "B." which is attached hereto and incorporated by reference herein. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said diseases result from exposure to Defendants' Products over a period of time.

14. Plaintiff PATRICIA SNEIDER suffers from malignant pleural mesothelioma caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants' Products including those products identified in paragraph 3 above. Plaintiff was not aware at the time of exposure that Defendants' Products presented any risk of injury and/or disease.

15. As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiff PATRICIA SNEIDER has suffered and will continue to suffer pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to her general damage in a sum in excess of the jurisdictional limits of a limited civil case.

16. As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER has incurred, is

presently incurring, and will incur in the future liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiff, subject to proof at trial.

17. As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER has incurred and will incur loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff, subject to proof at trial.

18. Plaintiff PATRICIA SNEIDER further alleges that Defendants, their "alternate entities" and each of them also engaged in the following wrongful acts which support Plaintiff's prayer for punitive damages:

(a) Defendants, their "alternate entities", and each of them suppressed from all users, handlers, bystanders, and household members, including Plaintiff PATRICIA SNEIDER, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although Defendants, and each of them knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information of Defendants' Products from users, handlers, bystanders, and household members in conscious disregard of the rights, safety and welfare of "exposed persons." including Plaintiff PATRICIA SNEIDER;

(b) Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations including, but not limited to, the Cosmetic Toiletry and Fragrance Association (now Personal Care Products Council), Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which for and on behalf of Defendants, their "alternate entities", and each of them actively promoted the suppression of information about the dangers of asbestos to users, handlers, bystanders, and household members of Defendants' Products, thereby misleading Plaintiff PATRICIA SNEIDER as to the safety of Defendants' Products. Through their participation and association with such industry organizations, Defendants, and each of them

knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users, handlers, bystanders, and household members of Defendants' Products a false security about the safety of Defendants' Products. The Dust Control Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arose from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(c) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them failed to provide this information to users, handlers, bystanders, and household members;

(d) Defendants, their "alternate entities", and each of them, failed to warn Plaintiff PATRICIA SNEIDER and others of the nature of Defendants' Products which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that Defendants' Products were dangerous and a threat to the health of persons coming into contact therewith;

(e) Defendants, their "alternate entities", and each of them, failed to provide Plaintiff PATRICIA SNEIDER with information concerning adequate protective masks and other equipment devised to be used when personally using, applying, mixing, and/or sweeping Defendants' Products and/or from the use of Defendants' Products, their "alternate

entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that Defendants' Products were dangerous and would result in injury to Plaintiff PATRICIA SNEIDER and others personally using and applying such material;

(f) Defendants, their "alternate entities", and each of them knew and failed to disclose that Plaintiff PATRICIA SNEIDER and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g) Defendants, their "alternate entities", and each of them failed to provide information of the true nature of the hazards of Defendants' Products and that exposure to Defendants' Products would cause pathological effects without noticeable trauma to the public, including buyers, users, household members, and physicians employed by Plaintiff PATRICIA SNEIDER, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities" and each of them were under a duty to so inform and said failure was misleading.

19. Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities" and each of them are liable for the oppressive and malicious acts of their "alternate entities" and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known of the acts of each of their "alternate entities" as set forth herein.

20. The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff PATRICIA SNEIDER, in that Defendants, and each of them continued to manufacture,

market and/or sell dangerous Defendants' Products known to cause asbestos to be released and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of Defendants' Products in order to continue to profit financially therefrom. Defendants, their "alternate entities", and each of them engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched, and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code Section 3294. Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

21. Defendants, and each of them, engaged in conduct which was intended by Defendants, and each of them to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff PATRICIA SNEIDER.

22. Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff PATRICIA SNEIDER, to cruel and unjust hardship in the form of severe, debilitating, and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

23. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER sustained injuries, illnesses, disabilities, and damages alleges herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

(Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

24. Plaintiff PATRICIA SNEIDER incorporates herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

25. **Strict Liability - Manufacturing Defect**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under manufacturing defect. Defendants and Does manufactured, sold, supplied, designed, or distributed Defendants' Products. The defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities", and each of them. These defects were a substantial factor in causing harm to Plaintiff PATRICIA SNEIDER.

26. **Strict Liability - Design Defect - Consumer Expectations**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under the consumer-expectations test for placing defectively designed products into the stream of commerce and ultimately exposing Plaintiff PATRICIA SNEIDER to asbestos from Defendants' Products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold Defendants' Products. Second, each Product did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because each Product caused hazardous asbestos to become airborne, exposing Plaintiff to asbestos. Third, Plaintiff developed mesothelioma. Fourth, each Product's failure to perform safely was a substantial factor in causing Plaintiff's mesothelioma.

27. **Strict Liability – Design Defect – Risk/Benefit**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under risk/benefit. Defendants, their alternate entities and Does manufactured, sold, supplied, designed, or distributed Defendants' Products. These defects were a substantial factor in causing harm to the Plaintiff.

28. **Strict Liability – Failure to Warn**: Defendants, their "alternate entities", and each of them sold Defendants' Products, which were defective in that they failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary,

intended, and foreseeable use of Defendants' Products, which dangers and risks would not have been and were not recognized by ordinary workers, users and consumers of the Products, including Plaintiff, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff PATRICIA SNEIDER and others in Plaintiff's position who were personally using, applying, and in close proximity to Defendants' Products.

29. Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that when used, handled, swept, or otherwise disturbed, Defendants' Products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed persons, including Plaintiff PATRICIA SNEIDER. These defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities", and each of them. At the time Defendants' Products were used by Plaintiff, and others in Plaintiff's position applying, personally using and in close proximity to or otherwise exposed to dust from Defendants' Products, Defendants' Products were substantially the same as when they left the possession of the Defendants, their "alternate entities", and each of them, and/or any changes made to Defendants' Products after they left the possession of Defendants, their "alternate entities", and each of them were reasonably foreseeable to Defendants, their "alternate entities" and each of them. Defendants' Products were used by Plaintiff, and others in Plaintiff's position, applying, personally using and in close proximity to or otherwise exposed to dust from Defendants' Products in a way that was reasonably foreseeable to Defendants and each of them. The defect in Defendants' Products was a substantial factor in causing harm and personal injuries to Plaintiff PATRICIA SNEIDER, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering Defendants' Products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

30. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff suffered the injuries, illness, disabilities, and damages alleges herein.

## THIRD CAUSE OF ACTION

## (FRAUD)

AS AND FOR A FURTHER THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR FRAUD, PLAINTIFF COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

31. **Fraudulent Misrepresentation**: All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for their fraudulent misrepresentations.

(a) First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not. The specific identities of these employees, agents, advertisements, or any other authorized person or document are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document-retention policies. While Plaintiff PATRICIA SNEIDER does not currently know all the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiff will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

(b) Second, Defendants represented that the Products they manufactured, supplied, or specified for use were not hazardous to humans. These representations were made before and during the years that Plaintiff and her family members purchased, and Plaintiff PATRICIA SNEIDER was exposed to asbestos from Defendants' Products. Such representations were made either directly to Plaintiff, or to a third party intending and reasonably expecting that the substance of those representations would be repeated to Plaintiff.

(c) Third, Defendants knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

(d) Fourth, Defendants intended that Plaintiff PATRICIA SNEIDER and/or the same class of persons as Plaintiff, rely on the representations or their substance.

(e) Fifth, Plaintiff PATRICIA SNEIDER reasonably relied on Defendants' representations or the substance of these representations.

(f) Sixth, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(g) Seventh, Plaintiff's reliance on those representations was a substantial factor in causing Plaintiff PATRICIA SNEIDER's mesothelioma and the resulting damages thereto.

32. **Fraudulent Concealment (Nondisclosure):** All Defendants, Does 1-450, their "alternate entities" and each of them, are liable for their fraudulent concealment (nondisclosure).

(a) First, each of these Defendants made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendant and Plaintiff PATRICIA SNEIDER. Specifically, Defendants stated that their products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

(b) Second, Defendants (i) had exclusive knowledge of material facts not known to Plaintiff PATRICIA SNEIDER (as set forth above), (ii) actively concealed those material facts from Plaintiff, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose material facts which qualified those representations. Such nondisclosures included Defendants representing their products as safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the facts that these products contained asbestos that would become airborne during the intended and foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

(c) Third, each Defendant entered into a relationship and/or a transaction with Plaintiff sufficient to give rise to a duty to disclose. For example, Plaintiff PATRICIA SNEIDER used and otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity

upon which Defendants derived a direct monetary benefit directly from Plaintiff's purchase and use of the products. As for another example, Defendants directly advertised their products to those in California and elsewhere as a symbol of freshness, cleanliness and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendants compelled individuals through advertisements to dust themselves with the products to mask odors. Defendants derived direct monetary benefit from consumers' use of the products because Plaintiff decided to purchase and use Defendants' products.

(d) Fourth, Plaintiff PATRICIA SNEIDER did not know of the concealed material facts.

(e) Fifth, Defendants intended to deceive Plaintiff PATRICIA SNEIDER by concealing material facts, and/or by making certain representations without disclosing additional facts that would have materially qualified those representations.

(f) Sixth, had the omitted information been disclosed, Plaintiff PATRICIA SNEIDER reasonably would have behaved differently.

(g) Seventh, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(h) Eighth, each Defendant's concealment was a substantial factor in causing Plaintiff PATRICIA SNEIDER's mesothelioma and the resulting damages thereto.

33. **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiff PATRICIA SNEIDER hereby incorporates by reference the allegations of Paragraph 31 as if fully stated herein. All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for their conspiracy to commit fraudulent misrepresentation.

(a) First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff PATRICIA SNEIDER, and/or the same class of persons as Plaintiff.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed.

(c) Third, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

34. **Conspiracy to Commit Fraudulent Concealment (Nondisclosure):** Plaintiff PATRICIA SNEIDER hereby incorporates by reference the allegations of Paragraph 32 as if fully stated herein. All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for their conspiracy to commit fraudulent concealment.

(a) First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Plaintiff PATRICIA SNEIDER, and/or the same class of persons as Plaintiff.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

(c) Third, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff PATRICIA SNEIDER's mesothelioma and the resulting damages thereto.

35. **Knowledge of Hazards**: At all times pertinent hereto, all Defendants, Does 1-450, their "alternate entities", and each of them, owed Plaintiff PATRICIA SNEIDER a duty, as provided for in Civil Code sections 1708, 1709, and 1710, to abstain from injuring her person, property, or rights. In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff. Such acts and omissions consisted of acts falling within Civil Code sections 1708, 1709, and 1710, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact of that which were not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of material facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such

item gave rise to a cause of action for violation of Plaintiff PATRICIA SNEIDER's rights as provided for in the aforementioned Code sections.

36. Since 1924, all of the Defendants have known and been in possession of the true material facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the asbestos-containing products referred to herein were and are hazardous to the health and safety of Plaintiff PATRICIA SNEIDER, and others similarly situated. Defendants engaged in the following acts and omissions:

(a) Did not label any of the aforementioned asbestos-containing products as to the hazards of said products to the health and safety of Plaintiff PATRICIA SNEIDER, and others in her position using these products when the knowledge of such hazards was existing and known to Defendants, and each of them, since 1924. By not labeling said products as to their said hazards. Defendants, and each of them, caused to be suggested as a fact to Plaintiff that it was safe for them to use said products, when in fact these things were not true and Defendants did not believe them to be true.

(b) Suppressed information relating to the danger of using the aforementioned products by requesting the suppression of information to Plaintiff PATRICIA SNEIDER, Plaintiff's class of persons, and the general public concerning the dangerous nature of the aforementioned products to all persons including users, bystanders and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information.

(c) Sold the aforementioned products to the public, including Plaintiff PATRICIA SNEIDER, and others in California and other states without advising them of the dangers of use of said products to Plaintiff when Defendants knew of such dangers, as set forth herein and above, and had a duty to disclose such dangers. Thus, Defendants caused to be positively asserted to Plaintiff and the public that which was not true and which Defendants had no reasonable ground for believing to be true, in a manner not warranted by the information possessed by said Defendants, and each of them, of that which was and is not true, to wit, that it was safe for Plaintiff to use said products and that they did not pose a risk of harm.

(d) Suppressed and continue to suppress from everyone, including Plaintiff PATRICIA SNEIDER, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council, the results of a study conducted among tremolite, talc and slate

workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicate of magnesium." in the September 1935 issue of National Safety News, in an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson. The article reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleges exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

(e) Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of danger to users of the aforementioned products for and on behalf of Defendants, and each of them, thereby misleading Plaintiff PATRICIA SNEIDER to her prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times regarding (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiff at this time.

(f) Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at the Raybestos-Manhattan plants in Manheim and Charleston, South Carolina. This information was disseminated through the ATI and other industry organizations to all other Defendants and each of them herein. Between 1942 and 1950, Defendants, and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as material fact that which is not true and disseminated other facts likely to and which did mislead Plaintiff

PATRICIA SNEIDER for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not giving Plaintiff the true material facts concerning such knowledge of dangers, when Defendants were bound to disclose them.

(g) Failed to warn Plaintiff PATRICIA SNEIDER, and others similarly situated regarding the nature of Defendants' asbestos-containing products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. .fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits. Unknown significant amounts of such material in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff, and others similarly situated that their asbestos-containing products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that such products were dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose this information.

(h) Concealed from Plaintiff PATRICIA SNEIDER, and others similarly situated the true nature of her exposures, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing her risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff had in fact been exposed to respirable asbestos; that the products to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn her of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

(i) Failed to provide information to the public at large and buyers, users and physicians of Plaintiff PATRICIA SNEIDER for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons, including Plaintiff, as to the dangers and risk of harm to which they were exposed.

(j) Affirmatively misrepresented that asbestos-containing products were safe to use and handle, when Defendants knew such statements were false when made,

or made said false statements recklessly and without regard for whether the statements were true.

37. Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Plaintiff did not have such knowledge and Plaintiff PATRICIA SNEIDER would breathe such asbestos from Defendants' Products innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause her to remain unaware of the true material facts, all in violation of Civil Code sections 1708, 1709, and 1710.

## BASIS FOR PUNITIVE DAMAGES

38. **Malice, Oppression, and/or Fraud**: Plaintiff hereby incorporates by reference the allegations of all causes of action as if fully stated herein. All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for punitive damages because they engaged in the conduct that caused Plaintiff PATRICIA SNEIDER harm with malice, oppression, or fraud.

(a) First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff PATRICIA SNEIDER's asbestos exposures, and/or because their conduct was despicable and/or was done with a willful and knowing disregard of the rights and safety of others.

(b) Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff PATRICIA SNEIDER to cruel and unjust hardship in knowing disregard of her rights.

(c) Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Plaintiff PATRICIA SNEIDER, or with reckless disregard for whether their fraud would harm Plaintiff.

39. These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing

agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

40. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER sustained the injuries, illnesses, disabilities, and damages alleges herein.

41. WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff PATRICIA SNEIDER:

1. For Plaintiff's general damages according to proof;
2. For Plaintiff's loss of income, wages, and earning potential according to proof;
3. For Plaintiff's medical and related expenses according to proof;
4. For Plaintiff's cost of suit herein;
5. For exemplary or punitive damages according to proof;
6. For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED: October 24, 2023 **SIMON GREENSTONE PANATIER, PC**

By: Erica L. Falkner
Erica L. Falkner
Stuart J. Purdy

JOHN M. CARON, Esq.
**THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

**ATTORNEYS FOR PLAINTIFF**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all issues so triable.

DATED: October 24, 2023 **SIMON GREENSTONE PANATIER, PC**

By: Erica L. Falkner
Erica L. Falkner
Stuart J. Purdy

JOHN M. CARON, Esq.
**THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

**ATTORNEYS FOR PLAINTIFF**

**EXHIBIT "A"**

Plaintiff PATRICIA SNEIDER's exposure to Defendants' Products occurred at various locations within the Country of Mexico and the State of California, including, but not limited to:

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in Pacific Grove, California;<br>Mexico City, Mexico;<br>Los Angeles, California | Personal use of asbestos containing talcum powder products and cosmetics | Approximately 1976 – 2023 |

**EXHIBIT "B"**

Plaintiff PATRICIA SNEIDER's exposure to Defendants' Products caused severe and permanent injury to Plaintiff PATRICIA SNEIDER including, but not limited to, mesothelioma. Plaintiff was diagnosed with mesothelioma in approximately June of 2023.

PRELIMINARY FACT SHEET
(PERSONAL INJURY COMPLAINT)

## I. BACKGROUND INFORMATION

Name: Patricia Sneider

Address: 11611 Chenault St., Apt. 205 City: Brentwood State: CA

Number of years at present address: 6 months Number of years living in the current state: ~ 35

Date of Birth: August 31, 1962

Based on the current facts, do plaintiff(s) intend on filing a motion for preference?

_____ Yes _____ No __X__ Do Not Know

Have you received, or have you applied for, Medicare benefits of Social Security Disability benefits?

_____ Yes __X__ No

Have you ever resided in California? __X__ Yes _____ No. If YES, provide cities in California where you resided and the dates you resided in each city.

City Pacific Grove Dates approx. 1976
City Los Angeles area Dates 1990-present

## II. EXPOSURE

Date of First Claimed Asbestos Exposure: 1972 Date of Last Claimed Asbestos Exposure: 2023

For each asbestos-containing product to which you claim you were exposed, please provide the following information (fill in the chart):

| Defendant | Product at Issue | Date(s) of Exposure | Employer | Location of Exposure | Type of Exposure (Direct Occupational, Para-Occupational or Non-Occupational) |
|---|---|---|---|---|---|
| **AVON PRODUCTS, INC.;** | Various | Through 1990s | N/A | California, Mexico | Non-Occupational |
| **BAYER HEALTHCARE** | Dr. Scholl's talcum powder | Approx. 1972 on | N/A | California, Mexico | Non-Occupational |

| | | | | | |
|---|---|---|---|---|---|
| **LLC**, a subsidiary of BAYER AG; | | | | | |
| **BEAUTY 21 COSMETICS, INC.**; | Various | 1990s on | N/A | California | Non-Occupational |
| **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.; | Supplier of talc | 1972-2023 | N/A | California | Non-Occupational |
| **CHANEL, INC.**; | Various | 1990s on | N/A | California | Non-Occupational |
| **CHARLES B. CHRYSTAL COMPANY, INC.**; | Supplier of talc | 1972-2023 | N/A | California, Mexico | Non-Occupational |
| **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.; | Various | 1990s | N/A | California | Non-Occupational |
| **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC; | Dr. Scholl's talcum powder | Approx. 1972 on | N/A | California, Mexico | Non-Occupational |
| **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURIN G CO. INC., and for its subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE; | Various | 1990s on | N/A | California | Non-Occupational |

| | | | | | |
|---|---|---|---|---|---|
| **ESTEE LAUDER, INC.,** a subsidiary of THE ESTEE LAUDER COMPANIES, INC.; | Various | 1990s on | N/A | California | Non-Occupational |
| **IMI FABI (DIANA) LLC;** | Various | 1982 on | N/A | California, Mexico | Non-Occupational |
| **IMI FABI, LLC;** | Various | 1982 on | N/A | California, Mexico | Non-Occupational |
| **IMI FABI (USA) INC.;** | Various | 1982 on | N/A | California, Mexico | Non-Occupational |
| **KENVUE INC.;** | Various | 1990s on | N/A | California | Non-Occupational |
| **L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT; | Various | 1990s on | N/A | California | Non-Occupational |
| **MAYBELLINE LLC;** | Various | 1990s on | N/A | California | Non-Occupational |
| **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES; | Dr. Scholl's | 1972 on | N/A | California, Mexico | Non-Occupational |
| **MINERALS TECHNOLOGIES INC.;** | Supplier of talc | 1972-2023 | N/A | California | Non-Occupational |
| **NOXELL CORPORATION,** a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY; | Various | 1982 on | N/A | California, Mexico | Non-Occupational |
| **PFIZER INC.;** | Supplier of talc | 1972-2023 | N/A | California | Non-Occupational |
| **PHYSICIANS FORMULA, INC.;** | Various | 1990s on | N/A | California | Non-Occupational |
| **PRESPERSE CORPORATION,** sued individually and d/b/a PRESPERSE INTERNATIONAL CORP; | Supplier of talc | 1972-2023 | N/A | California | Non-Occupational |

| | | | | | |
|---|---|---|---|---|---|
| **THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY; | Various | 1982 on | N/A | California | Non-Occupational |
| **SEPHORA USA, INC.**; | Various | 1990s on | N/A | California | Non-Occupational |
| **SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.; | Supplier of talc | 1972-2023 | N/A | California | Non-Occupational |
| **SUMITOMO CORPORATION OF AMERICAS**; | Various | 1990s on | N/A | California | Non-Occupational |
| **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.; | Retailer of talcum powder products | 1990s on | N/A | California | Non-Occupational |
| **YVES SAINT LAURENT AMERICA, INC.**; | Various | 1980 on | N/A | California | Non-Occupational |

Identify Have you ever served in the military? ____Yes __X__No

If yes:

(a) Identify the branch of service: ______________________

(b) Identify the dates of service: ______________________

(c) Identify the rank and title: ______________________

III. **MEDICAL HISTORY**

1. Which of the following diseases have you been diagnosed with? Check all that apply:

__X__ Mesothelioma (pleural)
_____ Mesothelioma (peritoneal)
_____ Lung Cancer – Squamous Cell/Adenocarcinoma/Small Cell/ Other (circle one)
_____ Asbestosis
_____ Pleural Disease
_____ Other Specify: ______________________

2. Date of diagnosis and name of diagnosing doctor (per disease, if more than one): 6/2023

3. Does any pathology material exist for the individual claiming as asbestos-related injury?

 X Yes ___ No

If YES, please identify what material exists and where it is presently located: ___

4. Have you ever smoked? ___ Yes X No

If YES, state years and quantity smoked: ___

# EXHIBIT 2

KENDRA BRAY, State Bar No. 285743
kbray@wfbm.com
REYNOLD MARTINEZ, State Bar No. 184774
rmartinez@wfbm.com
WFBM, LLP
255 California Street, Suite 525
San Francisco, California 94111-4928
Telephone: (415) 781-7072
Facsimile: (415) 391-6258

Electronically FILED by Superior Court of California, County of Los Angeles 1/09/2024 3:22 PM David W. Slayton, Executive Officer/Clerk of Court, By G. Carini, Deputy Clerk

Attorneys for Specially Appearing Defendant BRENNTAG SPECIALTIES, LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL AND PIGMENT SOLUTIONS, INC., individually and erroneously sued as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| PATRICIA SNEIDER,<br>Plaintiff,<br>v.<br>AVON PRODUCTS, INC., et al.,<br>Defendant. | Case No. JCCP 4674<br>(LASC Case No. 23STCV25951)<br>**BRENNTAG SPECIALTIES, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT - ASBESTOS**<br>Judge: Hon. Laura A. Seigle<br>Dept.: SSC-15<br>Action Filed: October 24, 2023 |

Defendant BRENNTAG SPECIALTIES, LLC., f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL AND PIGMENT SOLUTIONS, INC. erroneously sued as Successor-in-Interest to WHITTAKER, CLARK & DANIELS, INC. (hereafter "defendant"), answers plaintiff's Complaint for Personal Injury - Asbestos (Negligence, Strict Liability, and Fraud) (hereafter "complaint") as follows:

1. Under the provisions of Section 431.30 of the Code of Civil Procedure, defendant denies each and every and all of the allegations of said complaint and denies that plaintiff sustained damages in the sum or sums alleged or in any other sum or at all.

///

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

**FIRST AFFIRMATIVE DEFENSE**

2. As to each and every cause of action, plaintiff's complaint fails to state facts sufficient to constitute a cause of action against this defendant, and fails to state a claim upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

3. As to each and every cause of action, defendant alleges that plaintiff's complaint is barred by the applicable statute of limitations under California Code of Civil Procedure sections 337, 338, 339, 340, 340.2, 343, 353.1, 361 or 474, and California Commercial Code section 2725. Defendant further alleges that the causes of action in the complaint arose outside the State of California, while plaintiff was a non-resident, under the applicable statutes of limitations or statutes of repose where plaintiff was then residing or working. Plaintiff's complaint is barred by the provisions of those statutes and by section 361 of the California Code of Civil Procedure.

**THIRD AFFIRMATIVE DEFENSE**

4. Defendant alleges that the causes of action, if any, attempted to be stated and set forth in said complaint are barred by the equitable doctrine of laches.

**FOURTH AFFIRMATIVE DEFENSE**

5. Defendant alleges that the causes of action, if any, attempted to be stated and set forth in said complaint are barred in whole or in part by the equitable doctrines of waiver and estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

6. Defendant alleges that plaintiff and others were negligent or otherwise at fault in and about the matters referred to in said complaint, and that such negligence or other fault bars or diminishes plaintiff's recovery against this defendant.

**SIXTH AFFIRMATIVE DEFENSE**

7. Defendant alleges that plaintiff was solely negligent in and about the matters alleged in said complaint and that such negligence on her part was the sole proximate cause of the injuries and damages complained of, if any there were.

///

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

**SEVENTH AFFIRMATIVE DEFENSE**

8. Defendant alleges that plaintiff assumed the risk of the matters referred to in said complaint, that they knew and appreciated the nature of the risk, and that they voluntarily accepted the risk.

**EIGHT AFFIRMATIVE DEFENSE**

9. Defendant alleges that plaintiff misused and abused the products referred to in said complaint, and failed to follow instructions, and that such misuse and abuse and failure to follow instructions on her part proximately caused and contributed to the injuries and damages complained of, if any there were.

**NINTH AFFIRMATIVE DEFENSE**

10. Defendant alleges that if plaintiff sustained injuries attributable to the use of any product distributed or sold by defendant, which allegations are expressly denied, the injuries were solely caused by and attributable to the unreasonable, unforeseeable, and inappropriate purpose and improper use which was made of the product.

**TENTH AFFIRMATIVE DEFENSE**

11. Defendant alleges that, if there was any negligence proximately causing the injuries or damages complained of, such negligence, if any, was solely that of defendants other than this defendant.

**ELEVENTH AFFIRMATIVE DEFENSE**

12. Defendant alleges that there is no privity between plaintiff and this defendant.

**TWELFTH AFFIRMATIVE DEFENSE**

13. Defendant alleges that it gave no warranties, either express or implied, to plaintiff and that neither they, nor others, ever notified defendant of any claims of breach of warranty, if any there were.

**THIRTEENTH AFFIRMATIVE DEFENSE**

14. Defendant alleges that said complaint and each cause of action therein is barred with respect to this defendant by the provisions of state and federal Workers' Compensation statutes including, but not limited to, Sections 3600 *et seq*. of the Labor Code of the State of

California, and Section 905(b), Title 33 of the United States Code.

**FOURTEENTH AFFIRMATIVE DEFENSE**

15. Defendant alleges that, if there was any negligence proximately causing the injuries or damages complained of, such negligence, if any, is collateral negligence, as that term is used and defined in Restatement 2d Torts, Section 426, and derivative authority.

**FIFTEENTH AFFIRMATIVE DEFENSE**

16. Defendant alleges that said complaint, to the extent that it seeks exemplary or punitive damages pursuant to California Civil Code Section 3294 against this defendant, violates defendant's rights to procedural due process under the Fourteenth Amendment of the United States Constitution, and Article I, Section 7 of the Constitution of the State of California, and therefore fails to state a cause of action upon which either punitive or exemplary damages can be awarded.

**SIXTEENTH AFFIRMATIVE DEFENSE**

17. Defendant alleges that said complaint, to the extent that it seeks punitive or exemplary damages pursuant to California Civil Code Section 3294, violates defendant's rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17 of the Constitution of the State of California, and violates defendant's rights to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of California, and therefore fails to state a cause of action upon which either punitive or exemplary damages can be awarded.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

18. Defendant alleges that said complaint, and each cause of action therein, fails to state facts sufficient to support an award of punitive or exemplary damages against this defendant.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

19. Defendant alleges that the causes of action, if any, attempted to be stated and set forth in said complaint on the theory of alternate entity and/or successor liability fail to state facts sufficient to constitute a cause of action against this defendant.

///

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

**NINETEENTH AFFIRMATIVE DEFENSE**

20. Defendant alleges that the causes of action, if any, attempted to be stated and set forth in said complaint against this defendant for negligence per se are barred by California Labor Code Section 6304.5, and derivative authority.

**TWENTIETH AFFIRMATIVE DEFENSE**

21. Defendant alleges that plaintiff failed to exercise due diligence to mitigate their losses, injuries or damages, if any, and, accordingly, the amount of damages to which plaintiff is entitled, if any, should be reduced by the amount of damages which otherwise would have been mitigated.

**TWENTY FIRST AFFIRMATIVE DEFENSE**

22. Defendant alleges that, at all times relevant to the matters alleged in the complaint, plaintiff's employers were sophisticated users of the alleged products at issue and said employers' negligence in exposing their employees to such products in a negligent, careless and reckless manner was a superseding intervening cause of plaintiff's injuries, if any.

**TWENTY SECOND AFFIRMATIVE DEFENSE**

23. Defendant alleges that, at all times relevant to the matters alleged in the complaint, plaintiff was a sophisticated user of the alleged products at issue, that she was aware, or should have been aware, of the dangers, if any, of such products, and that the sophisticated user doctrine is a complete bar to plaintiff's claims against this defendant as a matter of law. *Johnson v. American Standard, Inc., et al.* (2008) 43 Cal.4th 56.

**TWENTY THIRD AFFIRMATIVE DEFENSE**

24. Defendant alleges that some of the occurrences described in the complaint occurred outside of the State of California, thus the choice of law doctrine may require application of the law of different states or countries.

**TWENTY FOURTH AFFIRMATIVE DEFENSE**

25. Defendant alleges that the occurrences described in the complaint render California an improper venue for litigation of plaintiff's claims.

///

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

**TWENTY FIFTH AFFIRMATIVE DEFENSE**

26. Defendant alleges that it is entitled to set-off any settlement, judgment, or similar amount received by plaintiff against any judgment rendered against this defendant in plaintiff's favor.

**TWENTY SIXTH AFFIRMATIVE DEFENSE**

27. Defendant alleges that, at all times relevant to the matters alleged in the complaint, the manufacturers of the asbestos-containing products, if any, to which defendant allegedly supplied a component ingredient had ultimate control over the manufacturing, packaging, marketing and distribution of such products, that said manufacturers were aware, or should have been aware, of the dangers, if any, of such products, that said manufacturers were better situated to warn any and all end users of such products, including plaintiffs, and that any failure to warn by said manufacturers was a superseding and intervening cause of plaintiff's injuries, if any in that they were aware. Said manufacturers were aware, or should have been aware, of the dangers, if any, of such products, and the sophisticated user doctrine is a complete bar to plaintiffs' claims against this defendant as a matter of law. *Johnson v. American Standard, Inc., et al.* (2008) 43 Cal.4th 56.

**TWENTY SEVENTH AFFIRMATIVE DEFENSE**

28. Defendant is not the successor-in-interest or formerly-known-as Whittaker, Clark & Daniels.

**TWENTY EIGHTH AFFIRMATIVE DEFENSE**

29. Defendant will rely upon any and all further defenses that become available or appear during discovery proceedings in this action, and specifically reserves the right to amend this Answer for the purpose of asserting any such additional defenses.

**TWENTY NINTH AFFIRMATIVE DEFENSE**

30. The alleged sales by this Defendant would be as a seller of bulk material. This defendant is therefore not required to warn end users of risks associated with using the materials sold in bulk when the intermediate purchaser knew or should have known of those risks and warned the end user. According, Defendant, is not liable for any of Plaintiff's alleged damages

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

**THIRTIETH AFFIRMATIVE DEFENSE**

31. Any damages suffered by Plaintiff, as alleged in Plaintiff's Complaint were proximately caused, in whole or in part, by the failure of Plaintiff to exercise reasonable care under the circumstances and, therefore, Plaintiff's recovery, if any, must be diminished by the proportion of the negligence of Plaintiff which proximately caused or contributed to Plaintiff's alleged damages, if any.

WHEREFORE, defendant Brenntag Specialties, LLC prays that plaintiff take nothing by reason of her complaint; that this defendant be awarded costs of suit herein, and such other and further relief as the court deems just; and, that if this defendant is found liable, the degree of its responsibility for the resulting damages be determined and that this defendant be held liable only for that amount of the total damages proportionate to its responsibility for the same.

Dated: January 9, 2024

WFBM, LLP

By: Reynold M. Martinez

KENDRA BRAY
REYNOLD MARTINEZ
Attorneys for Specially Appearing Defendant BRENNTAG SPECIALTIES, LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL AND PIGMENT SOLUTIONS, INC., individually and erroneously sued as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

# PROOF OF SERVICE

***Sneider v. Avon Products***
**LASC Case No. 23STCV25951**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 255 California Street, Suite 525, San Francisco, CA 94111-4928.

On January 9, 2024, I served true copies of the following document(s) described as **BRENNTAG SPECIALTIES, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT - ASBESTOS** on the interested parties in this action as follows:

**BY ELECTRONIC SERVICE:** I electronically served the document(s) described above via File & ServeXpress, on the recipients designated on the Transaction Receipt located on the File & ServeXpress website (https://secure.fileandservexpress.com) pursuant to the Court Order establishing the case website and authorizing service of documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 9, 2024, at San Francisco, California.

[signature]
Melissa Stern

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111-4928
TEL (415) 781-7072 • FAX (415) 391-6258

# EXHIBIT 3

Order Filed on August 15, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
svanaalten@coleschotz.com
adeleo@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
G. David Dean, Esq. (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
ddean@coleschotz.com

*Counsel for Debtors and*
*Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 100 First Stamford Place, Stamford, Connecticut 06902.

**DATED: August 15, 2024**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

(Page 2)
Debtors: Whittaker, Clark & Daniels, Inc., *et al.*
Case No. 23-01245-MBK
Caption of Order: Bridge Order Extending Temporary Restraining Order

| | |
|---|---|
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Proc. No. 23-01245 (MBK) |

**BRIDGE ORDER EXTENDING TEMPORARY RESTRAINING ORDER**

The relief set forth on the following pages, numbered three (3) through four (4), is **ORDERED**.

65977/0001-48316863v1

This matter coming before the Court on the *Debtors' Ninth Request for Extension of Temporary Restraining Order* [Adv. Proc. Docket No. 254] (the "**Request**");[2] and the Court having found and determined that (i) the Court has jurisdiction to consider the relief sought in the Request and the Letter pursuant to 28 U.S.C. §§ 157 and 1334(b), (ii) this matter is a core proceeding under 28 U.S.C. § 157(b), (iii) venue is proper in this district pursuant to 28 U.S.C. § 1409, and (iv) entry of an order (this "**Bridge Order**") extending the TRO[3] as to the Actions listed on the Amended Schedule in accordance with the previously approved Extension Procedures pending the Court's entry of a final order regarding the Request is (a) fair and reasonable, (b) consistent with the Bankruptcy Code, the Bankruptcy Rules, the applicable Federal Rules, and the Local Rules, (c) appropriate under the circumstances, and (d) in the best interests of the Debtors and their estates and creditors, **IT IS HEREBY ORDERED that:**

1. The Request is hereby **GRANTED** on a temporary basis pending final approval of the Request by the Court.

2. The terms and conditions of the TRO shall be extended through and including the date by which the Court enters a final order with respect to the Request and shall encompass the Actions listed on the Amended Schedule attached hereto as **Exhibit 1**.

3. Counsel for the Debtors shall serve a copy of this Bridge Order on the Notice Parties within one (1) business day of its entry.

4. This Bridge Order is without prejudice to the Debtors' right to seek further extensions of the TRO.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Request.

[3] The findings of fact and conclusions of law set forth in the TRO are incorporated into this Bridge Order as if fully set forth herein.

Case 2:24-cv-08133-MCS-AGR Document 1-2 Filed 09/20/24 Page 49 of 393 Page ID #57



5. A hearing regarding final approval of the Request shall be conducted on **August 22, 2024 at 2:00 p.m. (ET)** before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, New Jersey 08608.

6. The terms and conditions of this Bridge Order shall be effective and enforceable immediately upon its entry.

7. The Court retains jurisdiction with respect to all matters arising from or relating to the interpretation, implementation, or enforcement of this Bridge Order.

**<u>EXHIBIT 1</u>**

**[Amended Schedule]**

65977/0001-48222737v3

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 1. | *Michael Pryor & Karen Pryor v. Avon Products, Inc., et al.* | MID-L-000022-21 | New Jersey | Simon Greenstone | 11/27/2023 | Trial |
| 2. | *Katherine M. Komer, as Special Administrator for the Estate of DONALD E. SWEENEY, deceased, and ROBERTA S. SWEENEY v. Belden Wire & Cable Company LLC, et al.* | 22 LA 724; HRVA No. 1011684 | Illinois | Maune | 12/4/2023 | Trial |
| 3. | *JACKI MCALLISTER, Individually and as Special Administrator of the Estate of JAMES O. MCALLISTER, deceased v A.O. SMITH CORPORATION, et al.* | 21 L 870; HRVA No. 1010395 | Illinois | Maune | 12/4/2023 | Trial |
| 4. | *LORA M. HOWARD, as Administrator CTA for the Estate of MICHAEL S. FIELDS, deceased v. American International Industries, et al.* | 20 L 447; HRVA No. 1008294 | Illinois | Maune | 12/4/2023 | Trial |
| 5. | *Gayle Braun, Executor for Estate of James M. Braun Jr., deceased, v. Air & Liquid Systems Corporation, et al.* | 22 LA 1010; HRVA No. 1011947 | Illinois | Maune | 12/4/2023 | Trial |
| 6. | *GWENDOLYN J. MUKOMELA, Individually and as Special Administrator for the Estate of KENNETH D. MUKOMELA, deceased v. AGCO CORPORATION, et al.* | 22 LA 962; HRVA No. 1011932 | Illinois | Maune | 12/4/2023 | Trial |
| 7. | *Irma M. Infante v. Barretts Minerals, Inc., et al.* | 190137/2022 | New York | Lanier | 12/5/2023 | Jury selection with trial to proceed in due course |
| 8. | *G. Jyles Eaves as Special Administrator for Frances Eaves, Deceased v. Kolmar Laboratories, Inc., et al.* | 190112/2021 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| 9. | *Bonita Wintersteen and Robert Wintersteen v. Alticore, Inc., et al* | 190034/2022 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| 10. | *Linda Oubre, individually and as Administratrix and Administratrix ad Prosequendum of the Estate of Betty Holtschneider, Deceased, and Stanley Holtschneider v. Brenntag North America, et al.* | MID-L-003009-16 | New Jersey | Simon Greenstone | 12/11/2023 | Trial |
| 11. | *Bernice Hallam v. Arkema, Inc.* | 23STCV11756 | California | Simon Greenstone | 12/18/2023 | Trial |

65977/0001-48222737v3

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 12. | *Sharon Hofmaister v. Johnson & Johnson* | 23CV033743 | California | Kazan | 1/29/2024 | Trial |
| 13. | *Shelly Yerkes v. Avon Products* | 23CV032102 | California | Kazan | 1/29/2024 | Trial |
| 14. | *DORCAS G. CONWAY, Individually and as Special Administrator of the Estate of THOMAS P. CONWAY, Deceased v. Air & Liquid Systems Corporation, et al.* | 21 L 1012; HRVA No. 1010535 | Illinois | Maune | 2/5/2024 | Trial |
| 15. | *Michael David Link, et al. v. 3M Company, et al.* | 2022-CP-40-05543 | South Carolina | Dean Omar | 2/12/2024 | Trial |
| 16. | *Heather Donaghy, as Personal Representative of the Estate of Shirley Smiley Potter, deceased v. 4520 Corp, Inc., et al.* | 2023-CP-40-03108 | South Carolina | Dean Omar | 2/12/2024 | Trial |
| 17. | *Nicholas Barone and Kathryn Barone v. Blue M et al.* | CT FBT-CV-22-6116587-S | Connecticut | Early | 2/27/2024 | Trial |
| 18. | *Karen A. Kreitel, Adminstrator of Estate of Janice Markuson v. Brenntag North America* | MID-L0003589-20 | New Jersey | Simon Greenstone | 3/18/2024 | Trial |
| 19. | *Mauricio Tellez v. Avon Products, et al.* | MID-L-000054-19 | New Jersey | Simon Greenstone | 4/8/2024 | Trial |
| 20. | *AMANDA RIGGINS; KOBE GREEN, an Adult Child; BOBBY CLINTON, A Minor Child, and JUSTICE CAUSEY, A Minor Child, By Their Natural Guardian Ad Litem v. BRENNTAG SPECIALTIES, INC., f/k/a MINERAL PIGMENT SOLUTIONS, INC., as successor-in-interest to WHITTAKER CLARK & DANIELS, ICN., et al.* | MID-L-002337-19 | New Jersey | Simon Greenstone | 4/15/2024 | Trial |
| 21. | *MARY JACKSON, Individually and as Administratrix and Administratrix ad Prosequendum of the Estate of JOHNNIE JACKSON, Deceased, and on behalf of Decedent's survivors, Johnny Jackson, Gwendolyn Jackson, and Dameon Williams vs. BARRETTS MINERALS INC., et als.* | MID-L-006778-20 | New Jersey | Maune | 4/15/2024 | Trial |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 22. | *LINDA JOHNSON-BRETT and BRADFORD BRETT vs. A.O. SMITH CORPORATION., et als.* | E2022002698 | New York | Meirowitz & Wasserberg | 4/18/2024 | Jury selection with trial to proceed in due course |
| 23. | *KYUNG H. LEE and JOE J. LEE vs. BI-MART CORPORATION, et als.* | 23CV40369 | Oregon | Dean Omar | 4/29/2024 | Trial |
| 24. | *Tina Cooney v. Avon Products Inc.* | MID-L-002992-22 | New Jersey | Maune | 4/29/2024 | Trial |
| 25. | *Donna Calawa, Personal Representative for the Estate of Ronald Messenger v. Advance Atores Company, Inc. et al.* | FBT-CV-22-6115647-S | Connecticut | Early | 4/30/2024 | Trial |
| 26. | *Evan C. Plotkin and Martha Barry-Plotkin v. Johnson & Johnson, et al.* | FBT-CV21-6109520-S | Connecticut | Dean Omar | 4/30/2024 | Trial |
| 27. | *JAMES D. HUFF, Individually and as Administrator and Administrator ad Prosequendum of the Estate of LINDA KAY HUFF v. ARKEMA, INC. f/k/a PENNWALT CORPORATION and ELF ATOCHEM NORTH AMERICA, INC.* | MID-L-002818-17 | New Jersey | Simon Greenstone | 5/13/2024 | Trial |
| 28. | *DAVID HULTIN v. 3M COMPANY, et al.* | CV089355 | New York | Meirowitz & Wasserberg, LLP | 5/23/2024 | Jury selection with trial to proceed in due course |
| 29. | *NEIL BATHGATE, individually and as Representative of the Estate of JOSEPHINE BATHGATE v. AVON PRODUCTS, INC. et al.,* | 190125/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 30. | *RACHELLE JANE CLEARY and JOANNE BURGESS, as Personal Representative of the Estate of MONICA DRAYNER, v. AVON PRODUCTS, INC. et al.* | 190124/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 31. | *MARIA JAUREGUI v. AVON PRODUCTS, INC. et al.* | 190189/2022 | New York | Meirowitz & Wasserberg, LLP | 5/29/2024 | Jury selection with trial to proceed in due course |
| 32. | *AOIFE MCATEER, v. AVON PRODUCTS, INC., et al.* | 782000/2017 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 33. | *TESA ALAINE BURCH, as Administrator of the Estate of DENA VEE POWELL, f/k/a DENA V. BURCH v. AVON PRODUCTS, INC., et al.* | 190122/2022 | New York | Meirowitz & Wasserberg, LLP | 5/29/2024 | Jury selection with trial to proceed in due course |
| 34. | *LISA THOMAS and JEFFRY SCHROEPFER, Individually and as Administrators of the Estate of CAROLYN SCHROEPFER v. AVON PRODUCTS, INC., et al.* | 190281/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 35. | *BARRY WILLIAM WALSH, Individually and as Administrator of the Estate of Lillian Margaret Walsh v. AVON PRODUCTS, INC., et al.* | 190123/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 36. | *KIM GRAY v. JOHNSON & JOHNSON, et al.* | MID-L-005932-19 | New Jersey | Levy Konigsberg, LLP | 6/20/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 37. | *EVELYN ISRAEL, as Administrator and Administrator ad Prosequendum for the Estate of HELEN WALTERS, Deceased, MARK WORTHINGTON and CHARLES WORTHINGTON v. CLINIQUE LABORATORIES, LLC, et al.* | MID-L-004313-19 | New Jersey | Simon Greenstone | 6/20/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 38. | *CAROLE SEGEDIE and KENNETH SEGEDIE v. COLGATE-PALMOLIVE COMPANY, et al.* | 22CV019385 | California | Kazan | 6/24/2024 | Trial |
| 39. | *MARK JAMES SORUM and BARBARA SORUM v. ALBERTSONS COMPANIES, INC., et al.* | 23CV031203 | California | Kazan | 07/08/2024 | Trial |
| 40. | *EDWARD ROTHLEIN and SHARON ROTHLEIN v. AMERICAN INTERNATIONAL INDUSTRIES, et al.* | 190374/2016 | New York | Levy Konigsberg, LLP | 07/16/2024 | Jury selection with trial to proceed in due course |
| 41. | *Vicki Robbins v. Avon Products, Inc., et al.* | MID-L-001231-22 | New Jersey | Simmons | 7/5/2024 | Deadline to file MSJ or waive ability to contest successor liability |



65977/0001-48222737v3

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 42. | *Barry Webster v. BASF Corp., et al.* | MID-L-001410-22 | New Jersey | Weitz | 7/5/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 43. | *Kimberly C. Harris and Michael Harris v. Avon Products, Inc., et al.* | MID-L-004711-21 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 44. | *Nicole Stone and Joshua Stone v. Barretts Minerals, Inc., et al.* | MID-L-001972-22 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 45. | *Renee Cavalluzzi a/k/a Renee A. Cavaluzzi, Individually and as Executrix of the Estate of John Cavalluzzi, deceased v. Barretts Minerals, Inc., et al.* | MID-L-002519-22 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 46. | *Virginia Harrington v. Johnson & Johnson, et al.* | MID-L-006733-20 | New Jersey | Levy | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 47. | *Barbara J. Mizer and George A. Mizer v. Aisin USA Mfg, Inc., et al.* | MID-L0004279-22 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 48. | *Tari Curtis, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Erik Curtis, Deceased, and Angel Curtis, a Minor Child, Amber Curtis, a Minor child, Cesar Curtis, a Minro child, Blake Curtis, a Minor child, and Mason Curtis, a Minor child, by their Natural Guardian ad litem v. Avon Products, Inc., et al.* | MID-L-006225-20 | New Jersey | Simon Greenstone | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 49. | *Briana M. Santos v. Brenntag Specialties, Inc., et al.* | MID-L-005026-22 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |



65977/0001-48222737v3

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 50. | *Logan J. Windram, Individually and as Executor and Executor Ad Prosequendum of the Estate of Jennifer Windram v. Johnson & Johnson, et al.* | MID-L-003103-21 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 51. | *Kimberly O. Aikens v. Arkema Inc., et al.* | 2023-017836-CA-42 | Florida | Ferraro | N/A | Proposed Brenntag Settlement |
| 52. | *Cheryl R. Weeks and Gregory W. Weeks vs. Barretts Minerals Inc., et al.* | CACE-23-004434 | Florida | Maune | 8/5/2024 | Trial |
| 53. | *Amanda Lairson, as Administrator and Administrator ad Prosequendum of the Estate of Larry Lairson v. Advance Auto Parts, Inc., et al.* | MID-L-006673-18 | New Jersey | Simon Greenstone | 8/5/2024 | Trial |
| 54. | *Susan W. Berris and Bruce C. Berris vs. Brenntag North America, Inc., et al.* | 62-CV-23-257 | Minnesota | Maune | 8/12/2024 | Trial |
| 55. | *Henry D. Barratt, Jr. Individually and as Executor and Executor ad Prosequendum of the Estate of Madelin Barratt, Deceased v. Brenntag North America, Inc.* | MID-L-008016-19 | New Jersey | Simon Greenstone | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 56. | *Michelle Cooper v. Johnson & Johnson, et al.* | MID-L-001326-21 | New Jersey | Levy | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 57. | *Jane Davis, as Executrix and Executrix ad Prosequendum for the Estate of John Synowicki, Deceased v. Beacon CMP Corp., et al.* | MID-L-005034-22 | New Jersey | Simon Greenstone | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 58. | *KRAIG KAATZ and ARLENE KAATZ, his wife, vs. 84 LUMBER COMPANY, et al.* | 2023-L-008335 | Illinois | Simmons Hanly Conroy | 8/13/2024 | Trial |
| 59. | *John Kerley, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Beverly Kerley, Deceased, and John B. Kerley v. Brenntag North America, Inc., et al.* | MID-L-006612-20 | New Jersey | Simon Greenstone | 8/16/2024 | Deadline to file MSJ or waive ability to contest successor liability |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 60. | *Jack LaSalle and Dianne LaSalle v. American International Industries, Inc.* | 23-2-08165-0 SEA | Washington | Kazan | N/A | Proposed Brenntag Settlement |
| 61. | *Emge v. 3M Company, et al.* | 24-2-05155-0 | Washington | Lanier | N/A | Proposed Brenntag Settlement |
| 62. | *Graham v. Brenntag North America, Inc., et al.* | 23CV34505 | Oregon | Dean Omar | N/A | Proposed Brenntag Settlement |
| 63. | *Ballesteros v. Albertson's Companies, Inc., et al.* | 23STCV06710 | California | Frost | N/A | Proposed Brenntag Settlement |
| 64. | *Meade v. Barretts Minerals Inc., et al.* | 23STCV23517 | California | Simmons | N/A | Proposed Brenntag Settlement |
| 65. | *Patricia Sneider v. Avon Products, Inc., et al.* | 23STCV25951 | California | Simon Greenstone | 8/26/2024 | Trial and Proposed Brenntag Settlement |
| 66. | *Lisa L. Frank, Individually and as Personal Representative and as Personal Representative Ad Prosequendum of the Estate of Judith Wilma Blankschaen v. Johnson & Johnson, et al.* | MID-L-008377-18AS | New Jersey | Levy Konigsberg, LLP | 8/30/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 67. | *Bernard P. Bowers Jr. and Jeanne Bowers v. A.W. Chesterton Company, et al.* | 210902481 | Pennsylvania | Weitz & Luxenberg | 9/9/2024 | Trial |
| 68. | *Josefina Alvarez v. Barretts Minerals Inc., et al.* | 2023L005583 | Illinois | Maune | 9/10/2024 | Trial |
| 69. | *Candace Rego as Executrix and Executrix ad Prosequendum for the Estate of Samantha Leigh Gentle and Ashley Rego v. Avon Products, Inc., et al.* | MID-L-7729-20AS | New Jersey | Simon Greenstone | 9/13/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 70. | *Shawn Jones, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Sheila Ryan v. Avon Products, Inc., et al.* | MID-L-04589-19AS | New Jersey | Simon Greenstone | 9/13/2024 | Deadline to file MSJ or waive ability to contest successor liability |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 71. | *Lilo Cooper and Leslie Cooper v. Arkema, Inc., et al.* | 23STCV15823 | California | Simon Greenstone | NA | Proposed Brenntag Settlement |
| 72. | *Frank M. Finch and Ruth E. Finch v. Barretts Minerals, Inc., et al.* | MID-L-005051-22 | New Jersey | Maune | 9/9/2024 | Trial |

# EXHIBIT 4

(Page 2)
Debtors: Whittaker, Clark & Daniels, Inc., *et al.*
Case No. 23-01245-MBK
Caption of Order: Temporary Restraining Order

**Order Filed on November 22, 2023**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Proc. No. 23-01245 (MBK) |

## TEMPORARY RESTRAINING ORDER

The relief set forth on the following pages, numbered three (3) through six (5), is **ORDERED**.

MICHAEL B. KAPLAN, USBJ

11/22/2023

This matter coming before the Court on the *Debtors' Motion for Entry of an Order (I) Temporarily Enjoining Certain Actions Against Non-Debtors; and (II) Approving Procedures for Seeking Extensions of Temporary Restraining Order* [Adv. Dkt. _] (the "**Motion**");[1] and the Court having found and determined that (i) the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b), (ii) this matter is a core proceeding under 28 U.S.C. § 157(b), (iii) venue is proper in this district pursuant to 28 U.S.C. § 1409, and (iv) entry of the Temporary Restraining Order and approval of the Extension Procedures is (a) fair and reasonable, (b) consistent with the Bankruptcy Code, the Bankruptcy Rules, the applicable Federal Rules, and the Local Rules, (c) appropriate under the circumstances, and (d) in the best interests of the Debtors and their estates and creditors; and upon the record of the hearing to consider the relief requested in the Motion conducted on November 21, 2023 (the "**Hearing**"), the Court hereby finds and determines that:

A. The Debtors seek, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Federal Rules of Bankruptcy Procedure, a temporary restraining order prohibiting continued prosecution and settlement of Successor Liability Claims against Brenntag in the lawsuits identified on Exhibit 1 attached hereto (the "**Actions**").

B. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue for this matter is proper in this District pursuant to 28 U.S.C. § 1409.

C. Without immediate injunctive relief, it is expected that the Debtors will be irreparably harmed.

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion. The term "Successor Liability Claims" shall have the meaning defined in the Motion, which incorporates by reference the definition of Successor Liability Claims in the complaint initiating this Adversary Proceeding [Adv. Proc. Docket No. 1].

D. This Court finds good cause to extend, and hereby extends, the temporary restraining order for the maximum period allowed under Federal Rule of Civil Procedure 65 – 28 days.

E. The Extension Procedures are fair and reasonable and do not unfairly prejudice any party to this Adversary Proceeding.

F. The legal and factual basis, and the parties' representations on the record, set forth in the Motion, the Declaration, and at the Hearing establish just cause for the relief granted herein.

Based on the foregoing findings and conclusions, **IT IS HEREBY ORDERED that:**

1. Defendants are temporarily restrained from prosecuting or settling any Successor Liability Claims in the Actions listed on the schedule attached hereto as Exhibit 1 (the "**Schedule**"), through and including the date that is 28 days from the date of entry of this Order. For the avoidance of doubt, this Order does not restrain Defendants from prosecuting or settling claims that are not Successor Liability Claims, including without limitation direct claims against Brenntag not arising out of conduct of the Debtors, and for which there can be no indemnification claims asserted by Brenntag against Debtors. In this regard, the Court authorizes the following two actions:

- Kunigar Haney v. Avon Products, Inc. et al., 23-STCV-06-726;
- Sharon Spinks v. Johnson & Johnson, et al., 67-CV-17-526

to proceed, only to the extent Plaintiffs in these actions have: (1) dismissed with prejudice all claims against Brenntag entities as successors in interest, alter egos, or other comparable capacities premised upon their alleged relationships to the Debtors; and (2) stipulated that no factual or legal issues relative to the Debtors' conduct will be adjudicated at trial. At this juncture, no other actions identified on Exhibit 1 may go forward.

(Page 5)
Debtors: Whittaker, Clark & Daniels, Inc., *et al.*
Case No. 23-01245-MBK
Caption of Order: Temporary Restraining Order

Absent further Order of this Court or the expiration of this Temporary Restraining Order, the restraints and the foregoing requirements will apply to all other actions which are identified on Exhibit 1.

2. The Debtors shall serve a copy of this Order, including the Schedule, on all parties to this Adversary Proceeding via regular mail within one (1) business day of entry of this Order.

3. The following Extension Procedures are hereby **APPROVED**:

i. The Debtors shall be permitted to file requests to extend the Temporary Restraining Order for 28 days (each, an "**Additional Request**"), which shall attach a proposed extension order (an "**Extension Order**"), as well as an amended or supplemented Schedule of Actions sought to be enjoined and a blackline of such Schedule marked against the previously filed Schedule.

ii. Additional Requests shall be served by regular mail and email (where known) on counsel for the TCC, counsel for the FCR, counsel for Brenntag, and counsel for any individual claimant identified on the Schedule (as amended or supplemented) (each, a "**Notice Party**" and collectively, the "**Notice Parties**") within one (1) business day of its filing.

iii. Objections, if any, to an Additional Request (each, an "**Objection**") shall be filed and served on counsel for the Debtors within ten (10) days of service of the Additional Request.

iv. All parties in interest shall have the right to timely object to an Additional Request on any grounds.

v. Any Notice Party that fails to timely file an Objection shall be deemed to consent to the relief requested in the Additional Request, and the Court shall enter the proposed Extension Order as to such Notice Party.

vi. In the event a Notice Party timely files an Objection, the Debtors and the applicable Notice Party shall meet and confer in an attempt to resolve the Objection, and, in the absence of such resolution, the Court shall resolve the Objection at a hearing to be scheduled.

4. Brenntag is authorized and directed to file this Order, and any similar future Order(s) of this Court in this Adversary Proceeding, on the docket of the Actions listed on the Schedule within three (3) business days of its entry.

5. Pursuant to Federal Bankruptcy Rule 7065, the Debtors are relieved from posting bond under Federal Rule 65(c).

6. The requirement set forth in D.N.J. LBR 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

9. The terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

10. Nothing in this Order or the interim relief associated therewith shall be construed as a binding finding of fact or conclusion of law or preclude any party's ability to litigate these facts on a complete record, or otherwise prejudice the parties as to any further proceedings in any manner.

11. The Court retains jurisdiction with respect to all matters arising from or relating to the interpretation, implementation, or enforcement of this Order.

**EXHIBIT 1**

**[Schedule of Actions]**

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 1. | *Michael Pryor & Karen Pryor v. Avon Products, Inc., et al.* | MID-L-000022-21 | New Jersey | Simon Greenstone | 11/27/2023 | Trial |
| 2. | *Beth Solomon v. Avon Products, Inc., et al.* | CV-21-964799 | Ohio | Simon Greenstone | 11/27/2023 | Trial |
| 3. | *Katherine M. Komer, as Special Administrator for the Estate of DONALD E. SWEENEY, deceased, and ROBERTA S. SWEENEY v. Belden Wire & Cable Company LLC, et al.* | 22 LA 724; HRVA No. 1011684 | Illinois | Maune | 12/4/2023 | Trial |
| 4. | *JACKI MCALLISTER, Individually and as Special Administrator of the Estate of JAMES O. MCALLISTER, deceased v A.O. SMITH CORPORATION, et al.* | 21 L 870; HRVA No. 1010395 | Illinois | Maune | 12/4/2023 | Trial |
| 5. | *LORA M. HOWARD, as Administrator CTA for the Estate of MICHAEL S. FIELDS, deceased v. American International Industries, et al.* | 20 L 447; HRVA No. 1008294 | Illinois | Maune | 12/4/2023 | Trial |
| 6. | *Gayle Braun, Executor for Estate of James M. Braun Jr., deceased, v. Air & Liquid Systems Corporation, et al.* | 22 LA 1010; HRVA No. 1011947 | Illinois | Maune | 12/4/2023 | Trial |
| 7. | *GWENDOLYN J. MUKOMELA, Individually and as Special Administrator for the Estate of KENNETH D. MUKOMELA, deceased v. AGCO CORPORATION, et al.* | 22 LA 962; HRVA No. 1011932 | Illinois | Maune | 12/4/2023 | Trial |
| 8. | *Patricia Bvumbe v. Charles B. Chrystal Company, Inc., et al.* | MID-L-007546-20 | New Jersey | Simon Greenstone | 12/4/2023 | Trial |
| 9. | *Irma M. Infante v. Barretts Minerals, Inc., et al.* | 190137/2022 | New York | Lanier | 12/5/2023 | Jury selection with trial to proceed in due course |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| **10.** | *G. Jyles Eaves as Special Administrator for Frances Eaves, Deceased v. Kolmar Laboratories, Inc., et al.* | 190112/2021 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| **11.** | *Bonita Wintersteen and Robert Wintersteen v. Alticore, Inc., et al* | 190034/2022 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| **12.** | *Jose Chavez, Administrator ad Prosequendum of the Estate of Luis Chavez, Deceased and Maria and J. Santana Chavez v. 3M Company, et al.* | MID-L-006436-19 | New Jersey | Simon Greenstone | 12/11/2023 | Trial |
| **13.** | *Linda Oubre, individually and as Administratrix and Administratrix ad Prosequendum of the Estate of Betty Holtschneider, Deceased, and Stanley Holtschneider v. Brenntag North America, et al.* | MID-L-003009-16 | New Jersey | Simon Greenstone | 12/11/2023 | Trial |
| **14.** | *Wendy Reynolds v. AT & T Corp. et al.* | CT FBT-CV21-6103802-S | Connecticut | Simon Greenstone | 12/12/2023 | Trial |
| **15.** | *Bernice Hallam v. Arkema, Inc.* | 23STCV11756 | California | Simon Greenstone | 12/18/2023 | Trial |

Form order − ntcorder

**UNITED STATES BANKRUPTCY COURT**

District of New Jersey
402 East State Street
Trenton, NJ 08608

In Re: Whittaker, Clark & Daniels, Inc.
Debtor

Case No.: 23−13575−MBK
Chapter 11

Whittaker, Clark & Daniels, Inc.
Plaintiff

v.

Brenntag AG
Defendant

Adv. Proc. No. 23−01245−MBK

Judge: Michael B. Kaplan

**NOTICE OF JUDGMENT OR ORDER**
**Pursuant to Fed. R. Bankr. P. 9022**

Please be advised that on November 22, 2023, the court entered the following judgment or order on the court's docket in the above−captioned case:

Document Number: 89 − 61
Temporary Restraining Order (Related Doc # 61). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 11/22/2023. (dmi)

Parties may review the order by accessing it through PACER or the court's electronic case filing system (CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: November 22, 2023
JAN: dmi

Jeanne Naughton
Clerk

# EXHIBIT 5

E-SERVICE
74143047
Aug 23 2024
03:43PM
File & ServeXpress

Leah C. Kagan, CA Bar No. 283925
Erica L. Falkner, CA Bar No. 286007
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone: (562) 590-3400
Facsimile: (562) 590-3412
Email: efalkner@sgptrial.com

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/22/2024 3:55 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Carini, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| Coordinated Proceeding<br>Special Title (Rule 3.550)<br><br>**LAOSD ASBESTOS CASES** | J.C.C.P. No. 4674<br><br>Los Angeles Superior Court<br>Case No. 23STCV25951<br><br>Coordination Trial Judge<br>The Honorable Timothy Patrick Dillon, Dept. 15 |
| **PATRICIA SNEIDER**.<br><br>Plaintiff,<br>vs.<br><br>**AVON PRODUCTS, INC.**, *et al*.,<br><br>Defendants. | **NOTICE OF TEMPORARY STAY**<br><br>Action Filed: October 24, 2023<br>Trial Date: August 26, 2024 |

**TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD**:

Counsel for Plaintiff Patricia Sneider, having appeared today, August 22, 2024, before the Honorable Michael B. Kaplan, Chief Judge, United States Bankruptcy Court, to object to Ms. Sneider's action against Brenntag Specialties, LLC ("Brenntag") being included on Debtor Whittaker, Clark & Daniels, Inc.'s request for an extension of the Temporary Restraining Order ("TRO"), reports the following:

1. Judge Kaplan has temporarily extended the TRO to stay litigation against Brenntag in Ms. Sneider's matter until September 18, 2024;

2. Judge Kaplan will issue a ruling regarding whether to continue to stay Ms. Sneider's matter beyond September 18, 2024 on September 18, 2024 at 1pm ET.

Accordingly, Plaintiff cannot continue to litigate against Brenntag in this matter unless and until Judge Kaplan sustains her objection on September 18, 2024. Plaintiff has no claims remaining against any other defendant.

.

DATED: August 22, 2024

SIMON GREENSTONE PANATIER, PC

By: ____________________

Leah C. Kagan
Erica L. Falkner
Attorneys for Plaintiff

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over eighteen years of age and not a party to the within action; my business address is 3760 Kilroy Airport Way, Suite 680, Long Beach, California. I am employed in Los Angeles County, California.

On the date set forth below, I served a true and correct copy of the foregoing document(s) described as:

**NOTICE OF TEMPORARY STAY**

On all interested parties in this action stated below via the following means of service:

**[XX] BY E-SERVICE:** I caused such document to be transmitted by electronic service via File&ServeXpress for the same day delivery to the offices of the addressee(s). See File&ServeXpress Service List.

I declare under penalty of perjury, under the laws of the State of California that the above is true and correct. Executed on August 22, 2024 at Long Beach, California.

Jenna Sanchez

# EXHIBIT 6

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 15 HON. TIMOTHY P. DILLON, JUDGE

| | | |
|---|---|---|
| PATRICIA SNEIDER, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | JCCP 4674 |
| V. | ) | |
| | ) | |
| AVON PRODUCTS, INC., ET AL., | ) | CASE NO. |
| | ) | 23STCV25951 |
| DEFENDANT. | ) | |
| ______________________________________ | ) | |

REPORTER'S TRANSCRIPT OF REMOTE PROCEEDINGS
FRIDAY, AUGUST 23, 2024

REMOTE APPEARANCES OF COUNSEL:

(APPEARANCES, NEXT PAGE)

REPORTED BY: AMANDA R. BOSCO, CSR #13129, RPR
OFFICIAL REPORTER PRO TEMPORE

CASE NUMBER: 23STCV25951

CASE NAME: SNEIDER VERSUS AVON PRODUCTS, INC., ET AL.

LOS ANGELES, CALIFORNIA FRIDAY, AUGUST 23, 2024

DEPARTMENT 15 HON. TIMOTHY P. DILLON, JUDGE

REPORTER: AMANDA R. BOSCO, CSR #13129 VIA LACOURTCONNECT

TIME: 9:16 A.M.

APPEARANCES:

(AS HERETOFORE NOTED.)

---

MS. KAGAN: LEAH KAGAN, SIMON GREENSTONE.

I APOLOGIZE THAT I AM IN MY CAR.

THE COURT: ALL RIGHT. WE CAN HEAR YOU.

MS. KAGAN: PERFECT.

SO WE HAD THE HEARING WITH JUDGE KAPLAN ON THE 22ND, WHICH I BELIEVE WAS YESTERDAY. HE EXTENDED THE TEMPORARY RESTRAINING ORDER AS TO BRENNTAG TO SEPTEMBER 18TH AT 1:00 P.M.

HE GAVE INSTRUCTION TO THE NONPARTY DEBTOR WHITTAKER FOR SUPPLEMENTAL FILINGS TO HIM BEFORE SEPTEMBER 18.

AND THEN ON SEPTEMBER 18TH AT 1:00 P.M. HE WILL ISSUE HIS FURTHER RULING AS TO WHETHER OR NOT BRENNTAG WILL REMAIN STAYED IN THE SNEIDER MATTER OR IF WE WOULD BE ABLE TO PROCEED TO TRIAL AGAINST BRENNTAG. AND AT THIS POINT NOW WE ALL RESOLVED WITH VONS. AND SO BRENNTAG IS THE ONLY REMAINING ENTITY.

THE COURT: OKAY. ANYONE ELSE WANT TO SAY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES
DEPARTMENT 15 HON. TIMOTHY P. DILLON, JUDGE

| | | |
|---|---|---|
| PATRICIA SNEIDER, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | JCCP 4674 |
| V. | ) | |
| | ) | |
| AVON PRODUCTS, INC., ET AL., | ) | CASE NO. |
| | ) | 23STCV25951 |
| DEFENDANT. | ) | |
| ______________________________________ | ) | |

I, AMANDA R. BOSCO, CSR #13129, OFFICIAL REPORTER PRO TEMPORE OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT I DID CORRECTLY REPORT THE PROCEEDINGS CONTAINED HEREIN AND THE FOREGOING PAGES, 1 THROUGH 6, COMPRISE A TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED CAUSE ON FRIDAY, AUGUST 23, 2024.

DATED THIS SATURDAY, AUGUST 24, 2024.

AMANDA R. BOSCO, CSR #13129
OFFICIAL REPORTER
PRO TEMPORE

# EXHIBIT 7

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
svanaalten@coleschotz.com
adeleo@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
G. David Dean, Esq. (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
ddean@coleschotz.com

*Counsel for Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

| | |
|---|---|
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Proc. No. 23-01245 (MBK) |

**DEBTORS' NINTH REQUEST FOR**
**<u>EXTENSION OF TEMPORARY RESTRAINING ORDER</u>**

TO THE HONORABLE MICHAEL B. KAPLAN,
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

Whittaker, Clark & Daniels, Inc. ("**WCD**") and its debtor affiliates (together with WCD, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") and plaintiffs in the above-captioned adversary proceeding (this "**Adversary Proceeding**"), by and through their undersigned counsel, hereby submit this request (this "**Request**"), pursuant to the *Temporary Restraining Order* [Adv. Proc. Docket No. 89] (the "**TRO**"), as modified by the *Order Modifying Temporary Restraining Order* [Adv. Proc. Docket No. 208] (the "**Order Modifying TRO**") entered in this Adversary

Proceeding,[2] substantially in the form attached hereto as **Exhibit A** (as entered from time to time, the "**Extension Order**"): (i) extending the Termination Date (defined below) under the TRO for an additional 28 days; and (ii) amending the Schedule (as amended from time to time, the "**Amended Schedule**") attached to the existing Extension Order to include additional Actions (such Actions, the "**Additional Actions**") involving Successor Liability Claims against Brenntag that have a scheduled trial, summary judgment hearing, or other hearing, ruling, or proceeding that may have a similar dispositive result on or before the date that is 28 days from the current Termination Date or which Brenntag has proposed to settle.[3] In support of this Request, the Debtors submit the: (i) *Declaration of James H. Keale in Support of Debtors' Eighth Request for Extension of Temporary Restraining Order* attached hereto as **Exhibit C** (the "**Keale Declaration**"); and (ii) *Declaration of Anthony De Leo in Support of Debtors' Eighth Request for Extension of Temporary Restraining Order* attached hereto as **Exhibit D** (the "**De Leo Declaration**" and, together with the Keale Declaration, the "**Declarations**"), each of which are incorporated herein by reference, and respectfully state as follows:

## FACTUAL BACKGROUND

1. The Debtors commenced this Adversary Proceeding on September 7, 2023, seeking: (i) a declaration that Successor Liability Claims are property of the Debtors' estates, which the Debtors have sole standing to pursue and compromise while the Chapter 11 Cases are pending; (ii) a declaration that Successor Liability Claims, as property of the Debtors' estates, are automatically stayed; (iii) a declaration that the stay extends to Successor Liability Claims

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the TRO.

[3] A copy of the Amended Schedule is attached to the Extension Order as Exhibit 1. A blackline of the Amended Schedule marked against the previously filed Schedule is attached hereto as **Exhibit B**. Each of the Additional Actions has a trial or other dispositive hearing or proceeding scheduled on or before September 13, 2024 (the date that is 28 days from the current Termination Date of August 16, 2024) or is the subject of a proposed settlement.

against the Protected Parties to the extent not automatically stayed; and (iv) a preliminary injunction enjoining the commencement, continuation, and settlement of Successor Liability Claims while these Chapter 11 Cases are pending. The Debtors filed the Preliminary Injunction Motion[4] and Summary Judgment Motion[5] contemporaneously with the Complaint[6] initiating this Adversary Proceeding.

2. On October 12, 2023, the Court entered the *Case Management Order* [Adv. Proc. Docket No. 52] (the "**CMO**") scheduling the hearing to consider the Summary Judgment Motion solely with respect to Counts I and IV of the Complaint (seeking a declaration that Successor Liability Claims are property of the Debtors' estates and thus subject to the automatic stay) for December 5, 2023 at 11:00 a.m. (ET). CMO, ¶ 2. The CMO provides that the Court will reserve judgment on the Summary Judgment Motion with respect to Counts I and IV until at least January 31, 2024[7] to afford the parties time to engage in good faith settlement negotiations through mediation, which reservation and mediation period may be extended by the Court. CMO, ¶¶ 6, 7. In the event mediation is suspended or terminated, the Court will hold a status conference to discuss entry of a new Case Management Order to govern the next stage of this Adversary Proceeding. CMO, ¶ 8.

[4] *See Debtors' Motion for an Order Preliminary Enjoining Certain Actions Against Non-Debtors* [Adv. Proc. Docket No. 2] (the "**Preliminary Injunction Motion**").

[5] *See Debtors' Motion for Summary Judgment with Respect to Counts I, II, and IV of the Complaint* [Adv. Proc. Docket No. 3] (the "**Summary Judgment Motion**").

[6] *See Debtors' Verified Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Applies to Successor Liability Claims Against Non-Debtors, (II) Extending the Automatic Stay to Such Claims, (III) Preliminarily Enjoining Such Claims, and (IV) Declaring that Successor Liability Claims are Property of the Debtors' Estates* [Adv. Proc. Docket No. 1] (the "**Complaint**").

[7] As set forth in paragraph 2 of the *Third Agreed Order Regarding Mediation Stipulation* [Docket No. 1059], the Court has deferred issuance of a decision on the Summary Judgment Motion through June 10, 2024. On June 2, 2024, the Debtors requested that the Court issue its decision on June 10, 2024 or as soon as practicable thereafter. *See* Adv. Proc. Docket No. 214. As of the date hereof, the Court has not issued its decision.

3. The CMO expressly preserved the Debtors' right to "seek an emergency temporary restraining order at any time." CMO, ¶ 10.

4. In light of the timeline set forth in the CMO, the Debtors sought this Court's entry of a TRO[8] to enjoin the Successor Liability Claims in the actions listed on the Schedule for 28 days, subject to further extension in accordance with certain Extension Procedures approved in the TRO.

5. On November 22, 2023, the Court entered the TRO[9] which restrained the Defendants from prosecuting or settling any Successor Liability Claims in the Actions listed on the Schedule attached to the TRO, up to and including December 20, 2023 (as may be extended from time to time, the "**Termination Date**"). The Court also approved the Extension Procedures, pursuant to which the Debtors may request periodic extensions of the Termination Date for an additional 28-day period and amend the Schedule to include additional Actions to be restrained.

6. On December 5, 2023, the Court heard argument on the Summary Judgment Motion. Decision on that motion remains under advisement.

7. The Court entered the *First Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 118] on December 20, 2023. The Court entered the *Second Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 133] on January 31, 2024.

---

[8] *See Debtors' Motion for Entry of an Order (I) Temporarily Enjoining Certain Actions Against Non-Debtors; and (II) Approving Procedures for Seeking Extensions of Temporary Restraining Order* [Adv. Proc. Docket No. 61] (the "**TRO Motion**"). The arguments and authority set forth in the TRO Motion are incorporated by reference into this Request as if fully set forth herein.

[9] In its opinion regarding the TRO, the Court directed the parties, going forward, to "sufficiently develop the record such that the Court is able to make [an] informed determination" regarding whether a particular Action should be stayed. *See* Adv. Proc. Docket No. 88 at pg. 9, n.2. The Declarations provide such a record with respect to the Actions added to the Amended Schedule.

8. On February 9, 2024, the Court entered the *Agreed Order Regarding Mediation Stipulation* [Adv. Proc. Docket No. 137] (the "**Mediation Stipulation**"). The Mediation Stipulation extended the Termination Date through and including March 11, 2024 and authorized the Debtors to seek a further extension of the Termination Date and to amend the Schedule by request filed on ECF no earlier than Monday, February 26, 2024. *See* Mediation Stipulation, ¶¶ 3-4.

9. The Court entered the *Third Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 147] on March 11, 2024.

10. The Court entered the *Fourth Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 157] on April 4, 2024.

11. The Court entered the *Fifth Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 190] on April 30, 2024.

12. On May 23, 2024, the Court entered the Order Modifying TRO. *See* Adv. Proc. Docket No. 208. The Order Modifying TRO provides:

> Brenntag is permitted to settle Successor Liability Claims asserted against it, unless and until such Successor Liability Claims are included within the scope of the TRO; provided that, for any Successor Liability Claim Brenntag proposes to settle on and after the Hearing Date, Brenntag must provide the Debtors and the TCC with written notice that it intends to settle such Successor Liability Claim 28 days prior to such settlement becoming effective, ***during which time the Debtors or the TCC shall have the right to request that this Court extend the TRO to the relevant case***.

Order Modifying TRO, ¶ 2 (emphasis supplied).

13. The Court entered the *Sixth Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 210] on June 25, 2024.

14. The Court entered the *Seventh Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 226] on July 19, 2024.



65977/0001-48205718v1

15. On July 19, 2024, the Court entered the *Eighth Order Extending Temporary Restraining Order* [Adv. Proc. Docket No. 250] extending the Termination Date through and including August 16, 2024.

16. On July 24, 2024, counsel for Brenntag notified counsel for the Debtors and counsel for the TCC of its intent to enter into settlements of two actions involving Successor Liability Claims against Brenntag (the "**Proposed Brenntag Settlements**"). Consistent with the Order Modifying TRO, either the Debtors or the TCC have until August 21, 2024 to request that the Court add the Proposed Brenntag Settlements to the TRO. The Debtors included the Proposed Brenntag Settlements on the Amended Schedule submitted with this Request.

## RELIEF REQUESTED

17. In accordance with the TRO and the Extension Procedures approved therein, the Debtors seek entry of the Extension Order extending: (i) the Termination Date under the TRO for an additional 28 days, through and including September 13, 2024; and (ii) the relief granted in the TRO to the Actions listed on the Amended Schedule.

## BASIS FOR RELIEF

18. The Debtors request a 28-day extension of the TRO for substantially the same reasons as set forth in the TRO Motion. Specifically, the Additional Actions listed on the Amended Schedule have a trial or other dispositive hearing or proceeding involving Successor Liability Claims against Brenntag scheduled on or before the date that is 28 days after the current Termination Date of August 16, 2024 or is the subject of a proposed settlement. As such, entry of the Extension Order extending the TRO for an additional 28 days to include the Additional Actions is appropriate for a number of reasons:

i. A successful outcome in the Chapter 11 Cases is likely: Oral argument regarding summary adjudication of Counts I and IV of the Complaint took place on December 5, 2023, and the Court has reserved its decision to allow for the parties



65977/0001-48205718v1

to engage in mediation. Although the TCC and FCR have requested that mediation be terminated (*see* Docket Nos. 1114, 1115), the Court has yet to terminate mediation or issue its decision on the Summary Judgment Motion.[10] The Debtors intend to continue their efforts to pursue a global resolution of Tort Claims, Successor Liability Claims, and Indemnification Claims. Entry of the Proposed Order will preserve the *status quo* while the Debtors continue these efforts.

ii. The Debtors will be irreparably harmed absent an extension of the TRO: Continued prosecution and/or resolution of Successor Liability Claims against Brenntag outside of these Chapter 11 Cases (including through settlement) threatens to trigger the Debtors' indemnification obligations to Brenntag pursuant to the 2004 Transactions. Moreover, Successor Liability Claims are premised on the Debtors' operations prior to the sale of substantially all of their operating assets to Brenntag. Accordingly, the adjudication of these claims requires an initial determination of the Debtors' liability on account of stayed Tort Claims and would require the Debtors to defend themselves outside of these Chapter 11 Cases.

iii. Tort Claimants will not be prejudiced by an extension of the TRO: Extension of the TRO will promote equitable treatment among similarly situated Tort Claimants (including future claimants) by preventing some current Tort Claimants from receiving recoveries in the tort system (including through settlement) that may differ from recoveries obtained through a trust established by the Debtors in these Chapter 11 Cases. Accordingly, an extension of the TRO will not prejudice Tort Claimants and, in fact, is beneficial to Tort Claimants as a whole.

iv. An extension of the TRO serves the public interest: A global resolution of Tort Claims, Successor Liability Claims, and Indemnification Claims serves the public interest in the mass tort context. It is also in the public interest to promote equitable treatment among all holders of current and future Tort Claims. Accordingly, an extension of the TRO serves the public interest.

19. For the foregoing reasons, the Debtors respectfully submit that entry of the Extension Order is appropriate and is in the best interests of the Debtors' estates and their creditors.

[10] At a status conference held on June 17, 2024, the Court indicated that it "intend[s] to issue a ruling [on the Summary Judgment Motion] in the near term." *See* Hr'g Tr. 24:19-24 (Jun. 17, 2024). The Court ordered the parties to provide supplemental briefing on the applicability of section 544 of the Bankruptcy Code to the issues before the Court. *See id.* at 26:4-28:7. The Court indicated that it saw "no need to terminate mediation" but that mediation could go "on a short hiatus" while these issues are addressed. *See id.* at 29:13-20.

## NOTICE

20. Consistent with Paragraph 3(ii) of the TRO, the Debtors shall serve a copy of this Request (including the exhibits hereto) by regular mail and email (where known) on (i) the Office of the United States Trustee, (ii) counsel for the TCC, (iii) counsel for the FCR, (iv) counsel for Brenntag, and (v) counsel for any individual claimant identified on the Amended Schedule within one business day of its filing. The Debtors submit that no other or further notice is required under the circumstances.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Extension Order substantially in the form attached hereto as **Exhibit A** and grant the Debtors such other and further relief as the Court deems just and proper.

**[*Remainder of page intentionally left blank*]**

Dated: July 31, 2024

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

-and-

Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Email: svanaalten@coleschotz.com
adeleo@coleschotz.com

-and-

G. David Dean, Esq. (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Email: ddean@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
svanaalten@coleschotz.com
adeleo@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
G. David Dean, Esq. (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
ddean@coleschotz.com

*Counsel for Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,

Plaintiffs,

v.

BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,

Defendants.

Adv. Proc. No. 23-01245 (MBK)

**OBJECTION DEADLINE:**
**August 12, 2024**

**HEARING DATE AND TIME:**
**August 15, 2024 at 10:00 a.m. (ET)**

**ORAL ARGUMENT WAIVED UNLESS OBJECTIONS TIMELY FILED**

**NOTICE OF DEBTORS' NINTH REQUEST FOR EXTENSION OF TEMPORARY RESTRAINING ORDER**

**PLEASE TAKE NOTICE** that, on July 31, 2024, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), as plaintiffs in the above-captioned adversary proceeding (this "**Adversary Proceeding**") filed the *Debtors' Ninth Request for Extension of Temporary Restraining Order* (the "**Request**")[2] in accordance with the Extension Procedures approved by the Court in the *Temporary Restraining Order* in this Adversary Proceeding dated as of November 22, 2023 [Adv. Proc. Docket No. 89] (the "**TRO**"), as modified by the *Order Modifying Temporary Restraining Order* [Adv. Proc. Docket No. 208] (the "**Order Modifying TRO**").

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Request.

**PLEASE TAKE FURTHER NOTICE** that the Request sets forth the relevant legal and factual bases upon which the relief requested therein should be granted. A proposed Extension Order granting the relief requested in the Request is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that, consistent with Paragraph 3(ii) of the TRO, the Debtors shall serve a copy of the Request (including the exhibits thereto) by regular mail and email (where known) on (i) the Office of the United States Trustee, (ii) counsel for the TCC, (iii) counsel for the FCR, (iv) counsel for Brenntag, and (v) counsel for any individual claimant identified on the Schedule (collectively, the "**Notice Parties**") within one business day of its filing.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Request (an "**Objection**") shall: (i) be in writing; (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the (a) *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 67] (the "**Case Management Order**") and (b) *General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002* (the "**General Order**") and the *Commentary Supplementing Administrative Procedures* dated as of March 2004 (the "**Supplemental Commentary**") (the General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served on the undersigned counsel to the Debtors, so as to be received no later than **August 12, 2024**.



65977/0001-48206578v1

**PLEASE TAKE FURTHER NOTICE** that any Notice Party that fails to timely file an Objection shall be deemed to consent to the relief requested in the Request, and the Court shall enter the Extension Order as to such Notice Party without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that, in the event a Notice Party timely files an Objection, the Debtors and the applicable Notice Party shall meet and confer in an attempt to resolve the Objection.

**PLEASE TAKE FURTHER NOTICE** that, in the absence of such resolution, the Court shall resolve the Objection at a hearing to be conducted on **August 15, 2024 at 10:00 a.m. (ET)** before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, New Jersey 08608.

**[*Remainder of page intentionally left blank*]**

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these Chapter 11 Cases may be obtained free of charge by visiting the website of Stretto, Inc. at https://cases.stretto.com/whittaker. You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: July 31, 2024

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

-and-

Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Email: svanaalten@coleschotz.com
adeleo@coleschotz.com

-and-

G. David Dean, Esq. (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Email: ddean@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

# EXHIBIT A

**[Proposed Extension Order]**

65977/0001-48205718v1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
svanaalten@coleschotz.com
adeleo@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
G. David Dean, Esq. (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
ddean@coleschotz.com

*Counsel for Debtors and*
*Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 100 First Stamford Place, Stamford, Connecticut 06902.

| | |
|---|---|
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Proc. No. 23-01245 (MBK) |

**NINTH ORDER EXTENDING TEMPORARY RESTRAINING ORDER**

The relief set forth on the following page, numbered three (3), is **ORDERED**.

This matter coming before the Court on the *Debtors' Ninth Request for Extension of Temporary Restraining Order* [Adv. Proc. Docket No. __] (the "**Request**");[2] and the Court having found and determined that (i) the Court has jurisdiction to consider the Request pursuant to 28 U.S.C. §§ 157 and 1334(b), (ii) this matter is a core proceeding under 28 U.S.C. § 157(b), (iii) venue is proper in this district pursuant to 28 U.S.C. § 1409, and (iv) entry of an Order extending the TRO[3] as to the Actions listed on the Amended Schedule in accordance with the previously approved Extension Procedures is (a) fair and reasonable, (b) consistent with the Bankruptcy Code, the Bankruptcy Rules, the applicable Federal Rules, and the Local Rules, (c) appropriate under the circumstances, and (d) in the best interests of the Debtors and their estates and creditors; and the Court having considered any objections to the Request and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. The terms and conditions of the TRO shall be extended for an additional 28 days from the date hereof and shall encompass the Actions listed on the Amended Schedule attached hereto as **Exhibit 1**.

2. The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

3. The Court retains jurisdiction with respect to all matters arising from or relating to the interpretation, implementation, or enforcement of this Order.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Request.

[3] The findings of fact and conclusions of law set forth in the TRO are incorporated into this Order as if fully set forth herein.

**<u>EXHIBIT 1</u>**

**[Amended Schedule]**

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 1. | *Michael Pryor & Karen Pryor v. Avon Products, Inc., et al.* | MID-L-000022-21 | New Jersey | Simon Greenstone | 11/27/2023 | Trial |
| 2. | *Katherine M. Komer, as Special Administrator for the Estate of DONALD E. SWEENEY, deceased, and ROBERTA S. SWEENEY v. Belden Wire & Cable Company LLC, et al.* | 22 LA 724; HRVA No. 1011684 | Illinois | Maune | 12/4/2023 | Trial |
| 3. | *JACKI MCALLISTER, Individually and as Special Administrator of the Estate of JAMES O. MCALLISTER, deceased v A.O. SMITH CORPORATION, et al.* | 21 L 870; HRVA No. 1010395 | Illinois | Maune | 12/4/2023 | Trial |
| 4. | *LORA M. HOWARD, as Administrator CTA for the Estate of MICHAEL S. FIELDS, deceased v. American International Industries, et al.* | 20 L 447; HRVA No. 1008294 | Illinois | Maune | 12/4/2023 | Trial |
| 5. | *Gayle Braun, Executor for Estate of James M. Braun Jr., deceased, v. Air & Liquid Systems Corporation, et al.* | 22 LA 1010; HRVA No. 1011947 | Illinois | Maune | 12/4/2023 | Trial |
| 6. | *GWENDOLYN J. MUKOMELA, Individually and as Special Administrator for the Estate of KENNETH D. MUKOMELA, deceased v. AGCO CORPORATION, et al.* | 22 LA 962; HRVA No. 1011932 | Illinois | Maune | 12/4/2023 | Trial |
| 7. | *Irma M. Infante v. Barretts Minerals, Inc., et al.* | 190137/2022 | New York | Lanier | 12/5/2023 | Jury selection with trial to proceed in due course |
| 8. | *G. Jyles Eaves as Special Administrator for Frances Eaves, Deceased v. Kolmar Laboratories, Inc., et al.* | 190112/2021 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| 9. | *Bonita Wintersteen and Robert Wintersteen v. Alticore, Inc., et al* | 190034/2022 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| 10. | *Linda Oubre, individually and as Administratrix and Administratrix ad Prosequendum of the Estate of Betty Holtschneider, Deceased, and Stanley Holtschneider v. Brenntag North America, et al.* | MID-L-003009-16 | New Jersey | Simon Greenstone | 12/11/2023 | Trial |
| 11. | *Bernice Hallam v. Arkema, Inc.* | 23STCV11756 | California | Simon Greenstone | 12/18/2023 | Trial |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 12. | *Sharon Hofmaister v. Johnson & Johnson* | 23CV033743 | California | Kazan | 1/29/2024 | Trial |
| 13. | *Shelly Yerkes v. Avon Products* | 23CV032102 | California | Kazan | 1/29/2024 | Trial |
| 14. | *DORCAS G. CONWAY, Individually and as Special Administrator of the Estate of THOMAS P. CONWAY, Deceased v. Air & Liquid Systems Corporation, et al.* | 21 L 1012; HRVA No. 1010535 | Illinois | Maune | 2/5/2024 | Trial |
| 15. | *Michael David Link, et al. v. 3M Company, et al.* | 2022-CP-40-05543 | South Carolina | Dean Omar | 2/12/2024 | Trial |
| 16. | *Heather Donaghy, as Personal Representative of the Estate of Shirley Smiley Potter, deceased v. 4520 Corp, Inc., et al.* | 2023-CP-40-03108 | South Carolina | Dean Omar | 2/12/2024 | Trial |
| 17. | *Nicholas Barone and Kathryn Barone v. Blue M et al.* | CT FBT-CV-22-6116587-S | Connecticut | Early | 2/27/2024 | Trial |
| 18. | *Karen A. Kreitel, Adminstrator of Estate of Janice Markuson v. Brenntag North America* | MID-L0003589-20 | New Jersey | Simon Greenstone | 3/18/2024 | Trial |
| 19. | *Mauricio Tellez v. Avon Products, et al.* | MID-L-000054-19 | New Jersey | Simon Greenstone | 4/8/2024 | Trial |
| 20. | *AMANDA RIGGINS; KOBE GREEN, an Adult Child; BOBBY CLINTON, A Minor Child, and JUSTICE CAUSEY, A Minor Child, By Their Natural Guardian Ad Litem v. BRENNTAG SPECIALTIES, INC., f/k/a MINERAL PIGMENT SOLUTIONS, INC., as successor-in-interest to WHITTAKER CLARK & DANIELS, ICN., et al.* | MID-L-002337-19 | New Jersey | Simon Greenstone | 4/15/2024 | Trial |
| 21. | *MARY JACKSON, Individually and as Administratrix and Administratrix ad Prosequendum of the Estate of JOHNNIE JACKSON, Deceased, and on behalf of Decedent's survivors, Johnny Jackson, Gwendolyn Jackson, and Dameon Williams vs. BARRETTS MINERALS INC., et als.* | MID-L-006778-20 | New Jersey | Maune | 4/15/2024 | Trial |
| 22. | *LINDA JOHNSON-BRETT and BRADFORD BRETT vs. A.O. SMITH CORPORATION., et als.* | E2022002698 | New York | Meirowitz & Wasserberg | 4/18/2024 | Jury selection with trial to proceed in due course |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 23. | *KYUNG H. LEE and JOE J. LEE vs. BI-MART CORPORATION, et als.* | 23CV40369 | Oregon | Dean Omar | 4/29/2024 | Trial |
| 24. | *Tina Cooney v. Avon Products Inc.* | MID-L-002992-22 | New Jersey | Maune | 4/29/2024 | Trial |
| 25. | *Donna Calawa, Personal Representative for the Estate of Ronald Messenger v. Advance Atores Company, Inc. et al.* | FBT-CV-22-6115647-S | Connecticut | Early | 4/30/2024 | Trial |
| 26. | *Evan C. Plotkin and Martha Barry-Plotkin v. Johnson & Johnson, et al.* | FBT-CV21-6109520-S | Connecticut | Dean Omar | 4/30/2024 | Trial |
| 27. | *JAMES D. HUFF, Individually and as Administrator and Administrator ad Prosequendum of the Estate of LINDA KAY HUFF v. ARKEMA, INC. f/k/a PENNWALT CORPORATION and ELF ATOCHEM NORTH AMERICA, INC.* | MID-L-002818-17 | New Jersey | Simon Greenstone | 5/13/2024 | Trial |
| 28. | *DAVID HULTIN v. 3M COMPANY, et al.* | CV089355 | New York | Meirowitz & Wasserberg, LLP | 5/23/2024 | Jury selection with trial to proceed in due course |
| 29. | *NEIL BATHGATE, individually and as Representative of the Estate of JOSEPHINE BATHGATE v. AVON PRODUCTS, INC. et al.,* | 190125/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 30. | *RACHELLE JANE CLEARY and JOANNE BURGESS, as Personal Representative of the Estate of MONICA DRAYNER, v. AVON PRODUCTS, INC. et al.* | 190124/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 31. | *MARIA JAUREGUI v. AVON PRODUCTS, INC. et al.* | 190189/2022 | New York | Meirowitz & Wasserberg, LLP | 5/29/2024 | Jury selection with trial to proceed in due course |
| 32. | *AOIFE MCATEER, v. AVON PRODUCTS, INC., et al.* | 782000/2017 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 33. | *TESA ALAINE BURCH, as Administrator of the Estate of DENA VEE POWELL, f/k/a DENA V. BURCH v. AVON PRODUCTS, INC., et al.* | 190122/2022 | New York | Meirowitz & Wasserberg, LLP | 5/29/2024 | Jury selection with trial to proceed in due course |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 34. | *LISA THOMAS and JEFFRY SCHROEPFER, Individually and as Administrators of the Estate of CAROLYN SCHROEPFER v. AVON PRODUCTS, INC., et al.* | 190281/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 35. | *BARRY WILLIAM WALSH, Individually and as Administrator of the Estate of Lillian Margaret Walsh v. AVON PRODUCTS, INC., et al.* | 190123/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 36. | *KIM GRAY v. JOHNSON & JOHNSON, et al.* | MID-L-005932-19 | New Jersey | Levy Konigsberg, LLP | 6/20/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 37. | *EVELYN ISRAEL, as Administrator and Administrator ad Prosequendum for the Estate of HELEN WALTERS, Deceased, MARK WORTHINGTON and CHARLES WORTHINGTON v. CLINIQUE LABORATORIES, LLC, et al.* | MID-L-004313-19 | New Jersey | Simon Greenstone | 6/20/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 38. | *CAROLE SEGEDIE and KENNETH SEGEDIE v. COLGATE-PALMOLIVE COMPANY, et al.* | 22CV019385 | California | Kazan | 6/24/2024 | Trial |
| 39. | *MARK JAMES SORUM and BARBARA SORUM v. ALBERTSONS COMPANIES, INC., et al.* | 23CV031203 | California | Kazan | 07/08/2024 | Trial |
| 40. | *EDWARD ROTHLEIN and SHARON ROTHLEIN v. AMERICAN INTERNATIONAL INDUSTRIES, et al.* | 190374/2016 | New York | Levy Konigsberg, LLP | 07/16/2024 | Jury selection with trial to proceed in due course |
| 41. | *Vicki Robbins v. Avon Products, Inc., et al.* | MID-L-001231-22 | New Jersey | Simmons | 7/5/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 42. | *Barry Webster v. BASF Corp., et al.* | MID-L-001410-22 | New Jersey | Weitz | 7/5/2024 | Deadline to file MSJ or waive ability to contest successor liability |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 43. | *Kimberly C. Harris and Michael Harris v. Avon Products, Inc., et al.* | MID-L-004711-21 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 44. | *Nicole Stone and Joshua Stone v. Barretts Minerals, Inc., et al.* | MID-L-001972-22 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 45. | *Renee Cavalluzzi a/k/a Renee A. Cavaluzzi, Individually and as Executrix of the Estate of John Cavalluzzi, deceased v. Barretts Minerals, Inc., et al.* | MID-L-002519-22 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 46. | *Virginia Harrington v. Johnson & Johnson, et al.* | MID-L-006733-20 | New Jersey | Levy | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 47. | *Barbara J. Mizer and George A. Mizer v. Aisin USA Mfg, Inc., et al.* | MID-L0004279-22 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 48. | *Tari Curtis, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Erik Curtis, Deceased, and Angel Curtis, a Minor Child, Amber Curtis, a Minor child, Cesar Curtis, a Minro child, Blake Curtis, a Minor child, and Mason Curtis, a Minor child, by their Natural Guardian ad litem v. Avon Products, Inc., et al.* | MID-L-006225-20 | New Jersey | Simon Greenstone | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 49. | *Briana M. Santos v. Brenntag Specialties, Inc., et al.* | MID-L-005026-22 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 50. | *Logan J. Windram, Individually and as Executor and Executor Ad Prosequendum of the Estate of Jennifer Windram v. Johnson & Johnson, et al.* | MID-L-003103-21 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 51. | *Kimberly O. Aikens v. Arkema Inc., et al.* | 2023-017836-CA-42 | Florida | Ferraro | N/A | Proposed Brenntag Settlement |
| 52. | *Cheryl R. Weeks and Gregory W. Weeks vs. Barretts Minerals Inc., et al.* | CACE-23-004434 | Florida | Maune | 8/5/2024 | Trial |
| 53. | *Amanda Lairson, as Administrator and Administrator ad Prosequendum of the Estate of Larry Lairson v. Advance Auto Parts, Inc., et al.* | MID-L-006673-18 | New Jersey | Simon Greenstone | 8/5/2024 | Trial |
| 54. | *Susan W. Berris and Bruce C. Berris vs. Brenntag North America, Inc., et al.* | 62-CV-23-257 | Minnesota | Maune | 8/12/2024 | Trial |
| 55. | *Henry D. Barratt, Jr. Individually and as Executor and Executor ad Prosequendum of the Estate of Madelin Barratt, Deceased v. Brenntag North America, Inc.* | MID-L-008016-19 | New Jersey | Simon Greenstone | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 56. | *Michelle Cooper v. Johnson & Johnson, et al.* | MID-L-001326-21 | New Jersey | Levy | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 57. | *Jane Davis, as Executrix and Executrix ad Prosequendum for the Estate of John Synowicki, Deceased v. Beacon CMP Corp., et al.* | MID-L-005034-22 | New Jersey | Simon Greenstone | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 58. | *KRAIG KAATZ and ARLENE KAATZ, his wife, vs. 84 LUMBER COMPANY, et al.* | 2023-L-008335 | Illinois | Simmons Hanly Conroy | 8/13/2024 | Trial |
| 59. | *John Kerley, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Beverly Kerley, Deceased, and John B. Kerley v. Brenntag North America, Inc., et al.* | MID-L-006612-20 | New Jersey | Simon Greenstone | 8/16/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 60. | *Jack LaSalle and Dianne LaSalle v. American International Industries, Inc.* | 23-2-08165-0 SEA | Washington | Kazan | N/A | Proposed Brenntag Settlement |
| 61. | *Emge v. 3M Company, et al.* | 24-2-05155-0 | Washington | Lanier | N/A | Proposed Brenntag Settlement |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 62. | *Graham v. Brenntag North America, Inc., et al.* | 23CV34505 | Oregon | Dean Omar | N/A | Proposed Brenntag Settlement |
| 63. | *Ballesteros v. Albertson's Companies, Inc., et al.* | 23STCV06710 | California | Frost | N/A | Proposed Brenntag Settlement |
| 64. | *Meade v. Barretts Minerals Inc., et al.* | 23STCV23517 | California | Simmons | N/A | Proposed Brenntag Settlement |
| 65. | *Patricia Sneider v. Avon Products, Inc., et al.* | 23STCV25951 | California | Simon Greenstone | 8/26/2024 | Trial and Proposed Brenntag Settlement |
| 66. | *Lisa L. Frank, Individually and as Personal Representative and as Personal Representative Ad Prosequendum of the Estate of Judith Wilma Blankschaen v. Johnson & Johnson, et al.* | MID-L-008377-18AS | New Jersey | Levy Konigsberg, LLP | 8/30/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 67. | *Bernard P. Bowers Jr. and Jeanne Bowers v. A.W. Chesterton Company, et al.* | 210902481 | Pennsylvania | Weitz & Luxenberg | 9/9/2024 | Trial |
| 68. | *Josefina Alvarez v. Barretts Minerals Inc., et al.* | 2023L005583 | Illinois | Maune | 9/10/2024 | Trial |
| 69. | *Candace Rego as Executrix and Executrix ad Prosequendum for the Estate of Samantha Leigh Gentle and Ashley Rego v. Avon Products, Inc., et al.* | MID-L-7729-20AS | New Jersey | Simon Greenstone | 9/13/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 70. | *Shawn Jones, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Sheila Ryan v. Avon Products, Inc., et al.* | MID-L-04589-19AS | New Jersey | Simon Greenstone | 9/13/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 71. | *Lilo Cooper and Leslie Cooper v. Arkema, Inc., et al.* | 23STCV15823 | California | Simon Greenstone | NA | Proposed Brenntag Settlement |

**EXHIBIT B**

**[Blackline of Amended Schedule]**

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 1. | *Michael Pryor & Karen Pryor v. Avon Products, Inc., et al.* | MID-L-000022-21 | New Jersey | Simon Greenstone | 11/27/2023 | Trial |
| 2. | *Katherine M. Komer, as Special Administrator for the Estate of DONALD E. SWEENEY, deceased, and ROBERTA S. SWEENEY v. Belden Wire & Cable Company LLC, et al.* | 22 LA 724; HRVA No. 1011684 | Illinois | Maune | 12/4/2023 | Trial |
| 3. | *JACKI MCALLISTER, Individually and as Special Administrator of the Estate of JAMES O. MCALLISTER, deceased v A.O. SMITH CORPORATION, et al.* | 21 L 870; HRVA No. 1010395 | Illinois | Maune | 12/4/2023 | Trial |
| 4. | *LORA M. HOWARD, as Administrator CTA for the Estate of MICHAEL S. FIELDS, deceased v. American International Industries, et al.* | 20 L 447; HRVA No. 1008294 | Illinois | Maune | 12/4/2023 | Trial |
| 5. | *Gayle Braun, Executor for Estate of James M. Braun Jr., deceased, v. Air & Liquid Systems Corporation, et al.* | 22 LA 1010; HRVA No. 1011947 | Illinois | Maune | 12/4/2023 | Trial |
| 6. | *GWENDOLYN J. MUKOMELA, Individually and as Special Administrator for the Estate of KENNETH D. MUKOMELA, deceased v. AGCO CORPORATION, et al.* | 22 LA 962; HRVA No. 1011932 | Illinois | Maune | 12/4/2023 | Trial |
| 7. | *Irma M. Infante v. Barretts Minerals, Inc., et al.* | 190137/2022 | New York | Lanier | 12/5/2023 | Jury selection with trial to proceed in due course |
| 8. | *G. Jyles Eaves as Special Administrator for Frances Eaves, Deceased v. Kolmar Laboratories, Inc., et al.* | 190112/2021 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| 9. | *Bonita Wintersteen and Robert Wintersteen v. Alticore, Inc., et al* | 190034/2022 | New York | Simmons | 12/5/2023 | Jury selection with trial to proceed in due course |
| 10. | *Linda Oubre, individually and as Administratrix and Administratrix ad Prosequendum of the Estate of Betty Holtschneider, Deceased, and Stanley Holtschneider v. Brenntag North America, et al.* | MID-L-003009-16 | New Jersey | Simon Greenstone | 12/11/2023 | Trial |
| 11. | *Bernice Hallam v. Arkema, Inc.* | 23STCV11756 | California | Simon Greenstone | 12/18/2023 | Trial |

~~65977/0001-48222737v1~~

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 12. | *Sharon Hofmaister v. Johnson & Johnson* | 23CV033743 | California | Kazan | 1/29/2024 | Trial |
| 13. | *Shelly Yerkes v. Avon Products* | 23CV032102 | California | Kazan | 1/29/2024 | Trial |
| 14. | *DORCAS G. CONWAY, Individually and as Special Administrator of the Estate of THOMAS P. CONWAY, Deceased v. Air & Liquid Systems Corporation, et al.* | 21 L 1012; HRVA No. 1010535 | Illinois | Maune | 2/5/2024 | Trial |
| 15. | *Michael David Link, et al. v. 3M Company, et al.* | 2022-CP-40-05543 | South Carolina | Dean Omar | 2/12/2024 | Trial |
| 16. | *Heather Donaghy, as Personal Representative of the Estate of Shirley Smiley Potter, deceased v. 4520 Corp, Inc., et al.* | 2023-CP-40-03108 | South Carolina | Dean Omar | 2/12/2024 | Trial |
| 17. | *Nicholas Barone and Kathryn Barone v. Blue M et al.* | CT FBT-CV-22-6116587-S | Connecticut | Early | 2/27/2024 | Trial |
| 18. | *Karen A. Kreitel, Adminstrator of Estate of Janice Markuson v. Brenntag North America* | MID-L0003589-20 | New Jersey | Simon Greenstone | 3/18/2024 | Trial |
| 19. | *Mauricio Tellez v. Avon Products, et al.* | MID-L-000054-19 | New Jersey | Simon Greenstone | 4/8/2024 | Trial |
| 20. | *AMANDA RIGGINS; KOBE GREEN, an Adult Child; BOBBY CLINTON, A Minor Child, and JUSTICE CAUSEY, A Minor Child, By Their Natural Guardian Ad Litem v. BRENNTAG SPECIALTIES, INC., f/k/a MINERAL PIGMENT SOLUTIONS, INC., as successor-in-interest to WHITTAKER CLARK & DANIELS, ICN., et al.* | MID-L-002337-19 | New Jersey | Simon Greenstone | 4/15/2024 | Trial |
| 21. | *MARY JACKSON, Individually and as Administratrix and Administratrix ad Prosequendum of the Estate of JOHNNIE JACKSON, Deceased, and on behalf of Decedent's survivors, Johnny Jackson, Gwendolyn Jackson, and Dameon Williams vs. BARRETTS MINERALS INC., et als.* | MID-L-006778-20 | New Jersey | Maune | 4/15/2024 | Trial |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 22. | *LINDA JOHNSON-BRETT and BRADFORD BRETT vs. A.O. SMITH CORPORATION., et als.* | E2022002698 | New York | Meirowitz & Wasserberg | 4/18/2024 | Jury selection with trial to proceed in due course |
| 23. | *KYUNG H. LEE and JOE J. LEE vs. BI-MART CORPORATION, et als.* | 23CV40369 | Oregon | Dean Omar | 4/29/2024 | Trial |
| 24. | *Tina Cooney v. Avon Products Inc.* | MID-L-002992-22 | New Jersey | Maune | 4/29/2024 | Trial |
| 25. | *Donna Calawa, Personal Representative for the Estate of Ronald Messenger v. Advance Atores Company, Inc. et al.* | FBT-CV-22-6115647-S | Connecticut | Early | 4/30/2024 | Trial |
| 26. | *Evan C. Plotkin and Martha Barry-Plotkin v. Johnson & Johnson, et al.* | FBT-CV21-6109520-S | Connecticut | Dean Omar | 4/30/2024 | Trial |
| 27. | *JAMES D. HUFF, Individually and as Administrator and Administrator ad Prosequendum of the Estate of LINDA KAY HUFF v. ARKEMA, INC. f/k/a PENNWALT CORPORATION and ELF ATOCHEM NORTH AMERICA, INC.* | MID-L-002818-17 | New Jersey | Simon Greenstone | 5/13/2024 | Trial |
| 28. | *DAVID HULTIN v. 3M COMPANY, et al.* | CV089355 | New York | Meirowitz & Wasserberg, LLP | 5/23/2024 | Jury selection with trial to proceed in due course |
| 29. | *NEIL BATHGATE, individually and as Representative of the Estate of JOSEPHINE BATHGATE v. AVON PRODUCTS, INC. et al.,* | 190125/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 30. | *RACHELLE JANE CLEARY and JOANNE BURGESS, as Personal Representative of the Estate of MONICA DRAYNER, v. AVON PRODUCTS, INC. et al.* | 190124/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 31. | *MARIA JAUREGUI v. AVON PRODUCTS, INC. et al.* | 190189/2022 | New York | Meirowitz & Wasserberg, LLP | 5/29/2024 | Jury selection with trial to proceed in due course |
| 32. | *AOIFE MCATEER, v. AVON PRODUCTS, INC., et al.* | 782000/2017 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 33. | *TESA ALAINE BURCH, as Administrator of the Estate of DENA VEE POWELL, f/k/a DENA V. BURCH v. AVON PRODUCTS, INC., et al.* | 190122/2022 | New York | Meirowitz & Wasserberg, LLP | 5/29/2024 | Jury selection with trial to proceed in due course |
| 34. | *LISA THOMAS and JEFFRY SCHROEPFER, Individually and as Administrators of the Estate of CAROLYN SCHROEPFER v. AVON PRODUCTS, INC., et al.* | 190281/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 35. | *BARRY WILLIAM WALSH, Individually and as Administrator of the Estate of Lillian Margaret Walsh v. AVON PRODUCTS, INC., et al.* | 190123/2022 | New York | Simon Greenstone | 5/29/2024 | Jury selection with trial to proceed in due course |
| 36. | *KIM GRAY v. JOHNSON & JOHNSON, et al.* | MID-L-005932-19 | New Jersey | Levy Konigsberg, LLP | 6/20/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 37. | *EVELYN ISRAEL, as Administrator and Administrator ad Prosequendum for the Estate of HELEN WALTERS, Deceased, MARK WORTHINGTON and CHARLES WORTHINGTON v. CLINIQUE LABORATORIES, LLC, et al.* | MID-L-004313-19 | New Jersey | Simon Greenstone | 6/20/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 38. | *CAROLE SEGEDIE and KENNETH SEGEDIE v. COLGATE-PALMOLIVE COMPANY, et al.* | 22CV019385 | California | Kazan | 6/24/2024 | Trial |
| 39. | *MARK JAMES SORUM and BARBARA SORUM v. ALBERTSONS COMPANIES, INC., et al.* | 23CV031203 | California | Kazan | 07/08/2024 | Trial |
| 40. | *EDWARD ROTHLEIN and SHARON ROTHLEIN v. AMERICAN INTERNATIONAL INDUSTRIES, et al.* | 190374/2016 | New York | Levy Konigsberg, LLP | 07/16/2024 | Jury selection with trial to proceed in due course |
| 41. | *Vicki Robbins v. Avon Products, Inc., et al.* | MID-L-001231-22 | New Jersey | Simmons | 7/5/2024 | Deadline to file MSJ or waive ability to contest successor liability |



~~65977/0001-48222737v1~~

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 42. | *Barry Webster v. BASF Corp., et al.* | MID-L-001410-22 | New Jersey | Weitz | 7/5/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 43. | *Kimberly C. Harris and Michael Harris v. Avon Products, Inc., et al.* | MID-L-004711-21 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 44. | *Nicole Stone and Joshua Stone v. Barretts Minerals, Inc., et al.* | MID-L-001972-22 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 45. | *Renee Cavalluzzi a/k/a Renee A. Cavaluzzi, Individually and as Executrix of the Estate of John Cavalluzzi, deceased v. Barretts Minerals, Inc., et al.* | MID-L-002519-22 | New Jersey | Weitz | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 46. | *Virginia Harrington v. Johnson & Johnson, et al.* | MID-L-006733-20 | New Jersey | Levy | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 47. | *Barbara J. Mizer and George A. Mizer v. Aisin USA Mfg, Inc., et al.* | MID-L0004279-22 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 48. | *Tari Curtis, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Erik Curtis, Deceased, and Angel Curtis, a Minor Child, Amber Curtis, a Minor child, Cesar Curtis, a Minro child, Blake Curtis, a Minor child, and Mason Curtis, a Minor child, by their Natural Guardian ad litem v. Avon Products, Inc., et al.* | MID-L-006225-20 | New Jersey | Simon Greenstone | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 49. | *Briana M. Santos v. Brenntag Specialties, Inc., et al.* | MID-L-005026-22 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |



~~65977/0001-48222737v1~~

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 50. | *Logan J. Windram, Individually and as Executor and Executor Ad Prosequendum of the Estate of Jennifer Windram v. Johnson & Johnson, et al.* | MID-L-003103-21 | New Jersey | Maune | 7/19/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 51. | *Kimberly O. Aikens v. Arkema Inc., et al.* | 2023-017836-CA-42 | Florida | Ferraro | N/A | Proposed Brenntag Settlement |
| 52. | *Cheryl R. Weeks and Gregory W. Weeks vs. Barretts Minerals Inc., et al.* | CACE-23-004434 | Florida | Maune | 8/5/2024 | Trial |
| 53. | *Amanda Lairson, as Administrator and Administrator ad Prosequendum of the Estate of Larry Lairson v. Advance Auto Parts, Inc., et al.* | MID-L-006673-18 | New Jersey | Simon Greenstone | 8/5/2024 | Trial |
| 54. | *Susan W. Berris and Bruce C. Berris vs. Brenntag North America, Inc., et al.* | 62-CV-23-257 | Minnesota | Maune | 8/12/2024 | Trial |
| 55. | *Henry D. Barratt, Jr. Individually and as Executor and Executor ad Prosequendum of the Estate of Madelin Barratt, Deceased v. Brenntag North America, Inc.* | MID-L-008016-19 | New Jersey | Simon Greenstone | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 56. | *Michelle Cooper v. Johnson & Johnson, et al.* | MID-L-001326-21 | New Jersey | Levy | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 57. | *Jane Davis, as Executrix and Executrix ad Prosequendum for the Estate of John Synowicki, Deceased v. Beacon CMP Corp., et al.* | MID-L-005034-22 | New Jersey | Simon Greenstone | 8/2/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 58. | *KRAIG KAATZ and ARLENE KAATZ, his wife, vs. 84 LUMBER COMPANY, et al.* | 2023-L-008335 | Illinois | Simmons Hanly Conroy | 8/13/2024 | Trial |
| 59. | *John Kerley, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Beverly Kerley, Deceased, and John B. Kerley v. Brenntag North America, Inc., et al.* | MID-L-006612-20 | New Jersey | Simon Greenstone | 8/16/2024 | Deadline to file MSJ or waive ability to contest successor liability |



~~65977/0001-48222737v1~~

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 60. | *Jack LaSalle and Dianne LaSalle v. American International Industries, Inc.* | 23-2-08165-0 SEA | Washington | Kazan | N/A | Proposed Brenntag Settlement |
| 61. | *Emge v. 3M Company, et al.* | 24-2-05155-0 | Washington | Lanier | N/A | Proposed Brenntag Settlement |
| 62. | *Graham v. Brenntag North America, Inc., et al.* | 23CV34505 | Oregon | Dean Omar | N/A | Proposed Brenntag Settlement |
| 63. | *Ballesteros v. Albertson's Companies, Inc., et al.* | 23STCV06710 | California | Frost | N/A | Proposed Brenntag Settlement |
| 64. | *Meade v. Barretts Minerals Inc., et al.* | 23STCV23517 | California | Simmons | N/A | Proposed Brenntag Settlement |
| 65. | *Patricia Sneider v. Avon Products, Inc., et al.* | 23STCV25951 | California | Simon Greenstone | 8/26/2024 | Trial and Proposed Brenntag Settlement |
| 66. | *Lisa L. Frank, Individually and as Personal Representative and as Personal Representative Ad Prosequendum of the Estate of Judith Wilma Blankschaen v. Johnson & Johnson, et al.* | MID-L-008377-18AS | New Jersey | Levy Konigsberg, LLP | 8/30/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 67. | *Bernard P. Bowers Jr. and Jeanne Bowers v. A.W. Chesterton Company, et al.* | 210902481 | Pennsylvania | Weitz & Luxenberg | 9/9/2024 | Trial |
| 68. | *Josefina Alvarez v. Barretts Minerals Inc., et al.* | 2023L005583 | Illinois | Maune | 9/10/2024 | Trial |
| 69. | *Candace Rego as Executrix and Executrix ad Prosequendum for the Estate of Samantha Leigh Gentle and Ashley Rego v. Avon Products, Inc., et al.* | MID-L-7729-20 AS | New Jersey | Simon Greenstone | 9/13/2024 | Deadline to file MSJ or waive ability to contest successor liability |
| 70. | *Shawn Jones, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Sheila Ryan v. Avon Products, Inc., et al.* | MID-L-04589-19AS | New Jersey | Simon Greenstone | 9/13/2024 | Deadline to file MSJ or waive ability to contest successor liability |

| | Case Name | Case No. | Jurisdiction | Plaintiff's Counsel | Date | Event |
|---|---|---|---|---|---|---|
| 71. | *Lilo Cooper and Leslie Cooper v. Arkema, Inc., et al.* | 23STCV15823 | California | Simon Greenstone | NA | Proposed Brenntag Settlement |



~~65977/0001-48222737v1~~

**EXHIBIT C**

**[Keale Declaration]**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Proc. No. 23-01245 (MBK) |

**DECLARATION OF JAMES H. KEALE IN SUPPORT OF DEBTORS' <u>NINTH REQUEST FOR EXTENSION OF TEMPORARY RESTRAINING ORDER</u>**

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

I, James H. Keale, hereby declare under penalty of perjury:

**Introduction**

1. I am a partner of the law firm of Tanenbaum Keale LLP, national coordinating counsel for Brenntag[2] in the Additional Actions listed on the Amended Schedule attached to the Proposed Extension Order.

2. I submit this declaration (this "**Declaration**") in support of the *Debtors' Ninth Request for Extension of Temporary Restraining Order* (the "**Request**")[3] filed contemporaneously herewith by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), which are the plaintiffs in the Adversary Proceeding.

3. I am generally familiar with each of the Additional Actions listed on the Amended Schedule attached to the Proposed Extension Order. The statements in this Declaration are based upon my personal knowledge, information, and belief. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. Prior to submitting this Declaration, I personally reviewed the operative complaint underlying each of the Additional Actions[4] listed on the Amended Schedule attached to the Proposed Extension Order, as well as the relevant docket entries, scheduling orders, or other documentation for such Action, and coordinated with such additional, applicable local or regional counsel for Brenntag regarding the status of each Action. A copy of the operative complaint for

---

[2] Brenntag AG, Brenntag Canada Inc., Brenntag Great Lakes, LLC, Brenntag Mid-South, Inc., Brenntag North America, Inc., Brenntag Northeast, Inc., Brenntag Pacific, Inc., Brenntag Southeast, Inc., Brenntag Southwest, Inc., Brenntag Specialties, Inc., Brenntag Specialties LLC, Coastal Chemical Co., LLC, and Mineral and Pigment Solutions, Inc. are referred to collectively herein as "**Brenntag**."

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Request.

[4] Each Additional Action currently has (or may have) an approaching trial or summary judgment deadline. In the event any such dates change prior to the entry of the Ninth Order Extending the Temporary Restraining Order such that an Additional Action no longer has a trial or summary judgment deadline in the upcoming extension period, it is my understanding that the Debtors will update the Amended Schedule accordingly.

each Additional Action included on the Amended Schedule since the TRO was entered is attached hereto as **Exhibits 1-A – 1-F**. As reflected in each of the complaints attached hereto as **Exhibits 1-A – 1-F**, each of the Additional Actions asserts a Successor Liability Claim against Brenntag that has not been dismissed with prejudice, and that implicates Brenntag's indemnification rights against the Debtors.

5. Further, attached hereto as **Exhibits 2-A – 2-F** are copies of the relevant docket reports, scheduling orders, or other documents and/or filings evidencing that a trial or summary judgment deadline implicating such Successor Liability Claims is scheduled to occur within 28 days of the Termination Date.

6. Based on the foregoing, evidence may be presented at trial or in summary judgment motion practice in an effort to establish a connection between the alleged injuries of the plaintiff in each of the Additional Actions to the Debtors, and any findings or judgment against Brenntag in such Additional Action could expose the Debtors to the risk of potential indemnification claims.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 31, 2024

*/s/ James H. Keale*
Tanenbaum Keale LLP
National Coordinating Counsel for Brenntag



US-DOCS\152825615

# EXHIBIT 1-A

Stuart J. Purdy, CA Bar No. 239878
Erica L. Falkner, CA Bar No. 286007
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone (562) 590-3400
Facsimile (562) 590-3412

John M. Caron, Esq., CA Bar No. 130633
**THE LAW OFFICE OF WORTHINGTON & CARON, P. C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/24/2023 1:32 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Carini, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| **PATRICIA SNEIDER,**<br><br>Plaintiff<br><br>vs.<br><br>**AVON PRODUCTS, INC.;**<br>**BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG;<br>**BEAUTY 21 COSMETICS, INC.;**<br>**BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.;<br>**CHANEL, INC.;**<br>**CHARLES B. CHRYSTAL COMPANY, INC.;**<br>**CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.;<br>**DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC;<br>**THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its | Case No. 23STCV25951<br><br>THIS ACTION CONSTITUTES COMPLEX ASBESTOS LITIGATION – SUBJECT TO THE GENERAL ORDERS CONTAINED IN FILE NO. C 700000 – DEPT. 59<br><br>**COMPLAINT FOR PERSONAL INJURY – ASBESTOS (NEGLIGENCE, STRICT LIABILITY, AND FRAUD)** |

subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE;
**ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC.;
**IMI FABI (DIANA) LLC**;
**IMI FABI, LLC**;
**IMI FABI (USA) INC.**;
**KENVUE INC.**;
**L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT;
**MAYBELLINE LLC**;
**MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES;
**MINERALS TECHNOLOGIES INC.**;
**NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY;
**PFIZER INC.**;
**PHYSICIANS FORMULA, INC.**;
**PRESPERSE CORPORATION**, sued individually and d/b/a PRESPERSE INTERNATIONAL CORP;
**THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY;
**SEPHORA USA, INC.**;
**SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.;
**SUMITOMO CORPORATION OF AMERICAS**;
**THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.;
**YVES SAINT LAURENT AMERICA, INC.**,
and
**DOES 1-450**,

Defendants.

## GENERAL ALLEGATIONS

COMES NOW Plaintiff **PATRICIA SNEIDER** (hereinafter "Plaintiff") and complains and alleges as follows:

1. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 450, inclusive, are unknown to

Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiff as hereinafter alleged.

2. At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of their Co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants: **AVON PRODUCTS, INC.**; **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG; **BEAUTY 21 COSMETICS, INC.**; **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.; **CHANEL, INC.**; **CHARLES B. CHRYSTAL COMPANY, INC.**; **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.; **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC; **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE; **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC.; **IMI FABI (DIANA) LLC**; **IMI FABI, LLC**; **IMI FABI (USA) INC.**; **KENVUE INC.**; **L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT; **MAYBELLINE LLC**; **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES; **MINERALS TECHNOLOGIES INC.**; **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY; **PFIZER INC.**; **PHYSICIANS FORMULA, INC.**; **PRESPERSE CORPORATION**, sued individually

and d/b/a PRESPERSE INTERNATIONAL CORP; **THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY; **SEPHORA USA, INC.**; **SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.; **SUMITOMO CORPORATION OF AMERICAS**; **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.; **YVES SAINT LAURENT AMERICA, INC.**; and **DOES 1-450** inclusive, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of LOS ANGELES, State of California.

3. Plaintiff PATRICIA SNEIDER alleges that she developed malignant mesothelioma as a result of her exposure to asbestos from Defendants' raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics including: **AVON PRODUCTS, INC.** (*for asbestos-containing Avon talcum powder products and Avon cosmetics*); **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG (*for asbestos-containing Dr. Scholl's Foot Powder*); **BEAUTY 21 COSMETICS, INC.** (*for asbestos-containing L.A. Girl cosmetics*); **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC. (*as a supplier of asbestos-containing talc*); **CHANEL, INC.** (*for asbestos-containing Chanel cosmetics and Chanel talcum powder products*); **CHARLES B. CHRYSTAL COMPANY, INC.** (*as a supplier of asbestos-containing talc*); **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC. (*for asbestos-containing Clinique cosmetics and Clinique talcum*

*powder products*); **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC (*for asbestos-containing Dr. Scholl's Foot Powder*); **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC. (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **IMI FABI (DIANA) LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI, LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI (USA) INC.** (*as a supplier of asbestos-containing talc*); **KENVUE INC.** (*for asbestos-containing Neutrogena cosmetics*); **L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT (*for asbestos-containing Dermablend cosmetics, Maybelline cosmetics, NYX Professional Makeup cosmetics, and Yves Saint Laurent Opium talcum powder*); **MAYBELLINE LLC** (*for asbestos-containing Maybelline cosmetics*); **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES (*for asbestos-containing Dr. Scholl's Foot Powder*); **MINERALS TECHNOLOGIES INC.** (*as an entity who managed, directed, ordered, supervised, and controlled the mining, production, and supply of the asbestos-containing talc of its subsidiary*); **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY (*for asbestos-containing CoverGirl cosmetics*); **PFIZER INC.** (*as a supplier of asbestos-containing talc*); **PHYSICIANS FORMULA, INC.** (*for asbestos-containing Physicians Formula cosmetics*); **PRESPERSE CORPORATION**, sued individually and d/b/a PRESPERSE INTERNATIONAL CORP (*as a supplier of asbestos-containing talc*); **THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY (*for asbestos-containing CoverGirl cosmetics*); **SEPHORA USA, INC.** (*as a supplier of asbestos-containing talcum powder and cosmetic products*); **SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC. (*as a supplier of asbestos-containing talc*); **SUMITOMO**

**CORPORATION OF AMERICAS** (*as a supplier of asbestos-containing talc*); **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC. (*as a supplier of asbestos-containing talcum powder and cosmetic products*), and **YVES SAINT LAURENT AMERICA, INC.** (*for asbestos-containing Yves Saint Laurent Opium talcum powder*).

## FIRST CAUSE OF ACTION

(Negligence)

PLAINTIFF COMPLAINS OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:

4. Plaintiff incorporates herein by reference, as though fully set forth therein, the general allegations set forth above.

5. At all times herein mentioned, each of the named Defendants and DOES 1 through 450 were the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics including, but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketed, warranted, re-branded, manufactured for others and advertised raw asbestos fiber of various kinds and

grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics. The following Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiff's remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| BAYER HEALTHCARE LLC | BAYER AG |
| BRENNTAG SPECIALTIES LLC | BRENNTAG SPECIALTIES, INC.<br>MINERAL PIGMENT SOLUTIONS, INC.<br>WHITTAKER CLARK & DANIELS, INC. |
| CLINIQUE LABORATORIES LLC | CLINIQUE LABORATORIES, INC.<br>THE ESTEE LAUDER COMPANIES INC. |
| DR. SCHOLL'S LLC | BAYER SAMSON II LLC |
| THE ESTEE LAUDER COMPANIES, INC. | LEN-RON MANUFACTURING CO. INC.<br>CLINIQUE LABORATORIES INC.<br>CLINIQUE |
| ESTEE LAUDER, INC. | THE ESTEE LAUDER COMPANIES, INC. |
| L'OREAL USA, INC. | DERMABLEND<br>MAYBELLINE LLC<br>NYX PROFESSIONAL MAKEUP |

| | |
|---|---|
| | YVES SAINT LAURENT |
| MERCK & CO., INC. | MERCK SHARP & DOHME LABORATORIES |
| NOXELL CORPORATION | COTY INC.<br>NOXZEMA CHEMICAL COMPANY |
| PRESPERSE CORPORATION | PRESPERSE INTERNATIONAL CORP |
| THE PROCTER & GAMBLE COMPANY | NOXZEMA CHEMICAL COMPANY |
| SPECIALTY MINERALS INC. | MINERALS TECHNOLOGIES INC. |
| THE VONS COMPANIES INC. | ALBERTSONS COMPANIES, INC. |

6. At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics (hereinafter collectively referred to as "Defendants' Products").

7. At all times herein mentioned, Defendants, their "alternate entities", and each of them singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to recall and/or retrofit, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products including, but not limited to, those Products identified in paragraph 3 above, in that the Defendants' Products

were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, bystanders, household members, and others, including Plaintiff PATRICIA SNEIDER herein (hereinafter collectively called "exposed persons"). Defendants' Products were used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate entities," and each of them, thereby rendering Defendants' Products unsafe and dangerous for use by "exposed persons." Plaintiff herein alleges that Plaintiff PATRICIA SNEIDER's exposures to Defendants' Products including, but not limited to, those products identified in paragraph 3 above, were a substantial contributing factor in the development of her mesothelioma and therefore proximately caused Plaintiff's illnesses, injuries, disabilities, and damages.

8. Defendants, their "alternate entities", and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each Defendant breached said duty of reasonable care in that Defendants, and each of them failed to safely and adequately design, manufacture and/or sell Defendants' Products; failed to test Defendants' Products; failed to investigate the hazards of Defendants' Products; failed to warn "exposed persons," including Plaintiff PATRICIA SNEIDER of the health hazards of using Defendants' Products; failed to disclose the known or knowable dangers of using Defendants' Products; failed to warn of the harmful exposures caused by the use of Defendants' Products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

9. Defendants' Products were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff's position personally using, applying, and in close proximity to Defendants' Products, and since on or before 1930, the hazards and dangerous propensities of Defendants' Products were both known and knowable to the Defendants, their "alternate entities", and each of them, through the use of medical and/or scientific data and other knowledge available to Defendants, their "alternate entities", and each of them, at the time of Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection,

service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for others, packaging and advertising of Defendants' Products, which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to users, handlers, bystanders, and household members, including Plaintiff PATRICIA SNEIDER, of Defendants' Products through the intended and reasonably foreseeable use of Defendants' Products.

10. Defendants, their "alternate entities", and each of them knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

11. Defendants, their "alternate entities", and each of them knew, or reasonably should have known, that Defendants' Products would be personally used, removed, mixed, scraped, swept, broken, "ripped out," and/or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed persons", including Plaintiff PATRICIA SNEIDER herein, would be exposed to hazardous and dangerous asbestos fibers. Defendants, their "alternate entities," and each of them knew or reasonably should have known that users and bystanders such as Plaintiff PATRICIA SNEIDER, and others in her position personally using, applying, or otherwise exposed to dust from Defendants' Products would not realize or know the dangers. Defendants, their "alternate entities", and each of them negligently failed to adequately warn or instruct of the dangers of Defendants' Products and failed to recall and/or retrofit Defendants' Products. A reasonable designer, manufacturer, distributor, seller, installer, buyer, or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities", and each of them, to warn was a substantial factor in causing harm to Plaintiff PATRICIA SNEIDER, the nature of which is set forth in Exhibit "B" which is attached hereto and incorporated by reference herein.

12. Plaintiff PATRICIA SNEIDER personally used, handled, applied, and/or was in close proximity to or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to Defendants, and each of them. Plaintiff's exposure to Defendants' Products occurred at various locations set forth in Exhibit "A" which is attached hereto and incorporated by reference herein.

13. As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Plaintiff PATRICIA SNEIDER's exposures to asbestos from personally using Defendant's Products and/or around others using Defendant's Products, caused severe and permanent injury to the Plaintiff, the nature of which along with the date of Plaintiff's diagnosis and the date she learned such injuries were attributable to exposure to Defendants' Products are set forth in Exhibit "B." which is attached hereto and incorporated by reference herein. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said diseases result from exposure to Defendants' Products over a period of time.

14. Plaintiff PATRICIA SNEIDER suffers from malignant pleural mesothelioma caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants' Products including those products identified in paragraph 3 above. Plaintiff was not aware at the time of exposure that Defendants' Products presented any risk of injury and/or disease.

15. As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiff PATRICIA SNEIDER has suffered and will continue to suffer pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to her general damage in a sum in excess of the jurisdictional limits of a limited civil case.

16. As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER has incurred, is

presently incurring, and will incur in the future liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiff, subject to proof at trial.

17. As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER has incurred and will incur loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff, subject to proof at trial.

18. Plaintiff PATRICIA SNEIDER further alleges that Defendants, their "alternate entities" and each of them also engaged in the following wrongful acts which support Plaintiff's prayer for punitive damages:

(a) Defendants, their "alternate entities", and each of them suppressed from all users, handlers, bystanders, and household members, including Plaintiff PATRICIA SNEIDER, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although Defendants, and each of them knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information of Defendants' Products from users, handlers, bystanders, and household members in conscious disregard of the rights, safety and welfare of "exposed persons." including Plaintiff PATRICIA SNEIDER;

(b) Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations including, but not limited to, the Cosmetic Toiletry and Fragrance Association (now Personal Care Products Council), Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which for and on behalf of Defendants, their "alternate entities", and each of them actively promoted the suppression of information about the dangers of asbestos to users, handlers, bystanders, and household members of Defendants' Products, thereby misleading Plaintiff PATRICIA SNEIDER as to the safety of Defendants' Products. Through their participation and association with such industry organizations, Defendants, and each of them

knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users, handlers, bystanders, and household members of Defendants' Products a false security about the safety of Defendants' Products. The Dust Control Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arose from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(c) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them failed to provide this information to users, handlers, bystanders, and household members;

(d) Defendants, their "alternate entities", and each of them, failed to warn Plaintiff PATRICIA SNEIDER and others of the nature of Defendants' Products which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that Defendants' Products were dangerous and a threat to the health of persons coming into contact therewith;

(e) Defendants, their "alternate entities", and each of them, failed to provide Plaintiff PATRICIA SNEIDER with information concerning adequate protective masks and other equipment devised to be used when personally using, applying, mixing, and/or sweeping Defendants' Products and/or from the use of Defendants' Products, their "alternate

Case 2:24-cv-08152-BMC-AGR Doc 254-4 Filed 07/31/24 Entered 08/20/24 Page 132 of 393

entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that Defendants' Products were dangerous and would result in injury to Plaintiff PATRICIA SNEIDER and others personally using and applying such material;

(f) Defendants, their "alternate entities", and each of them knew and failed to disclose that Plaintiff PATRICIA SNEIDER and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g) Defendants, their "alternate entities", and each of them failed to provide information of the true nature of the hazards of Defendants' Products and that exposure to Defendants' Products would cause pathological effects without noticeable trauma to the public, including buyers, users, household members, and physicians employed by Plaintiff PATRICIA SNEIDER, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities" and each of them were under a duty to so inform and said failure was misleading.

19. Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities" and each of them are liable for the oppressive and malicious acts of their "alternate entities" and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known of the acts of each of their "alternate entities" as set forth herein.

20. The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff PATRICIA SNEIDER, in that Defendants, and each of them continued to manufacture,

market and/or sell dangerous Defendants' Products known to cause asbestos to be released and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of Defendants' Products in order to continue to profit financially therefrom. Defendants, their "alternate entities", and each of them engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched, and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code Section 3294. Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

21. Defendants, and each of them, engaged in conduct which was intended by Defendants, and each of them to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff PATRICIA SNEIDER.

22. Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff PATRICIA SNEIDER, to cruel and unjust hardship in the form of severe, debilitating, and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

23. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER sustained injuries, illnesses, disabilities, and damages alleges herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

**SECOND CAUSE OF ACTION**

(Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

24. Plaintiff PATRICIA SNEIDER incorporates herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

25. **Strict Liability - Manufacturing Defect**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under manufacturing defect. Defendants and Does manufactured, sold, supplied, designed, or distributed Defendants' Products. The defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities", and each of them. These defects were a substantial factor in causing harm to Plaintiff PATRICIA SNEIDER.

26. **Strict Liability - Design Defect - Consumer Expectations**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under the consumer-expectations test for placing defectively designed products into the stream of commerce and ultimately exposing Plaintiff PATRICIA SNEIDER to asbestos from Defendants' Products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold Defendants' Products. Second, each Product did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because each Product caused hazardous asbestos to become airborne, exposing Plaintiff to asbestos. Third, Plaintiff developed mesothelioma. Fourth, each Product's failure to perform safely was a substantial factor in causing Plaintiff's mesothelioma.

27. **Strict Liability – Design Defect – Risk/Benefit**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under risk/benefit. Defendants, their alternate entities and Does manufactured, sold, supplied, designed, or distributed Defendants' Products. These defects were a substantial factor in causing harm to the Plaintiff.

28. **Strict Liability – Failure to Warn**: Defendants, their "alternate entities", and each of them sold Defendants' Products, which were defective in that they failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary,

intended, and foreseeable use of Defendants' Products, which dangers and risks would not have been and were not recognized by ordinary workers, users and consumers of the Products, including Plaintiff, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff PATRICIA SNEIDER and others in Plaintiff's position who were personally using, applying, and in close proximity to Defendants' Products.

29. Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that when used, handled, swept, or otherwise disturbed, Defendants' Products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed persons, including Plaintiff PATRICIA SNEIDER. These defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities", and each of them. At the time Defendants' Products were used by Plaintiff, and others in Plaintiff's position applying, personally using and in close proximity to or otherwise exposed to dust from Defendants' Products, Defendants' Products were substantially the same as when they left the possession of the Defendants, their "alternate entities", and each of them, and/or any changes made to Defendants' Products after they left the possession of Defendants, their "alternate entities", and each of them were reasonably foreseeable to Defendants, their "alternate entities" and each of them. Defendants' Products were used by Plaintiff, and others in Plaintiff's position, applying, personally using and in close proximity to or otherwise exposed to dust from Defendants' Products in a way that was reasonably foreseeable to Defendants and each of them. The defect in Defendants' Products was a substantial factor in causing harm and personal injuries to Plaintiff PATRICIA SNEIDER, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering Defendants' Products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

30. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff suffered the injuries, illness, disabilities, and damages alleges herein.

**THIRD CAUSE OF ACTION**

**(FRAUD)**

AS AND FOR A FURTHER THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR FRAUD, PLAINTIFF COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

31. **Fraudulent Misrepresentation**: All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for their fraudulent misrepresentations.

(a) First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not. The specific identities of these employees, agents, advertisements, or any other authorized person or document are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document-retention policies. While Plaintiff PATRICIA SNEIDER does not currently know all the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiff will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

(b) Second, Defendants represented that the Products they manufactured, supplied, or specified for use were not hazardous to humans. These representations were made before and during the years that Plaintiff and her family members purchased, and Plaintiff PATRICIA SNEIDER was exposed to asbestos from Defendants' Products. Such representations were made either directly to Plaintiff, or to a third party intending and reasonably expecting that the substance of those representations would be repeated to Plaintiff.

(c) Third, Defendants knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

(d) Fourth, Defendants intended that Plaintiff PATRICIA SNEIDER and/or the same class of persons as Plaintiff, rely on the representations or their substance.

(e) Fifth, Plaintiff PATRICIA SNEIDER reasonably relied on Defendants' representations or the substance of these representations.

(f) Sixth, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(g) Seventh, Plaintiff's reliance on those representations was a substantial factor in causing Plaintiff PATRICIA SNEIDER's mesothelioma and the resulting damages thereto.

32. **Fraudulent Concealment (Nondisclosure):** All Defendants, Does 1-450, their "alternate entities" and each of them, are liable for their fraudulent concealment (nondisclosure).

(a) First, each of these Defendants made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendant and Plaintiff PATRICIA SNEIDER. Specifically, Defendants stated that their products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

(b) Second, Defendants (i) had exclusive knowledge of material facts not known to Plaintiff PATRICIA SNEIDER (as set forth above), (ii) actively concealed those material facts from Plaintiff, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose material facts which qualified those representations. Such nondisclosures included Defendants representing their products as safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the facts that these products contained asbestos that would become airborne during the intended and foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

(c) Third, each Defendant entered into a relationship and/or a transaction with Plaintiff sufficient to give rise to a duty to disclose. For example, Plaintiff PATRICIA SNEIDER used and otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity

upon which Defendants derived a direct monetary benefit directly from Plaintiff's purchase and use of the products. As for another example, Defendants directly advertised their products to those in California and elsewhere as a symbol of freshness, cleanliness and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendants compelled individuals through advertisements to dust themselves with the products to mask odors. Defendants derived direct monetary benefit from consumers' use of the products because Plaintiff decided to purchase and use Defendants' products.

(d) Fourth, Plaintiff PATRICIA SNEIDER did not know of the concealed material facts.

(e) Fifth, Defendants intended to deceive Plaintiff PATRICIA SNEIDER by concealing material facts, and/or by making certain representations without disclosing additional facts that would have materially qualified those representations.

(f) Sixth, had the omitted information been disclosed, Plaintiff PATRICIA SNEIDER reasonably would have behaved differently.

(g) Seventh, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(h) Eighth, each Defendant's concealment was a substantial factor in causing Plaintiff PATRICIA SNEIDER's mesothelioma and the resulting damages thereto.

33. **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiff PATRICIA SNEIDER hereby incorporates by reference the allegations of Paragraph 31 as if fully stated herein. All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for their conspiracy to commit fraudulent misrepresentation.

(a) First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff PATRICIA SNEIDER, and/or the same class of persons as Plaintiff.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed.

(c) Third, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

34. **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: Plaintiff PATRICIA SNEIDER hereby incorporates by reference the allegations of Paragraph 32 as if fully stated herein. All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for their conspiracy to commit fraudulent concealment.

(a) First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Plaintiff PATRICIA SNEIDER, and/or the same class of persons as Plaintiff.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

(c) Third, Plaintiff PATRICIA SNEIDER developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff PATRICIA SNEIDER's mesothelioma and the resulting damages thereto.

35. **Knowledge of Hazards**: At all times pertinent hereto, all Defendants, Does 1-450, their "alternate entities", and each of them, owed Plaintiff PATRICIA SNEIDER a duty, as provided for in Civil Code sections 1708, 1709, and 1710, to abstain from injuring her person, property, or rights. In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff. Such acts and omissions consisted of acts falling within Civil Code sections 1708, 1709, and 1710, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact of that which were not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of material facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such

item gave rise to a cause of action for violation of Plaintiff PATRICIA SNEIDER's rights as provided for in the aforementioned Code sections.

36. Since 1924, all of the Defendants have known and been in possession of the true material facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the asbestos-containing products referred to herein were and are hazardous to the health and safety of Plaintiff PATRICIA SNEIDER, and others similarly situated. Defendants engaged in the following acts and omissions:

(a) Did not label any of the aforementioned asbestos-containing products as to the hazards of said products to the health and safety of Plaintiff PATRICIA SNEIDER, and others in her position using these products when the knowledge of such hazards was existing and known to Defendants, and each of them, since 1924. By not labeling said products as to their said hazards. Defendants, and each of them, caused to be suggested as a fact to Plaintiff that it was safe for them to use said products, when in fact these things were not true and Defendants did not believe them to be true.

(b) Suppressed information relating to the danger of using the aforementioned products by requesting the suppression of information to Plaintiff PATRICIA SNEIDER, Plaintiff's class of persons, and the general public concerning the dangerous nature of the aforementioned products to all persons including users, bystanders and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information.

(c) Sold the aforementioned products to the public, including Plaintiff PATRICIA SNEIDER, and others in California and other states without advising them of the dangers of use of said products to Plaintiff when Defendants knew of such dangers, as set forth herein and above, and had a duty to disclose such dangers. Thus, Defendants caused to be positively asserted to Plaintiff and the public that which was not true and which Defendants had no reasonable ground for believing to be true, in a manner not warranted by the information possessed by said Defendants, and each of them, of that which was and is not true, to wit, that it was safe for Plaintiff to use said products and that they did not pose a risk of harm.

(d) Suppressed and continue to suppress from everyone, including Plaintiff PATRICIA SNEIDER, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council, the results of a study conducted among tremolite, talc and slate

workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicate of magnesium." in the September 1935 issue of National Safety News, in an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson. The article reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleges exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

(e) Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of danger to users of the aforementioned products for and on behalf of Defendants, and each of them, thereby misleading Plaintiff PATRICIA SNEIDER to her prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times regarding (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiff at this time.

(f) Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at the Raybestos-Manhattan plants in Manheim and Charleston, South Carolina. This information was disseminated through the ATI and other industry organizations to all other Defendants and each of them herein. Between 1942 and 1950, Defendants, and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as material fact that which is not true and disseminated other facts likely to and which did mislead Plaintiff

PATRICIA SNEIDER for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not giving Plaintiff the true material facts concerning such knowledge of dangers, when Defendants were bound to disclose them.

(g) Failed to warn Plaintiff PATRICIA SNEIDER, and others similarly situated regarding the nature of Defendants' asbestos-containing products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. .fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits. Unknown significant amounts of such material in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff, and others similarly situated that their asbestos-containing products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that such products were dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose this information.

(h) Concealed from Plaintiff PATRICIA SNEIDER, and others similarly situated the true nature of her exposures, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing her risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff had in fact been exposed to respirable asbestos; that the products to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn her of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

(i) Failed to provide information to the public at large and buyers, users and physicians of Plaintiff PATRICIA SNEIDER for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons, including Plaintiff, as to the dangers and risk of harm to which they were exposed.

(j) Affirmatively misrepresented that asbestos-containing products were safe to use and handle, when Defendants knew such statements were false when made,

or made said false statements recklessly and without regard for whether the statements were true.

37. Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Plaintiff did not have such knowledge and Plaintiff PATRICIA SNEIDER would breathe such asbestos from Defendants' Products innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause her to remain unaware of the true material facts, all in violation of Civil Code sections 1708, 1709, and 1710.

## BASIS FOR PUNITIVE DAMAGES

38. **Malice, Oppression, and/or Fraud**: Plaintiff hereby incorporates by reference the allegations of all causes of action as if fully stated herein. All Defendants, Does 1-450, their "alternate entities", and each of them, are liable for punitive damages because they engaged in the conduct that caused Plaintiff PATRICIA SNEIDER harm with malice, oppression, or fraud.

(a) First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff PATRICIA SNEIDER's asbestos exposures, and/or because their conduct was despicable and/or was done with a willful and knowing disregard of the rights and safety of others.

(b) Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff PATRICIA SNEIDER to cruel and unjust hardship in knowing disregard of her rights.

(c) Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Plaintiff PATRICIA SNEIDER, or with reckless disregard for whether their fraud would harm Plaintiff.

39. These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing

agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

40. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff PATRICIA SNEIDER sustained the injuries, illnesses, disabilities, and damages alleges herein.

41. WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff PATRICIA SNEIDER:

1. For Plaintiff's general damages according to proof;
2. For Plaintiff's loss of income, wages, and earning potential according to proof;
3. For Plaintiff's medical and related expenses according to proof;
4. For Plaintiff's cost of suit herein;
5. For exemplary or punitive damages according to proof;
6. For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED: October 24, 2023 **SIMON GREENSTONE PANATIER, PC**

By: Erica L. Falkner
Erica L. Falkner
Stuart J. Purdy

JOHN M. CARON, Esq.
**THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

**ATTORNEYS FOR PLAINTIFF**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all issues so triable.

DATED: October 24, 2023

**SIMON GREENSTONE PANATIER, PC**

By: Erica L. Falkner
Erica L. Falkner
Stuart J. Purdy

JOHN M. CARON, Esq.
**THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

**ATTORNEYS FOR PLAINTIFF**

**EXHIBIT "A"**

Plaintiff PATRICIA SNEIDER's exposure to Defendants' Products occurred at various locations within the Country of Mexico and the State of California, including, but not limited to:

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in Pacific Grove, California; Mexico City, Mexico; Los Angeles, California | Personal use of asbestos containing talcum powder products and cosmetics | Approximately 1976 – 2023 |

**EXHIBIT "B"**

Plaintiff PATRICIA SNEIDER's exposure to Defendants' Products caused severe and permanent injury to Plaintiff PATRICIA SNEIDER including, but not limited to, mesothelioma. Plaintiff was diagnosed with mesothelioma in approximately June of 2023.

**EXHIBIT 1-B**

Levy Konigsberg, LLP
By: Jacob Jordan, Esq. (ID # 417902022)
605 Third Avenue, 33rd Floor
New York, NY 10158
(212) 605-6200
Attorneys for Plaintiff

LISA L. FRANK, Individually and as Personal Representative and as Personal Representative Ad Prosequendum of the ESTATE OF JUDITH WILMA BLANKSCHAEN,

Plaintiff

JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER INC.; AVON PRODUCTS INC.; BRENNTAG NORTH AMERICA INC., as a successor-in-interest to Mineral Pigment Solutions, Inc. and Whittaker, Clark, & Daniels, Inc.; BRENNTAG SPECIALTIES, INC., f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.; COLGATE-PALMOLIVE COMPANY; CYPRUS AMAX MINERALS COMPANY, individually and as successor-in-interest to American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., and Resource Processors, Inc.; CYPRUS MINES CORPORATION, Individually and as successor in interest to Windsor Minerals, Inc., American Talc Company, Metropolitan Talc Company Inc., Charles Mathieu Inc. and Resource Processors, Inc.; IMERYS TALC AMERICA, INC, f/k/a Luzenac America; Inc. Individually and as successor-in-interest to Windsor Minerals, Inc., American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., and Resource Processors, Inc.; IMERYS USA, INC.; KOLMAR LABORATORIES, INC.; WHITTAKER, CLARK & DANIELS INC.; John Doe Corporations 1-50; John Doe Corporations 51-100, JOHNSON & JOHNSON HOLDCO (NA) INC.; JANSSEN PHARMACEUTICALS, INC.; and KENVUE, INC.; and **LTL MANAGEMENT LLC.**

Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION,
MIDDLESEX COUNTY

DOCKET NO. MID-L-008377-18AS

**<u>Civil Action – Asbestos Litigation</u>**

**SECOND AMENDED COMPLAINT, JURY DEMAND, DEMAND FOR ANSWERS TO STANDARD INTERROGATORIES AND DESIGNATION OF TRIAL COUNSEL**

Plaintiff LISA L. FRANK, Individually and as Personal Representative and as Personal Representative Ad Prosequendum of the ESTATE OF JUDITH WILMA BLANKSCHAEN, by way of complaint against Defendants alleges and says:

**PARTIES – PLAINTIFFS**

1. Plaintiff LISA L. FRANK is the daughter of Decedent JUDITH WILMA BLANKSCHAEN and resides at 5761 S. Florida Avenue, Lakeland, Florida 33813.

2. Decedent JUDITH WILMA BLANKSCHAEN ("Decedent") died due to complications related to mesothelioma, on or about February 22, 2018, caused by exposure to Defendants' asbestos-containing products. A copy of the redacted Death Certificate is attached as **Exhibit A**, and incorporated into this Complaint by reference.

3. Plaintiff LISA L. FRANK was appointed as Personal Representative and as Personal Representative Ad Prosequendum of the Estate of JUDITH WILMA BLANKSCHAEN by the Circuit Court, Probation Division, Polk County, Florida on September 13, 2018. A copy of Plaintiff's Letters of Administration is attached as **Exhibit B**, and is incorporated into this Complaint by this reference. Pursuant to N.J.S.A. 2A:31-2, the attached Letters of Administration authorizes Plaintiff LISA L. FRANK to bring this action against the Defendants referred to in this Complaint on behalf of Decedent JUDITH WILMA BLANKSCHAEN and Decedent's survivors. Plaintiff brings this action pursuant to N.J.S.A. 2A:31-1, et seq. and 2A:15-3.

4. Since at least approximately 1944 through at least the 1990s, Decedent JUDITH WILMA BLANKSCHAEN regularly and frequently used and was exposed to asbestos-containing talcum powder products, the use of which generated dust and exposed her to respirable asbestos fibers. Decedent's exposure to respirable asbestos fibers from asbestos-containing talc and talc products manufactured, sold and supplied by the Defendants (and their predecessors in interest) proximately caused her mesothelioma.

5. In addition to the allegations set forth herein, Plaintiff also adopts and incorporates the Standard Complaint Against Defendants Kenvue Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson Holdco (NA) Inc., filed at LCV20231842063.

6. As a direct and proximate result of the above exposures, Decedent contracted mesothelioma and suffered from other various diverse injuries and attendant complications, which resulted in her death.

**PARTIES - DEFENDANTS**

7. The term "Defendants" refers to all of the above-captioned entities.

8. Defendants, respectively, were manufacturers, suppliers, sellers or distributors of asbestos fibers, dust, minerals, particles and other finished and unfinished asbestos-containing products, including asbestos-containing talc and talcum powder products, that Decedent used or to which she was exposed. Defendants JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER INC.; AVON PRODUCTS INC.; BRENNTAG NORTH AMERICA INC., as a successor-in-interest to Mineral Pigment Solutions, Inc. and Whittaker, Clark, & Daniels, Inc.; BRENNTAG SPECIALTIES, INC., f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.; COLGATE-PALMOLIVE COMPANY; CYPRUS AMAX MINERALS COMPANY, individually and as successor-in-interest to American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., and Resource Processors, Inc.; CYPRUS MINES CORPORATION, Individually and as successor in interest to Windsor Minerals, Inc., American Talc Company, Metropolitan Talc Company Inc., Charles Mathieu Inc. and Resource Processors, Inc.; IMERYS TALC AMERICA, INC, f/k/a Luzenac America; Inc. Individually and as successor-in-interest to Windsor Minerals, Inc., American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., and Resource Processors, Inc.; IMERYS USA, INC.; IMERYS TALC VERMONT, INC.; KOLMAR LABORATORIES, INC.; and

WHITTAKER, CLARK & DANIELS INC.; JOHNSON & JOHNSON HOLDCO (NA) INC.; JANSSEN PHARMACEUTICALS, INC.; KENVUE, INC. and LTL MANAGEMENT LLC, were manufacturers, suppliers or distributors of asbestos fibers, dust, minerals, particles and other finished and unfinished asbestos-containing products, including asbestos-containing talc and talcum powder products, that Decedent used or to which she was exposed.

9. John Doe Corporations 1-50 (said names being fictitious, true names presently unknown) are the fictitious names of corporations, partnerships and/or other business entities or interest-holders whose identities are not presently known, and who mined, milled, manufactured, supplied, distributed, used, marketed, removed and/or sold talc, talcum powder, asbestos fibers, dust, minerals, particles, finished asbestos-containing products, and/or unfinished asbestos-containing products that the Decedent used or to which she was exposed.

10. John Doe Corporations 50-100 (said names being fictitious, true names presently unknown) are the fictitious names of corporations, partnerships and/or other business entities or interest-holders whose identities are not presently known, and who mined, milled, manufactured, supplied, distributed, used, marketed, removed and/or sold talc, talcum powder, asbestos fibers, dust, minerals, particles, finished asbestos-containing products, and/or unfinished asbestos-containing products that the Decedent used or to which she was exposed.

11. All defendants engaged in conduct in New Jersey which gave rise to Decedent's injury, including, but not limited to, mining and milling asbestos-contaminated talc, which was then shipped, supplied, processed and labeled in New Jersey and used to manufacture asbestos-containing talcum powder products used by Decedent and her family.

**FIRST COUNT**

12. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 11 as though hereinafter set forth at length.

13. The Defendants conduct and/or have conducted business in New Jersey at all times relevant herein. The Defendants breached their warranties, both express and implied, for fitness of purpose and merchantability.

14. The Defendants are strictly liable in tort.

15. As a direct and proximate result of Defendants' negligence, breach of warranties, both express and implied, and strict liability in tort, the Decedent contracted mesothelioma and suffered from other various diverse injuries and attendant complications, which resulted in her death.

16. It was foreseeable to the Defendants that the Decedent, and others similarly situated, would be injured as a result of the Defendants' actions and misconduct.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

**SECOND COUNT**

17. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 16 as though hereinafter set forth at length.

18. The Defendants, jointly and severally, marketed an ultra-hazardous product and placed that product in the stream of commerce.

19. As a direct and proximate result of the Defendants' actions, the Decedent contracted mesothelioma and suffered from various diverse injuries and attendant complications,

which resulted in her death.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

## THIRD COUNT

20. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19 as though hereinafter set forth at length.

21. Defendants breached their non-delegable duty to warn and negligently supplied defective materials and products without ensuring that the Decedent was warned about the dangers of asbestos exposure.

22. Defendants' actions prevented Decedent from educating herself on the dangers of asbestos exposure and from taking action to minimize the risks of exposure in and out of the home.

## FOURTH COUNT

23. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 22 as though hereinafter set forth at length.

24. Defendants willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from the Decedent and her family, as well as the general public, concerning the known hazards associated with the use of and exposure to talc, including asbestos-containing talc and asbestos products.

25. Defendants willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from the Decedent and her family, as well as, the general public relating to the fact that asbestos fiber inhalation could be fatal.

26. Defendants willfully, wantonly and intentionally conspired, and acted in concert, to disseminate false product safety information to the Decedent and her family, as well as, the general public.

27. Defendants willfully, wantonly and intentionally conspired, and acted in concert, to prevent the dissemination of information concerning their products' hazards and dangers.

28. Defendants willfully, wantonly and intentionally failed to take appropriate action to minimize the risks of asbestos exposure to the Decedent and her family, as well as, the general public.

29. As a direct and proximate result of the Defendants' actions and inaction, the Decedent contracted mesothelioma and suffered from various diverse injuries and attendant complications, which resulted in her death.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

**FIFTH COUNT**

(Product Liability Act Claim)

30. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 28 as though hereinafter set forth at length.

31. Defendants are strictly liable to Plaintiff by reason of the following:

a) Defendants were engaged in the business of being a miner, miller, designer, manufacturer, producer, processor, seller, supplier, and distributor of its asbestos and asbestos-containing products;

b) Defendants knew or had reason to know that Decedent and other persons similarly situated would be ultimate users or consumers of its asbestos and asbestos-containing products or would be exposed to its asbestos and asbestos-containing products;

c) Defendants sold or otherwise placed its asbestos-containing products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent and other persons similarly situated;

d) Throughout the many years that Decedent and other similarly situated persons were exposed to and used Defendants' asbestos-containing products, said asbestos-containing products reached the users and consumers without substantial change in the condition in which they were sold;

e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultrahazardous activity and created an unreasonable risk of injury to users and bystanders;

f) Defendants' asbestos and asbestos-containing products were defective in that they were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of its asbestos and asbestos-containing products.

Case 2:24-cv-08152-MCA-JSA Document 1-3 Filed 08/01/24 Page 157 of 393 PageID: 165

32. As a consequence of the defective condition of Defendants' asbestos-containing products and Defendants' failure to warn, Decedent inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of those asbestos-containing products. Decedent was caused to suffer the injuries, expenses and losses, including severe pain, suffering, mental anguish and loss of life as alleged in prior counts of this Complaint.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

**SIXTH COUNT**

33. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 as though hereinafter set forth at length.

34. The Defendants aforesaid were willful, intentionally withheld from the Decedent and her family, the known dangers associated with the use of asbestos and asbestos-containing products, and intentionally withheld from the Plaintiff's knowledge that breathing in asbestos can be fatal. The Defendants issued information, which they knew to be false, concerning the safety of their product, and did willfully, wantonly, and intentionally prevent the dissemination of information known to them concerning the products' hazards and dangers, and willfully, wantonly, and intentionally failed to take the appropriate steps to minimize the risks of asbestos exposure, and otherwise acted willfully, wantonly, and intentionally with reference to their products.

35. As a direct and proximate result of the willful, wanton, and intentional acts of the Defendants, both jointly and severally, the Decedent was caused to contract mesothelioma and various other diverse complications and injures, which resulted in her death.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

**SEVENTH COUNT**

36. Plaintiff repeats and reallages each and every allegation contained in paragraphs 1 through 35 as though hereinafter set forth at length.

37. As a direct and proximate result of the aforesaid misconduct of the Defendants, Decedent, up to the time of her death, sustained an illness and endured great pain and suffering, and large sums of money were expended for medical care in an endeavor to cure her illness.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

**NINTH COUNT**

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 as though hereinafter set forth at length.

39. The estate of the Decedent was liable for and, in fact, paid for hospital, medical, funeral and burial expenses and charges for the Decedent.

40. The Decedent left surviving her children and grandchildren including, Plaintiff, LISA L. FRANK, at the time of her demise and, by reason of the wrongful death of Decedent, Decedent's survivors have suffered pecuniary losses.

41. There is, and at the time of the illness hereinabove set forth, there was in force and effect in the State of New Jersey a death statute known and designated as N.J.S.A. 2A:31-1 through 6 and Plaintiff brings this action pursuant to provisions thereof for the benefit of the next of kin of Decedent.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues of fact so triable.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, notice is hereby given that Moshe Maimon, Esq. is designated as trial counsel in the above- captioned matter.

**DEMAND FOR INTERROGATORIES**

Pursuant to the Asbestos Litigation General Order, Section VI.B, which can be found at http://www.judiciary.state.nj.us/masstort/asbestos/manual/generalorder1.pdf, Plaintiff hereby demands that the above listed Defendants answer Standard Interrogatories in the form prescribed by the Court and within the time provided by the above referenced Order. A copy of the Standard Interrogatories are contained in the Asbestos Manual and may be obtained from the Clerk or by visiting the following website: http://www.judiciary.state.nj.us/masstort/asbestos/manual/asbestosmanual050306.pdf.

## CERTIFICATION PURSUANT TO R. 4:5-1

Pursuant to Rule 4:5-1, I certify that the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that I am not aware of any non-party who should be joined in this action pursuant to Rule 4:28 or who is subject to joinder pursuant to Rule 4:29-1(b) because of potential liability to any party on the basis of the same facts.

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false that I am subject to punishment.

**LEVY KONIGSBERG, LLP**
*Attorneys for Plaintiff*

By: ______________________________
JACOB JORDAN, ESQ.

Dated: September 25, 2023

Case 23-01015-MBK Doc 254-4 Filed 07/31/24 Entered 07/31/24 19:14:31 Desc Exhibit C - Keale Declaration in Support of Ninth TRO Extension Request Page 48 of 150

**EXHIBIT 1-C**

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: COURTNEY CHLEBINA ESQUIRE
Atty Id: 324780
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115
Attorneys for Plaintiff(s)

Filed and Attested by the Office of Judicial Records 02 MAR 2022 04:02 pm S. RICE

PROTHONOTARY FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNARD P BOWERS JR. and JEANNE BOWERS<br>2675 Leisczs Bridge Road<br>Leesport, PA 19533<br><br>Plaintiff(s)<br><br>vs.<br><br>**A.W. CHESTERTON COMPANY, et al.**<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>SEPTEMBER TERM 2021<br><br>NO. 2481<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## NOTICE TO PLEAD

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: 215-238-1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partif de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dienero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIATION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701

Case ID: 210902481

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: COURTNEY CHLEBINA ESQUIRE
Atty Id: 324780
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115
Attorneys for Plaintiff(s)

| | |
|---|---|
| BERNARD P BOWERS JR. and JEANNE BOWERS<br>2675 Leisczs Bridge Road<br>Leesport, PA 19533<br><br>Plaintiff(s)<br>vs.<br><br>**A.W. CHESTERTON COMPANY**, et al.<br><br>Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>SEPTEMBER TERM 2021<br><br>NO. 2481<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

**SHERIFF'S SERVICE LIST**

**ABB, INC.**
**Individually and as successor in interest to ITE CIRCUIT BREAKERS, INC.**
125 E. County Line
Warminster, PA 18974

and

Delaney & O'brien
325 Chestnut Street
Suite 1320
Philadelphia, PA 19106

**BRENNTAG NORTH AMERICA,**
**as a successor in interest to MINERAL PIGMENT SOLUTIONS, INC. as successor in interest to WHITTAKER, CLARK & DANIELS, INC.**
CT CORP.. 600 North 2nd Street
Suite 401 –
Reading, PA 19605

Case ID: 210902481

Case 2:23-cv-01283-MCS-AGR Document 1-1 Filed 02/20/23 Page 164 of 393 Page ID #:172

**CBS CORPORATION, f/k/a VIACOM INC.,**
**successor by merger to**
**CBS CORPORATION, f/k/a**
**WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**EAST PENN MANUFACTURING**
102 Deka Road
Lyons, PA 19536

**EMPIRE STEEL CASTINGS INC.**
1 Park Plaza, Park Road
Wyomissing, PA 19610

**FISHER SCIENTIFIC COMPANY LLC.**
300 Industry Drive
Pittsburgh, PA 15275

**THE STEPHAN CO. as successor to Old 97 Company**
2211 Reach Road
Williamsport, PA 17701

**LINDE WELDING GAS & EQUIPMENT CENTER**
1800 N. 11th Street
Reading, PA 19604

Case ID: 210902481

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: COURTNEY L. CHLEBINA ESQUIRE
Atty Id: 324780
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115
Attorneys for Plaintiff(s)

| | |
|---|---|
| BERNARD P BOWERS JR. and JEANNE BOWERS<br>2675 Leisczs Bridge Road<br>Leesport, PA 19533<br><br>Plaintiff(s)<br><br>vs.<br><br>**A.W. CHESTERTON COMPANY, et al.**<br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>SEPTEMBER TERM 2021<br><br>NO. 2481<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS SERVICE LIST**

**A.W. CHESTERTON COMPANY**
CT Corporation
155 Federal Street, Suite 700
Boston, MA 02110

**ABB, INC.**
**Individually and as successor in interest to ITE CIRCUIT BREAKERS, INC.**
125 E. County Line
Warminster, PA 18974

and

Delaney & O'brien
325 Chestnut Street
Suite 1320
Philadelphia, PA 19106

Case ID: 210902481

Case 2:23-cv-01216-MKC-AGR Document 1-3 Filed 09/20/23 Page 166 of 393 Page ID #:174

**BARRETTS MINERALS, INC.**
CT Corporation System
28 Liberty Street
New York, NY 10005

and

3011 American Way
Missoula, MT 59808

**BLOCK DRUG COMPANY, INC.**
Corporation Service Company / CSC
Princeton South Corporate Ctr., Suite 160
100 Charles Ewing Blvd
Ewing, NJ 08628

**BLOCK DRUG CORPORATION**
Corporation Service Company / CSC
Princeton South Corporate Ctr., Suite 160
Ewing, NJ 08628

**BRENNTAG NORTH AMERICA,**
**as a successor in interest to MINERAL PIGMENT SOLUTIONS, INC. as successor in interest to WHITTAKER, CLARK & DANIELS, INC.**
CT CORP.. 600 North 2nd Street
Suite 401 –
Reading, PA 19605

**BRENNTAG SPECIALTIES, INC.**
**f/k/a MINERAL PIGMENT SOLUTIONS, INC.**
**as successor in interest to WHITTAKER, CLARK & DANIELS, INC.**
c/o Corporation Trust Co.
Mountain View Office Park
820 Bear Tavern Road
West Trenton, NJ 08628

and

CT Corporation
111 Eighth Avenue
New York, NY 10011

Case ID: 210902481

**CBS CORPORATION, f/k/a VIACOM INC.,**
**successor by merger to**
**CBS CORPORATION, f/k/a**
**WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**CHARLES B. CHRYSTAL CO., INC.**
89 Coachlight Circle
Prospect, CT 06712

**CHATTEM, INC., sued individually and as successor-in interest**
to MARTIN-HIMMEL, INC., as successor
-in-interest to BLOCK DRUG CORPORATION,
successor-in-interest BLOCK DRUG COMPANY,
successor-in-interest to THE GOLD BOND
STERILIZING POWDER COMPANY a/k/a THE
GOLD BOND COMPANY, successor-in-interest to
GOLD BOND PHARMACEUTICAL
CORPORATION
CORPORATION SERVICE COMPANY
PRINCETON SOUTH CORPORATE CTR.
100 CHARLES EWING BLVD., SUITE 160
Ewing, NJ 08628

**CRANE CO.**
100 First Stamford Place
Stamford, CT 06902

**DCo LLC f/k/a DANA COMPANIES, LLC**
CT CORPORATION
4701 Cox Road, #285,
Glen Allen, VA 23060

**EAST PENN MANUFACTURING**
102 Deka Road
Lyons, PA 19536

Case ID: 210902481

**EATON CORPORATION, Individually and as successor -in-interest to CUTLER-HAMMER, INC.**
CT Corporation System
111 8th Avenue
New York, NY 10011

**EMPIRE STEEL CASTINGS INC.**
1 Park Plaza, Park Road
Wyomissing, PA 19610

**FISHER SCIENTIFIC COMPANY LLC.**
300 Industry Drive
Pittsburgh, PA 15275

**GARDNER DENVER, INC.**
1800 Gardner Expressway
Quincy, IL 62301

**GENERAL ELECTRIC COMPANY**
Electric Insurance Company
75 Sam Fonzo Drive
Beverly, MA 01915

**GLAXOSMITHKLINE as successor in interest to BLOCK DRUG COMPANY, INC.;**
Corporation Service Company / CSC
Princeton South Corporate Ctr., Suite 160
100 Charles Ewing Blvd
Ewing, NJ 08628

**GOULD ELECTRONICS INC.**
2555 W Fairview St, Suite 103
Chandler, AZ 85224

and

CT Corp
4400 Easton CMNS
Columbus, OH 43219

**GOULDS PUMPS LLC**
CT Corporation System
28 Liberty St, 42nd Fl.
New York, NY 10005

Case ID: 210902481

**GRINNELL LLC**
CT Corporation
28 Liberty St, 42nd Fl.
New York, NY 10005

**GUARD-LINE, INC.**
215-217 S. Louise St.
P.O. Box 1030
Atlanta, TX 75551

**HIMMEL MANAGEMENT CO. LLC a/k/a HIMMEL GROUP formerly d/b/a MARTIN** HIMMEL, INC., individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;
c/O VIOLETAS;
221 MIRACLE MILE
CORAL GABLES, FL 33134

**ITT LLC.,**
**Individually and as successor to BELL & GOSSETT**
**and as successor to KENNEDY VALVE**
**MANUFACTURING CO., Inc.**
1133 Westchester Avenue
White Plains, NY 10605

**J.A. SEXAUER, INC.**
565 Taxter Road, Suite 230
Elmsford, NY 10523

**JOHNSON & JOHNSON**
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**JOHNSON & JOHNSON CONSUMER INC.**
f/k/a JOHNSON & JOHNSON COMPANIES, INC.
One Johnson & Johnson Plaza
News Brunswick, NJ 08933

and

199 Grandview Road
Skillman, NJ 08558

Case ID: 210902481

Case 2:23-cv-01215-MCS-AGR Document 1-1 Filed 03/20/23 Page 170 of 393 Page ID #:178

**PFIZER, INC. (PFIZER)**
CT Corporation Systems
28 Liberty St., 42nd Fl.
New York, NY 10005

**PPG ARCHITECURAL FINISHES, INC., as successor in-interest to AKZO NOBEL PAINTS LLC, formerly known as THE GLIDDEN COMPANY**
15885 W. Sprague Road
Strongsville, OH 44136

**R.T. VANDERBILT CO., Individually, and as Successor in Interest to INTERNATIONAL TALC CO and INTERNATIONAL PULP CO**
30 Winfield Street
Norwalk, CT 06856

**ROCKWELL AUTOMATION, INC., as successor in interest to ALLEN- BRADLEY COMPANY, LLC**
CT Corporation System
28 Liberty Street
New York, NY 10003

**SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D COMPANY**
1111 Pasquinelle Dr.
Suite 100
Westmont, IL 60559

**SIEMENS INDUSTRY, INC., successor in interest to SIEMENS ENERGY & AUTOMATION, INC.,**
28 Liberty Street
42nd floor
New York, NY 10005

**SPECIALITY MINERALS INC.**
THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER
1209 ORANGE ST
Wilmington, DE 19801

**THE STEPHAN CO. as successor to Old 97 Company**
2211 Reach Road
Williamsport, PA 17701

Case ID: 210902481

**WHITTAKER, CLARK & DANIELS, INC.**
111 John Street, 20th floor
New York, NY 10038

**LINDE LLC, f/k/a THE BOC GROUP, INC., and/or AIRCO. INC.**
575 Mountain Avenue
New Providence, NJ 07974

**LINDE WELDING GAS & EQUIPMENT CENTER**
1800 N. 11th Street
Reading, PA 19604

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: COURTNEY L. CHLEBINA ESQUIRE
Atty Id: 324780
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115
Attorneys for Plaintiff(s)

| | |
|---|---|
| BERNARD P BOWERS JR. and JEANNE BOWERS<br>2675 Leisczs Bridge Road<br>Leesport, PA 19533<br><br>Plaintiff(s)<br><br>vs.<br><br>**A.W. CHESTERTON COMPANY, et al.**<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>SEPTEMBER TERM 2021<br><br>NO. 2481<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

**AMENDED CIVIL ACTION COMPLAINT**

Plaintiff(s) incorporate by reference Plaintiffs Master Long Form Complaint In re: Asbestos Litigation in Philadelphia County Court of Common Pleas, filed as of October Term 1986, No. 8610-0001. Pursuant to an Order dated July 30, 1986, and signed by the Honorable Richard B. Klein, the following Short Form Complaint is utilized in this asbestos action.

1. This Complaint involves the claims of the following person(s):
   a. Plaintiff:
   Name: BERNARD P BOWERS JR.
   Address: [redacted]
   Date of Birth: [redacted]
   SSN: XXX-XX-[redacted]

   b. Plaintiff-spouse:
   Name: JEANNE A BOWERS
   Address: [redacted]
   Date of Birth: [redacted]
   SSN: XXX-XX-[redacted]

Case ID: 210902481

Case 2:24-cv-MCS-AGR Document 1-3 Filed 08/20/24 Page 173 of 393 Page ID #:181

2. The Defendants are those companies listed in the caption.

3. Plaintiff(s) might have named as defendants other additional entities responsible for the manufacture, distribution and/or supply of products that contained asbestos or were designed to be used with asbestos, except that such other entities have petitioned for relief in bankruptcy under the United States Bankruptcy Code and, pursuant to federal statute, the institution of actions against these entities is stayed.

4. Plaintiff(s) hereby incorporate by reference the following Counts from the Master Long Form Complaint: Counts I through X.

5. Plaintiff(s) asbestos employment history is as follows: Mr. Bowers was occupationally exposed to asbestos in the Commonwealth of Pennsylvania beginning in 1970 while working at Empire Steel Castings, Glidden Paint Company, and Deka Battery / East Penn Manufacturing. During his career, Mr. Bowers worked with and around numerous asbestos-containing products, including protective clothing, hot plates, pumps, valves, gaskets, packing, insulation, gear boxes, electrical equipment, motors, air compressors, and talc-based powders used to mix paints. Additionally, Mr. Bowers was non-occupationally exposed to asbestos from asbestos-contaminated Johnson & Johnson baby powder beginning in 1970 through the 2000s and from asbestos-contaminated Gold Bond powder beginning in 1989 through the 2000s.

| | | | | | |
|---|---|---|---|---|---|
| American Juice Corporation | Lakeland | FL | 1968 | 1969 | Laborer |
| W.T. Grant | Reading | PA | 1969 | 1970 | Dishwasher |
| Empire Steel Castings | Laureldale | PA | 1970 | 1972 | Pour & Shakeout Specialist |
| Glidden Paint Co. | Reading | PA | 1972 | 1976 | Varnish and Paint Maker |
| Deka Battery (aka East Penn Manufacturing) | Lyons Station | PA | 1976 | 2018 | Oxide Leader/Supervisor |

Case ID: 210902481

6. Plaintiff was diagnosed on May 24, 2021 at Reading Hospital as having Mesothelioma which is the direct and proximate result of his exposure to asbestos dust and fibers. This exposure arose from working with or around products manufactured and distributed by defendants.

7. Plaintiff's smoking history: Plaintiff smoked approximately less than one pack per day from 1967 to 1975.

8. Plaintiff's wages during his full year of employment were:

a. To be supplied if applicable.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them individually, jointly and severally for compensatory damages in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), punitive damages, and all such damages and relief as the Court deems just and proper.

**WEITZ & LUXENBERG, P.C.**
**Attorneys for Plaintiff(s)**

By: /s/ Courtney L. Chlebina
COURTNEY L. CHLEBINA ESQUIRE

Case ID: 210902481

# VERIFICATION

I, Courtney L. Chlebina Esquire, attorney for Plaintiff(s), verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the penalties of 18 PA C.S.A. Sec. 4904 relating to unsworn falsification to authorities.

Dated: 3/2/2022

_/s/ Courtney L. Chlebina_______________
COURTNEY L. CHLEBINA ESQUIRE

Case ID: 210902481

**CERTIFICATION**

I, Courtney L. Chlebina Esquire, attorney for the Plaintiff(s), certifies pursuant to Pennsylvania Rule No. 205.4 that the hard copy of this electronically filed document was properly signed.

Dated: 3/2/2022

__/s/ Courtney L. Chlebina_______
COURTNEY L. CHLEBINA ESQUIRE

Case ID: 210902481

| | |
|---|---|
| BERNARD P. BOWERS JR. and JEANNE BOWERS<br>2675 Leiscz's Bridge Road<br>Leesport, PA 19533<br>Plaintiff(s)<br>vs.<br>A.W. CHESTERTON COMPANY, et al.<br>Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>SEPTEMBER TERM 2021<br>NO. 2481<br>ASBESTOS CASE<br>JURY TRIAL DEMANDED |

**ORDER**

AND NOW, this 22nd Day of February, 2022 upon consideration of Plaintiffs' Motion for Leave to File an Amended Complaint to add Linde LLC and Linde Welding Gas & Equipment Center, it is hereby ORDERED that the motion is granted.

Plaintiff may file the amended complaint attached to plaintiff's motion.

BY THE COURT:

Abbe F. Fletman

Honorable Judge Abbe F. Fletman

210902481-Bowers Jr. Etal Vs A.W. Chesterton Company Etal

21090248100116

UNCONTESTED

RECEIVED
Feb 28 2021
COMPLEX LIT CENTER

Case ID: 210902481
Control No.: 22020796

Case ID: 210902481

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) J. STEWART 03/01/2022

**EXHIBIT 1-D**

All Law Division initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4906_SelectTab/12
Remote Court date: No hearing information was found.

FILED
5/31/2023 3:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L005583
Calendar, J1
22940538

FILED DATE: 5/31/2023 3:35 PM 2023L005583

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

JOSEFINA ALVAREZ,

Plaintiff,

vs.

BARRETTS MINERALS INC.;

BRENNTAG NORTH AMERICA, INC., Individually and as successor-in-interest to Mineral Pigment Solutions, Inc., as successor-in-interest to Whittaker Clark & Daniels, Inc.;

BRENNTAG SPECIALTIES, LLC, f/k/a Brenntag Specialties, Inc., f/k/a Mineral & Pigment Solutions, Inc., as successor-in-interest to Whittaker, Clark, & Daniels, Inc.;

CONOPCO, INC.;

CVS HEALTH;

L'OREAL USA, INC.;

PFIZER, INC.;

WALGREEN CO.;

Defendants.

IN RE: ASBESTOS LITIGATION

Cause No. 23 L

## COMPLAINT

## COUNT I
## NEGLIGENCE

Plaintiff Josefina Alvarez brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1. Plaintiff Josefina Alvarez is a resident of the State of Illinois. Plaintiff was exposed to asbestos-containing product(s) in the State of Illinois and/or to asbestos-containing products that

FILED DATE: 5/31/2023 3:35 PM 2023L005583

were manufactured or distributed by Illinois corporation(s) and/or that were manufactured or distributed in the State of Illinois.

2. Defendant WALGREEN CO. is organized and exists pursuant to Illinois law and doing business in Cook County, Illinois.

3. Plaintiff alleges that Defendants have, at all times material to these causes of action, through and including the present, maintained sufficient contact with the State of Illinois and/or transacted sufficient revenue producing business in the State of Illinois to subject them to the jurisdiction of this Court pursuant to Illinois long-arm statute 735 ILCS 5/2-209.

4. Defendants are corporations that are amenable to jurisdiction in the Courts of Illinois for numerous reasons, including but not limited to:

(a) Defendants are either Illinois corporations or foreign corporations that now conduct or have conducted business or business ventures within Illinois, or have had offices or agents within Illinois, which subjects them to jurisdiction within Illinois;

(b) Plaintiff has alleged causes of action arising out of or relating to the business or business ventures conducted by Defendants within Illinois or through which Defendants purposefully availed themselves of Illinois law, invoked the benefits and protections of Illinois law, or otherwise could reasonably have foreseen that their activities would subject them to jurisdiction of the Illinois courts;

(c) Defendants' asbestos or asbestos-containing products were sold in Illinois, Defendants were aware that their products would be sold in Illinois, and Defendants directly or indirectly availed themselves of the Illinois market as a market for their products;

(d) each foreign corporation Defendant engaged in a course of conduct that was nationwide, including within Illinois, in its distribution and sale of asbestos or asbestos-containing products and in its failure to provide adequate warnings;

(e) each foreign corporation Defendant specifically targeted Illinois, directly or indirectly, as a market for its asbestos or asbestos-containing products;

FILED DATE: 5/31/2023 3:35 PM 2023L005583

(f) each foreign corporation Defendant, through agents, employees, brokers, jobbers, wholesalers, or distributors, has sold, consigned, or leased tangible or intangible personal property to persons in Illinois;

(g) each foreign corporation Defendant designed, developed, tested, manufactured, assembled, distributed, labeled, packaged, supplied, and/or created a marketing strategy for its asbestos or asbestos products in Illinois;

(h) each foreign corporation Defendant has committed wrongful acts either outside or inside Illinois, causing injury to Plaintiff;

(i) each foreign corporation Defendant derives substantial revenue from interstate or international commerce and should reasonably have expected its acts to have consequences in Illinois or in any other state that would subject it to liability in those states;

(j) each foreign corporation Defendant has conducted substantial and not merely isolated activity within Illinois;

(k) each foreign corporation Defendant purchased asbestos-containing components that were manufactured in Illinois and/or from Illinois suppliers and/or incorporated asbestos-containing components into its asbestos products in Illinois;

(l) each foreign corporation Defendant registered for the right to conduct intrastate business in Illinois, conducted intrastate business in Illinois pursuant to such registration, maintained a registered agent for service of process in Illinois, and/or was served with process in this case via its Illinois registered agent; and/or

(m) The State of Illinois has an overwhelming interest in exercising jurisdiction over this case and the causes of action alleged in it for numerous reasons including but not limited to:

i. Plaintiff was an Illinois resident when she was exposed to Defendants' products;

ii. Plaintiff and/or the others who purchased the asbestos products at issue in this case to which Plaintiff was exposed purchased Defendants' toxic asbestos products in Illinois;

iii. Plaintiff was exposed to Defendants' asbestos products in Illinois;

iv. Illinois has a strong interest in protecting its citizens or consumers within the State from exposure to dangerous products; and

FILED DATE: 5/31/2023 3:35 PM 2023L005583

v. Illinois has a strong interest in providing its citizens or consumers within the State with an effective and efficient forum for resolution of disputes regarding injuries to them, particularly injuries caused by actions in the State and/or that manifest themselves in the State.

5. The tortious activity alleged by Plaintiff below occurred in Cook County, Illinois. Venue is appropriate in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-101. Additionally, the Circuit Court of Cook County has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209.

6. Plaintiff Josefina Alvarez's mesothelioma, and any other asbestos-related health conditions from which she suffers, are indivisible injuries that resulted from the combined effects of her exposures to the asbestos products of all Defendants, including all of her exposures in the various states in which she may have been exposed to asbestos.

7. Plaintiff utilized asbestos-containing cosmetic talc products, including Pond's (1968-1985) and L'Oréal (1985-2000), through her daily personal use of face setting powder products, all of which were purchased in the state of Illinois, including at Walgreens and CVS stores.

8. During the course of Plaintiff Josefina Alvarez's use of talcum powders, and/or in other ways, Plaintiff Josefina Alvarez inhaled and was otherwise exposed to asbestos fibers emanating from certain products that she was working with and around and which were designed, manufactured, sold, delivered, distributed, processed, applied, specified and/or installed by the following Defendants: BARRETTS MINERALS INC.; BRENNTAG NORTH AMERICA, INC., Individually and as successor-in-interest to Mineral Pigment Solutions, Inc., as successor-in-interest to Whittaker Clark & Daniels, Inc.; BRENNTAG SPECIALTIES, LLC, f/k/a Brenntag Specialties, Inc., f/k/a Mineral & Pigment Solutions, Inc., as successor-in-interest to Whittaker,

FILED DATE: 5/31/2023 3:35 PM 2023L005583

Clark, & Daniels, Inc.; CONOPCO, INC.; CVS HEALTH; L'OREAL USA, INC.; PFIZER, INC.; and WALGREEN CO.

9. Plaintiff Josefina Alvarez's exposure to the materials and products, attributable to these various Defendants occurred at different times as to each, and not necessarily throughout, her entire life as to any particular Defendant.

10. At all times herein set forth, Defendants' products were being employed in the manner and for the purposes for which they were intended.

11. Plaintiff Josefina Alvarez's inhalation of and exposure to the asbestos fibers emanating from the above-mentioned products and equipment was completely foreseeable and could or should have been anticipated by Defendants.

12. Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling or otherwise being exposed to them. Moreover, Defendants knew or should have known asbestos is a carcinogen.

13. Plaintiff Josefina Alvarez suffers from an asbestos-related cancer, including but not limited to, mesothelioma. Plaintiff first became aware that she suffers from said disease(s) on or about October 6, 2022, and subsequently thereto became aware that the same was wrongfully caused.

14. At all times herein relevant, Defendants had a duty to exercise reasonable care and caution for the safety of Plaintiff Josefina Alvarez and others working with and around the asbestos-containing products of Defendants.

15. Defendants failed to exercise ordinary care and caution for the safety of Plaintiff Josefina Alvarez in one or more of the following respects:

FILED DATE: 5/31/2023 3:35 PM 2023L005583

(n) Defendants designed, manufactured, sold, distributed, delivered, processed, specified, applied, supplied products that included asbestos-containing components and which required and/or specified the use of asbestos-containing replacement components;

(o) Defendants included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons working with or around them would inhale, breathe in, or otherwise be exposed to great amounts of that asbestos;

(p) Defendants included asbestos in their products, when Defendants knew or should have known that the asbestos fibers would have a carcinogenic, toxic, poisonous, and/or highly deleterious effect upon the health of persons inhaling, breathing in, and/or otherwise being exposed to them;

(q) Defendants included asbestos and/or asbestos-containing components in their products when adequate substitutes were available;

(r) Defendants failed to provide any or adequate warnings to persons using their products of the dangers of inhaling, breathing in, or otherwise being exposed to the asbestos fibers contained therein;

(s) Defendants failed to provide any or adequate instructions concerning safe methods for using their products, including specific instructions on how to avoid inhaling, breathing in, or otherwise being exposed to the asbestos fibers contained in them; and

(t) Defendants failed to conduct tests on the asbestos-containing products that Defendants designed, manufactured, sold, distributed, delivered, processed, specified, applied, and/or supplied, in order to determine the hazards to which consumers such as Josefina Alvarez might be exposed while working with the products.

16. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants mentioned above, Plaintiff Josefina Alvarez inhaled, breathed in, or was otherwise exposed to asbestos fibers causing her to develop the asbestos cancer aforesaid, which has severely disabled, disfigured, and injured her. Plaintiff Josefina Alvarez is compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of her asbestos-induced cancer and conditions. Plaintiff

FILED DATE: 5/31/2023 3:35 PM 2023L005583

Josefina Alvarez experiences great physical pain and mental anguish as a result of the inhalation of and exposure to said asbestos fibers.

WHEREFORE, Plaintiff prays judgment be entered against Defendants for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Josefina Alvarez's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

**COUNT II**
**NEGLIGENT SPOLIATION OF EVIDENCE**

Plaintiff Josefina Alvarez brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1. Plaintiff adopts and incorporates all paragraphs from all previous and subsequent Counts as though fully set forth in this Count, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

2. Prior to the commencement of this case, Defendants listed in Count I, Paragraph 8 had documents containing information relevant to this case in their respective possession, custody, and control.

3. Upon information and belief, the information contained in said documents included but was not limited to: the identification of the asbestos-containing products to which Plaintiff was exposed; the locations where Defendants sold, distributed, delivered, processed, applied, and/or supplied, asbestos-containing products; the identity of the manufacturers, suppliers, and other entities in the distribution chain of said products; and the extent and timing of Defendants' knowledge, notice, and awareness regarding the hazards of asbestos and their negligence in acting despite such knowledge, notice, and awareness.

FILED DATE: 5/31/2023 3:35 PM 2023L005583

4. It was foreseeable to a reasonable person/entity in the respective positions of Defendants that said documents and information constituted evidence that was material to potential civil litigation, namely asbestos litigation. Defendants had a duty to maintain and preserve said documents and the information contained therein because they knew or should have known that said documents and information constituted material evidence in potential asbestos litigation.

5. Plaintiff has sought, but has been unable to obtain, full disclosure of relevant documents and information from Defendants, leading to the inference that Defendants destroyed and otherwise disposed of said documents and information.

6. Defendants and each of them breached their duty to preserve material evidence by destroying and otherwise disposing of said documents and information, at a time when they and each of them knew or should have known that the same constituted material evidence in potential civil litigation.

7. As a direct and proximate result of this destruction and disposal of material evidence, Plaintiff has been impaired in proving her claims against all potentially liable parties, including but not limited to these Defendants, and, as a further result thereof, has been compelled to dismiss and/or unfavorably compromise claims against other Defendants, and thereby has been prejudiced.

8. As a result of this prejudice, Plaintiff has been caused to suffer damages in the form of an impaired ability to recover against Defendants and lost or reduced compensation from other potentially liable parties in this litigation.

WHEREFORE, Plaintiff prays this Court to enter judgment against Defendants and to award compensatory damages in an amount to be proved at trial, but which are believed to exceed FIFTY THOUSAND DOLLARS ($50,000.00), and for such other and further relief that this Court

Case 2:24-cv-02152-MCS-AGR Document 1-3 Filed 03/20/24 Page 187 of 393 Page ID #:195



deems just and appropriate.

Respectfully submitted,

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**

/s/ *Bethany Gasperin*
Jon R. Neumann - #6311522
Bethany Gasperin - #6315375
Cook County Attorney Code 61194
1015 Locust Street, Suite 1200
St. Louis, MO 63101
Telephone: (314) 241-2003
Fax: (314) 241-4838
jneumann@mrhfmlaw.com
bgasperin@mrhfmlaw.com
*Attorneys for Plaintiff*

FILED DATE: 5/31/2023 3:35 PM 2023L005583

**EXHIBIT A - Defendant Index**

| | |
|---|---|
| BARRETTS MINERALS INC.<br><br>**Distributor/Product/Supplier Defendant** | Talc supplier |
| BRENNTAG NORTH AMERICA, INC., Individually and as successor-in-interest to Mineral Pigment Solutions, Inc., as successor-in-interest to Whittaker Clark & Daniels, Inc.<br><br>**Distributor/Product/Supplier Defendant** | Talc supplier |
| BRENNTAG SPECIALTIES, LLC, f/k/a Brenntag Specialties, Inc., f/k/a Mineral & Pigment Solutions, Inc., as successor-in-interest to Whittaker, Clark, & Daniels, Inc.<br><br>**Distributor/Product/Supplier Defendant** | Talc supplier |
| CONOPCO, INC<br><br>**Product Defendant** | Pond's talcum powder products |
| CVS HEALTH<br><br>**Distributor Defendant** | Distributor of talcum powder products |
| L'OREAL USA, INC<br><br>**Product Defendant** | L'Oreal talcum power products |
| PFIZER, INC.<br><br>**Distributor/Product/Supplier Defendant** | Talc supplier and manufacturer |
| WALGREEN CO.<br><br>**Distributor Defendant** | Distributor of talcum powder products |

**EXHIBIT 1-E**

65977/0001-48205718v1

SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
(609) 275-0400
By: Robert E. Lytle (NJ ID# 046331990)

SIMON GREENSTONE PANATIER, P.C.
1201 Elm Street, Suite 3400
Dallas, TX 75270
(214) 276-7680

By: Leah Kagan (NJ ID No. 013602009)
Joseph Mandia (NJ ID No. 016652008)

Attorneys for Plaintiffs

| | |
|---|---|
| **CANDACE REGO** as Executrix and Executrix ad Prosequendum for the Estate of **SAMANTHA LEIGH GENTLE,** Deceased, and **ASHLEY REGO**,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), et al.,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION - MIDDLESEX COUNTY<br><br>DOCKET NO.: MID-L- 7729 -20AS<br><br>**Civil Action – Asbestos Litigation**<br><br>**SUMMONS** |

From The State of New Jersey, to the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) A filing fee of $175.00 payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: November 6, 2020

/s/ Michelle M. Smith
Michelle M. Smith, Esq.
Clerk of the Superior Court

Case 2:24-cv-01285-MCS-AGR   Document 1-1   Filed 02/20/24   Page 191 of 393   Page ID #:199

| | |
|---|---|
| Name of Defendant to be Served: | BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) |
| Address of the Defendant to be Served: | Corporation Trust Company<br>Mountain View Office Park<br>820 Bear Tavern Road<br>West Trenton, NJ 08628 |

# Directory of Superior Court Deputy Clerk's Offices
# County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

| | |
|---|---|
| **PASSAIC COUNTY:**<br>Deputy Clerk of the Superior Court<br>Civil Division<br>Court House<br>77 Hamilton Street<br>Paterson, NJ 07505 | LAWYER REFERRAL<br>(973) 278-9223<br>LEGAL SERVICES<br>(973) 523-2900 |
| **SALEM COUNTY:**<br>Deputy Clerk of the Superior Court<br>Attn: Civil Case Management Office<br>92 Market Street<br>Salem, NJ 08079 | LAWYER REFERRAL<br>(856) 935-5629<br>LEGAL SERVICES<br>(856) 691-0494 |
| **SOMERSET COUNTY:**<br>Deputy Clerk of the Superior Court<br>Civil Division<br>P.O. Box 3000<br>40 North Bridge Street<br>Somerville, N.J. 08876 | LAWYER REFERRAL<br>(908) 685-2323<br>LEGAL SERVICES<br>(908) 231-0840 |
| **SUSSEX COUNTY:**<br>Deputy Clerk of the Superior Court<br>Sussex County Judicial Center<br>43-47 High Street<br>Newton, NJ 07860 | LAWYER REFERRAL<br>(973) 267-5882<br>LEGAL SERVICES<br>(973) 383-7400 |
| **UNION COUNTY:**<br>Deputy Clerk of the Superior Court<br>1st Fl., Court House<br>2 Broad Street<br>Elizabeth, NJ 07207-6073 | LAWYER REFERRAL<br>(908) 353-4715<br>LEGAL SERVICES<br>(908) 354-4340 |
| **WARREN COUNTY:**<br>Deputy Clerk of the Superior Court<br>Civil Division Office<br>Court House<br>413 Second Street<br>Belvidere, NJ 07823-1500 | LAWYER REFERRAL<br>(908) 859-4300<br>LEGAL SERVICES<br>(908) 475-2010 |

SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400
Robert E. Lytle (NJ ID No. 046331990)

SIMON GREENSTONE PANATIER, PC
1201 Elm Street, Suite 3400
Dallas, TX 75270
(214) 276-7680
Leah Kagan (NJ ID No. 013602009)
Joseph Mandia (NJ ID No. 016652008)

Attorneys for Plaintiffs

**CANDACE REGO** as Executrix and Executrix ad Prosequendum for the Estate of **SAMANTHA LEIGH GENTLE**, Deceased, and **ASHLEY REGO**,

Plaintiffs,

v.

**AVON PRODUCTS, INC.**;

**BARRETTS MINERALS INC.**;

**BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**COLGATE-PALMOLIVE COMPANY**;

**COTY, INC.** and its subsidiary NOXELL CORPORATION, for its CoverGirl line of products

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION-MIDDLESEX COUNTY

DOCKET NO. ____________________

CIVIL ACTION
ASBESTOS LITIGATION

ORIGINAL COMPLAINT AND DEMAND FOR TRIAL BY JURY

5107555.1

**CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY);

**CYPRUS MINES CORPORATION**;

**HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION);

**NOXELL** CORPORATION, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY, for its CoverGirl line of products;

**PFIZER INC.**;

**THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY and its CoverGirl line of products);

**SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.);

**UNION CARBIDE CORPORATION**;

**WHITTAKER CLARK & DANIELS, INC.**;

**JOHN DOE CORPORATIONS 1-50** (fictitious),

Defendants.

Plaintiffs CANDACE REGO as Executrix and Executrix ad Prosequendum for the Estate of SAMANTHA LEIGH GENTLE, Deceased, and ASHLEY REGO, by way of complaint against Defendants, allege and say:

5107555.1

**PARTIES – PLAINTIFF**

1. Plaintiff CANDACE REGO as Executrix and Executrix ad Prosequendum for the Estate of SAMANTHA LEIGH GENTLE, Deceased, is the surviving daughter of Decedent SAMANTHA GENTLE and resides at 2056 Stiffchapel Road, Pilot Point, Texas 76258.

2. Plaintiff ASHLEY REGO is the surviving daughter of Decedent SAMANTHA GENTLE and resides at 355 MC 8058, Yellville, Arkansas 72687.

3. Decedent SAMANTHA GENTLE (hereinafter "Decedent") died due to complications related to mesothelioma on or about October 6, 2019, caused by exposure to Defendants' asbestos-containing products, and/or asbestos-containing talc, and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades. A copy of the redacted Death Certificate is attached as Exhibit A and incorporated into this Complaint by reference.

4. Plaintiff CANDACE REGO was appointed Independent Executrix of the Estate of SAMANTHA GENTLE, Deceased, by the County Court of Grayson County, Texas, on May 18, 2020. A copy of the Letters Testamentary for the Estate of SAMANTHA GENTLE, Deceased, is attached as Exhibit B, and is incorporated into this Complaint by reference. Pursuant to N.J.S.A. 2A:31-2, the attached Letters of Authority For Personal Representative authorizes Plaintiff CANDACE REGO to bring this action against the Defendants referred to in this Complaint on behalf of Decedent SAMANTHA GENTLE and Decedent's survivors. Plaintiff brings this action pursuant to N.J.S.A. 2A:31-1, et seq. and 2A:15-3.

5. From approximately, Decedent SAMANTHA GENTLE was exposed to asbestos through her mother, Alma Gentle's, daily use of Johnson's Baby Powder on Decedent as an infant

from approximately 1965 to 1968 at their personal residences while residing in the following cities in Texas: Irving; Mesquite; Balch Springs; and Dallas. Decedent was also exposed to asbestos while being in close proximity to her mother during her mother's daily use of Avon talcum powders and Cashmere Bouquet talcum powder from approximately the 1970's to 1985 at their personal residences in the following cities: Mesquite, Texas; Irving, Texas; Balch Springs, Texas; Dallas, Texas; and Yellville, Arkansas. Additionally, Decedent was exposed to asbestos through her personal use of Johnson's Baby Powder from approximately 1974 to the mid-2000's at her personal residences in the following cities: Dallas, Texas; Yellville, Arkansas; Fort Smith, Arkansas; Sherman, Texas; and Denison, Texas. Decedent was also exposed to asbestos through her personal and regular use of CoverGirl face powder, CoverGirl powder foundation, CoverGirl blushes, and CoverGirl eyeshadows from approximately the 1980's to the late-2010's while residing in the following locations: Yellville, Arkansas; Fort Smith, Arkansas; Sherman, Texas; and Denison, Texas. Decedent SAMANTHA GENTLE's mother's regular and frequent use of Johnson's Baby Powder on Decedent as an infant, Decedent's mother's regular and frequent use of Avon talcum powder and Cashmere Bouquet talcum powder while in close proximity to Decedent, and Decedent's regular and frequent use of Johnson's Baby Powder and CoverGirl face powder, CoverGirl powder foundation, CoverGirl blushes, and CoverGirl eyeshadows generated asbestos-containing dust which exposed Decedent to respirable asbestos fibers.

6. From approximately 1965 to 1979, Decedent SAMANTHA GENTLE was exposed to asbestos through contact with her father, Ronald Gentle, and washing his work clothing during his work as a plasterer in the Texas area from approximately 1965 to 1973; all while residing in the following cities: Dallas, Texas; Irving, Texas; Mesquite, Texas; Balch Springs, Texas; and Yellville, Arkansas. Decedent was also exposed to asbestos through contact with her father, Ronald Gentle,

and washing his work clothing during his work as a plasterer, electrician, plumber and carpenter at various commercial jobsites in Yellville, Arkansas, from approximately 1976 to 1979, while residing in Yellville, Arkansas. His duties included, but were not limited to, mixing, spraying and applying U. S. Gypsum Plaster, Gold Bond Plaster, and Monokote Fireproofing. Decedent was also exposed to asbestos through contract with her father and his work clothing during his repair and maintenance of the family vehicles from approximately 1965 to 1979 at their personal residences in the following cities: Dallas, Texas; Mesquite, Texas; Balch Springs, Texas; and Yellville, Arkansas. Mr. Gentle's duties included, but were not limited to, removing and installing Bendix brakes. During these time periods, Mr. Gentle was also exposed to asbestos-containing talc supplied by Pfizer Inc. and asbestos fibers supplied by Union Carbide Corporation. While Decedent's father worked with asbestos-containing U. S. Gypsum Plaster, Gold Bond Plaster, Monokote Fireproofing, and Bendix brakes, dangerously high levels of asbestos fibers were released into the air at his work places. These fibers were carried home on his person and clothing and were frequently inhaled by Decedent SAMANTHA GENTLE through contact with her father and his work clothing.

7. As a direct and proximate result of the above exposures, Decedent SAMANTHA GENTLE contracted mesothelioma and suffered from various diverse injuries and attendant complications which resulted in her death.

8. Plaintiffs bring this action on behalf of the Estate of Decedent.

9. Decedent SAMANTHA GENTLE was caused to suffer severe, permanent and disabling personal injuries, expended sums of money for medical care and treatment, was prevented from pursuing her normal activities and employment, experienced severe pain and suffering and mental anguish, was deprived of her ordinary pursuits and enjoyment of life, suffered lost wages, earnings, severe pecuniary loss, and subsequently died.

10. Reference herein to "Decedent" and "Plaintiffs" are references to all the persons set forth above as is syntactically and contextually correct.

**PARTIES - DEFENDANTS**

1. Defendants are corporations organized under the laws of New Jersey and/or various states of the United States of America that were and are doing business in the State of New Jersey. The aforementioned Defendants mined, milled, designed, manufactured, sold, supplied, purchased, utilized and/or marketed asbestos-containing products, and/or asbestos-containing talc, and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent SAMANTHA GENTLE was exposed.

2. Defendants **AVON PRODUCTS, INC.**, **BARRETTS MINERALS INC.**, **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **COLGATE-PALMOLIVE COMPANY**, **COTY, INC.** and its subsidiary NOXELL CORPORATION, for its CoverGirl line of products, **CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY), **CYPRUS MINES CORPORATION**, **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION), **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY, for its CoverGirl line of products, **PFIZER INC.**, **THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to

NOXZEMA CHEMICAL COMPANY) for its CoverGirl line of products, **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.), **UNION CARBIDE CORPORATION**, and **WHITTAKER CLARK & DANIELS, INC.** were designers, manufacturers, suppliers or distributors of asbestos-containing products, and/or asbestos-containing talc, and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent SAMANTHA GENTLE was exposed.

3. Defendants, **JOHN DOE CORPORATIONS 1-50**, are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, supplied, purchased, marketed, utilized, installed and/or removed asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc, and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent SAMANTHA GENTLE was exposed.

4. The term "Defendants" is used hereafter to refer to all the entities named above.

5. Defendants conduct business in the State of New Jersey, and certain Defendants reside or maintain their principal offices in the State of New Jersey.

**FIRST COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

5107555.1

3. Defendants were engaged, directly or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades which Defendants knew or should have foreseen would be used with asbestos-containing products (hereinafter collectively referred to as "Defendants' Products").

4. Defendants, directly or indirectly, caused Defendants' Products to be sold to and/or used by Decedent SAMANTHA GENTLE and her family members at their personal residences, and at Decedent's father's jobsites.

5. Decedent SAMANTHA GENTLE, through her personal use and her family members' use, was exposed to and came in contact with Defendants' Products. Decedent SAMANTHA GENTLE inhaled the asbestos dust and fibers emanating from Defendants' Products.

6. As a direct and proximate result of Decedent SAMANTHA GENTLE's inhalation and ingestion of dust particles and fibers from Defendants' Products, Decedent developed permanent and disabling personal injuries and subsequently died.

7. During the time that Defendants mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, merchandised, distributed, and supplied Defendants' Products, Defendants knew, or in the exercise of reasonable care should have known, that Defendants' Products were defective, ultrahazardous, dangerous and otherwise highly harmful to Decedent SAMANTHA GENTLE.

8. Defendants knew, or in the exercise of reasonable care should have known, that the use of Defendants' Products would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach

and other bodily organs of users of Defendants' Products and to others breathing that air and coming into contact with Defendants' Products.

9. Decedent SAMANTHA GENTLE and her family members did not know the nature and extent of the injury that would result from Decedent's contact with and exposure to Defendants' Products or from the inhalation or ingestion of the asbestos dust and fibers.

10. Defendants knew, or in the exercise of reasonable care should have known, that Decedent SAMANTHA GENTLE and her family members would come into contact with and Decedent would be exposed to Defendants' Products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' Products by Decedent SAMANTHA GENTLE and her family members.

11. Despite the facts as set forth above, Defendants negligently, recklessly and intentionally:

(a) mined, milled, designed, manufactured, produced, processed, compounded, converted, utilized, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce Defendants' Products which Defendants knew, or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to Decedent SAMANTHA GENTLE;

(b) failed to take reasonable precautions or exercise reasonable care to warn Decedent SAMANTHA GENTLE and her family members adequately of the risks, dangers and harm to which Decedent would be exposed by exposure to, contact with, use and handling of Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(c) failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect Decedent SAMANTHA GENTLE from being injured, poisoned, disabled, killed or otherwise harmed by personally using, handling, coming into contact with, and being exposed to Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(d) failed to package Defendants' Products in a manner that would assure that Decedent SAMANTHA GENTLE would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(e) failed to advise Decedent SAMANTHA GENTLE, her family members, and other persons similarly situated of the necessity to adopt and enforce a safe, sufficient and proper method and plan of using, handling, coming into contact with and being exposed to Defendants' Products so that Decedent would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(f) ignored and/or suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders and other illnesses and diseases to individuals such as Decedent SAMANTHA GENTLE, and other persons similarly situated, who were exposed to Defendants' Products;

(g) disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(h) exposed and continued to expose Decedent SAMANTHA GENTLE and other persons similarly situated to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(i) failed to seek substitute materials in lieu of the use of asbestos;

(j) failed to advise Decedent SAMANTHA GENTLE, who Defendants knew or in the exercise of reasonable care should have known, had been exposed to, inhaled asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products: to cease further uncontrolled or unprotected exposure to Defendants' Products and the inhalation or ingestion of asbestos dust and fibers and all other kinds of smoke, dusts and fumes; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases.

12. Defendants otherwise acted negligently, recklessly and with intentional disregard for the welfare of Decedent SAMANTHA GENTLE in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce Defendants' Products.

13. As a direct and proximate result of the acts and omissions of Defendants, Decedent SAMANTHA GENTLE was exposed to and came in contact with Defendants' Products and inhaled asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent SAMANTHA GENTLE developed mesothelioma as a direct and proximate result of her exposure to Defendants' Products. Decedent SAMANTHA GENTLE endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and deprived of her

ordinary pursuits and enjoyments of life, suffered lost wages, earnings, severe pecuniary loss, and subsequent death.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**SECOND COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Defendants expressly or impliedly warranted that Defendants' Products, which they mined, milled, designed, manufactured, produced, compounded, converted, processed, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use, and safe for their intended purposes.

3. Defendants breached said warranties in that Defendants' Products were defective, ultrahazardous, dangerous, unfit for use, not merchantable and not safe for their intended, ordinary and foreseeable use and purpose.

4. As a direct and proximate result of Defendants' breach of warranties, Decedent SAMANTHA GENTLE was exposed to and came in contact with Defendants' Products and inhaled asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent SAMANTHA GENTLE was caused to suffer the injuries, expenses and losses, including severe pain and suffering, mental anguish, lost wages, earnings, severe pecuniary loss, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

5107555.1

**THIRD COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Defendants failed to disclose and intentionally and negligently misrepresented to Decedent SAMANTHA GENTLE and her family members the health risks created by the ordinary use of Defendants' Products.

3. Decedent SAMANTHA GENTLE and her family members relied upon said representations. Decedent SAMANTHA GENTLE's and her family members' reliance was foreseeable to Defendants.

4. As a result of Defendants' conduct, Decedent SAMANTHA GENTLE came in contact with Defendants' Products and inhaled asbestos dust and fibers from Defendants' Products. Decedent SAMANTHA GENTLE was caused to suffer the injuries, expenses and losses, including severe pain, suffering, mental anguish, lost wages, earnings, severe pecuniary loss, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**FOURTH COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Defendants are strictly liable to Plaintiffs and Decedent by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Decedent SAMANTHA GENTLE, her family members, and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent SAMANTHA GENTLE and other persons similarly situated;

(d) Throughout the many years that Decedent SAMANTHA GENTLE, her family members, and other similarly situated persons were exposed to and used Defendants' Products, said products reached users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' Products constituted a dangerous and ultrahazardous activity and created an unreasonable risk of injury to users and bystanders;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and were defective in that Defendants failed to give any and adequate warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products;

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by an ordinary user, and also because the risks of Defendants' Products outweigh their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

5107555.1

3. As a consequence of the defective condition of Defendants' Products and their failure to warn, Decedent SAMANTHA GENTLE inhaled asbestos dust and fibers during her and her family members' ordinary and foreseeable use of Defendants' Products. Decedent SAMANTHA GENTLE was caused to suffer the injuries, expenses and losses, including severe pain, suffering, mental anguish, lost wages, earnings, severe pecuniary loss, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**FIFTH COUNT**
**(PRODUCT LIABILITY ACT CLAIM AGAINST AVON PRODUCTS, INC., BARRETTS MINERALS INC., BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), COLGATE-PALMOLIVE COMPANY, COTY, INC. and its subsidiary NOXELL CORPORATION, for its CoverGirl brand of products, CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY), CYPRUS MINES CORPORATION, NOXELL CORPORATION, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY, for its CoverGirl line of products, PFIZER INC., THE PROCTER & GAMBLE COMPANY (sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY) for its CoverGirl line of products, SPECIALTY MINERALS INC. (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.), and WHITTAKER CLARK & DANIELS, INC.)**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Defendants are strictly liable to Plaintiffs and Decedent by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

5107555.1

(b) Defendants knew or had reason to know that Decedent SAMANTHA GENTLE, her family members, and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent SAMANTHA GENTLE and other persons similarly situated;

(d) Throughout the many years that Decedent SAMANTHA GENTLE, her family members, and other similarly situated persons were exposed to and used Defendants' Products, said products reached users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' Products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users and bystanders;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and were defective in that Defendants failed to give any and adequate warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products;

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by an ordinary user, and also because the risks of Defendants' Products outweigh their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

3. As a consequence of the defective condition of Defendants' Products and their failure to warn, Decedent SAMANTHA GENTLE inhaled asbestos dust and fibers during her and her family members' ordinary and foreseeable use of Defendants' Products. Decedent SAMANTHA GENTLE suffered the injuries, expenses and losses, including severe pain, suffering, mental anguish, lost wages, earnings, severe pecuniary loss, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**SIXTH COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Defendants acted in concert with each other and with other members of the industry through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(i) to withhold from users of Defendants' Products, and from persons who Defendants knew or should have known would be exposed to Defendants' Products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(ii) to eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust; and

(iii) to assure that Defendants' Products became widely used in industries such as personal hygiene, construction, automotive repair, and similar such industries.

3. Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures and promotion of

widespread use of Defendants' Products would expose persons such as Decedent SAMANTHA GENTLE to unreasonable risk of bodily injury.

4. Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the industry and assisted each other and other members of the industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of Defendants' Products would not be subjected to risk of injury; and promoting widespread use of Defendants' Products which Defendants knew would expose Decedent SAMANTHA GENTLE to unreasonable risk of bodily injury.

5. As a direct and proximate consequence of the concerted actions of Defendants and other members of the industry, Decedent SAMANTHA GENTLE was exposed to and came in contact with Defendants' Products, and inhaled asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent SAMANTHA GENTLE was caused to suffer the injuries, expenses and losses, including severe pain, suffering, mental anguish, lost wages, earnings, severe pecuniary loss, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgement interest, and costs of suit as provided by law.

**SEVENTH COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. The Defendants constitute all known, non-remote producers, designers, manufacturers, suppliers, and distributors of Defendants' Products which could have caused Decedent SAMANTHA GENTLE's injuries and subsequent death.

5107555.1

3. Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to Decedent SAMANTHA GENTLE, or otherwise engaged in culpable activity against Decedent SAMANTHA GENTLE. The acts and omissions of at least one of the Defendants caused Decedent SAMANTHA GENTLE to suffer the injuries, losses and expenses, and subsequent death as alleged in prior counts of this Complaint.

4. Plaintiffs CANDACE REGO as Executrix and Executrix ad Prosequendum for the Estate of SAMANTHA LEIGH GENTLE, Deceased, and ASHLEY REGO in no respect can be blamed should they be unable to establish which of Defendants' Products caused the injuries to Decedent SAMANTHA GENTLE complained of herein.

5. The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective products could not have caused Decedent's injuries and, failing such proof, Defendants should be held jointly, severally, or alternatively liable for Decedent SAMANTHA GENTLE's injuries and subsequent death.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgement interest, and costs of suit as provided by law.

**EIGHTH COUNT**

1. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

2. Plaintiff CANDACE REGO as Executrix and Executrix ad Prosequendum for the Estate of SAMANTHA LEIGH GENTLE, Deceased, is a surviving daughter of Decedent, and Plaintiff ASHLEY REGO is a surviving daughter of Decedent SAMANTHA GENTLE.

3. The Estate of Decedent SAMANTHA GENTLE was liable for and in fact paid for hospital, medical, funeral and burial expenses and charges for the Decedent.

4. Decedent SAMANTHA GENTLE left survivors who, at the time of her demise and by reason of his wrongful death, have suffered pecuniary losses.

5. Decedent SAMANTHA GENTLE left survivors who, at the time of her demise and by reason of her wrongful death, have suffered a loss of advice, guidance, counsel, society, services and companionship.

6. There is, and at the time of the illness hereinabove set forth, was in force and effect in the State of New Jersey a death statute known and designated as N.J.S.A. 2A: 31-1 through 6, and Plaintiffs bring this action pursuant to provisions thereof for the benefit of the next of kin of Decedent SAMANTHA GENTLE.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, and/or in the alternative for such damages, both compensatory and punitive, as may be permitted pursuant to the laws of the State of New Jersey, together with pre- and post-judgment interest thereon, costs of suit and attorney fees.

Plaintiffs hereby incorporate by reference all allegations set forth in the Standard Complaint, as amended, which is contained in the Asbestos Manual. A copy of the Asbestos Manual which contains the Standard Complaint can be obtained from the Middlesex County Mass Tort Clerk or by visiting the following website:

http://www.judiciary.state.nj.us/attorneys/assets/mcl/asbestos/asbestos_amended_std_complaint.pdf

5107555.1

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues.

**DEMAND FOR ANSWERS TO INTERROGATORIES**

Pursuant to the Asbestos Litigation General Order, Section VI.B. which can be found at http://www.njcourts.gov/attorneys/assets/mcl/asbestos/orders/generalorder1.pdf, Plaintiffs hereby demand that the above listed Defendants answer Standard Interrogatories in the form prescribed by the Court and within the time provided by the above referenced Order. A copy of the Standard Interrogatories are contained in the Asbestos Manual and may be obtained from the Clerk or by visiting the following website: http://www.judiciary.state.nj.us/attorneys/assets/mcl/asbestos/asbestosmanual050306.pdf .

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Robert Lytle, Esq., Leah Kagan, Esq., and Joseph Mandia, Esq. are hereby designated as trial counsel in this matter.

## CERTIFICATION

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated with the exception of a possible workers' compensation claim. I have no knowledge at this time of any non-party who should be joined in this action.

SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.

By: /s/ Robert E. Lytle

Robert Lytle
New Jersey Bar No. 046331990
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400

And

SIMON GREENSTONE PANATIER, PC.

By: /s/ Leah Kagan

Leah Kagan
New Jersey Bar No. 013602009
Joseph Mandia
New Jersey Bar No. 016652008
1201 Elm Street, Suite 3400
Dallas, TX 75270
(214) 276-7680

Dated: November 5, 2020

5107555.1

**EXHIBIT 1-F**

65977/0001-48205718v1

SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400
By: Robert E. Lytle (NJ ID No. 046331990)

SIMON GREENSTONE PANATIER, PC
1201 Elm Street, Suite 3400
Dallas, TX 75270
(214) 276-7680
By: Leah Kagan (NJ ID No. 013602009)
***Attorneys for Plaintiffs***

**SHAWN JONES**, Individually and as Administrator and Administrator ad Prosequendom of the Estate of **SHEILA RYAN,** Deceased,

Plaintiff,

v.

**AVON PRODUCTS, INC.**;

**BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**CHARLES B. CHRYSTAL COMPANY, INC.**;

**COTY, INC.** and its subsidiary NOXELL CORPORATION, for its CoverGirl brand of products;

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION-MIDDLESEX COUNTY

DOCKET NO. MID-L-04589-19 AS

CIVIL ACTION
ASBESTOS LITIGATION

**SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY**

**CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY);

**JOHNSON & JOHNSON**;

**JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of JOHNSON & JOHNSON;

**NOXELL CORPORATION** f/k/a NOXZEMA CHEMICAL COMPANY, a subsidiary of COTY INC., for its CoverGirl brand of products;

**PFIZER INC.**;

**THE PROCTER & GAMBLE COMPANY** (sued as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC. and sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY and its CoverGirl brand of products);

**SHULTON INC.** (sued individually and as successor to THE SHULTON GROUP and/or SHULTON, INC.);

**WHITTAKER CLARK & DANIELS, INC.**;

**WYETH HOLDINGS LLC** f/k/a WYETH HOLDINGS CORPORATION f/k/a AMERICAN CYANAMID COMPANY (sued individually and as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC.);

**CYPRUS MINES CORPORATION**;

**JOHN DOE CORPORATIONS 1-50** (fictitious),

Defendants.

Plaintiff, by way of Complaint against Defendants, upon information and belief allege as follows:

**PARTIES – PLAINTIFFS**

1. Plaintiff SHAWN JONES, Individually and as Administrator and Administrator ad Prosequendom of the Estate of Decedent SHEILA RYAN, resides at 1623 Thomas Toad, Ottawa, KS 6607.

2. SHAWN JONES is the spouse of Decedent SHEILA RYAN, who was diagnosed with mesothelioma, an asbestos-related cancer that was the cause of her death.

3. Decedent SHEILA RYAN ("Decedent" or "Ms. Ryan") died due to complications related to mesothelioma, on or about September 21, 2021, caused by exposure to Defendants' asbestos products. A copy of the Death Certificate is attached as **Exhibit A** and incorporated into this Complaint by reference.

4. Plaintiff SHAWN JONES was appointed Administrator of the Estate of Decedent SHEILA RYAN, by the State of Kansas, County of Franklin on October 12, 2021. A copy of the Plaintiff's Letters of Administration are attached as **Exhibit B**, and is incorporated into this Complaint by reference. Pursuant to N.J.S.A. 2A:31-2, the attached Certificate authorizes Plaintiff, SHAWN JONES to bring this actions against the Defendants referred to in this Complaint on behalf of Decedent, and Decedent's survivors. Plaintiff brings this action pursuant to N.J.S.A. 2A:31-1, et seq. and 2A;15-3. 2.

5. Decedent SHEILA RYAN was exposed to asbestos through her mother's and family members' daily use of Johnson's Baby Powder on Decedent as an infant from approximately 1962 to 1965, through her use of Johnson's Baby Powder on her infant nieces, nephews, great-nieces and great-nephews from approximately 1973 to 1982, and through her personal use of Johnson's Baby

Powder from approximately 1975 to the late 2000's. She was also exposed to asbestos through her personal use of Cover Girl face powder from approximately 1974 to 1984, and Avon Rare Gold talcum powder, Avon Soft Musk talcum powder, and Avon Timeless talcum powder from approximately 1984 to 1999. Decedent SHEILA RYAN's mother's and family members' regular and frequent use of Johnson's Baby Powder on Plaintiff as an infant, Decedent's regular and frequent use of Johnson's Baby Powder on her infant family members, and Decedent's regular and frequent personal use of Johnson's Baby Powder, Cover Girl face powder, Avon Rare Gold talcum powder, Avon Soft Musk talcum powder, and Avon Timeless talcum powder generated asbestos-containing dust and exposed Decedent SHEILA RYAN to respirable asbestos fibers.

6. As a direct and proximate result of the above exposures, Decedent SHEILA RYAN contracted mesothelioma and suffered from other various diverse injuries and attendant complications which resulted in her death.

7. Plaintiff brings this action on behalf of themselves.

8. Plaintiff claims damages as a result of:

_x_ loss of consortium (per quod)

_x_ loss of services

_x_ economic loss

_x_ pain and suffering

_x_ wrongful death

9. Reference herein to "Plaintiff" and "Decedent" are references to all the persons set forth above as is syntactically and contextually correct.

**PARTIES - DEFENDANTS**

10. Defendants are corporations organized under the laws of New Jersey and/or various states of the United States of America that were and are doing business in the State of New Jersey. The aforementioned Defendants mined, milled, designed, manufactured, sold, supplied, purchased, and/or marketed asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent SHEILA RYAN was exposed.

11. Defendants **AVON PRODUCTS, INC.**, **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **CHARLES B. CHRYSTAL COMPANY, INC.**, **COTY, INC.** and its subsidiary NOXELL CORPORATION, for its CoverGirl brand of products, **CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY), **CYPRUS MINES CORPORATION**, **JOHNSON & JOHNSON**, **JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of JOHNSON & JOHNSON, **NOXELL CORPORATION** f/k/a NOXZEMA CHEMICAL COMPANY, a subsidiary of COTY INC., for its CoverGirl brand of products, **PFIZER INC.**, **THE PROCTER & GAMBLE COMPANY** (sued as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC. and sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY and its CoverGirl brand of products), **SHULTON INC.** (sued individually and as successor to THE SHULTON GROUP

and/or SHULTON, INC.), **WHITTAKER CLARK & DANIELS, INC.**, and **WYETH HOLDINGS LLC** f/k/a WYETH HOLDINGS CORPORATION f/k/a AMERICAN CYANAMID COMPANY (sued individually and as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC.) were designers, manufacturers, suppliers or distributors of asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent SHEILA RYAN was exposed.

12. Defendants, **JOHN DOE CORPORATIONS 1-50**, are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos, and/or asbestos-containing products, and/or equipment requiring or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent SHEILA RYAN was exposed.

13. The term "Defendants" is used hereafter to refer to all the entities named above.

14. Defendants conduct business in the State of New Jersey, and certain Defendants reside or maintain their principal offices in the State of New Jersey.

**FIRST COUNT**

15. Plaintiff reiterates the facts and contentions as set forth above and repeat them herein.

16. Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

17. Defendants were engaged, directly or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, asbestos-containing products, and/or raw asbestos fiber of various kinds and grades which Defendants knew or should have foreseen would be used with asbestos-containing products (hereinafter collectively referred to as "Defendants' Products").

18. Defendants, directly or indirectly, caused Defendants' Products to be sold to or used by Decedent SHEILA RYAN and her family members in their personal residences.

19. Decedent SHEILA RYAN, during her Mother and family members' use on Decedent as an infant, during her use on her infant family members, and through her personal use was exposed to and came in contact with Defendants' Products. Decedent SHEILA RYAN inhaled or ingested the asbestos dust and fibers emanating from Defendants' Products.

20. As a direct and proximate result of Decedent SHEILA RYAN's inhalation of dust particles and fibers from Defendants' Products, Decedent developed permanent and disabling personal injuries and subsequently died.

21. During the time that Defendants mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, merchandised, distributed, and supplied Defendants' Products, Defendants knew, or in the exercise of reasonable care should have known, that Defendants' Products were defective, ultrahazardous, dangerous and otherwise highly harmful to Decedent SHEILA RYAN.

22. Defendants knew, or in the exercise of reasonable care should have known, that the use of Defendants' Products would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs of users of Defendants' Products and to others breathing that air and coming into contact with that dust.

23. Decedent SHEILA RYAN did not know the nature and extent of the injury that would result from contact with and exposure to Defendants' Products or from the inhalation or ingestion of the asbestos dust and fibers.

24. Defendants knew, or in the exercise of reasonable care should have known, that Decedent SHEILA RYAN would come into contact with and be exposed to Defendants' Products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' Products by Decedent SHEILA RYAN and her family members.

25. Despite the facts as set forth above, Defendants negligently, recklessly and intentionally:

(a) mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce Defendants' Products which Defendants knew or in the exercise of reasonable care should have known, were defective, dangerous, ultrahazardous and otherwise unreasonably harmful to Decedent SHEILA RYAN;

(b) failed to take reasonable precautions or exercise reasonable care to warn Decedent SHEILA RYAN and her family members adequately of the risks, dangers and harm to which Plaintiff would be exposed by exposure to, contact with, use and handling of Defendants' Products,

or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(c) failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect Decedent SHEILA RYAN from being injured, poisoned, disabled, killed or otherwise harmed by using, handling, coming into contact with and being exposed to Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(d) failed to package Defendants' Products in a manner that would assure that Decedent SHEILA RYAN would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(e) failed to advise Decedent SHEILA RYAN and her family members of the necessity to adopt and enforce a safe, sufficient and proper method and plan of using, handling, coming into contact with and being exposed to Defendants' Products so that Plaintiff would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(f) ignored and/or suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders and other illnesses and diseases to individuals, such as Decedent SHEILA RYAN and other persons similarly situated, who were exposed to Defendants' Products;

(g) disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(h) exposed and continued to expose Decedent SHEILA RYAN and other persons similarly situated to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(i) failed to seek substitute materials in lieu of the use of asbestos;

(j) failed to advise Decedent SHEILA RYAN who Defendants knew, or in the exercise of reasonable care should have known, had been exposed to, inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products; to cease further uncontrolled or unprotected exposure to Defendants' Products and the inhalation or ingestion of asbestos dust and fibers and all other kinds of smoke, dusts and fumes; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases.

26. Defendants otherwise acted negligently, recklessly and with intentional disregard for the welfare of Decedent SHEILA RYAN in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce Defendants' Products.

27. As a direct and proximate result of the acts and omissions of Defendants, Decedent SHEILA RYAN was exposed to and came in contact with Defendants' Products and inhaled asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent SHEILA RYAN developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent SHEILA RYAN endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and

employment and was deprived of her ordinary pursuits and enjoyments of life and subsequently died. Decedent SHEILA RYAN suffered lost wages and earnings and severe pecuniary loss, all to Decedent SHEILA RYAN's and Plaintiff's loss. Additionally, Plaintiff SHAWN JONES incurred funeral and burial expenses caused by Decedent SHEILA RYAN'S death.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**SECOND COUNT**

28. Plaintiff reiterates the facts and contentions as set forth above, and repeat them herein.

29. Defendants expressly or impliedly warranted that Defendants' Products, which they mined, milled, designed, manufactured, produced, compounded, converted, processed, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use and safe for their intended purposes.

30. Defendants breached said warranties in that Defendants' Products were defective, ultrahazardous, dangerous, unfit for use, not merchantable and not safe for their intended, ordinary and foreseeable use and purpose.

31. As a direct and proximate result of Defendants' breach of warranties, Decedent SHEILA RYAN was exposed to asbestos and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent SHEILA RYAN suffered the injuries, expenses and losses, including severe pain and suffering, mental anguish, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**THIRD COUNT**

32. Plaintiff reiterates the facts and contentions as set forth above, and repeat them herein.

33. Defendants failed to disclose and intentionally and negligently misrepresented to Decedent SHEILA RYAN and her family members the health risks created by the ordinary use of Defendants' Products.

34. Decedent SHEILA RYAN and her family members relied upon said representations. Decedent SHEILA RYAN's and her family members' reliance was foreseeable to Defendants.

35. As a result of Defendants' conduct, Decedent SHEILA RYAN came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers from Defendants' Products. Decedent SHEILA RYAN suffered the injuries, expenses and losses, including severe pain and suffering, mental anguish, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**FOURTH COUNT**

36. Plaintiff reiterates the facts and contentions as set forth above, and repeat them herein.

37. Defendants are strictly liable to Plaintiff by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Decedent SHEILA RYAN, her family members, and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent SHEILA RYAN and other persons similarly situated;

(d) Throughout the many years that Decedent SHEILA RYAN and other similarly situated persons were exposed to and used Defendants' Products, said products reached the users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' Products constituted a dangerous and ultrahazardous activity and created an unreasonable risk of injury to users and bystanders;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

(g) Defendant's Products were defectively designed because Defendant's Products are more dangerous than would be contemplated by an ordinary user, and also because the risks of Defendant's Products outweigh their benefits;

(h) Defendant's Products were defectively manufactured as they failed to comply with their own specification.

38. As a consequence of the defective condition of Defendants' Products and their failure to warn, Decedent SHEILA RYAN inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of Defendants' Products. Decedent SHEILA RYAN suffered the injuries, expenses and losses, including severe pain and suffering, mental anguish, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**FIFTH COUNT**
**(PRODUCT LIABILITY ACT CLAIM)**

39. Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

40. Defendants are strictly liable to Plaintiff by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Decedent SHEILA RYAN and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent SHEILA RYAN and other persons similarly situated;

(d) Throughout the many years that Decedent SHEILA RYAN, her family members, and other similarly situated persons were exposed to and used Defendants' Products, said products reached the users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' Products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users and bystanders;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

(g) Defendant's Products were defectively designed because Defendant's Products are more dangerous than would be contemplated by an ordinary user, and also because the risks of Defendant's Products outweigh their benefits;

(h) Defendant's Products were defectively manufactured as they failed to comply with their own specification.

41. As a consequence of the defective condition of Defendants' Products and their failure to warn, Plaintiff Decedent RYAN inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of Defendants' Products. Decedent SHEILA RYAN suffered the injuries, expenses and losses, including severe pain and suffering, mental anguish, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**SIXTH COUNT**

42. Plaintiff reiterates the facts and contentions as set forth above, and repeat them herein.

43. Defendants acted in concert with each other and with other members of the industry through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(i) to withhold from users of Defendants' Products, and from persons who Defendants knew or should have known would be exposed to Defendants' Products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(ii) to eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust; and

(iii) to assure that Defendants' Products became widely used in industries such as personal hygiene, infant care, and similar such industries.

44. Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures and promotion of widespread use of Defendants' Products would expose persons such as Decedent SHEILA RYAN to unreasonable risk of bodily injury and subsequent death.

45. Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the industry and assisted each other and other members of the industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not be subjected to risk of injury; and promoting widespread use of products which Defendants knew would expose Decedent SHEILA RYAN to unreasonable risk of bodily injury and subsequent death.

46. As a direct and proximate consequence of the concerted actions of Defendants and other members of the industry, Decedent SHEILA RYAN was exposed to and came in contact with Defendants' Products, and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent SHEILA RYAN suffered the injuries,

expenses and losses, including severe pain and suffering, mental anguish, and subsequent death as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgement interest, and costs of suit as provided by law.

**SEVENTH COUNT**

47. Plaintiff reiterates the facts and contentions as set forth above, and repeat them herein.

48. The Defendants constitute all known non-remote producers, designers, manufacturers, suppliers, and distributors of the asbestos-containing products which could have caused Decedent SHEILA RYAN's injuries and subsequent death.

49. Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to Decedent SHEILA RYAN, or otherwise engaged in culpable activity against Decedent SHEILA RYAN. The acts and omissions of at least one of the Defendants caused Decedent SHEILA RYAN to suffer the injuries, losses and expenses and subsequent death alleged in prior counts of this Complaint.

50. Decedent SHEILA RYAN in no respect can be blamed should she be unable to establish which of Defendants' Products caused the injuries complained of herein.

51. The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective products could not have caused Decedent SHEILA RYAN's injuries and subsequent death, and, failing such proof, Defendants should be held jointly, severally, or alternatively liable for Decedent SHEILA RYAN's injuries and subsequent death.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## EIGHTH COUNT

52. Plaintiff SHAWN JONES repeats the prior allegations of this Complaint.

53. Plaintiff SHAWN JONES is the spouse of Decedent SHEILA RYAN.

54. As consequence of the injuries and subsequent death of his respective spouse, Plaintiff SHAWN JONES has suffered loss of consortium, companionship, services, society and support.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally, and/or in the alternative for such damages, both compensatory and punitive, as may be permitted pursuant to the laws of the State of New Jersey, together with pre- and post-judgment interest thereon, costs of suit and attorney fees.

## NINTH COUNT

55. Plaintiff repeats the prior allegations of this Complaint.

56. The Estate of Decedent, SHEILA RYAN, was liable for and, in fact, paid for hospital, medical, funeral and burial expenses and charges for the Decedent.

57. The Decedent, SHEILA RYAN, left survivors who, at the time of her demise and by reason of her wrongful death, have suffered pecuniary losses.

58. There is, and at the time of the illness hereinabove set forth, there was in force and effect in the State of New Jersey a death statute designated as N.J.S.A. 2A:31-1 through 6, and Plaintiff brings this action pursuant to the provisions thereof for the benefit of the next of kin of Decedent, SHIELA RYAN.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally, and/or in the alternative, for such damages, both compensatory and punitive, as may be permitted pursuant to the laws of the State of New Jersey, together with pre- and post-judgment interest thereon, costs of suit and attorney fees.

Plaintiff hereby incorporates by reference all allegations set forth in the Standard Complaint, as amended, which is contained in the Asbestos Manual. A copy of the Asbestos Manual which contains the Standard Complaint can be obtained from the Middlesex County Mass Tort Clerk or by visiting the following website:

http://www.judiciary.state.nj.us/attorneys/assets/mcl/asbestos/asbestos_amended_std_complaint.pdf.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues.

**DEMAND FOR ANSWERS TO INTERROGATORIES**

Pursuant to the Asbestos Litigation General Order, Section VI.B. which can be found at http://www.njcourts.gov/attorneys/assets/mcl/asbestos/orders/generalorder1.pdf.

Plaintiff hereby demands that the above listed Defendants answer Standard Interrogatories in the form prescribed by the Court and within the time provided by the above referenced Order. A copy of the Standard Interrogatories are contained in the Asbestos Manual and may be obtained from the Clerk or by visiting the following website:

http://www.judiciary.state.nj.us/attorneys/assets/mcl/asbestos/asbestosmanual050306.pdf

**CERTIFICATION**

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated with the exception of a possible workers' compensation claim. I have no knowledge at this time of any non-party who should be joined in this action.

SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.

By: ______________________________
Robert Lytle
New Jersey Bar No. 046331990
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400

And

SIMON GREENSTONE PANATIER, PC

By: *__/s/ Leah Kagan__________________*
Leah Kagan
New Jersey Bar No. 013602009
1201 Elm Street, Suite 3400
Dallas, TX 75270
(214) 276-7680

Dated: November 15, 2021

**EXHIBIT 2-A**

65977/0001-48205718v1

Erica L. Falkner, CA Bar No. 286007
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone: (562) 590-3400
Facsimile: (562) 590-3412
E-mail: efalkner@sgptrial.com

Attorney for Plaintiff

FILED
Superior Court of California
County of Los Angeles
05/06/2024
David W. Slayton, Executive Officer / Clerk of Court
By: K. Sandoval Deputy

Electronically Received 05/01/2024 03:27 PM

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| Coordinated Proceeding<br>Special Title (Rule 3.550)<br><br>**LAOSD ASBESTOS CASES** | J.C.C.P. No. 4674<br><br>Los Angeles Superior Court<br>Case No. 23STCV25951 |
| **PATRICIA SNEIDER,**<br><br>Plaintiff,<br>vs.<br><br>**AVON PRODUCTS, INC.**, *et al.*<br><br>Defendants. | Coordination Trial Judge<br>The Honorable Timothy Patrick Dillon<br>Dept. 15<br><br>**~~[PROPOSED]~~ PREFERENCE TRIAL SETTING ORDER**<br><br>Action Filed: October 24, 2023<br>Trial Date: August 26, 2024 |

Plaintiff's Motion for Preference in Trial Setting, pursuant to Code of Civil Procedure, section 36, having been heard on April 30, 2024, the Court makes the following orders:

1. The Motion is granted.

2. This action is set for trial on **August 26, 2024 at 9:00 a.m. PST.**

3. A Final Status Conference (hereafter "FSC") is set on **August 12, 2024 at 9:00 a.m. PST**.

4. This Order supersedes all General Orders pertaining to discovery and trial readiness, except as to General Orders referenced to herein.

5. All service or pleadings and discovery shall be made and be controlled by Electronic Service Order dated October 25, 2011, except electronic service shall equal personal service for all items served no later than 5:00 p.m. PST.

6. Plaintiff represents that as of the date of this order, all defendants have been served, the time for answering the Complaint has passed, and plaintiff represents that the case is at-issue, or that any named defendant who has not appeared has waived at-issue status.

7. All percipient/fact discovery shall be completed no later than **August 5, 2024**. All responses to General Order Standard Interrogatories shall be due within thirty (30) days from the date of service of the interrogatories. All parties may propound case specific discovery at anytime after entry of this order, provided it is timely served with respect to the discovery cutoff. The hearings on all motions relating to percipient/fact discovery matters shall be held by **August 9, 2024**.

8. All expert discovery shall be completed no later than **August 16, 2024**. The hearings on all motions relating to those expert discovery matters shall be held not later than **August 21, 2024**.

9. Each party shall file and a list of the former testimony (as provided in First Amended General Order No. 36), which said party intends to use at trial, no later than **June 24, 2024**, ~~unless the parties stipulate otherwise~~. Any objections to said lists of former

testimony shall be filed and exchanged no later than **July 1, 2024**. Any response to the objections shall be due no later than **July 8, 2024**.

10. Parties are to file and serve page/line designations of all prior transcripts the party intends to rely upon at trial no later than **July 15, 2024**. Objections and counter-designations by no later than **July 22, 2024**. Any response to the objections and counter-designations shall be due no later than **July 29, 2024**. The responding party shall provide responses to the designating party's objections to the responding party's counter-designations shall be due no later than **August 5, 2024**.

11. Each party shall file in and exchange its motions *in limine* no later than **July 26, 2024**. Such motions *in limine* shall be filed in accordance with Second Amended General Order 37.00 adopted on September 7, 2007. Defendants shall conduct their meet and confer, as required under Second Amended General Order 37.00, no later than thirty-five (35) days before the Final Status Conference. The subsequent meet-and-confer of all parties under General Order 37.00 shall take place no later than 21 days before the Final Status Conference. For any motions *in limine* that are not yet ripe at the time of the filing deadline, such as expert-related motions *in limine*, the parties shall meet and confer regarding an agreed upon briefing schedule with a later filing deadline.

12. Any written opposition to motions *in limine* shall be filed and exchanged no later than **August 2, 2024**.

13. The hearings relating to the motions *in limine* will be conducted on **August 12, 2024**.

14. In this case, relevant bodily tissue and/or fluid samples do exist. If in plaintiff's possession, these samples will be made available to the defendants and their experts not later than 2 weeks from the granting of plaintiffs' motion for preference. The examinations by defendants of the samples shall be completed no later than **August 9, 2024**. All provisions of General Order No. 28 shall apply to this matter. With respect to available pathology, plaintiff's available tissue may be used for destructive testing, including an asbestos fiber burden analysis. Notice to all parties must be given prior to destructive testing. Each party

receiving tissue samples for testing shall preserve at least one-half (1/2) of tissue received by the party. Any tissue remaining after the parties have completed testing shall be returned to the medical facility from which it was obtained.

15. Provided plaintiff can physically attend, defendants may conduct an independent medical examination of the plaintiff at such time and place as the Plaintiff and Defendants will agree, but in no event later than **two weeks before trial**. With the exception of paragraph 4 thereof, the provisions of First Amended General Order No. 27 are applicable to this matter. Solely with respect to this case, the provision of paragraph 4 of General Order No. 27 is amended to read: The defense medical examiner shall prepare and deliver a written report relating to said examination to defendants' counsel. A copy of said report shall be provided to plaintiff or plaintiff's counsel no less than twenty-four (24) hours before the defense medical examiner is deposed, or, if not deposed, testifies at trial.

16. Summary judgment motions may be heard up to and including **August 19, 2024**. The parties **have not** agreed to waive the current 75-day notice provision of Code of Civil Procedure section 437c. Opposition and reply papers shall be served per Code of Civil Procedure, section 437c. The Parties have agreed to meet and confer regarding an altered briefing schedule on a Defendant-by-Defendant basis.

17. As of the date of this order, all parties to this action are deemed to have made a demand, pursuant to Code of Civil Procedure, section 2034.210 et seq., for the exchange of information relating to expert trial witnesses and all their discoverable reports and writings. The exchange of such information and reports and writings, modified by the provisions of paragraphs 15 and 16 of this order with respect to defense medical examinations and examination of bodily tissues and/or fluid samples, shall be completed by **August 5, 2024**. All parties who have participated in this designation of experts are deemed to have noticed the depositions of the opposing party's designated experts whom the opposing party intends to call to testify at the trial of this matter. Depositions of experts designated pursuant to Code of Civil Procedure Section 2034.210 et seq. shall be conducted promptly and in an orderly manner. Parties shall promptly offer their trial experts for

deposition and shall: (1) allow the opposing side at least until 5:00 p.m. on the second business day after the offer to respond to such an offer; and (2) provide a minimum of five (5) days notice of the offered deposition. Absent an order of the Court, or stipulation of the parties, the number of depositions of experts actually taken should not exceed three (3) per day. All reports prepared by any testifying expert concerning this matter must be produced to the other side, a minimum of seventy-two (72) hours prior to the commencement of that expert's deposition.

18. The parties shall meet and confer and submit joint witness lists, exhibit lists, proposed jury instructions, verdict form, and statement of the case to be read to the jury, no later than **August 7, 2024**.

19. If plaintiff has not already made available to defendants, for inspection and copying, all discoverable, non-privileged medical, employment, economic, rehabilitation, social security, and military records, which are in the possession or under the control of plaintiff or plaintiff's counsel; pursuant to General Order No. 23, those documents shall be made available to defendants a minimum of forty-eight (48) hours prior to the commencement of plaintiff's deposition or forty-eight (48) hours after the entry of this order, whichever is later.

20. If plaintiff has not previously furnished signed authorizations to defendants to allow defendants to obtain, inspect and/or copy from others all such records referenced in paragraph 21 above (of which plaintiff does not have in possession or control), those authorizations shall be made available to defendants no later than seven (7) days after the hearing on plaintiff's motion for preference.

21. Should any party fail to comply with any of the foregoing orders, any other party may move to compel compliance and request sanctions upon a shortened motion notice period of five (5) court days. Any opposition thereto must be filed and serve three (3) court days before the hearing. Any reply brief must be filed and served no later than noon on the court day before the hearing.

Case 2:24-cv-01216-MCS-AGR Document 1-1 Filed 03/20/24 Page 244 of 393 Page ID #:252

22. If a deadline to file serve and/or exchange any document under this Order falls on a weekend or holiday, the following court day is the operative deadline. No deposition shall take place on holidays or weekends absent stipulation of all parties.

23. Pursuant to section 2026.010 et seq. of the Code of Civil Procedure, any commissions necessary for the depositions of witnesses and/or production of documents or things in another state or nation are hereby issued, in advance, under the seal of this Court, directed to any person who is authorized to administer oaths by the laws of the United States, or by the laws of the jurisdiction in which the deposition is taken, and who is not otherwise disqualified under Code of Civil Procedure section 2025.320 to conduct the deposition of any such witnesses.

24. Plaintiff shall serve a conformed copy of this executed order on all remaining parties to this action within one day of receipt.

DATED: 05/06/2024

TIMOTHY PATRICK DILLON, JUDGE
LOS ANGELES SUPERIOR COURT
Timothy Patrick Dillon / Judge

**EXHIBIT 2-B**

**FILED**
September 15, 2023
**ANA C. VISCOMI, J.S.C.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY
**ASBESTOS LITIGATION**

LISA FRANK
(Estate of Judith Blankschaen),
*Plaintiff(s),*
vs.

JOHNSON & JOHNSON, et al
*Defendant(s).*

**Docket No: L-8377-18 (AS)**

**Civil Action**

**CASE MANAGEMENT ORDER VII**

This matter coming in for a Case Management Conference before Special Master Agatha N. Dzikiewicz and the following parties on *September 12, 2023*:

| FIRM | ATTORNEY | CLIENT |
|---|---|---|
| Levy Konigsberg | Amber Long | Plaintiff(s) |
| McCarter & English | John C. Garde | Johnson & Johnson |

IT IS on this **15th** day of **September 2023**, *effective from the conference date:*

**ORDERED** as follows:

Counsel receiving this Order through computerized electronic medium (E-Mail) shall be deemed by the court to have received a copy of the filed original court document. Any document served pursuant to this Order shall be deemed to be served by mail pursuant to *R.*1:5-2.

Defense counsel shall notify plaintiff's counsel within thirty (30) days of the date of this Order if their client was incorrectly named in the Complaint. Counsel may be barred from raising this defense at a later time for failure to comply.

Any jurisdictional motions must be filed in accordance with the Court Rules or be waived.

Any *forum non conveniens* motions must be filed as soon as practicable; once sufficient discovery is conducted so that the motion may be properly brought.

Trial Counsel designations are hereby waived due to the age of this case or extremis health condition of the plaintiff.

## DISCOVERY

| | |
|---|---|
| October 13, 2023 | Plaintiff shall propound supplemental interrogatories and document requests by this date. |
| November 30, 2023 | Defendants shall serve answers to supplemental interrogatories and document requests by this date. |
| October 13, 2023 | Defendants shall propound supplemental interrogatories and document requests by this date. |
| November 30, 2023 | Plaintiff shall serve answers to supplemental interrogatories and document requests by this date. |
| February 16, 2024 | Fact discovery, including depositions, shall be completed by this date. Plaintiff's counsel shall contact the Special Master within one week of this deadline if all fact discovery is not completed. |
| February 16, 2024 | Depositions of corporate representatives shall be completed by this date. |

## EARLY SETTLEMENT

| | |
|---|---|
| August 16, 2024 | Settlement demands shall be served on all counsel and the Special Master by this date. |

## MEDICAL EXPERT REPORTS

| | |
|---|---|
| May 31, 2024 | Plaintiff shall serve medical expert reports by this date. |
| May 31, 2024 | Upon request by defense counsel, plaintiff is to arrange for the transfer of pathology specimens and x-rays, if any, by this date. |
| July 31, 2024 | Defendants shall identify its medical experts and serve medical reports, if any, by this date. |

## LIABILITY EXPERT REPORTS

| | |
|---|---|
| May 31, 2024 | Plaintiff shall identify its liability experts and serve liability expert reports by this date or waive any opportunity to rely on liability expert testimony. |
| July 31, 2024 | Defendants shall identify its liability experts and serve liability expert reports, if any, by this date or waive any opportunity to rely on liability expert testimony. |

## ECONOMIST EXPERT REPORTS

| | |
|---|---|
| May 31, 2024 | Plaintiff shall identify its expert economists and serve expert economist report(s), if any, by this date or waive any opportunity to rely on economic expert testimony. |
| July 31, 2024 | Defendants shall identify its expert economists and serve expert economist report(s), if any, by this date or waive any opportunity to rely on economic expert testimony. |

**SUMMARY JUDGMENT MOTION PRACTICE**

August 30, 2024 — Summary judgment motions shall be filed no later than this date.

September 27, 2024 — Last return date for summary judgment motions.

**EXPERT DEPOSITIONS**

October 31, 2024 — Expert depositions shall be completed by this date. To the extent that plaintiff and defendant generic experts have been deposed before, the parties seeking that deposition in this case must file an application before the Special Master and demonstrate the necessity for that deposition. To the extent possible, documents requested in a deposition notice directed to an expert shall be produced three days in advance of the expert deposition. The expert shall not be required to produce documents that are readily accessible in the public domain.

**PRE-TRIAL AND TRIAL**

October 29, 2024 @ 10:00 a.m. — Settlement conference. All defense counsel shall appear with authority to negotiate settlement and have a representative authorized to negotiate settlement available by phone.

December 2, 2024 — Trial Date.

*Plaintiff(s) counsel shall serve a copy of this Order upon any additional counsel immediately upon receipt.*

/s/ Ana C. Viscomi
ANA C. VISCOMI, J.S.C.

**EXHIBIT 2-C**

65977/0001-48205718v1

The Philadelphia Courts
Civil Docket Access

No Items in Cart LOGOUT apicceril

Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 210902481 |
| **Case Caption:** | BOWERS JR. ETAL VS A.W. CHESTERTON COMPANY ETAL |
| **Filing Date:** | Friday , October 01st, 2021 |
| **Court:** | MASS TORT |
| **Location:** | CITY HALL |
| **Jury:** | JURY |
| **Case Type:** | MASS TORT - ASBESTOS |
| **Status:** | LISTED FOR TRIAL |

## Related Cases

*No related cases were found.*

## Case Event Schedule

| Event | Date/Time | Room | Location | Judge |
|---|---|---|---|---|
| TRIAL | 09-SEP-2024 09:00 AM | CITY HALL | COURTROOM 602 | *unassigned* |

## Case motions

| Motion | Assign/Date | Control No | Date/Received | Judge |
|---|---|---|---|---|
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063216 | 18-JUN-2024 | MASS TORT-ASBESTOS JUDGE |
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063285 | 18-JUN-2024 | MASS TORT-ASBESTOS JUDGE |
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063437 | 18-JUN-2024 | MASS TORT-ASBESTOS JUDGE |
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063438 | 18-JUN-2024 | MASS TORT-ASBESTOS JUDGE |
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063441 | 18-JUN-2024 | MASS TORT-ASBESTOS JUDGE |
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063561 | 18-JUN-2024 | MASS TORT-ASBESTOS JUDGE |
| MOTION FOR SUMMARY JUDGMENT | 12-JUL-2024 | 24063725 | 20-JUN-2024 | MASS TORT-ASBESTOS JUDGE |

**EXHIBIT 2-D**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JOSEFINA ALVAREZ,<br>Plaintiff,<br>vs.<br>BARRETTS MINERALS INC, *et al.*,<br>Defendants. | IN RE: ASBESTOS LITIGATION<br>CAUSE NO.: 2023L005583<br>CALENDAR J1 |

e-Served
by MyDocFileServe
2924712
Jan 05 2024 01:34 PM

4982

## SCHEDULING ORDER

This matter coming before the Court on motion to set trial and enter a scheduling order, due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1. This cause is set for trial on **Tuesday, September 10, 2024** at **10:00 a.m.** before Judge Patrick J. Sherlock in Room 2007 of the Richard J. Daley Center.

2. Plaintiff shall provide Defendants with answers to the standard master interrogatories in the form approved by this Court not later than **August 29, 2023.**

3. Plaintiff shall provide Defendants with responses to standard master production requests in the form approved by this Court not later than **August 29, 2023.**

4. Plaintiff shall supply Defendants with all records in their possession relating to medical treatment and any claims for lost earnings not later than **August 29, 2023.** In addition, Plaintiffs shall provide executed authorizations including executed HIPAA (45 C.F.R. 164.512 of the Health Insurance Portability and Accountability Act) authorizations, for medical records, union records, Social Administration records, death certificate if applicable, and military records not later than **July 30, 2023.**

5. Plaintiff shall appear for discovery depositions not later than **January 14, 2024.**

6. Upon the request of a Defendant, Plaintiff shall be produced for independent medical evaluations not later than **February 13, 2024.**

7. Upon the request of a Defendant, Plaintiff shall supply Defendants with all pathology materials and radiology films of any description in their possession not later than **March 14, 2024.** Upon any transfer of custody of such materials from Plaintiffs possession Plaintiffs shall send notice to all counsel of record an inventory of material and identity of

the counsel for Defendant to which it is transferred. No destructive testing of pathology material shall be conducted without leave of court.

8. All Rule 213(f)(l) product exposure, premises exposure, and lay witnesses on behalf of Plaintiffs (other than family members who will not offer product exposure testimony, as hereinafter provided) who are represented by Plaintiff's attorneys shall be produced for their discovery depositions not later than **March 29, 2024** by Plaintiff's counsel on notice and payment of the statutory witness fee, but without the necessity of a subpoena from Defendants.

9. Defendants shall issue a subpoena for the depositions of lay witnesses not represented by Plaintiff's counsel; all such depositions for completion not later than **March 29, 2024**; a subpoena from one Defendant for the deposition of any such lay witnesses shall be deemed served for all Defendants and enforceable by any Defendant. No deposition shall be considered cancelled unless all notices of the deposition have been withdrawn. A Defendant need not attend the deposition of a witness not disclosed in a particular case against that Defendant, and the testimony of such a witness shall be inadmissible against that Defendant at trial.

10. Plaintiff shall disclose the identities of all independent and controlled expert witnesses, and shall comply with the requirements of Supreme Court Rule 213(f)(2) and (3), not later than **April 13, 2024.**

11. The Plaintiff shall produce all prior deposition and trial testimony, including page and line designations, intended for use as substantive evidence not later than **June 12, 2024**.

12. The Defendants shall file objections and/or counter-designate by page and line all other passages in such deposition or trial transcripts which they intend to offer, not later than **August 27, 2024.** The parties may agree to extend such deadlines until a date closer to trial without the necessity of seeking leave of Court for such extension.

13. Defendants shall disclose the identities of all Rule 213(f)(l) lay witnesses expected to testify at trial on their behalf not later than **May 13, 2024.**

14. Plaintiff shall produce all Rule 213(f)(3) controlled expert witnesses for depositions, if requested by a Defendant, not later than **May 28, 2024.**

15. Defendants are hereby granted leave of Court to take the deposition of any treating physician disclosed in this case not later than **June 12, 2024.**

16. Upon the request of Plaintiff, those lay witnesses disclosed by a Defendant which are within its control shall be produced for deposition not later than **June 12, 2024.** Plaintiff shall issue a subpoena for the depositions of other fact witnesses, scheduling all such depositions for completion not later than **June 12, 2024.**

17. The Defendants shall produce all prior deposition and trial testimony, including page and

line designations, intended for use as substantive evidence not later than **July 27, 2024.** The Plaintiff and/or Co-Defendants shall file objections and/or counter designate by page and line all other passages in such deposition or trial transcripts which they intend to offer, not later than **August 27, 2024.** The parties may agree to extend such deadlines until a date closer to trial without the necessity of seeking leave of Court for such extensions.

18. Defendants shall disclose the identities and expected testimony of all independent and controlled expert witnesses consistent with Supreme Court Rule 213(f)(2) and (3) not later than **June 12, 2024.** If requested by the Plaintiff, all independent and controlled expert witnesses disclosed on behalf of Defendants shall be produced for depositions, not later than **July 12, 2024.**

19. Plaintiff shall file all motions pursuant to §2-604.1 not later than **July 12, 2024.** Defendants may file their response to any motions pursuant to §2-604.1 not later than **August 11, 2024.**

20. All motions for summary judgment shall be filed no later than **July 12, 2024.** Responses to motions for summary judgment shall be filed not later than fourteen (14) days after filing of a motion for summary judgment. All reply memoranda in support of summary judgment motions shall be filed not later than seven (7) days after filing of response.

21. Upon the request of any defendant made not later than **July 12, 2024** all family members of Plaintiff expected to testify at trial and not offering product exposure testimony shall be produced for depositions not later than **August 27, 2024.**

22. Plaintiff shall provide notice to all parties of the trial date and any change in the trial date. Plaintiff's counsel shall serve Defendants with Plaintiff's intended order of trial of the cases in each trial-set group no later than **August 31, 2024.**

23. Any evidence or testimony not timely disclosed or produced pursuant to this Order shall be inadmissible for any purpose at trial, except by stipulations of the parties or by further order of the Court. Motions to extend deadlines set forth in this order shall be filed prior to the expiration of the deadline and for good cause shown, unless otherwise agreed by the parties.

ENTERED:

Date:

ENTERED
Judge Patrick J. Sherlock-1942
JAN 03 2023
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

JUDGE

Firm ID No. 61194
MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Attorneys for Plaintiff
1165 N. Clark St., Suite 302
Chicago, IL 60610
Telephone: (314) 241-2003

# EXHIBIT 2-E

**FILED**
April 11, 2024
**ANA C. VISCOMI, J.S.C.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY
**ASBESTOS LITIGATION**

EST. OF SAMANTHA GENTLE,
*Plaintiff(s),*
vs.
AVON PRODUCTS, INC., et al
*Defendant(s).*

**Docket No:** **L-7729-20 (AS)**

**Civil Action**

**CASE MANAGEMENT ORDER IV**

This matter coming in for a Case Management Conference before Special Adjudicator Agatha N. Dzikiewicz and the following parties on *April 10, 2024*:

| FIRM | ATTORNEY | CLIENT |
|---|---|---|
| Simon Greenstone | Robert Ellis | Plaintiff(s) |
| Gibbons Law | Ethan D. Stein | Honeywell International, Inc. |
| Goldberg Segalla | Nicole Caspers | Coty, Inc.; Noxell Corp.; The P&G Company |
| O'Toole Scrivo | Gary D. Van Lieu | Colgate-Palmolive Company |

IT IS on this **11th** day of **April 2024**, *effective from the conference date:*

**ORDERED** as follows:

Counsel receiving this Order through computerized electronic medium (E-Mail) shall be deemed by the court to have received a copy of the filed original court document. Any document served pursuant to this Order shall be deemed to be served by mail pursuant to *R.*1:5-2.

Defense counsel shall notify plaintiff's counsel within thirty (30) days of the date of this Order if their client was incorrectly named in the Complaint. Counsel may be barred from raising this defense at a later time for failure to comply.

Any jurisdictional motions must be filed in accordance with the Court Rules or be waived.

Any *forum non conveniens* motions must be filed as soon as practicable; once sufficient discovery is conducted so that the motion may be properly brought.

Trial Counsel designations are hereby waived due to the age of this case or extremis health condition of the plaintiff.

**EARLY SETTLEMENT**

| | |
|---|---|
| August 30, 2024 | Settlement demands shall be served on all counsel and the Special Adjudicator by this date. |

**MEDICAL EXPERT REPORTS**

| | |
|---|---|
| July 3, 2024 | Plaintiff shall serve medical expert reports by this date. |
| July 3, 2024 | Upon request by defense counsel, plaintiff is to arrange for the transfer of pathology specimens and x-rays, if any, by this date. |
| September 3, 2024 | Defendants shall identify its medical experts and serve medical reports, if any, by this date. |

**LIABILITY EXPERT REPORTS**

| | |
|---|---|
| July 3, 2024 | Plaintiff shall identify its liability experts and serve liability expert reports by this date or waive any opportunity to rely on liability expert testimony. |
| September 3, 2024 | Defendants shall identify its liability experts and serve liability expert reports, if any, by this date or waive any opportunity to rely on liability expert testimony. |

**ECONOMIST EXPERT REPORTS**

| | |
|---|---|
| July 3, 2024 | Plaintiff shall identify its expert economists and serve expert economist report(s), if any, by this date or waive any opportunity to rely on economic expert testimony. |
| September 3, 2024 | Defendants shall identify its expert economists and serve expert economist report(s), if any, by this date or waive any opportunity to rely on economic expert testimony. |

**SUMMARY JUDGMENT MOTION PRACTICE**

| | |
|---|---|
| August 30, 2024 | Plaintiff's counsel shall advise, in writing, of intent not to oppose motions by this date. |
| September 13, 2024 | Summary judgment motions shall be filed no later than this date. |
| October 11, 2024 | Last return date for summary judgment motions. |

**EXPERT DEPOSITIONS**

| | |
|---|---|
| November 8, 2024 | Expert depositions shall be completed by this date. To the extent that plaintiff and defendant generic experts have been deposed before, the parties seeking that deposition in this case must file an application before the Special Adjudicator and demonstrate the necessity for that deposition. To the extent possible, documents requested in a deposition notice directed to an expert shall be produced three days in advance of the expert deposition. The expert shall not be required to produce documents that are readily accessible in the public domain. |

**PRE-TRIAL AND TRIAL**

| | |
|---|---|
| November 12, 2024@ 10:00 | Settlement conference. All defense counsel shall appear with authority to negotiate settlement and have a representative authorized to negotiate settlement available by phone**. (Settlement Conference on August 1, 2024 is cancelled.)** |
| December 9, 2024 | Trial Date. |

*Plaintiff(s) counsel shall serve a copy of this Order upon any additional counsel immediately upon receipt.*

/s/ Ana C. Viscomi
ANA C. VISCOMI, J.S.C.

# EXHIBIT 2-F

**FILED**
April 11, 2024
**ANA C. VISCOMI, J.S.C.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY
**ASBESTOS LITIGATION**

| | |
|---|---|
| EST. OF SHEILA RYAN, *Plaintiff(s),* vs. AVON PRODUCTS INC., et al *Defendant(s).* | **Docket No: L-4589-19 (AS)** **Civil Action** **CASE MANAGEMENT ORDER X** |

This matter coming in for a Case Management Conference before Special Master Adjudicator N. Dzikiewicz and the following parties on *April 10, 2024*:

| FIRM | ATTORNEY | CLIENT |
|---|---|---|
| Simon Greenstone | Christina Gutierrez | Plaintiff(s) |
| Goldberg Segalla | Nicole Caspers | Coty Inc.; P&G; Noxell Corp.; Shulton |
| Reilly McDevitt | Haley Matthes | Charles B. Chrystal Company, Inc. |

IT IS on this **11th** day of **April 2024**, *effective from the conference date:*

**ORDERED** as follows:

Counsel receiving this Order through computerized electronic medium (E-Mail) shall be deemed by the court to have received a copy of the filed original court document. Any document served pursuant to this Order shall be deemed to be served by mail pursuant to *R.*1:5-2.

Defense counsel shall notify plaintiff's counsel within thirty (30) days of the date of this Order if their client was incorrectly named in the Complaint. Counsel may be barred from raising this defense at a later time for failure to comply.

Any jurisdictional motions must be filed in accordance with the Court Rules or be waived.

Any *forum non conveniens* motions must be filed as soon as practicable; once sufficient discovery is conducted so that the motion may be properly brought.

Trial Counsel designations are hereby waived due to the age of this case or extremis health condition of the plaintiff.

**EARLY SETTLEMENT**

| | |
|---|---|
| August 30, 2024 | Settlement demands shall be served on all counsel and the Special Adjudicator by this date. |

**MEDICAL EXPERT REPORTS**

| | |
|---|---|
| July 3, 2024 | Plaintiff shall serve medical expert reports by this date. |
| July 3, 2024 | Upon request by defense counsel, plaintiff is to arrange for the transfer of pathology specimens and x-rays, if any, by this date. |
| September 3, 2024 | Defendants shall identify its medical experts and serve medical reports, if any, by this date. |

**LIABILITY EXPERT REPORTS**

| | |
|---|---|
| July 3, 2024 | Plaintiff shall identify its liability experts and serve liability expert reports by this date or waive any opportunity to rely on liability expert testimony. |
| September 3, 2024 | Defendants shall identify its liability experts and serve liability expert reports, if any, by this date or waive any opportunity to rely on liability expert testimony. |

**ECONOMIST EXPERT REPORTS**

| | |
|---|---|
| July 3, 2024 | Plaintiff shall identify its expert economists and serve expert economist report(s), if any, by this date or waive any opportunity to rely on economic expert testimony. |
| September 3, 2024 | Defendants shall identify its expert economists and serve expert economist report(s), if any, by this date or waive any opportunity to rely on economic expert testimony. |

**SUMMARY JUDGMENT MOTION PRACTICE**

| | |
|---|---|
| August 30, 2024 | Plaintiff's counsel shall advise, in writing, of intent not to oppose motions by this date. |
| September 13, 2024 | Summary judgment motions shall be filed no later than this date. |
| October 11, 2024 | Last return date for summary judgment motions. |

**EXPERT DEPOSITIONS**

| | |
|---|---|
| November 8, 2024 | Expert depositions shall be completed by this date. To the extent that plaintiff and defendant generic experts have been deposed before, the parties seeking that deposition in this case must file an application before the Special Adjudicator and demonstrate the necessity for that deposition. To the extent possible, documents requested in a deposition notice directed to an expert shall be produced three days in advance of the expert deposition. The expert shall not be required to produce documents that are readily accessible in the public domain. |

**PRE-TRIAL AND TRIAL**

| | |
|---|---|
| November 12, 2024 @ 10:00 | Settlement conference. All defense counsel shall appear with authority to negotiate settlement and have a representative authorized to negotiate settlement available by phone. **(Settlement Conference on June 26, 2024 is cancelled.)** |
| December 9, 2024 | Trial Date. |

*Plaintiff(s) counsel shall serve a copy of this Order upon any additional counsel immediately upon receipt.*

/s/ Ana C. Viscomi
ANA C. VISCOMI, J.S.C.

# EXHIBIT D

**[De Leo Declaration]**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L.A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Proc. No. 23-01245 (MBK) |

**DECLARATION OF ANTHONY DE LEO IN SUPPORT OF DEBTORS' <u>NINTH REQUEST FOR EXTENSION OF TEMPORARY RESTRAINING ORDER</u>**

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

I, Anthony De Leo, hereby declare under penalty of perjury:

**Introduction**

1. I am a Member of the law firm of Cole Schotz P.C., counsel for the debtors and debtors in possession in the above-captioned chapter 11 cases and plaintiffs in the above-captioned adversary proceeding (collectively, the "**Debtors**").

2. I submit this declaration (this "**Declaration**") in support of the *Debtors' Ninth Request for Extension of Temporary Restraining Order* (the "**Request**")[2] filed contemporaneously herewith.

3. The statements in this Declaration are based upon my personal knowledge, information, and belief. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. Attached hereto as **Exhibit 1** is a true and correct copy of the underlying complaint in the action styled *Lilo Cooper and Leslie Cooper v. Arkema, Inc., et al.*, Case No. 23STCV15823 (Cal. Super. Ct.).

5. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 31, 2024

*<u>/s/ Anthony De Leo</u>*
Anthony De Leo, Esq.
COLE SCHOTZ P.C.
1325 Avenue of the Americas
19th Floor
New York, NY 10019
Tel: (212) 752-8000
Fax: (212) 752-8393
Email: adeleo@coleschotz.com

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Request.

# EXHIBIT 1

*Lilo Cooper and Leslie Cooper v. Arkema, Inc., et al.*, Case No. 23STCV15823 (Cal. Super. Ct.)

STUART J. PURDY, CA Bar No. 239878
ALBERT OGANESYAN, CA Bar No. 285637
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone (562) 590-3400
Facsimile (562) 590-3412

JOHN M. CARON, Esq., CA Bar No. 130633
**THE LAW OFFICE OF WORTHINGTON & CARON, P. C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

Attorneys for Plaintiffs

**Electronically FILED by Superior Court of California, County of Los Angeles 7/07/2023 11:36 AM David W. Slayton, Executive Officer/Clerk of Court, By J. Nunez, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| **LILO COOPER** and **LESLIE COOPER**,<br><br>Plaintiffs,<br><br>vs.<br><br>**ARKEMA, INC.** f/k/a PENNWALT CORPORATION and ELF ATOCHEM NORTH AMERICA, INC. (sued individually and as successor-by-merger to WALLACE & TIERNAN d/b/a WTS PHARMACRAFT);<br>**AVENTIS INC.**;<br>**AVON PRODUCTS, INC.**;<br>**BARRETTS MINERALS INC.**;<br>**BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG;<br>**BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);<br>**BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);<br>**BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a | Case No. 23STCV15823<br><br>THIS ACTION CONSTITUTES COMPLEX ASBESTOS LITIGATION – SUBJECT TO THE GENERAL ORDERS CONTAINED IN FILE NO. C 700000 – DEPT. 59<br><br>**COMPLAINT FOR PERSONAL INJURY - ASBESTOS (NEGLIGENCE, STRICT LIABILITY, FRAUD, AND LOSS OF CONSORTIUM)** |

MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor to WHITTAKER CLARK & DANIELS, INC.);
**BROADVIEW INVESTMENTS, LLC**;
**CHANEL, INC.**;
**CHARLES B. CHRYSTAL COMPANY, INC.**;
**CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);
**CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.;
**COLGATE-PALMOLIVE COMPANY**;
**COLOR TECHNIQUES, INC.**;
**CONOPCO, INC.**, a subsidiary of UNILEVER UNITED STATES, INC. and d/b/a UNILEVER HOME & PERSONAL CARE USA (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS a/k/a CHESEBROUGH-POND'S USA CO.);
**COTY, INC.** (sued individually and for its subsidiary NOXELL CORPORATION);
**CROWN LABORATORIES, INC.**;
**DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC;
**EBRAND COMMERCE, INC.**;
**THE ESTEE LAUDER COMPANIES, INC.** (sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC.);
**ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC.;
**FISONS CORPORATION**;
**FIVE STAR FRAGRANCE COMPANY, INC.**;
**GALLERIA CO.**, a subsidiary of COTY, INC.;
**GLAXOSMITHKLINE LLC** (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);
**GSK CONSUMER HEALTH, INC.** f/k/a NOVARTIS CONSUMER HEALTH, INC. f/k/a CIBA SELF-MEDICATION, INC.;

**GUERLAIN, INC.**;
**HFC PRESTIGE PRODUCTS, INC.** f/k/a P&G PRESTIGE PRODUCTS, INC., COSMOPOLITAN COSMETICS USA, INC., INTERCOSMETICS INC, and MUELHENS, INC., successor-by merger to PAYOT, INC.);
**IMI FABI (DIANA) LLC**;
**IMI FABI, LLC**;
**IMI FABI (USA) INC.**;
**LA PRAIRIE, INC.**;
**L'OREAL USA, INC.**, sued individually and d/b/a MAYBELLINE;
**LVMH FRAGRANCE BRANDS US LLC** d/b/a GUERLAIN;
**LVMH MOET HENNESSY LOUIS VUITTON INC.** d/b/a GUERLAIN;
**LVMH PERFUMES AND COSMETICS INC.** d/b/a GUERLAIN;
**LVMH PERFUMES & COSMETICS LLC** d/b/a GUERLAIN;
**MARY KAY INC.**;
**MAYBELLINE LLC**;
**MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES and DR. SCHOLL'S;
**NINA RICCI USA, INC.**;
**NOVARTIS CORPORATION** (sued individually and as successor-in-interest to CIBA-GEIGY CORPORATION and its subsidiaries CIBA CONSUMER PHARMACEUTICALS and CIBA SELF-MEDICATION, INC.);
**NOXELL CORPORATION,** a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY (sued individually and as successor-in-interest to MAX FACTOR & COMPANY);
**PFIZER INC.**;
**PLAYTEX PRODUCTS, LLC** f/k/a PLAYTEX PRODUCTS INC. (sued individually and as successor-in-interest to ESMARK INC. and MAX FACTOR & COMPANY);
**PRESPERSE CORPORATION** (sued individually and d/b/a PRESPERSE INTERNATIONAL CORP);
**THE PROCTER & GAMBLE COMPANY** for its former subsidiary, GALLERIA CO. (sued individually and as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC., PLAYTEX PRODUCTS INC., NOXZEMA CHEMICAL COMPANY and MAX FACTOR & COMPANY);
**PUIG USA, INC.**;

**RANDALL'S FOOD & DRUGS, LP,** a subsidiary of ALBERTSONS COMPANIES INC.;
**RANDALL'S FOOD MARKETS, INC.,** a subsidiary of ALBERTSON'S COMPANIES INC.;
**SANOFI-AVENTIS U.S. LLC** (sued individually and as successor-by-merger to AVENTIS PHARMACEUTICALS INC.);
**SCHOLL'S WELLNESS COMPANY LLC**;
**SEPHORA USA, INC.**;
**SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.);
**STIEFEL LABORATORIES, INC.**, a division of GLAXOSMITHKLINE a/k/a GSK;
**UNILEVER UNITED STATES, INC.** (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS);
**THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.; and
**DOES 1-450**,

Defendants

## GENERAL ALLEGATIONS

COME NOW Plaintiffs **LILO COOPER** and **LESLIE COOPER** (hereinafter "Plaintiffs") and complain and allege as follows:

1. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs as hereinafter alleged.

2. At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of their Co-Defendants and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants: **ARKEMA, INC.** f/k/a PENNWALT CORPORATION and ELF ATOCHEM NORTH AMERICA, INC. (sued individually and as successor-by-merger to WALLACE & TIERNAN d/b/a WTS PHARMACRAFT); **AVENTIS INC.**; **AVON PRODUCTS, INC.**; **BARRETTS MINERALS INC.**; **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG; **BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY); **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor to WHITTAKER CLARK & DANIELS, INC.); **BROADVIEW INVESTMENTS, LLC**; **CHANEL, INC.**; **CHARLES B. CHRYSTAL COMPANY, INC.**; **CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY); **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC.; **COLGATE-PALMOLIVE COMPANY**; **COLOR TECHNIQUES, INC.**; **CONOPCO, INC.**, a subsidiary of UNILEVER UNITED STATES, INC. and d/b/a UNILEVER HOME & PERSONAL CARE USA (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS a/k/a CHESEBROUGH-POND'S USA CO.); **COTY, INC.** (sued individually and for its subsidiary NOXELL CORPORATION); **CROWN LABORATORIES, INC.**; **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC; **EBRAND COMMERCE, INC.**; **THE**

**ESTEE LAUDER COMPANIES, INC.** (sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC.); **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC.; **FISONS CORPORATION**; **FIVE STAR FRAGRANCE COMPANY, INC.**; **GALLERIA CO.**, a subsidiary of COTY, INC.; **GLAXOSMITHKLINE LLC** (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY); **GSK CONSUMER HEALTH, INC.** f/k/a NOVARTIS CONSUMER HEALTH, INC. f/k/a CIBA SELF-MEDICATION, INC.; **GUERLAIN, INC.**; **HFC PRESTIGE PRODUCTS, INC.** f/k/a P&G PRESTIGE PRODUCTS, INC., COSMOPOLITAN COSMETICS USA, INC., INTERCOSMETICS INC, and MUELHENS, INC., successor-by merger to PAYOT, INC.); **IMI FABI (DIANA) LLC**; **IMI FABI, LLC**; **IMI FABI (USA) INC.**; **LA PRAIRIE, INC.**; **L'OREAL USA, INC.**, sued individually and d/b/a MAYBELLINE; **LVMH FRAGRANCE BRANDS US LLC** d/b/a GUERLAIN; **LVMH MOET HENNESSY LOUIS VUITTON INC.** d/b/a GUERLAIN; **LVMH PERFUMES AND COSMETICS INC.** d/b/a GUERLAIN; **LVMH PERFUMES & COSMETICS LLC** d/b/a GUERLAIN; **MARY KAY INC.**; **MAYBELLINE LLC**; **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES and DR. SCHOLL'S; **NINA RICCI USA, INC.**; **NOVARTIS CORPORATION** (sued individually and as successor-in-interest to CIBA-GEIGY CORPORATION and its subsidiaries CIBA CONSUMER PHARMACEUTICALS and CIBA SELF-MEDICATION, INC.); **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY (sued individually and as successor-in-interest to MAX FACTOR & COMPANY); **PFIZER INC.**; **PLAYTEX PRODUCTS, LLC** f/k/a PLAYTEX PRODUCTS INC. (sued individually and as successor-in-interest to ESMARK INC. and MAX FACTOR & COMPANY); **PRESPERSE CORPORATION** (sued individually and d/b/a PRESPERSE INTERNATIONAL CORP); **THE PROCTER & GAMBLE COMPANY** for its former subsidiary, GALLERIA CO. (sued individually and as successor-in-interest to THE

SHULTON GROUP and/or SHULTON INC., PLAYTEX PRODUCTS INC., NOXZEMA CHEMICAL COMPANY and MAX FACTOR & COMPANY); **PUIG USA, INC.**; **RANDALL'S FOOD & DRUGS, LP**, a subsidiary of ALBERTSONS COMPANIES INC.; **RANDALL'S FOOD MARKETS, INC.**, a subsidiary of ALBERTSON'S COMPANIES INC.; **SANOFI-AVENTIS U.S. LLC** (sued individually and as successor-by-merger to AVENTIS PHARMACEUTICALS INC.); **SCHOLL'S WELLNESS COMPANY LLC**; **SEPHORA USA, INC.**; **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.); **STIEFEL LABORATORIES, INC.**, a division of GLAXOSMITHKLINE a/k/a GSK; **UNILEVER UNITED STATES, INC.** (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS); **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC.; and **DOES 1-450** inclusive, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Los Angeles, State of California.

3. Plaintiffs allege herein that Plaintiff LILO COOPER developed malignant mesothelioma as a result of her exposure to asbestos from Defendants' raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics including: **ARKEMA, INC.** f/k/a PENNWALT CORPORATION and ELF ATOCHEM NORTH AMERICA, INC. (sued individually and as successor-by-merger to WALLACE & TIERNAN d/b/a WTS PHARMACRAFT) (*for asbestos-containing Desenex Foot Powder*); **AVENTIS INC.** (*for asbestos-containing Desenex Foot Powder*); **AVON PRODUCTS, INC.** (*for asbestos-containing Avon talcum powders and cosmetics*); **BARRETTS MINERALS INC.** (*as a supplier of asbestos-containing talc*); **BAYER HEALTHCARE**

**LLC**, a subsidiary of BAYER AG (*for asbestos-containing Dr. Scholl's Foot Powder*); **BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) (*for asbestos-containing Gold Bond Medicated Body Powder*); **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) (*as a supplier of asbestos-containing talc*); **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor to WHITTAKER CLARK & DANIELS, INC.) (*as a supplier of asbestos-containing talc*); **BROADVIEW INVESTMENTS, LLC** (*for asbestos-containing Desenex Foot Powder*); **CHANEL, INC.** (*for asbestos-containing Chanel No. 5 Perfumed Bath Powder*); **CHARLES B. CHRYSTAL COMPANY, INC.** (*as a supplier of asbestos-containing talc*); **CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) (*for asbestos-containing Gold Bond Medicated Body Powder*); **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC. (*for asbestos-containing Clinique loose face powder, Clinique pressed face powder, Clinique eyeshadows and Clinique blushes*); **COLGATE-PALMOLIVE COMPANY** (*for asbestos-containing Cashmere Bouquet Body Powder*); **COLOR TECHNIQUES, INC.** (*as a supplier of asbestos-containing talc*); **CONOPCO, INC.**, a subsidiary of UNILEVER UNITED STATES, INC. and d/b/a UNILEVER HOME & PERSONAL CARE USA (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS a/k/a CHESEBROUGH-POND'S USA CO.) (*for asbestos-containing Faberge Brut Talc for Men*); **COTY, INC.** (sued individually and for its subsidiary NOXELL CORPORATION) (*for asbestos-containing CoverGirl loose face powder, CoverGirl pressed face powder, CoverGirl eyeshadows, CoverGirl blushes,*

*Coty Airspun Loose Face Powder, and Max Factor talcum powders, Max Factor loose face powders, Max Factor pressed face powders, Max Factor eyeshadows, Max Factor blushes, including the following: Max Factor, Geminesse, Pavlova, Pure Magic, Hypnotique, Aquarius, Khara, Primitif, Les Jardin, Epris and Halston*); **CROWN LABORATORIES, INC.** (*for asbestos-containing Desenex Foot Powder*); **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC (*for asbestos-containing Dr. Scholl's Foot Powder*); **EBRAND COMMERCE, INC.** (*as a supplier of asbestos-containing talc*); **THE ESTEE LAUDER COMPANIES, INC.** (sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC.) (*for asbestos-containing Clinique loose face powder, Clinique pressed face powder, Clinique eyeshadows, Clinique blushes, Estee Lauder loose face powder, Estee Lauder pressed face powder, Estee Lauder setting powder, Estee Lauder eyeshadows and Estee Lauder blushes*); **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE LAUDER COMPANIES, INC. (*for asbestos-containing Estee Lauder loose face powder, Estee Lauder pressed face powder, Estee Lauder setting powder, Estee Lauder eyeshadows and Estee Lauder blushes*); **FISONS CORPORATION** (*for asbestos-containing Desenex Foot Powder*); **FIVE STAR FRAGRANCE COMPANY, INC.** (*for asbestos-containing Pavlova talcum powder and cosmetics*); **GALLERIA CO.**, a subsidiary of COTY, INC. (*for asbestos-containing CoverGirl loose face powder, CoverGirl pressed face powder, CoverGirl eyeshadows, CoverGirl blushes, and Max Factor talcum powders, Max Factor loose face powders, Max Factor pressed face powders, Max Factor eyeshadows, Max Factor blushes, including the following: Max Factor, Geminesse, Pavlova, Pure Magic, Hypnotique, Aquarius, Khara, Primitif, Les Jardin, Epris and Halston*); **GLAXOSMITHKLINE LLC** (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) (*for asbestos-containing Gold Bond Medicated Body Powder*); **GSK CONSUMER HEALTH, INC.** f/k/a NOVARTIS CONSUMER HEALTH, INC. f/k/a CIBA SELF-MEDICATION, INC. (*for asbestos-containing Desenex Foot Powder*); **GUERLAIN, INC.** (*for asbestos-containing*

*Shalimar Perfumed Dusting Powder*); **HFC PRESTIGE PRODUCTS, INC.** f/k/a P&G PRESTIGE PRODUCTS, INC., COSMOPOLITAN COSMETICS USA, INC., INTERCOSMETICS INC, and MUELHENS, INC. successor-by merger to PAYOT, INC.) (*for asbestos-containing CoverGirl loose face powder, CoverGirl pressed face powder, CoverGirl eyeshadows, CoverGirl blushes, and Max Factor talcum powders, Max Factor loose face powders, Max Factor pressed face powders, Max Factor eyeshadows, Max Factor blushes, including the following: Max Factor, Geminesse, Pavlova, Pure Magic, Hypnotique, Aquarius, Khara, Primitif, Les Jardin, Epris and Halston*); **IMI FABI (DIANA) LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI, LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI (USA) INC.** (*as a supplier of asbestos-containing talc*); **LA PRAIRIE, INC.** (*for asbestos-containing La Prairie cosmetics*); **L'OREAL USA, INC.**, sued individually and d/b/a MAYBELLINE (*for asbestos-containing L'Oreal loose face powder, L'Oreal pressed face powder, L'Oreal eyeshadows, L'Oreal blushes and Maybelline cosmetics*); **LVMH FRAGRANCE BRANDS US LLC** d/b/a GUERLAIN (*for asbestos-containing Shalimar Perfumed Dusting Powder and as a supplier of asbestos-containing talc*); **LVMH MOET HENNESSY LOUIS VUITTON INC.** d/b/a GUERLAIN (*for asbestos-containing Shalimar Perfumed Dusting Powder*); **LVMH PERFUMES AND COSMETICS INC.** d/b/a GUERLAIN (*for asbestos-containing Shalimar Perfumed Dusting Powder*); **LVMH PERFUMES & COSMETICS LLC** d/b/a GUERLAIN (*for asbestos-containing Shalimar Perfumed Dusting Powder*); **MARY KAY INC.** (*for asbestos-containing Mary Kay loose face powder, pressed face powder, eyeshadows, blushes and talcum powders*); **MAYBELLINE LLC** (*for asbestos-containing Maybelline cosmetics*); **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES and DR. SCHOLL'S (*for asbestos-containing Dr. Scholl's Foot Powder*); **NINA RICCI USA, INC.** (*for asbestos-containing Nina Ricci L'Air du Temps talcum powder*); **NOVARTIS CORPORATION** (sued individually and as successor-in-interest to CIBA-GEIGY CORPORATION and its subsidiaries CIBA CONSUMER PHARMACEUTICALS and CIBA SELF-MEDICATION, INC.) (*for asbestos-containing Desenex Foot Powder*);

**NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY (sued individually and as successor-in-interest to MAX FACTOR & COMPANY) (*for asbestos-containing CoverGirl loose face powder, CoverGirl pressed face powder, CoverGirl eyeshadows, CoverGirl blushes, and Max Factor talcum powders, Max Factor loose face powders, Max Factor pressed face powders, Max Factor eyeshadows, Max Factor blushes, including the following: Max Factor, Geminesse, Pavlova, Pure Magic, Hypnotique, Aquarius, Khara, Primitif, Les Jardin, Epris and Halston*); **PFIZER INC.** (*for asbestos-containing Coty Airspun Loose Face Powder and as a supplier of asbestos-containing talc*); **PLAYTEX PRODUCTS, LLC** f/k/a PLAYTEX PRODUCTS INC. (sued individually and as successor-in-interest to ESMARK INC. and MAX FACTOR & COMPANY) (*for asbestos-containing Max Factor talcum powders, Max Factor loose face powders, Max Factor pressed face powders, Max Factor eyeshadows, Max Factor blushes, including the following: Max Factor, Geminesse, Pavlova, Pure Magic, Hypnotique, Aquarius, Khara, Primitif, Les Jardin, Epris and Halston*); **PRESPERSE CORPORATION** (sued individually and d/b/a PRESPERSE INTERNATIONAL CORP) (*as a supplier of asbestos-containing talc*); **THE PROCTER & GAMBLE COMPANY** for its former subsidiary, GALLERIA CO. (sued individually and as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC., PLAYTEX PRODUCTS INC., NOXZEMA CHEMICAL COMPANY and MAX FACTOR & COMPANY) (*for asbestos-containing CoverGirl loose face powder, CoverGirl pressed face powder, CoverGirl eyeshadows, CoverGirl blushes, Coty Airspun Loose Face Powder, and Max Factor talcum powders, Max Factor loose face powders, Max Factor pressed face powders, Max Factor eyeshadows, Max Factor blushes, including the following: Max Factor, Geminesse, Pavlova, Pure Magic, Hypnotique, Aquarius, Khara, Primitif, Les Jardin, Epris and Halston*); **PUIG USA, INC.** (*for asbestos-containing Nina Ricci L'Air du Temps talcum powder*); **RANDALL'S FOOD & DRUGS, LP**, a subsidiary of ALBERTSONS COMPANIES INC. (*as a supplier of asbestos-containing talcum powder and cosmetic products*); **RANDALL'S FOOD MARKETS, INC.**, a subsidiary of ALBERTSON'S COMPANIES INC. (*as a*

*supplier of asbestos-containing talcum powder and cosmetic products*); **SANOFI-AVENTIS U.S. LLC** (sued individually and as successor-by-merger to AVENTIS PHARMACEUTICALS INC.) (*for asbestos-containing Desenex Foot Powder*); **SCHOLL'S WELLNESS COMPANY LLC** (*for asbestos-containing Dr. Scholl's Foot Powder*); **SEPHORA USA, INC.** (*as a supplier of asbestos-containing talcum powder and cosmetic products*); **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) (*as a supplier of asbestos-containing talc*); **STIEFEL LABORATORIES, INC.**, a division of GLAXOSMITHKLINE a/k/a GSK (*for asbestos-containing Zeasorb powder*); **UNILEVER UNITED STATES, INC.** (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS) (*for asbestos-containing Faberge Brut for Men Talc*); and **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC. (*as a supplier of asbestos-containing talcum powder and cosmetic products*).

## <u>FIRST CAUSE OF ACTION</u>

(Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:

4. Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

5. At all times herein mentioned, each of the named Defendants and DOES 1 through 450 were the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-

containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics including, but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of or funded that researched, repaired, marketed, warranted, re-branded, manufactured for others and advertised Defendants' raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics. The following Defendants, and each of them, are liable for the acts of each and every "alternate entity" and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity;" Defendants, and each of them have acquired the assets, product line, or a portion thereof, of each such "alternate entity;" Defendants, and each of them have caused the destruction of Plaintiffs' remedy against each such "alternate entity;" each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

| **DEFENDANT** | **ALTERNATE ENTITY** |
| --- | --- |
| ARKEMA, INC. | PENNWALT CORPORATION<br>ELF ATOCHEM NORTH AMERICA, INC.<br>WALLACE & TIERNAN<br>WTS PHARMACRAFT |
| BLOCK DRUG COMPANY, INC. | THE GOLD BOND STERILIZING POWDER COMPANY<br>THE GOLD BOND COMPANY |

| | |
|---|---|
| BRENNTAG NORTH AMERICA, INC. | MINERAL PIGMENT SOLUTIONS, INC.<br>WHITTAKER, CLARK & DANIELS, INC. |
| BRENNTAG SPECIALTIES, LLC | BRENNTAG SPECIALTIES, INC.<br>MINERAL PIGMENT SOLUTIONS, INC.<br>WHITTAKER, CLARK & DANIELS, INC. |
| CHATTEM, INC. | SANOFI-AVENTIS U.S. LLC<br>BLOCK DRUG CORPORATION<br>THE GOLD BOND STERILIZING POWDER COMPANY<br>THE GOLD BOND COMPANY |
| CLINIQUE LABORATORIES LLC | CLINIQUE LABORATORIES, INC.<br>THE ESTEE LAUDER COMPANIES INC. |
| CONOPCO, INC. | UNILEVER UNITED STATES, INC.<br>UNILEVER HOME & PERSONAL CARE USA<br>CHESEBROUGH MANUFACTURING COMPANY<br>CHESEBROUGH-PONDS<br>CHESEBROUGH-POND'S USA CO. |
| COTY, INC. | NOXELL CORPORATION |
| DR. SCHOLL'S LLC | BAYER SAMSON II LLC |
| THE ESTEE LAUDER COMPANIES, INC. | LEN-RON MANUFACTURING CO. INC. |
| ESTEE LAUDER, INC. | THE ESTEE LAUDER COMPANIES, INC. |
| GALLERIA CO. | COTY, INC. |
| GLAXOSMITHKLINE LLC | BLOCK DRUG CORPORATION<br>THE GOLD BOND STERILIZING POWDER COMPANY<br>THE GOLD BOND COMPANY |
| GSK CONSUMER HEALTH, INC. | NOVARTIS CONSUMER HEALTH, INC.<br>CIBA SELF-MEDICATION, INC. |
| HFC PRESTIGE PRODUCTS, INC. | P&G PRESTIGE PRODUCTS, INC.<br>COSMOPOLITAN COSMETICS USA, |

| | |
|---|---|
| | INC.<br>INTERCOSMETICS INC.<br>MUELHENS, INC.<br>PAYOT, INC. |
| L'OREAL USA, INC. | MAYBELLINE |
| LVMH FRAGRANCE BRANDS US LLC | GUERLAIN |
| LVMH MOET HENNESSY LOUIS VUITTON INC. | GUERLAIN |
| LVMH PERFUMES AND COSMETICS INC. | GUERLAIN |
| LVMH PERFUMES & COSMETICS LLC | GUERLAIN |
| MERCK & CO., INC. | MERCK SHARP & DOHME LABORATORIES<br>DR. SCHOLL'S |
| NOXELL CORPORATION | COTY INC.<br>NOXZEMA CHEMICAL COMPANY<br>MAX FACTOR & COMPANY |
| NOVARTIS CORPORATION | CIBA-GEIGY CORPORATION<br>CIBA CONSUMER PHARMACEUTICALS<br>CIBA SELF-MEDICATION, INC. |
| NOXELL CORPORATION | COTY INC.<br>NOXEMA CHEMICAL COMPANY<br>MAX FACTOR & COMPANY |
| PLAYTEX PRODUCTS, LLC | PLAYTEX PRODUCTS INC.<br>ESMARK INC.<br>MAX FACTOR & COMPANY |
| PRESPERSE CORPORATION | PRESPERSE INTERNATIONAL CORP |
| THE PROCTER & GAMBLE COMPANY | GALLERIA CO.<br>THE SHULTON GROUP<br>SHULTON INC.<br>PLAYTEX PRODUCTS INC.<br>NOXZEMA CHEMICAL COMPANY<br>MAX FACTOR & COMPANY |
| RANDALL'S FOOD & DRUGS, LP | ALBERTSONS COMPANIES INC. |
| RANDALL'S FOOD MARKETS, INC. | ALBERTSONS COMPANIES INC. |
| SANOFI-AVENTIS U.S. LLC | AVENTIS PHARMACEUTICALS INC. |
| SPECIALTY MINERALS INC. | MINERALS TECHNOLOGIES INC. |

| | |
|---|---|
| STIEFEL LABORATORIES, INC. | GLAXOSMITHKLINE<br>GSK |
| UNILEVER UNITED STATES, INC. | CHESEBROUGH MANUFACTURING COMPANY<br>CHESEBROUGH-PONDS |
| THE VONS COMPANIES INC. | ALBERTSONS COMPANIES, INC. |

6. At all times herein mentioned, Defendants, their "alternate entities," and each of them were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing cosmetics (hereinafter collectively referred to as "Defendants' Products").

7. At all times herein mentioned, Defendants, their "alternate entities," and each of them singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to recall and/or retrofit, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products including, but not limited to, those Products identified in paragraph 3 above, in that Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to workers, users, consumers, bystanders, and others, including Plaintiff LILO COOPER (hereinafter collectively called "exposed persons"). Defendants' Products were used at all times in a manner that was reasonably foreseeable to Defendants, their

"alternate entities," and each of them, thereby rendering Defendants' Products unsafe and dangerous for use by "exposed persons." Plaintiffs herein allege that Plaintiff LILO COOPER's exposures to Defendants' Products including, but not limited to, those products identified in paragraph 3 above, were a substantial contributing factor in the development of her mesothelioma and therefore proximately caused Plaintiff LILO COOPER's illnesses, injuries, disabilities, and damages.

8. Defendants, their "alternate entities," and each of them had a duty to exercise reasonable care while engaging in the activities mentioned above and each Defendant breached said duty of reasonable care in that Defendants, and each of them failed to safely and adequately design, manufacture and/or sell Defendants' Products; failed to test Defendants' Products; failed to investigate the hazards of Defendants' Products; failed to warn "exposed persons," including Plaintiff LILO COOPER and her family members, of the health hazards of using Defendants' Products; failed to disclose the known or knowable dangers of using Defendants' Products; failed to warn of the harmful exposures caused by the use of Defendants' Products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

9. Defendants' Products were and are hazardous to the health and safety of Plaintiff LILO COOPER, her family members, and others in Plaintiff's position working with, using and in close proximity to Defendants' Products, and since on or before 1930, the hazards and dangerous propensities of Defendants' Products were both known and knowable to the Defendants, their "alternate entities," and each of them, through the use of medical and/or scientific data and other knowledge available to Defendants, their "alternate entities," and each of them, at the time of Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for others, packaging and advertising of Defendants' Products, which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to workers, users, handlers, and bystanders to

Defendants' Products, including Plaintiff LILO COOPER and her family members, through the intended and reasonably foreseeable use of Defendants' Products.

10. Defendants, their "alternate entities," and each of them knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

11. Defendants, their "alternate entities," and each of them knew, or reasonably should have known, that Defendants' Products would be worked with, handled, used, removed, mixed, swept or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed persons," including Plaintiff LILO COOPER herein, would be exposed to hazardous and dangerous asbestos fibers. Defendants, their "alternate entities," and each of them knew or reasonably should have known that workers, users and bystanders such as Plaintiff LILO COOPER, her family members and others in their positions working with, using and/or in close proximity to Defendants' Products would not realize or know the dangers. Defendants, their "alternate entities," and each of them negligently failed to adequately warn or instruct of the dangers of Defendants' Products and failed to recall and/or retrofit Defendants' Products. A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities," and each of them to warn was a substantial factor in causing harm to Plaintiff LILO COOPER, the nature of which is set forth in Exhibit "B" which is attached hereto and incorporated by reference herein.

12. Plaintiff LILO COOPER worked with, used, handled, and/or was in close proximity to or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to Defendants, and each of them. Plaintiff's exposure to Defendants' Products occurred at various locations set forth in Exhibit "A" which is attached hereto and incorporated by reference herein.

13. As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Plaintiff LILO COOPER's exposure to asbestos from the use of Defendant's Products caused her severe and permanent injury, the nature of which along with the date of Plaintiff LILO COOPER's diagnosis and the date she learned such injuries were attributable to exposure to Defendants' Products are set forth in Exhibit "B" which is attached hereto and incorporated by reference herein. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said diseases result from exposure to Defendants' Products over a period of time.

14. Plaintiff LILO COOPER suffers from malignant pleural mesothelioma caused by exposures to asbestos from Defendants' Products and/or from the use of Defendants' Products including those products identified in paragraph 3 above. Plaintiff was not aware at the time of her exposures that Defendants' Products presented any risk of injury and/or disease.

15. As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiff LILO COOPER has suffered and will continue to suffer pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to her general damage in a sum in excess of the jurisdictional limits of a limited civil case.

16. As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities," and each of them, Plaintiff LILO COOPER incurred, is presently incurring, and will incur in the future liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

17. As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities," and each of them, Plaintiff LILO COOPER has incurred and will incur loss of income, wages, profits and commissions, a diminishment of earning potential,

and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

18. Plaintiffs further allege that Defendants, their "alternate entities," and each of them also engaged in the following wrongful acts which support Plaintiffs' prayer for punitive damages.

(a) Defendants, their "alternate entities," and each of them suppressed from all workers, users, handlers, and bystanders, including Plaintiff LILO COOPER and her family members, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although Defendants, and each of them knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information of Defendants' Products from workers, users, handlers, and bystanders, in conscious disregard of the rights, safety and welfare of "exposed persons." including Plaintiff LILO COOPER.

(b) Defendants, their "alternate entities," and each of them belonged to, participated in, and financially supported industry organizations including, but not limited to, the Cosmetic Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation, and others, which for and on behalf of Defendants, their "alternate entities," and each of them actively promoted the suppression of information about the dangers of asbestos to workers, users, and handlers of, and bystanders to Defendants' Products, thereby misleading Plaintiff LILO COOPER and her family members as to the safety of Defendants' Products. Through their participation and association with such industry organizations, Defendants, and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in workers, users and handlers of, and bystanders to Defendants' Products a false security about the safety of Defendants' Products. The Dust Control Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times

regarding the dangers inherent in asbestos and the dangers which arose from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time.

(c) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities," and each of them herein. Between 1942 and 1950, the Defendants, their "alternate entities," and each of them failed to provide this information to workers, users, handlers, bystanders, and household members.

(d) Defendants, their "alternate entities," and each of them failed to warn Plaintiff and her family members and others of the nature of Defendants' Products which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them possessed knowledge and were under a duty to disclose that Defendants' Products were dangerous and a threat to the health of persons coming into contact therewith.

(e) Defendants, their "alternate entities," and each of them failed to provide Plaintiff LILO COOPER and her family members with information concerning adequate protective masks and other equipment devised to be used when working with, using, applying, mixing, sweeping and/or otherwise disturbing Defendants' Products and/or from the use of Defendants' Products, and those of their "alternate entities," and each of them despite knowing that such protective measures were necessary, and that Defendants were under a duty to disclose that Defendants' Products were dangerous and would result in injury to Plaintiff LILO COOPER and others working with, using, applying, mixing, sweeping, utilizing, and/or otherwise disturbing such materials.

(f) Defendants, their "alternate entities," and each of them knew and failed to

disclose that Plaintiff LILO COOPER and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer.

(g) Defendants, their "alternate entities," and each of them failed to provide information concerning the true nature of the hazards of Defendants' Products and that exposure to Defendants' Products would cause pathological effects without noticeable trauma to the public, including buyers, workers, users, household members, and physicians employed by Plaintiff LILO COOPER, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and each of them were under a duty to so inform and said failure was misleading.

19. Defendants, their "alternate entities," their officers, directors, managing agents and each of them participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of each of the acts set forth herein. Defendants, their "alternate entities," and each of them are liable for the oppressive and malicious acts of their "alternate entities," and each of them and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known of the acts of each of their "alternate entities" as set forth herein.

20. The herein-described conduct of said Defendants, their "alternate entities," and each of them was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff LILO COOPER, in that Defendants and each of them continued to manufacture, market and/or sell dangerous Defendants' Products known to cause asbestos to be released and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of Defendants' Products in order to continue to profit financially therefrom. Defendants, their "alternate entities," and each of them engaged in conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary

damages pursuant to Civil Code Section 3294. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

21. Defendants, and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to Plaintiffs LILO COOPER, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff LILO COOPER.

22. Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff LILO COOPER, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer, and mesothelioma, in conscious disregard of those persons' rights.

23. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities," and each of them, Plaintiff LILO COOPER sustained injuries, illnesses, disabilities, and damages alleges herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them as hereinafter set forth.

## SECOND CAUSE OF ACTION

(Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

24. Plaintiffs incorporate herein by reference as though fully set forth herein each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

25. **Strict Liability - Manufacturing Defect**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under manufacturing defect. Defendants and Does manufactured, sold, supplied, designed, or distributed Defendants' Products. The defects existed in all of Defendants' Products when they left the possession of the Defendants, their

"alternate entities," and each of them. These defects were a substantial factor in causing harm to Plaintiff LILO COOPER.

26. **Strict Liability - Design Defect - Consumer Expectations**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under the consumer-expectations test for placing defectively designed products into the stream of commerce and ultimately exposing Plaintiff LILO COOPER to asbestos from Defendants' Products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold Defendants' Products. Second, each Product did not perform as safely as an ordinary worker, user, and consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because each Product caused hazardous asbestos to become airborne and exposed Plaintiff LILO COOPER to asbestos. Third, Plaintiff LILO COOPER developed mesothelioma. Fourth, each Product's failure to perform safely was a substantial factor in causing Plaintiff LILO COOPER's mesothelioma.

27. **Strict Liability – Design Defect – Risk/Benefit**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under risk/benefit. Defendants, their alternate entities and Does manufactured, sold, supplied, designed, or distributed Defendants' Products. These defects were a substantial factor in causing harm to Plaintiff LILO COOPER.

28. **Strict Liability -- Failure to Warn**: Defendants, their "alternate entities," and each of them sold Defendants' Products, which were defective in that they failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of Defendants' Products, which dangers and risks would not have been and were not recognized by ordinary workers, users, and consumers of and bystanders to the Products, including Plaintiff LILO COOPER and her family members, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff LILO COOPER and others in her position who were working with, using, and/or in close proximity to Defendants' Products.

29. Defendants' Products were defective and unsafe for their intended purpose and

foreseeable use in that when worked with, used, handled, mixed, swept, or otherwise disturbed, Defendants' Products would result in the release, and therefore inhalation of hazardous and dangerous asbestos fibers by exposed persons, including Plaintiff LILO COOPER. These defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities," and each of them. At the time Defendants' Products were used by Plaintiff, her family members, and others in Plaintiff LILO COOPER's position working with, using, and in close proximity to or otherwise exposed to dust from Defendants' Products, said Products were substantially the same as when they left the possession of the Defendants, their "alternate entities," and each of them, and/or any changes made to Defendants' Products after they left the possession of Defendants, their "alternate entities," and each of them were reasonably foreseeable to Defendants, their "alternate entities," and each of them. Defendants' Products were used by Plaintiff LILO COOPER, her family members, and others in Plaintiff LILO COOPER's position working with, using and in close proximity to or otherwise exposed to dust from Defendants' Products in a way that was reasonably foreseeable to Defendants and each of them. The defect in Defendants' Products was a substantial factor in causing harm and personal injuries to Plaintiff LILO COOPER, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering Defendants' Products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

30. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff LILO COOPER suffered the injuries, illness, disabilities, and damages alleges herein.

## THIRD CAUSE OF ACTION

## FRAUD

AS AND FOR A FURTHER THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR FRAUD, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

31. **Fraudulent Misrepresentation**: All Defendants, Does 1-450, their "alternate entities," and each of them are liable for their fraudulent misrepresentations.

(a) First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not. The specific identities of these employees, agents, advertisements, or any other authorized persons or documents are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document-retention policies. While Plaintiffs do not currently know all of the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiffs will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

(b) Second, Defendants represented that the Products they manufactured, supplied, or specified for use were not hazardous to humans. These representations were made before and during the years that Plaintiff LILO COOPER and her family members purchased, and Plaintiff LILO COOPER was exposed to asbestos from Defendants' Products. Such representations were made either directly to Plaintiff LILO COOPER, her family members, or to a third party intending and reasonably expecting that the substance of those representations would be repeated to Plaintiff LILO COOPER and her family members.

(c) Third, Defendants knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

(d) Fourth, Defendants intended that Plaintiff LILO COOPER, her family members and/or the same class of persons as Plaintiff LILO COOPER and her family members rely on the representations or their substance.

(e) Fifth, Plaintiff LILO COOPER and her family members reasonably relied on Defendants' representations or the substance of these representations.

(f) Sixth, Plaintiff LILO COOPER developed mesothelioma.

(g) Seventh, Plaintiff LILO COOPER and her family members' reliance on those representations was a substantial factor in causing Plaintiff LILO COOPER to develop mesothelioma and the resulting damages thereto.

32. **Fraudulent Concealment (Nondisclosure)**: All Defendants, Does 1-450, their "alternate entities," and each of them are liable for their fraudulent concealment (nondisclosure).

(a) First, each of these Defendants made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendant and Plaintiff LILO COOPER and her family members. Specifically, Defendants stated that their Products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

(b) Second, Defendants (i) had exclusive knowledge of material facts not known to Plaintiff LILO COOPER and her family members (as set forth above), (ii) actively concealed those material facts from Plaintiff LILO COOPER and her family members, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose material facts which qualified those representations. Such nondisclosures included Defendants representing Defendants' Products to be safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the fact that Defendants' Products contained asbestos that would become airborne during the intended and foreseeable use of the Products, rendering them dangerous and unfit for their intended purpose.

(c) Third, each Defendant entered into a relationship and/or a transaction with Plaintiff LILO COPOPER and her family members sufficient to give rise to a duty to disclose. For example, Plaintiff LILO COOPER and her family members used Defendants' Products causing Plaintiff LILO COOPER to encounter said Products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity upon which Defendants derived a direct monetary benefit directly from Plaintiff LILO COOPER and her family members' purchase and use of the products. As for another example, Defendants directly advertised Defendants' Products to those in California and elsewhere as a symbol of freshness, cleanliness and purity. Defendants advertised and marketed Defendants' Products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, "clinically proven gentle and mild," and to promote beauty. The Defendants compelled individuals through advertisements to dust themselves with Defendants' Products to mask odors and promote beauty. Defendants derived direct monetary benefit from consumers' use of the products because Plaintiff LILO COOPER and her family members decided to purchase and use Defendants' products.

(d) Fourth, Plaintiff LILO COOPER and her family members did not know of the concealed material facts.

(e) Fifth, Defendants intended to deceive Plaintiff LILO COOPER and her family members by concealing material facts, and/or by making certain representations without disclosing additional facts that would have materially qualified those representations.

(f) Sixth, had the omitted information been disclosed, Plaintiff LILO COOPER and her family members reasonably would have behaved differently.

(g) Seventh, Plaintiff LILO COOPER developed mesothelioma.

(h) Eighth, each Defendant's concealment was a substantial factor in causing Plaintiff LILO COOPER's mesothelioma and the resulting damages thereto.

33. **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiffs hereby incorporate by reference the allegations of Paragraph 31 as if fully stated herein. All

Defendants, Does 1-450, their "alternate entities," and each of them are liable for their conspiracy to commit fraudulent misrepresentation.

(a). First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff LILO COOPER, her family members, and/or the same class of persons as Plaintiff LILO COOPER.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed.

(c) Third, Plaintiff LILO COOPER developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff LILO COOPER's mesothelioma and the resulting damages thereto.

34. **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: Plaintiffs hereby incorporate by reference the allegations of Paragraph 32 as if fully stated herein. All Defendants, Does 1-450, their "alternate entities," and each of them are liable for their conspiracy to commit fraudulent concealment.

(a) First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Plaintiff LILO COOPER, her family members and/or the same classes of persons as Plaintiff.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

(c) Third, Plaintiff LILO COOPER developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff LILO COOPER's mesothelioma and the resulting damages thereto.

35. **Knowledge of Hazards**: At all times pertinent hereto, all Defendants, Does 1-450, their "alternate entities," and each of them, owed Plaintiffs a duty, as provided for in Civil Code sections 1708, 1709, and 1710, to abstain from injuring Plaintiff LILO

COOPER's person, property, or rights. In violation of that duty, these Defendants, and each of them, committed these acts and omissions, when a duty to act was imposed as set forth herein, thereby proximately causing injury to Plaintiff LILO COOPER. Such acts and omissions consisted of acts falling within Civil Code sections 1708, 1709, and 1710, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact which were not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of material facts when a duty existed to disclose them, all more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiffs' rights as provided for in the aforementioned Code sections.

36. Since 1924, all of the Defendants have known and been in possession of the true material facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the Defendants' Products referred to herein were and are hazardous to the health and safety of Plaintiff LILO COOPER and others similarly situated. Defendants engaged in the following acts and omissions:

(a) did not label any of Defendants' Products as to the hazards of said Products to the health and safety of Plaintiff LILO COOPER, and others in her and her family members' positions using said Products when the knowledge of such hazards was existing and known to Defendants and each of them since 1924. By not labeling Defendants' Products as to their hazards. Defendants and each of them caused to be suggested as fact to Plaintiff LILO COOPER and her family members that it was safe for them to use said Products, when in fact these things were not true and Defendants did not believe them to be true;

(b) suppressed information relating to the danger of using Defendants' Products by requesting the suppression of information to Plaintiff LILO COOPER, her family members' class of persons, and the general public concerning the dangerous nature of Defendants' Products to all persons including users, bystanders, and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c) sold Defendants' Products to the public, including Plaintiff LILO COOPER, her family members and others in California and other states without advising them of the dangers of use of said Products to Plaintiff LILO COOPER when

Defendants knew of such dangers, as set forth herein and above, and had a duty to disclose them. Thus, Defendants caused to be positively asserted to Plaintiff LILO COOPER, her family members and the public that which was not true and which Defendants had no reasonable ground for believing to be true, in a manner not warranted by the information possessed by Defendants and each of them, to wit, that it was safe for Plaintiff LILO COOPER and her family members to use said Products and that Defendants' Products not pose a risk of harm;

(d) suppressed and continue to suppress from everyone, including Plaintiff LILO COOPER and her family members, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council, the results of a study conducted among tremolite, talc and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and the National Safety Council stated, "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicate of magnesium," in the September 1935 issue of National Safety News, in an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson. The article reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleges exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts;"

(e) belonged to, participated in, and financially supported the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, which actively promoted the suppression of information of danger to users of and bystanders to Defendants' Products for and on behalf of Defendants, and each of them, thereby misleading Plaintiff LILO COOPER and her family members to their prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times regarding (i) the dangers inherent in asbestos and the dangers which arise from the lack

of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiffs at this time;

(f) knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at the Raybestos-Manhattan plants in Manheim and Charleston, South Carolina. This information was disseminated through the ATI and other industry organizations to all other Defendants and each of them herein. Between 1942 and 1950, Defendants, and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as material fact that which is not true and disseminated other facts likely to and which did mislead Plaintiff LILO COOPER and her family members for want of communication of true material facts, which consisted of the previously described medical and scientific data and other knowledge when Defendants were bound to disclose them;

(g) failed to warn Plaintiff LILO COOPER, her family members, and others similarly situated regarding the nature of Defendants' Products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a...fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits. Unknown significant amounts of such material in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff LILO COOPER, her family members, and others similarly situated that Defendants' Products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that their Products were dangerous and a threat to the health of persons coming into contact therewith and were under a duty to disclose this information;

(h) concealed from Plaintiff LILO COOPER, her family members and others similarly situated the true nature of Plaintiff LILO COOPER's exposures, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff LILO COOPER would inhale this asbestos, significantly increasing her risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff LILO COOPER had in fact been exposed to respirable asbestos; that the Products to which Plaintiff LILO COOPER was exposed would cause pathological effects in the human body without noticeable or perceptible

trauma to warn her of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information;

(i) failed to provide information to the public at large and buyers, workers, users and physicians of Plaintiff LILO COOPER for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons, including Plaintiff, as to the dangers and risk of harm to which she was exposed; and

(j) affirmatively misrepresented that Defendants' Products were safe to use and handle, when Defendants knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

37. Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, Defendants, and each of them having such knowledge, knowing Plaintiff LILO COOPER and her family members did not have such knowledge and Plaintiff LILO COOPER would breathe asbestos from Defendants' Products innocently, was done falsely and fraudulently and with full intent to induce Plaintiff LILO COOPER to be in a dangerous environment and to cause her to remain unaware of the true material facts, all in violation of Civil Code sections 1708, 1709, and 1710.

## BASIS FOR PUNITIVE DAMAGES

38. **Malice, Oppression, and/or Fraud**: Plaintiffs hereby incorporate by reference the allegations of all causes of action as if fully stated herein. All Defendants, Does 1-450, their "alternate entities," and each of them, are liable for punitive damages because they engaged in the conduct that caused Plaintiffs harm with malice, oppression, or fraud.

(a) First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff LILO COOPER's asbestos exposures, and/or because their conduct was despicable and/or was done with a willful and knowing disregard of the rights and safety of others.

(b) Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff LILO COOPER to cruel and unjust hardship in knowing disregard of her rights.

(c) Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Plaintiff LILO COOPER, or with reckless disregard for whether their fraud would harm Plaintiff.

39. These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

40. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities," and each of them, Plaintiff LILO COOPER sustained the injuries, illnesses, disabilities, and damages alleged herein.

**FOURTH CAUSE OF ACTION**

(Loss of Consortium)

AS AND FOR A FURTHER FOURTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF LESLIE COOPER COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM AND ALLEGES AS FOLLOWS:

36. Plaintiff LESLIE COOPER incorporates by reference each and every allegation contained in the general allegations and in the First, Second and Third Causes of Action herein.

37. Plaintiffs LILO COOPER and LESLIE COOPER were married on December 20, 1992, and at all times relevant to this action were and are now husband and wife.

38. Prior to Plaintiff LILO COOPER's illnesses, injuries, and disabilities as herein alleged, she was able and did perform duties as a spouse. Subsequent to the illnesses, injuries, and disabilities and as a proximate result thereof, Plaintiff LILO COOPER has been unable to perform the necessary duties as a spouse and the work and services usually performed in

the care, maintenance, and management of the family home, and she will be unable to perform such work, service, and duties in the future. As a proximate result thereof, Plaintiff LESLIE COOPER has been permanently deprived and will be deprived of the consortium of his spouse, including the performance of duties, all to his damages, in an amount presently unknown but which will be proved at the time of trial.

39. Plaintiff LESLIE COOPER's discovery of this cause of his loss of consortium as herein alleged first occurred within one year of the date this Complaint was filed.

40. As a direct and proximate result of the acts of Defendants, their "alternate entities," and each of them, and the severe illnesses, injuries, and disabilities caused thereby to Plaintiff LILO COOPER as set forth in this Complaint, Plaintiff LESLIE COOPER has suffered, and for a long period of time will continue to suffer loss of consortium including, but not limited to, loss of services, marital relations, society, comfort, companionship, love and affection of his spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

41. WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff LILO COOPER:

1. For Plaintiff's general damages according to proof;
2. For Plaintiff's loss of income, wages, and earning potential according to proof;
3. For Plaintiff's medical and related expenses according to proof;
4. For Plaintiff's cost of suit herein;
5. For exemplary or punitive damages according to proof;

Plaintiff LESLIE COOPER:

6. For Plaintiff's damages for loss of consortium and/or society according to proof;

Plaintiffs LILO COOPER and LESLIE COOPER:

7. For Plaintiffs' cost of suit herein;

8. For exemplary or punitive damages according to proof;

9. For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED: July 7, 2023

**SIMON GREENSTONE PANATIER, PC**

By: ______________________
Stuart J. Purdy
Albert Oganesyan

JOHN M. CARON, Esq.
**THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

**ATTORNEYS FOR PLAINTIFFS**

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: July 7, 2023

**SIMON GREENSTONE PANATIER, PC**

By: 
Stuart J. Purdy
Albert Oganesyan

JOHN M. CARON, Esq.
**THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

**ATTORNEYS FOR PLAINTIFF**

**EXHIBIT "A"**

Plaintiff LILO COOPER's exposure to Defendants' Products occurred at various locations within the States of California and Missouri including, but not limited to:

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in Missouri, including the following: St. Louis, Missouri; Baldwin, Missouri. Various Residences in California, including: Palm Springs, California; Rancho Mirage, California. | Personal use of asbestos-containing talcum powder products and cosmetics | Approximately 1949 - 2022 |

**EXPOSURE THROUGH PLAINTIFF LILO COOPER'S MOTHER, AGNES SCHUSTER, DECEASED**

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in St. Louis, Missouri | AGNES SCHUSTER's use of asbestos-containing talcum powder and cosmetic products while in close proximity to Plaintiff LILO COOPER. | Approximately 1948 to 1961 |

**EXPOSURE THROUGH PLAINTIFF LILO COOPER'S PREVIOUS SPOUSE, ROBERT BRAUN**

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in St. Louis, Missouri | ROBERT BRAUN's use of asbestos-containing talcum powder while in close proximity to Plaintiff LILO COOPER. | Approximately 1961 to 1981 |

**EXPOSURE THROUGH PLAINTIFF LESLIE COOPER**

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in Missouri and California | LESLIE COOPER's use of asbestos-containing talcum powder while in close proximity to Plaintiff LILO COOPER. | Approximately 1984 to 2022 |

**EXPOSURE THROUGH PLAINTIFF LILO COOPER'S FATHER, RAYMOND**

**SCHUSTER**

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| Various Residences in Missouri | LILO COOPER's household exposure, including laundering of her father RAYMOND SCHUSTER's work clothes while employed at McDonnell Aircraft. | 1948-1961 |

**EXHIBIT "B"**

Plaintiff LILO COOPER's exposure to Defendants' Products caused severe and permanent injury to Plaintiff including, but not limited to, mesothelioma. Plaintiff was diagnosed with mesothelioma on or about March 14, 2023.

# EXHIBIT 8

E-SERVICE
74370388
Sep 19 2024
10:45AM
File & ServeXpress™

Leah C. Kagan, CA Bar No. 283925
Erica L. Falkner, CA Bar No. 286007
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone: (562) 590-3400
Facsimile: (562) 590-3412
Email: efalkner@sgptrial.com

Attorneys for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| Coordinated Proceeding<br>Special Title (Rule 3.550)<br><br>**LAOSD ASBESTOS CASES** | J.C.C.P. No. 4674<br><br>Los Angeles Superior Court<br>Case No. 23STCV25951 |
| **PATRICIA SNEIDER**.<br><br>Plaintiff,<br>vs.<br><br>**AVON PRODUCTS, INC.**, *et al.*,<br><br>Defendants. | Coordination Trial Judge<br>The Honorable Timothy Patrick Dillon, Dept. 15<br><br>**NOTICE OF TEMPORARY STAY**<br><br>Action Filed: October 24, 2023<br>Trial Date: August 26, 2024 |

**TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD**:

Counsel for Plaintiff Patricia Sneider, having appeared on September 18, 2024 before the Honorable Michael B. Kaplan, Chief Judge, United States Bankruptcy Court, to object to Ms. Sneider's action against Brenntag Specialties, LLC ("Brenntag") being included on Debtor Whittaker, Clark & Daniels, Inc.'s request for an extension of the Temporary Restraining Order ("TRO"), reports the following:

1. Judge Kaplan has temporarily extended the TRO to stay litigation against Brenntag in Ms. Sneider's matter until October 15, 2024;

2. Judge Kaplan will issue a ruling regarding whether to continue to stay Ms. Sneider's matter beyond October 15, 2024 on October 15, 2024.

Accordingly, Plaintiff cannot continue to litigate against Brenntag in this matter unless and until Judge Kaplan sustains her objection on October 15, 2024 or grants relief otherwise agreeable to Judge Kaplan. Plaintiff has no claims remaining against any other defendant.

DATED: September 19, 2024

SIMON GREENSTONE PANATIER, PC

By: ______________________

Leah C. Kagan
Erica L. Falkner
Attorneys for Plaintiff

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over eighteen years of age and not a party to the within action; my business address is 3760 Kilroy Airport Way, Suite 680, Long Beach, California. I am employed in Los Angeles County, California.

On the date set forth below, I served a true and correct copy of the foregoing document(s) described as:

**NOTICE OF TEMPORARY STAY**

On all interested parties in this action stated below via the following means of service:

**[XX] BY E-SERVICE:** I caused such document to be transmitted by electronic service via File&ServeXpress for the same day delivery to the offices of the addressee(s). See File&ServeXpress Service List.

I declare under penalty of perjury, under the laws of the State of California that the above is true and correct. Executed on September 19, 2024 at Long Beach, California.

Jenna Sanchez

# EXHIBIT 9

E-SERVICE
71487819
Nov 27 2023
05:28PM
File & ServeXpress™

Erica L. Falkner, CA Bar No. 286007
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone: (562) 590-3400
Facsimile: (562) 590-3412
Email: efalkner@sgptrial.com

Attorney for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| Coordinated Proceeding<br>Special Title (Rule 3.550)<br><br>**LAOSD ASBESTOS CASES** | J.C.C.P. No. 4674<br><br>Los Angeles Superior Court<br>Case No. 23STCV25951 |
| **PATRICIA SNEIDER**,<br><br>Plaintiff,<br>vs.<br><br>**AVON PRODUCTS, INC**, *et al*.,<br><br>Defendants. | Coordination Trial Judge<br>The Honorable Laura A. Seigle,<br>Dept. 15<br><br>**PLAINTIFF'S RESPONSES TO GENERAL ORDER STANDARD INTERROGATORIES PROPOUNDED BY DEFENDANTS**<br><br>Action Filed: October 24, 2023<br>Trial Date: *None Assigned* |

PROPOUNDING PARTY: DEFENDANTS

RESPONDING PARTY: PLAINTIFF PATRICIA SNEIDER

# INTERROGATORIES

## I. BACKGROUND

1. State YOUR full name, present address, date and place of birth, social security number, height, and weight, and, if YOU have a driver's license, the state of issuance and the number of that driver's license.

**RESPONSE TO NO. 1:**

**Name: Patricia Sneider**

**Address: 25439 Shelley Pl, Stevenson Ranch CA 91381**

**Date/Location of Birth: August 31, 1962 / Mexico City, Mexico**

**Social Security No.: WITHHELD**

**Height/Weight: 5'6" / 118 lbs**

**Driver's License: A7986997, CA**

2. State any other name or names by which YOU have been known, including nickname(s), and the inclusive dates of use of that name or names.

**RESPONSE TO NO. 2:**

**Patricia Martínez de Velasco**

3. State all YOUR former residence addresses, including street address, city, state, and zip code, that YOU have lived at during YOUR lifetime, giving the dates during which YOU lived at each address and the names of each PERSON and relationship to YOU who lived with YOU at each address.

**RESPONSE TO NO. 3:**

- **Los Angeles, California (1990 – present)**
- **Mexico City, Mexico (1976 – 1990)**
- **Pacific Grove, California (1976 - approximately 4 months)**
- **Paris, France (1974 - approximately 5 months)**
- **Mexico City, Mexico (1971)**
- **Quebec, Canada (1970 - 1971)**
- **Mexico City, Mexico (1962 – 1970)**

4. If YOU are married, state the name of YOUR spouse, her/his age and present address (if different from YOUR address), and the date and place of YOUR marriage. If YOUR spouse is currently employed, state:

a. The name and address of his/her employer;

b. Whether he/she is employed on full or part time basis; and

c. The amount of his/her average weekly or monthly salary.

**<u>RESPONSE TO NO. 4</u>:**

**Plaintiff is divorced.**

5. State the names of any previous spouses, the dates and places of those marriages, and the dates those marriages were dissolved or terminated. If the marriage was terminated by a divorce, state the county and state in which the divorce papers were filed.

**<u>RESPONSE TO NO. 5:</u>**

**Roberto Sneider**

**Date and place of marriage: May 19, 1990 – Cuernavaca, Mexico**

**Divorced in 2018**

6. State the names, ages and present addresses of each of YOUR children.

**<u>RESPONSE TO NO. 6:</u>**

**Carla Sneider, age 28, DOB May 7, 1995 - Palo Alto, CA.**

**Daniel Sneider, age 24, DOB November 14, 1998 - Wisconsin.**

7. State the names, ages and present addresses of each of YOUR parents. If they are deceased, indicate their age at death and cause of death.

**<u>RESPONSE TO NO. 7:</u>**

**Father: Carlos Martinez de Velasco – 85 years old**

**Mother: Velez - passed away from complications of MS in 2022.**

8. State all schools including vocational programs YOU have attended since elementary/grade school up to the highest grade level YOU have completed, together with the date completed, name and LOCATION of the school YOU attended, and any degree or certificate YOU received from each school.

**<u>RESPONSE TO NO. 8:</u>**

**Plaintiff completed school in Mexico.**

**Patricia attended the Universidad Iberoamericana in Mexico from approximately 1980 to 1984. She graduated with honors with a bachelor's degree in communication science and a minor in film.**

**Patricia attended Centro de Capacitación Cinematográfica, she graduated as a filmmaker, with honors, in 1990.**

9. If YOU have been or are licensed by any agency, governmental or nongovernmental, to perform any profession, trade or occupation, state the following:

a. The date the license was issued;

b. The name and address of the agency issuing the license;

c. The profession, trade or occupation for which the license was issued;

d. Whether the license was revoked or suspended; and if so, the date and reason for each revocation and suspension; and

e. The amount of time YOU engage in the profession, trade or occupation, as authorized by the license.

**<u>RESPONSE TO NO. 9:</u>**

**Not applicable.**

10. If YOU have been convicted of a felony, state the date, place (city, county, and state) and nature of each felony conviction and court case number. If YOU served time in prison, state the dates and LOCATION of time served.

**<u>RESPONSE TO NO. 10:</u>**

**Plaintiff was never convicted of a felony.**

## II. <u>MILITARY SERVICE</u>

11. If YOU have ever been a member of the Armed Forces of the United States, or any other Country, state:

a. The Country in which YOU served in the Armed Forces;

b. The branch of service,

c. YOUR serial number, and the highest rank or grade YOU held;

d. The dates YOU began and ended YOUR military service;

e. The type of discharge YOU received;

f. At what LOCATIONS YOU served, if any, and the dates of such service;

g. If YOU served aboard ship, identify the ship by name and/or hull number and the dates of such service;

h. The specific nature of YOUR duties at each of the above LOCATIONS or ships;

i. Any claimed exposure to asbestos products, and the nature and extent of any such exposure;

j. YOUR veteran's administration number; and,

k. If YOU received technical or vocational training as a member of the Armed Forces the type of training YOU received and dates of the training period.

**RESPONSE TO NO. 11:**

**Not applicable.**

## III. EMPLOYMENT HISTORY

12. If YOU are presently employed, state:

a. The name and address of YOUR present employer;

b. The name and address of YOUR immediate supervisor

c. The nature of the work YOU do and YOUR JOB title;

d. The number of hours, per week, YOU normally work;

e. The date YOUR employment began and ended;

f. All of YOUR JOB positions from the beginning of YOUR employment and dates for each position;

g. YOUR present rate of pay or salary; and

**RESPONSE TO NO. 12:**

**Patricia Sneider is an award-winning screenwriter, director and producer who has many projects in the works. Since she was in cinema school in Mexico at the Universidad Iberoamericana - 1980-1984, and at the Centro de Capacitación**

**Cinematografica - 1986-1990, Patricia has been working in those three positions and sometimes she worked as a DP or as a Photographer's Assistant in students' productions. After Patricia Sneider graduated, she worked as a freelance in those positions. Patricia has done documentaries films as writer, director, producer and sometimes (like in La vaquita Marina) as a photographer and editor as well. Patricia did a very successful feature film called AQUI ENTRE NOS, as writer, director and producer. Patricia Sneider has been directing commercials on and off since 1997.**

13. If YOU are not presently employed, describe the reason why. If retired, state the date and specific reason(s) for YOUR retirement.

**RESPONSE TO NO. 13:**

**Patricia is an award-winning screenwriter, director and producer who has many projects in the works.**

14. List all OCCASIONS during the last twenty years of YOUR life on which YOU have lost time from work for over ten consecutive days as a result of any of the following, and for each such loss, indicate the amount of time lost and the reason for the lost time:

a. Illness;

b. Injury.

**RESPONSE TO NO. 14:**

**Not Applicable.**

15. If YOU have ever been discharged or voluntarily left a position due to health problems, state in detail the dates, names of employers, places of employment and circumstances surrounding each discharge or voluntary termination.

**RESPONSE TO NO. 15:**

**Not Applicable.**

16. If YOU are or have ever been a member of any labor union, state for each union membership:

a. The name, address and telephone number of the union, the union local or chapter number of each union, and YOUR membership number, if any;

b. The dates and time periods during which YOU maintained membership in each such union.

**RESPONSE TO NO. 16:**

**While Patricia was in Mexico - approximately 2012 or 2013, she became part of the Director's and Writer's guild after she directed her feature film, AQUI ENTRE NOS.**

17. List all of YOUR employment or JOBs that YOU have ever had in YOUR lifetime, including self-employment, and for each employment, state:

a. The employer's name, address and telephone number, and the dates of YOUR employment;

b. YOUR JOB title and a description of YOUR duties;

c. If YOU claim, or have reason to believe, YOU were exposed to asbestos, the manner of exposure, the duration and time period of exposure and the type of product (e.g., insulation, cement, etc.) to which YOU were exposed;

d. The LOCATION of each JOB site, including the name of each facility, shipyard, or ship, and the state and city where located, along with the beginning and ending dates of each such JOB;

e. For each such JOB, state the name, approximate age, their JOB title at the place of employment, and last known address and phone number of all PERSONS with whom YOU worked, including but not limited to YOUR supervisor, on such JOB;

f. The reason for each termination; and

g. The rate of pay at each place of employment.

**RESPONSE TO NO. 17:**

**In June 2023, Plaintiff Patricia Sneider was diagnosed with malignant pleural mesothelioma, which is a cancer of the lining of her lungs and is caused by inhaling asbestos. This diagnosis was made following a biopsy of fluid and tissue taken directly out of Plaintiff's lung. Mesothelioma is a fatal disease for which there is no cure, so Plaintiff had to file this lawsuit in an expedited fashion. Therefore, Plaintiff reserves the**

**right to supplement these responses if asked to do so.**

**Because it is early in the litigation process, Plaintiff's attorneys have identified the companies they believe in good faith are responsible for causing or contributing to cause Ms. Sneider's mesothelioma. Following additional investigation of these companies, Plaintiff's attorneys may later discover that one or more of the companies listed below were not legally responsible for Ms. Sneider's injuries. Conversely, Plaintiff's attorneys may later discover that other parties who were not initially known to Plaintiff or Plaintiff's attorneys, have legal responsibility and should be included. Therefore, although Plaintiff alleges the companies named herein have responsibility for Ms. Sneider's injuries, Plaintiff's attorneys will conduct additional investigation of those facts and Plaintiff reserves the right to supplement these responses if asked to do so.**

**Because it is early in the litigation process, Plaintiff's lawyers have not had an opportunity to obtain from these companies information that may be within their exclusive control regarding their design, manufacture, and supply, if any, of the asbestos-containing products to which Plaintiff Patricia Sneider alleges she was exposed. Therefore, Plaintiff Patricia Sneider responds to this interrogatory based on the information she can currently recall to the best of her ability, as well as any preliminary information her attorneys have been able to informally gather to date. Plaintiff's attorneys will conduct additional discovery and investigation of these facts. As such, Plaintiff anticipates said attorneys may be able to obtain additional information which is not contained in these responses, and therefore Plaintiff reserves the right to supplement these responses if asked to do so. At this point in the investigation, Plaintiff and her attorneys believe in good faith, that Patricia Sneider worked at the following locations during her career:**

**While attending high school in Mexico in the 1970s, Patricia Sneider worked on stage and film production. She recalls working with stage lighting fixtures and handling the power cords. Patricia Sneider has written and directed short films and documentaries that have been showcased at International Film Festivals. Patricia**

**Sneider is an award-winning screenwriter, director and producer who has many projects in the works. Since she was in cinema school in Mexico at the Universidad Iberoamericana - 1980-1984 and at the Centro de Capacitación Cinematografica - 1986-1990, Patricia has been working in those three positions and sometimes she worked as a DP or as a Photographer's Assistant in student's productions. After Patricia Sneider graduated, she worked as a freelance in those positions. Patricia has done documentaries films as writer, director, producer and sometimes (like in La vaquita Marina) as a photographer and editor as well. Patricia did a very successful feature film called AQUI ENTRE NOS, as writer, director and producer. Patricia Sneider has been directing commercials on and off since 1997.**

**PRODUCTS/EQUIPMENT**

18. For each product, material, compound or equipment (collectively referred to as "product") which YOU contend contains ASBESTOS allegedly manufactured, produced, prepared, distributed or sold by any defendant named in this action or by its predecessors, subsidiaries, subdivisions or affiliates, and which YOU worked with or around or otherwise claim to have been exposed to at any time:

a. Describe each product as specifically as possible, including its trade name, product type, ASBESTOS content, color, packaging, and manufacturer, together with a detailed description of when and how YOU became aware of this information;

b. If not already identified in response to number 17(c) above, state the date(s) on which and places where YOU were exposed or YOUR best estimate thereof, together with the circumstances surrounding such exposure (i.e., were YOU working with it or simply near an area where it was being used?) to the product;

c. Describe all instructions, recommendations or warnings of any kind that accompanied the product, together with the LOCATION(s) where this information appeared (e.g., printed on tag, tag covering, instruction sheet accompanying product, etc.);

d. State the purpose for which YOU used the product;

e. IDENTIFY any ENGINEERING CONTROLS in place during YOUR use of the

product;

f. IDENTIFY (including name, address and telephone number) of YOUR supervisors and co-workers at the WORKSITE;

g. IDENTIFY all PERSONS with knowledge of facts supporting YOUR response to this interrogatory and its subparts, not already identified in these responses; and

h. IDENTIFY all DOCUMENTS which support YOUR response to this interrogatory and its subparts.

**RESPONSE TO NO. 18:**

**In June 2023, Plaintiff Patricia Sneider was diagnosed with malignant pleural mesothelioma, which is a cancer of the lining of her lungs and is caused by inhaling asbestos. This diagnosis was made following a biopsy of fluid and tissue taken directly out of Plaintiff's lung. Mesothelioma is a fatal disease for which there is no cure, so Plaintiff had to file this lawsuit in an expedited fashion. Therefore, Plaintiff reserves the right to supplement these responses if asked to do so.**

**Because it is early in the litigation process, Plaintiff's attorneys have identified the companies they believe in good faith are responsible for causing or contributing to cause Ms. Sneider's mesothelioma. Following additional investigation of these companies, Plaintiff's attorneys may later discover that one or more of the companies listed below were not legally responsible for Ms. Sneider's injuries. Conversely, Plaintiff's attorneys may later discover that other parties who were not initially known to Plaintiff or Plaintiff's attorneys, have legal responsibility and should be included. Therefore, although Plaintiff alleges the companies named herein have responsibility for her injuries, Plaintiff's attorneys will conduct additional investigation of those facts and Plaintiff reserves the right to supplement these responses if asked to do so.**

**Because it is early in the litigation process, Plaintiff's lawyers have not had an opportunity to obtain from these companies information that may be within their exclusive control regarding their design, manufacture, and supply, if any, of the asbestos-containing products to which Plaintiff Patricia Sneider alleges she herself was**

**exposed. Therefore, Plaintiff responds to this interrogatory based on the information she can currently recall to the best of her ability, as well as any preliminary information her attorneys have been able to informally gather to date. Plaintiff's attorneys will conduct additional discovery and investigation of these facts. As such, Plaintiff anticipates said attorneys may be able to obtain additional information which is not contained in these responses, and therefore Plaintiff reserves the right to supplement these responses if asked to do so.**

**At this point in the investigation, Plaintiff and her attorneys believe in good faith, that Plaintiff Patricia Sneider developed malignant mesothelioma as a result of exposure to asbestos, through Plaintiff's use of talcum powders beginning in 1972. Plaintiff alleges personally using talcum powder on herself, including Defendants' talc and/or asbestos-containing products suppliers of asbestos-containing talc ("Defendants' Products"), including: AVON PRODUCTS, INC.** (*for asbestos-containing Avon talcum powder products and Avon cosmetics*); **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG (*for asbestos-containing Dr. Scholl's Foot Powder*); **BEAUTY 21 COSMETICS, INC.** (*for asbestos-containing L.A. Girl cosmetics*); **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC., sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC. (*as a supplier of asbestos-containing talc*); **CHANEL, INC.** (*for asbestos-containing Chanel cosmetics and Chanel talcum powder products*); **CHARLES B. CHRYSTAL COMPANY, INC.** (*as a supplier of asbestos-containing talc*); **CLINIQUE LABORATORIES LLC** f/k/a CLINIQUE LABORATORIES, INC., a subsidiary of THE ESTEE LAUDER COMPANIES INC. (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC (*for asbestos-containing Dr. Scholl's Foot Powder*); **THE ESTEE LAUDER COMPANIES, INC.**, sued individually and as successor-in-interest to LEN-RON MANUFACTURING CO. INC., and for its subsidiary CLINIQUE LABORATORIES INC. d/b/a CLINIQUE (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **ESTEE LAUDER, INC.**, a subsidiary of THE ESTEE

LAUDER COMPANIES, INC. (*for asbestos-containing Clinique cosmetics and Clinique talcum powder products*); **IMI FABI (DIANA) LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI, LLC** (*as a supplier of asbestos-containing talc*); **IMI FABI (USA) INC.** (*as a supplier of asbestos-containing talc*); **KENVUE INC.** (*for asbestos-containing Neutrogena cosmetics*); **L'OREAL USA, INC.** individually and d/b/a DERMABLEND, MAYBELLINE, NYX PROFESSIONAL MAKEUP, and YVES SAINT LAURENT (*for asbestos-containing Dermablend cosmetics, Maybelline cosmetics, NYX Professional Makeup cosmetics, and Yves Saint Laurent Opium talcum powder*); **MAYBELLINE LLC** (*for asbestos-containing Maybelline cosmetics*); **MERCK & CO., INC.** d/b/a MERCK SHARP & DOHME LABORATORIES (*for asbestos-containing Dr. Scholl's Foot Powder*); **MINERALS TECHNOLOGIES INC.** (*as an entity who managed, directed, ordered, supervised, and controlled the mining, production, and supply of the asbestos-containing talc of its subsidiary*); **NOXELL CORPORATION**, a subsidiary of COTY INC. and f/k/a NOXZEMA CHEMICAL COMPANY (*for asbestos-containing CoverGirl cosmetics*); **PFIZER INC.** (*as a supplier of asbestos-containing talc*); **PHYSICIANS FORMULA, INC.** (*for asbestos-containing Physicians Formula cosmetics*); **PRESPERSE CORPORATION**, sued individually and d/b/a PRESPERSE INTERNATIONAL CORP (*as a supplier of asbestos-containing talc*); **THE PROCTER & GAMBLE COMPANY**, sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY (*for asbestos-containing CoverGirl cosmetics*); **SEPHORA USA, INC.** (*as a supplier of asbestos-containing talcum powder and cosmetic products*); **SPECIALTY MINERALS INC.**, sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC. (*as a supplier of asbestos-containing talc*); **SUMITOMO CORPORATION OF AMERICAS** (*as a supplier of asbestos-containing talc*); **THE VONS COMPANIES INC.**, a subsidiary of ALBERTSONS COMPANIES, INC. (*as a supplier of asbestos-containing talcum powder and cosmetic products*), and **YVES SAINT LAURENT AMERICA, INC.** (*for asbestos-containing Yves Saint Laurent Opium talcum powder*).

**a. Almay cosmetics.**

**b. Dates Plaintiff used are unrecalled.**

**c. There were no warnings on Almay cosmetics.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Avon cosmetics.**

**b. Plaintiff used through 1990s.**

**c. There were no warnings on Avon cosmetics.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Chanel cosmetics.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Chanel cosmetics.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. CoverGirl cosmetics.**

**b. Plaintiff used beginning in 1982.**

**c. There were no warnings on CoverGirl cosmetics.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Clinique cosmetics.**

**b. Plaintiff used in the 1990s.**

**c. There were no warnings on Clinique cosmetics.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Dermablend.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Dermablend.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Estee Lauder.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Estee Lauder.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. L.A. Girl Cosmetics.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on L.A. Girl Cosmetics.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. L'Oreal.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on L'Oreal.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Maybelline.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Maybelline.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Neutrogena cosmetics.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Neutrogena.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. NYX.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on NXY.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Physicians Formula.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Physicians Formula.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Revlon.**

**b. Dates Plaintiff used are unrecalled.**

**c. There were no warnings on Revlon.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Sephora.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Sephora.**

**d. Makeup.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Avon talcum powder.**

**b. Plaintiff used through 1990s.**

**c. There were no warnings on Avon talcum powder.**

**d. Talcum powder.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Chanel talcum powder.**

**b. Plaintiff used beginning in 1990s.**

**c. There were no warnings on Chanel talcum powder.**

**d. Talcum powder.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Dr. Scholl's talcum powder.**

**b. Plaintiff used beginning in 1972.**

**c. There were no warnings on Dr. Scholl's talcum powder.**

**d. Talcum powder.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Johnson and Johnson.**

**b. Dates Plaintiff used are unrecalled.**

**c. There were no warnings on Johnson and Johnson.**

**d. Talcum powder.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**a. Yves Saint Laurent Opium.**

**b. Plaintiff used beginning in 1980.**

**c. There were no warnings on Opium.**

**d. Talcum powder.**

**e. Not applicable.**

**f. Not applicable.**

**g. Plaintiff.**

**h. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to supplement this response at any time.**

**The actual exposures to each of the foregoing companies products is under investigation and Plaintiff's exposure will be explored in more detail through her deposition.**

**At the time Plaintiff was around these products, Plaintiff does not recall or believe there were any warnings, written instructions or recommendations, regarding the hazards of asbestos on these products. As a result, Plaintiff was unaware of her need for any type of safety devices to specifically reduce her possible exposure to, or inhalation of, asbestos and did not use any such devices during this work or personal use of the products.**

**V. USE OF RESPIRATORY PROTECTION EQUIPMENT**

19. STATE any and all RESPIRATORY PROTECTION EQUIPMENT that YOU

contend YOU used at any time. For each item of RESPIRATORY PROTECTION EQUIPMENT identified, provide the following information:

a. the name of the manufacturer of the RESPIRATORY PROTECTION EQUIPMENT;

b. the name, model number, and type of the RESPIRATORY PROTECTION EQUIPMENT; and

c. the name of YOUR employer and the name and address of the jobsite at the time YOU allegedly used the RESPIRATORY PROTECTION EQUIPMENT.

**RESPONSE TO NO. 19:**

**Plaintiff was not informed and therefore did not use safety equipment to protect from exposure to or inhalation of asbestos.**

**VI. EXPOSURE TO ASBESTOS-PREMISES**

20. For each WORKSITE identified in YOUR Response to Interrogatory No. 18 above for which you are making a claim against a premises defendant for asbestos exposure at that WORKSITE, please state:

a. IDENTIFY each PERSON who YOU contend owned the WORKSITE during the dates(s) or time period(s) when YOU worked there;

b. IDENTIFY each PERSON who YOU contend operated the WORKSITE during the dates(s) or time period(s) when YOU worked there;

c. IDENTIFY each PERSON who YOU contend controlled the WORKSITE during the dates(s) or time period(s) when YOU worked there;

d. IDENTIFY each PREMISES OWNER who YOU contend exposed YOU to asbestos at the WORKSITE during the date(s) or time period(s) when YOU worked there;

e. describe the nature or manner in which YOU contend YOU were exposed to asbestos at the WORKSITE as a result of work performed by each PREMISESOWNER;

f. the identity (including name, address and telephone number) of YOUR employer(s);

g. YOUR JOB title(s), if not described above;

h. YOUR JOB duties, if not described above;

i. the identity (including name, address and telephone number) of YOUR supervisors and co-workers at the WORKSITE, if not identified above;

j. the identity of all PERSONS with knowledge of facts supporting YOUR response to this interrogatory and its subparts, not already identified in these responses; and

k. IDENTIFY all DOCUMENTS which support YOUR response to this interrogatory and its subparts.

**RESPONSE TO NO. 20:**

**Plaintiff is not alleging any exposure to premise defendant as defined above. Please see responses to Interrogatory No. 18 herein.**

## VII. EXPOSURE TO ASBESTOS-CONTRACTORS

21. For each WORKSITE identified in YOUR Response to Interrogatory No. 18 above for which you are making a claim against contractor defendant for asbestos exposure at that WORKSITE, please state:

a. IDENTIFY each PERSON who YOU contend owned the WORKSITE during the dates(s) or time period(s) when YOU worked there;

b. IDENTIFY each PERSON who YOU contend operated the WORKSITE during the dates(s) or time period(s) when YOU worked there;

c. IDENTIFY each PERSON who YOU contend controlled the WORKSITE during the dates(s) or time period(s) when YOU worked there;

d. IDENTIFY each CONTRACTOR DEFENDANT who YOU contend exposed YOU to asbestos at the WORKSITE during the date(s) or time period(s) when YOU worked there;

e. describe the nature or manner in which YOU contend YOU were exposed to asbestos at the WORKSITE as a result of work performed by each CONTRACTOR DEFENDANT.

f. the identity (including name, address and telephone number) of YOUR employer(s);

g. YOUR JOB title(s), if not described above;

h. YOUR JOB duties, if not described above;

i. the identity (including name, address and telephone number) of YOUR supervisors and co-workers at the WORKSITE, if not identified above;

j. the identity of all PERSONS with knowledge of facts supporting YOUR response to this interrogatory and its subparts, not already identified in these responses; and

k. IDENTIFY all DOCUMENTS which support YOUR response to this interrogatory and its subparts.

**RESPONSE TO NO. 21:**

**Plaintiff is not alleging any exposure to premise defendant as defined above. Please see responses to Interrogatory No. 18 herein.**

## VIII. EXPOSURE TO ASBESTOS - FRICTION

22. Do YOU contend that YOU were exposed to asbestos from any ASBESTOS-CONTAINING FRICTION PRODUCTS at any place of employment? If so, please answer the following:

a. The names and addresses of all places of employment where YOU contend such an exposure took place;

b. The dates at each place of employment;

c. YOUR JOB title at each place of employment;

d. YOUR JOB responsibilities at each place of employment;

e. A complete description of any work performed by YOU which YOU contend caused an asbestos exposure to you;

f. A complete description of any work performed by others which YOU contend caused an asbestos exposure to you;

g. List the specific parts or components YOU worked with which YOU contend are or were ASBESTOS-CONTAINING FRICTION PRODUCTS;

h. State the frequency of YOUR exposure to each specific ASBESTOS-CONTAINING FRICTION PRODUCTS;

i. Identity of YOUR immediate supervisor(s) for each place of employment;

j. The identity of all of YOUR co-workers at each place of employment;

k. IDENTIFY any other PERSON with knowledge of YOUR alleged exposure to ASBESTOS-CONTAINING FRICTION PRODUCTS at each place of employment;

l. Whether any safety equipment or protective devices, including but not limited to engineering controls or respiratory protective equipment, with respect to asbestos were provided to YOU or YOUR co-workers and, if so, a description of the equipment/devices;

m. Whether any safety equipment or protective devices, including but not limited to engineering controls or respiratory protective equipment, with respect to asbestos were required to be used by YOU or YOUR co-workers and, if so, a description of the equipment/devices and the date on which they were first required; and

n. Whether any safety equipment or protective devices, including but not limited to engineering controls or respiratory protective equipment, with respect to asbestos were used by YOU or YOUR co-workers and, if so a description of the equipment/devices and when they were first used.

**RESPONSE TO NO. 22:**

**Not Applicable.**

23. Do YOU contend that YOU were exposed to asbestos from any ASBESTOS-CONTAINING FRICTION PRODUCTS anywhere other than a place of employment (i.e. during home auto repair)? If so, please answer the following:

a. The LOCATION(s) where YOU contend that each such exposure took place;

b. The dates at each exposure;

c. For each exposure, IDENTIFY the owner of the VEHICLE on which YOU performed work with ASBESTOS-CONTAINING FRICTION PRODUCTS if known to you;

d. For each such exposure, IDENTIFY any PERSON known to you to have observed YOU working with ASBESTOS-CONTAINING FRICTION PRODUCTS;

e. For each such exposure, IDENTIFY any other PERSON known to you to have knowledge of YOUR alleged exposure to ASBESTOS-CONTAINING FRICTION

PRODUCTS;

f. A complete description of any work performed by YOU which YOU contend caused an asbestos exposure to you;

g. A complete description of any work performed by others which YOU contend caused an asbestos exposure to you;

h. List the specific parts or components YOU worked with which YOU contend are or were ASBESTOS-CONTAINING FRICTION PRODUCTS;

i. Whether any safety equipment or protective devices, including but not limited to engineering controls or respiratory protective equipment, with respect to asbestos were used by YOU or others during this work and, if so, a description of the equipment/devices;

j. Whether any safety equipment or protective devices, including but not limited to engineering controls or respiratory protective equipment, with respect to asbestos were used by YOU or others during this work and, if so a description of the equipment/devices and on which projects they were used.

**<u>RESPONSE TO NO. 23:</u>**

**Not Applicable.**

24. Have YOU ever received any instruction or training in AUTOMOTIVE inspection, repair, maintenance or mechanics? If so, please state:

a. Where YOU received such training;

b. When YOU received such training;

c. By whom the training was given, noting corporate identity as well as name and address of individuals;

d. The subject or topics involved;

e. The systems or parts of the AUTOMOBILE involved;

f. Whether any safety equipment or protective devices, including but not limited to engineering controls or respiratory protective equipment, with respect to asbestos were discussed and/or advised, and if so, describe the equipment/devices, and

g. Whether the subject of asbestos (asbestos parts, asbestos health hazards, etc.)

was discussed and if so, what was said.

**RESPONSE TO NO. 24:**

**Not Applicable.**

25. Were technical or shop manuals ever made available to YOU at any places of employment where YOU performed AUTOMOTIVE repairs? If so, please state:

a. How the manuals were made available;

b. Where the manuals were made available;

c. The time periods during which the manuals were made available;

d. The identity of the manual (i.e., Chilton, etc.);

e. What systems or components were covered in the manuals; and

f. YOUR use of the manual (including frequency of use, reasons for use, etc.).

**RESPONSE TO NO. 25:**

**Not applicable.**

26. Are YOU contending that any defect or defective condition exists with respect to ASBESTOS-CONTAINING FRICTION PRODUCTS other than failure to warn? If so:

a. Set forth YOUR contention with respect to the alleged defect or defective condition;

b. State all facts upon which YOU base YOUR contention that a defect or defective condition (other than a failure to warn) exists with respect to ASBESTOS-CONTAINING FRICTION PRODUCTS;

c. Identify all DOCUMENT and/or writings upon which YOU rely in so contending; and

d. Identify all witnesses who have knowledge of the facts upon which YOU rely in so contending.

**RESPONSE TO NO. 26:**

**Not Applicable.**

27. Are YOU contending that any warnings regarding ASBESTOS-CONTAINING FRICTION PRODUCTS given were inadequate or insufficient? If so, please state:

a. YOUR contention as to each manufacturer or supplier of ASBESTOS-CONTAINING FRICTION PRODUCTS to which YOU contend were exposed;

b. YOUR contention as to how each warning was insufficient;

c. YOUR contention as to what a proper warning should have been; and

d. Identify the witnesses who have PERSONAL knowledge of the facts YOU rely upon to support any of the contentions set forth above.

**RESPONSE TO NO. 27:**

**Not Applicable.**

28. Do YOU contend that any misrepresentations were made to YOU by the manufacturer of supplier of ASBESTOS-CONTAINING FRICTION PRODUCTS? If so, please state:

a. The nature or substance of the misrepresentation;

b. By whom it was made;

c. To whom it was made; and

d. When it was made.

**RESPONSE TO NO. 28:**

**Not Applicable.**

29. Were you/are YOU licensed or certified by any local, state or federal authority to perform work upon AUTOMOBILEs? If so, please state:

a. By whom YOU are licensed or certified;

b. When YOU were licensed or certified;

c. What the requirements are/were to become licensed or certified;

d. Whether YOU had to pass any written examinations to become licensed or certified;

e. Whether YOU had to pass any proficiency examinations to become licensed or certified;

f. Whether YOU were ever retested or recertified and, if so, the dates of the retesting or recertification; and

g. Whether YOUR license or certificate was revoked or suspended, and if so, when and why.

**RESPONSE TO NO. 29:**

**Not Applicable.**

30. Did YOU ever complain to your superiors or coworkers about working conditions, specifically any potential hazards of working with ASBESTOS-CONTAINING FRICTION PRODUCTS? If so, please state:

a. To whom did YOU complain;

b. When did YOU complain;

c. The nature of YOUR specific complain;

d. What action, if any, was taken to rectify the situation;

e. When such action was taken;

f. Whether YOU repeated the complaints, if no action was taken;

g. Whether YOUR co-workers joined in YOUR complaints;

h. Identify anyone who may have heard YOU make YOUR complaints; and

i. Whether YOUR complaints were made orally or in writing.

**RESPONSE TO NO. 30:**

**Not Applicable.**

31. To YOUR knowledge, were any air samplings for asbestos levels taken at any of the LOCATIONS at which YOU worked? If so, please state:

a. The work LOCATION or place of employment where this occurred;

b. When the sampling(s) took place;

c. By whom the sampling was performed;

d. By what method the sampling was performed; and

e. The results of the sampling.

**RESPONSE TO NO. 31:**

**Not to Plaintiff's knowledge.**

32. To YOUR knowledge, did any governmental agency, whether federal or state,

conduct any inspection of any of YOUR work LOCATIONS/places or employment? If so, please state:

a. Name and address of each work place;

b. Date(s) of inspection;

c. Purpose of inspection;

d. Findings of the inspection; and

e. Whether any changes (of the facilities, and equipment or in procedures) were instituted in the work environment within three month of the inspection.

**RESPONSE TO NO. 32:**

**Not to Plaintiff's knowledge.**

33. At any time, were YOU aware of or did YOU read an bulletins, newsletters or similar publications regarding ASBESTOS-CONTAINING FRICTION PRODUCTS or asbestos-related health hazards issued by any manufacturer, distributor or seller of ASBESTOS-CONTAINING FRICTION PRODUCTS, governmental agency, dealership association, by any union or by any organization of AUTOMOTIVE mechanics? If so please state:

a. The title of the publication;

b. The date of the publication;

c. The identity of the group publishing the DOCUMENT;

d. Where YOU saw the DOCUMENT (at the place of employment or mailed to YOUR home);

e. When YOU saw the DOCUMENT (received regularly or on an intermittent basis and the time frame of receipt);

f. The specifics or details of the information concerning asbestos health hazards allegedly arising from ASBESTOS-CONTAINING FRICTION PRODUCTS; and

g. What, if anything, YOU did in response to the information contained in this publication (including complaints to employers).

**RESPONSE TO NO. 33:**

**Not to Plaintiff's knowledge.**

34. Other than the subject action, have YOU made or filed any claim, including a workers' compensation action, wherein YOU asserted a clam for injury and/or disability as a result of exposure to asbestos from BRAKE LININGS or ASBESTOS-CONTAINING FRICTION PRODUCTS? If so, please state the following:

a. The place where YOUR claim or action was filed;

b. The date YOUR claim or action was filed;

c. The parties involved in YOUR claim or action; and

d. The case or claim number of YOUR action.

**RESPONSE TO NO. 34:**

**No.**

**IX. EXPOSURE TO ASBESTOS - OTHER**

35. If YOU have ever worked with or around any product containing ASBESTOS manufactured, produced, prepared, distributed or sold by any other entity not named as a defendant in this lawsuit, identify each such entity and each such product.

**RESPONSE TO NO. 35:**

**Please see Plaintiff's response to Interrogatory Nos. 17-19.**

36. If YOU believe YOU were ever exposed to ASBESTOS other than at the times or LOCATIONS identified in YOUR responses to prior interrogatories in this set, state:

a. The date(s) and place(s) of such exposure;

b. The circumstances surrounding such exposure;

c. The nature of the ASBESTOS, the trade name of the ASBESTOS product; if any, and the name and address of their manufacturer;

d. Describe what precautions YOU took, if any, to avoid exposure.

**RESPONSE TO NO. 36:**

**Upon information and belief, no. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to amend this response at any time.**

37. Did YOUR parents or any of YOUR siblings with whom YOU resided ever work with or have an exposure to any asbestos or ASBESTOS-CONTAINING PRODUCTS? If so, please state to the best of your knowledge (if any):

a. The date(s) and place(s) of such exposure;

b. The circumstances surrounding such exposure;

c. nature of the ASBESTOS, the trade name of the ASBESTOS product; if any, and the name and address of their manufacturer;

d. describe precautions YOU took, if any, to avoid exposure

**RESPONSE TO NO. 37:**

**No.**

## X. KNOWLEDGE OF THE HAZARDS OF ASBESTOS

38. When did YOU first learn that exposure to asbestos was a potential health hazard?

**RESPONSE TO NO. 38:**

**Plaintiff did not learn about the dangers associated with asbestos exposure until June 2023 when she was diagnosed with mesothelioma.**

39. Describe how YOU first became aware that exposure to asbestos was a potential health hazard.

**RESPONSE TO NO. 39:**

**Plaintiff did not learn about the dangers associated with asbestos exposure until June 2023 when she was diagnosed with mesothelioma.**

40. When did YOU first observe anyone use any type of SAFETY PRECAUTION while working with and/or around asbestos or asbestos-containing products?

**RESPONSE TO NO. 40:**

**Not applicable.**

41. When, where and at whose direction did YOU first use any type of SAFETY PRECAUTION, including but not limited to engineering controls or respiratory protective equipment, while working with or around asbestos or asbestos-containing materials?

**RESPONSE TO NO. 41:**

**Not applicable.**

42. If any of YOUR employers have either required and/or made available physical examinations for their employees, state for each of those employers:

a. the identity of the employer;

b. the nature and extent of examinations;

c. the frequency of examinations;

d. whether they were required or optional;

e. whether an x-ray examination was made:

f. the frequency and/or dates and times on which YOU submitted to the examinations;

g. whether YOU received the results of the examinations;

h. whether YOU are currently in position of any DOCUMENTs that record the results of the examinations;

i. the identity, including the name, address and telephone number of the examining physician, nurse, technician or other medical provider;

j. if YOU did not submit to the examination, provide YOUR detailed reasons for choosing or failing to submit to the examinations offered; and

k. IDENTIFY all DOCUMENTs evidencing the information requested by this interrogatory and its subparts or otherwise describe with sufficient particularly the DOCUMENTs YOU have in YOUR possession that record the information set forth herein.

**RESPONSE TO NO. 42:**

**Not applicable.**

43. If any of YOUR employers ever suggested or recommended that YOU should use any device to reduce YOUR possible exposure to, or inhalation of, ASBESTOS, state for each and every such employer:

a. Its name, address and telephone number;

b. The date, time and place when the suggestion or recommendation was made,

together with the name, and employment position of the PERSON making the suggestion or recommendation;

c. Description of the suggestion or recommendation;

d. Whether the suggestion or recommendation was written or oral;

e. The IDENTITY of each device referred to in each suggestion or recommendation;

f. The nature of any action, if any, taken by YOU in response to the suggestions.

**RESPONSE TO NO. 43:**

**Not applicable.**

**XI. MEDICAL HISTORY/INFORMATION**

44. State whether you have ever been diagnosed as suffering from any of the following illnesses, diseases or abnormal physical conditions:

a. Infectious disease (e.g., tuberculosis, pneumonia, typhoid fever, hepatitis);

b. Cardiac disease;

c. Gastrointestinal disease;

d. Genitourinary disease or infection;

e. Skin disease;

f. Blood disease;

g. Neurological disease (including fainting spells, emotional upset, epilepsy, etc.);

h. Kidney disease;

i. Liver disease or dysfunction;

j. Cerebrovascular accident;

k. Personality disturbances or diseases;

l. Metabolic disease;

m. Allergy;

n. Peripheral-vascular disease or circulatory disturbances;

o. Glandular disease;

p. An abnormal physical condition symptomatic of diseases such as edema of the extremities, chest pains, prolonged subnormal or elevated temperature, recurring headaches, jaundice, excessive hunger or thirst, etc.;

q. Pulmonary or other respiratory condition or disease;

r. Rib injuries;

s. Obesity;

t. Parasitic disease;

u. Cancer.

**<u>RESPONSE TO NO. 44:</u>**

**Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date. For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena. For further response:**

**a. No.**

**b. No.**

**c. No.**

**d. No.**

**e. No.**

**f. No.**

**g. No.**

**h. No.**

**i. No.**

**j. No.**

**k. No.**

**l. No.**

**m. No.**

**n. No.**

**o. No.**

**p. No.**

**q. No.**

**r. No.**

**s. No.**

**t. No.**

**u. Yes. Mesothelioma.**

45. State the following for each illness, disease or physical condition identified in response to the previous interrogatory;

a. The date on which YOU were diagnosed with or became aware of same;

b. The names and addresses of all physicians or other health care practitioners who treated YOU for same;

c. The name and addresses of all hospitals or other institutions where YOU were confined for same;

d. As to each illness, disease or physical condition, whether it has resolved or continues at the present time.

**RESPONSE TO NO. 45:**

**u. Mesothelioma**

**a. Diagnosed – June 2023.**

**b-d. Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D.**

**Additionally, Plaintiff's records are available to Defendants through subpoena.**

46. If YOU were diagnosed with any pulmonary disease(s) and contend it is related in any way to YOUR alleged exposure to ASBESTOS, state all facts upon which this contention is based.

**<u>RESPONSE TO NO. 46:</u>**

**Please see Plaintiff's response to Interrogatory No. 18 and 45, *supra*, which is incorporated by reference as if fully set forth herein. For further response, Plaintiff believes that she was exposed to asbestos from asbestos-containing products, as set forth in Interrogatory 18, and Plaintiff has been diagnosed with malignant pleural mesothelioma, a type of cancer caused from the inhalation of asbestos dust. Upon information and belief, one or more of Plaintiff's physicians have advised her that her malignant mesothelioma resulted from her exposure to and/or inhalation of asbestos dust. For further response, Plaintiff defers to her medical records. Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date. For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena.**

47. If any of the members of YOUR immediate family (i.e., parents, siblings, children and grandchildren) have ever been diagnosed with any respiratory impairment, illness or condition, identify each such PERSON, specifying:

a. The nature of that respiratory impairment (e.g., bronchitis, asthma, pneumonia);

b. When that respiratory impairment first developed;

c. Whether that respiratory impairment is or has been treated by any physician and, if so, the name and address of that physician; and

d. The determined cause of the respiratory impairment if known.

**RESPONSE TO NO. 47:**

**Not applicable.**

48. If any members of YOUR immediate family (i.e., parents, siblings, children, and grandchildren) have been diagnosed with any form or cancer, identify each such PERSON, specifying:

a. The nature and site of that cancer;

b. When that cancer first developed and/or was diagnosed; and

c. Whether it was determined that asbestos caused or contributed to the cancer.

**RESPONSE TO NO. 48:**

**Plaintiff's paternal grandmother died from Leukemia in 1953.**

49. If any member of YOUR immediate family (i.e., parents, siblings, children and grandchildren) died because of cancer or a pulmonary condition or has ever been diagnosed with cancer or a pulmonary disease, state the following for each such PERSON:

a. The nature of his/her illness and/or diagnosis if know to "You.";

b. His/her name and relationship to you;

c. His/her age at the time of death and the cause of death, if from said illness.

**RESPONSE TO NO. 49:**

**Plaintiff's paternal grandmother died from Leukemia in 1953.**

50. If YOU contend that YOU have incurred any injuries as a result of exposure to ASBESTOS, describe separately and in complete detail each and every complaint, symptom, adverse reaction or other injury (hereinafter collectively referred to as "symptom") which YOU contend resulted from exposure. Include in YOUR answer:

a. The date, or if unknown, YOUR best approximation of the date on which YOU first began exhibiting each symptom;

b. The progression, if any, of each symptom;

c. The date each symptom ceased to affect you;

d. The name, address and telephone number of each physician to whom each

symptom was reported, together with the date each symptom was reported;

e. What each physician told YOU was the cause of each symptom, together with the date YOU were told this;

f. The names, addresses and telephone numbers of each physician who treated YOU for the symptom;

g. The names, addresses, and phone numbers of each physician subsequently affirming or contradicting any diagnosis as to the cause of each symptom;

h. Whether YOU have ever lost any time from work as a result of any such symptom;

i. Whether any such symptom ever precluded or hindered YOU from performing YOUR regular occupation or JOB duties.

**RESPONSE TO NO. 50 (a-i):**

**Many of Ms. Sneider's activities have been limited or curtailed as a result of her illness. Ms. Sneider's doctors have advised her to rest and conserve her energy, which limits her activities. Patricia Sneider experienced good health throughout her life. In June, 2023, Patricia was diagnosed with malignant pleural mesothelioma following a biopsy and talc pleurodesis performed at Cedars Saini Hospital.**

**For further response, Plaintiff defers to her medical records. Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena.**

51. If YOU have ever been told by a physician or other health care provider that YOUR complaints, symptoms, adverse reactions or injuries described in the preceding Interrogatory may have been caused by factors other than exposure to ASBESTOS (including,

but not limited to, smoking), state:

a. The names, addresses and telephone numbers of any physicians or health care providers who indicated that other factors or reasons could be involved;

b. What you were told by that person, and

c. The dates that person told YOU that he/she believed or suspected that other factors or reasons might be involved.

**RESPONSE TO NO. 51:**

**No, please see response herein to Interrogatory No. 50.**

52. If YOU or YOUR attorney have any medical reports from any PERSONS, hospitals, doctors or medical practitioners or institutions that have ever treated or examined YOU at any time and said records have not been produced to Defendant(s), please state:

a. The author of said report and, if applicable, the address of the medical office or institution on behalf of whom the report was prepared;

b. The date of said report;

c. The subject matter of said report;

d. The name, JOB title, address and present whereabouts of the PERSON who has present custody or control thereof.

**RESPONSE TO NO. 52:**

**None.**

**XII. SMOKING HISTORY**

53. If YOU have ever used tobacco products of any type, state fully and in detail:

a. The type of tobacco product YOU have used;

b. The daily frequency with which YOU smoke or have smoked;

c. The dates and time periods during which YOU have smoked;

d. For any time period during which YOU ceased using tobacco products, YOUR reasons for stopping;

e. For any time period that YOU commenced using tobacco products after a period of having stopped, YOUR reasons for beginning again;

f. If YOU have smoked cigarettes, state the brand name and the average number of packs smoked per day for each year YOU have smoked, whether they were filtered or unfiltered, together with the inclusive dates YOU have smoked cigarettes (e.g., Lucky Strikes; one pack per day between 1930 and 1931, two packs per day between 1931 and 1960; 1930-1960);

g. If YOU have ever been advised by any physician to stop smoking or to stop using other tobacco products and, if so, the date and the name and address of each physician who gave any such advice, and whether YOU followed such advice;

h. If YOU have ever been advised by any physician that YOU developed any illness, disease or physical condition as a result of smoking or the use of other tobacco products, state the date; the illness, disease or condition; and the name and address of each physician who gave such advice.

**RESPONSE TO NO. 53:**

**Plaintiff never smoked.**

54. Are YOU aware of the United States Surgeon General's warning placed on all cigarette packages and advertisements?

a. If so, please state when YOU became aware of the warning and whether or not YOU have ever read said warning;

b. Subsequent to becoming aware of, or reading said warning have YOU ever smoked;

c. Cigarettes; or

d. Other tobacco products.

**RESPONSE TO NO. 54:**

**Not applicable.**

**XIII. DAMAGES**

55. State the total medical expenses, including hospital expenses, which YOU have incurred, or which has been incurred on YOUR behalf, to date, as a result of the injuries, complaints, etc., which YOU attribute to YOUR alleged exposure to ASBESTOS, itemizing

each such charge.

**RESPONSE TO NO. 55:**

**Plaintiff's exact total out of pocket medical expenses are unknown at this time, are ongoing, continue to accrue and will be subject to proof at the trial of this case. For further response, Plaintiff defers to her medical records. Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date. For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena.**

56. If any PERSON has contributed any money, goods, services or benefits of any kind, during the previous ten years for the support of either yourself or YOUR spouse, identify each such PERSON, and, in addition, state:

a. Their relationship to you;

b. The nature and amount of any money, goods, services or benefits contributed to the support of yourself or YOUR spouse, together with dates on which or during which such support was received.

**RESPONSE TO NO. 56:**

**No.**

57. If any insurance company, union, or other PERSON, firm or corporation has paid for or reimbursed YOU or anyone on YOUR behalf for, or has become obligated to pay for or reimburse YOU or anyone on YOUR behalf for, any medical or hospital expense incurred by the alleged exposure to ASBESTOS, or any disability or other benefits, loss of earnings, property damage or any other item, list such expenses, itemizing the dates incurred, the nature of such expense, and the name and address of the insurance company, union PERSON, firm or corporation who or which has paid or is obligated for the payment for, or

reimbursement for, said expenses.

**RESPONSE TO NO. 57:**

**Pursuant to C.C.P. §2030.230: If the answer to an interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the interrogatory is directed, and if the burden or expense of preparing or making it would be substantially the same for the party propounding the interrogatory as for the responding party, it is a sufficient answer to that interrogatory to refer to this section and to specify the writings from which the answer may be derived or ascertained: Plaintiff has medical coverage through Anthem Blue Cross, Member ID # DGA12765562J, Group No. 276945M001.**

**For further response, Plaintiff defers to her medical records. Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date. For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena.**

58. If YOU claim YOU have lost wages or earnings as a result of YOUR alleged exposure to ASBESTOS, state:

a. The amount of time lost from work or employment, together with the date(s) involved and the name and address of the employer;

b. The gross amount of salary or earnings which YOU received from each payday, stating the intervals of such paydays;

c. The gross amount of salary or earnings actually lost;

d. Of the total sum stated in response to subpart c of this interrogatory, the amount that would be YOUR net take-home pay after deduction of taxes and all other authorized deductions;

e. If self-employed, state the total time lost from business, listing the dates involved and the gross financial loss to you, stating the nature of such loss and how incurred; and

f. Of the total sum stated in response to subpart e of this interrogatory, the amount that would be YOUR net loss after deduction of taxes.

**RESPONSE TO NO. 58:**

**Plaintiff's attorneys will conduct additional discovery and investigation of these facts. As such, Plaintiff anticipates said attorneys may be able to obtain additional information which is not contained in these responses, and therefore Plaintiff reserves the right to supplement these responses if asked to do so.**

59. If YOU claim any damages for pain and suffering, state:

a. The amount of damages so claimed;

b. The extent, duration, intensity and nature of the pain and suffering;

c. The specific cause of such pain and suffering;

d. The treatment, if any, prescribed for relief of such pain and suffering and the name and address of each PERSON prescribing such treatment;

e. All drugs used for the relief of pain or other symptoms of the diseases alleged, specifically identifying the precise name of the drug, precise quantity prescribed for each dose and the number of doses or applications of all such drugs;

**RESPONSE TO NO. 59:**

**a. Plaintiff believes this should be determined by the jury in this case and therefore defers to the empaneled jury to determine the appropriate amount of damages. It is believed that the evidence will support a verdict for damages in the amount of $20,000,000.00 to $40,000,000.00, or more.**

**b. Plaintiff has sustained and will continue to experience physical pain and mental suffering directly resulting from, but not limited to: her medical procedures and treatments, including those referenced above in Plaintiff's response to General Order Standard Interrogatory number 50, which is incorporated by reference as if set forth**

**fully herein; anxiety and apprehension in knowing that she is suffering from a life threatening disease; impaired enjoyment of life, including being unable to partake in routine daily activities in the same manner as she did prior to the onset of her symptoms and diagnosis; the inability to engage in social and recreational activities and most importantly, the inability to engage in normal family activities. Plaintiff daily faces the certainty of a painful and fatal disease, knowing that her pain and discomfort will increase and suffers anxiety and apprehension over her worsening condition. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to amend this response at any time.**

**c. Malignant Pleural Mesothelioma**

**d-e. Plaintiff defers to her medical records as the best source of information for the treatments prescribed to treat her condition and its pain and the medications she is taking to diminish her physical symptoms. For further response, Plaintiff defers to her medical records. Please see Plaintiff's List of Physicians and his List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date. For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to amend this response at any time.**

60. If YOU are receiving any form of disability pension, state from whom it is received, the amount received on a weekly, monthly, or yearly basis, and the length of time during which YOU will continue to receive this pension.

**RESPONSE TO NO. 60:**

**Not applicable.**

61. If YOU claim that injuries YOU have sustained from ASBESTOS exposure

have limited or adversely affected YOUR occupation or non-occupational lifestyle and activities, state the nature of the limitation or change, when it began, and how it has progressed.

**RESPONSE TO NO. 61:**

**Plaintiff was diagnosed with malignant pleural mesothelioma in June 2023. Each of the tests and procedures in connection with the mesothelioma caused pain, discomfort, and required recovery time, and limited Plaintiff's mobility, activity, and enjoyment of life. Plaintiff's current symptoms include general pain as well as feelings of weakness and lethargy, and continuing shortness of breath. Plaintiff's medical treatments, medications and increasing pain levels have affected her ability to engage in her usual activities of daily living in the same manner as before the onset of symptoms and complications of her mesothelioma. Prior to the onset of her symptoms, Plaintiff Patricia Sneider enjoyed a very active and fulfilling professional and personal life before the onset of her symptoms from mesothelioma earlier this year. Her relationships with family and friends have been adversely affected and she is limited in enjoying her favorite recreational activities.**

**In addition to the physical changes she has experienced, Plaintiff has also experienced changes in her mental state. Upon information and belief, Plaintiff has experienced many of the recognized emotional stressors associated with dealing with mesothelioma including but not limited to: fear, anger, and apprehension over her future; anxiety over her diminished and dwindling ability to care for herself and the stress of adjusting to being dependent upon others for her daily needs. Plaintiff has no further information responsive to this interrogatory at the present time. Plaintiff's investigation and discovery are continuing and Plaintiff reserves the right to amend this response at any time.**

62. If any children, relatives or other PERSONS are financially dependent upon you, and you are claiming emotional damages because of concern for surviving dependents, then state with respect to each such PERSON:

a. His/her full name and present residence address;

b. His/her relationship to YOU and degree of financial dependency upon you;

c. The amounts contributed from all sources to his/her support during the five years preceding YOUR responses to these interrogatories; and

d. The last year when you provided any type of support to him/her.

**RESPONSE TO NO. 62:**

**Not applicable.**

**XIV. PRIOR AND SUBSEQUENT CLAIMS AND LITIGATION**

63. If YOU have ever made a claim for personal injury or filed an action or proceeding in any court or other forum related to personal injury, other than in the present matter, please state:

a. The nature of such injury or injuries;

b. The date when such injury or injuries were sustained in each instance, the place of occurrence and the nature of the incident or accident causing the injury;

c. The court in which the claim or action was filed and case number;

d. The names and addresses of all PERSONS and companies to whom said claims were made;

e. The present status of such claims (pending, settled, dismissed, etc.).

**RESPONSE TO NO. 63:**

**Not Applicable.**

64. If YOU have ever filed a claim in order to receive benefits from either F.E.L.A., F.E.C.A., L.H.W.C.A. or the State of California (or any other state) Workers' Compensation Fund for an occupational injury, including, but not limited to, one arising out of exposure to ASBESTOS, for each claim state:

a. The date the claim was filed;

b. The basis for the claim;

c. The county or state in which the claim was filed and claim number;

d. The organization to whom the claim was presented;

e. The present status of the claim;

f. The amount of any benefit received; and

g. The date YOU first received such benefits.

**RESPONSE TO NO. 64:**

**No.**

## XV. INSURANCE

65. Identify all of YOUR health, accident and disability insurance policies and any other policies that provided coverage for health related conditions. As to each, state fully and in detail:

a. The name and address of each insurance carrier and number;

b. The amount of insurance coverage provided by the policy;

c. The date of effective period of the policy;

d. The name and address of the PERSON or entity having possession of the policy;

e. The named insured of the insured policy;

f. The type of policy;

**RESPONSE TO NO. 65:**

**a-f. Plaintiff has medical coverage through Anthem Blue Cross, Member ID # DGA12765562J, Group No. 276945M001.**

**Please see Plaintiff's List of Physicians and her List of Hospitals, which are attached hereto as Exhibits B and C, respectively. Plaintiff attaches hereto as Exhibit E copies of the medical records they have obtained to date. For further response, authorizations required by the Court's Order of January 31, 2012 were provided to defendants' selected records provider, Lexitas, on October 25, 2023. Authorizations for the Release of Records, including medical records, are also attached hereto as Exhibit D. Additionally, Plaintiff's records are available to Defendants through subpoena.**

66. If YOU have ever at any time made a claim for or received any health or accident insurance benefits, worker's compensation payment, disability benefits, pensions, accident compensation payments or veteran's disability compensation awards, state for each

claim:

a. The circumstances under which YOU made the claim for benefits, awards or payments;

b. The illness, injury or injuries for which YOU made the claim for benefits, awards or payments;

c. The name and address of YOUR employer(s) at the time of the injury or illness for which YOU made the claim;

d. The name and address of the examining doctor(s) for each injury or illness;

e. The name and address of the superiors, officers, boards or tribunals before which or to whom the claim as made or filed, and the date the claim as made or filed;

f. The identity of the agencies or insurance companies from whom YOU received the awards, benefits or payments.

**RESPONSE TO NO. 66:**

**Not Applicable.**

67. Are YOU now, or have you ever, received Medicare Benefits? If so, please state:

a. Whether YOU are currently enrolled in Medicare:

b. If YOU are not currently enrolled in Medicare, whether YOU have previously been enrolled;

c. The dates on which YOUR current Medicare enrollment began;

d. The dates on which any prior Medicare enrollment was in place;

e. YOUR current and/or former Medicare number(s);

**RESPONSE TO NO. 67:**

**Yes, see response to Interrogatory No. 65 herein.**

## XVI. BANKRUPTCY TRUST CLAIM

68. Have YOU or YOUR representative filed any claim against any trust established or approved in accordance with the asbestos trust and channeling provisions of the U.S. Bankruptcy Code, 11 U.S.C. § 524(g)-(h) (hereinafter "Trust")? If so, provide the following information:

a. IDENTIFY each Trust, by name and address, to which a claim has been filed or submitted by YOU or for YOUR behalf;

b. The date on which each claim was submitted;

c. IDENTIFY all DOCUMENTS submitted to any TRUST or TRUSTEE including, but not limited to, proof of claim forms, ballots, all document filed, lodged and/or submitted on or after January 1, 2015 pursuant to Rule 2019 Federal Rules of Bankruptcy Procedure, individual review claims, discounted cash payment claims, expedited review claims, diagnosing reports, work history reports/summaries, medical history reports/summaries, chest X-Rays, CT Scans, Pulmonary Function tests/reports, Pathology Reports, Dependent and Beneficiary summaries/forms, land exposure summaries/history, shipboard expos summaries/history, litigation history forms, amendments and supplements to any such documents and any other forms or documents that list, detail, evidence, reflect, embody, or demonstrate the asbestos-containing products to which you were allegedly exposed or the disease or medical condition for which you submitted a claim;

d. IDENTIFY all documents received from any TRUST, including but not limited to, release letters, deficiency letters, status letters, hold letters, denial letters, claims resolution procedure documents, trust distribution procedure documents, and any other correspondence from the trust, fund, or account; and

e. IDENTIFY the person who prepared and/or submitted the claim;

**RESPONSE TO NO. 68:**

**No claims have been made to any Bankruptcy Trust.**

69. Describe the status of all CLAIMS submitted by you or someone on your behalf, the status of all claims submitted to any Trust on your behalf, including but not limited to whether the claim has been accepted, denied, or is currently pending.

**RESPONSE TO NO. 69:**

**No claims have been made to any Bankruptcy Trust.**

70. If you have not received any payments from one or more of the TRUSTS to which you have submitted a CLAIM, state whether the TRUST has agreed to pay you on some

future date, or whether payment is contingent upon some future event.

**RESPONSE TO NO. 70:**

**No claims have been made to any Bankruptcy Trust.**

71. For all payments any TRUST has agreed to make to you but that have not yet been made, state when you expect to receive each payment, describe the terms and conditions of each payment you expect to receive and IDENTIFY all documents constituting or relating to any agreements with the SETTLEMENT TRUST.

**RESPONSE TO NO. 71:**

**No claims have been made to any Bankruptcy Trust.**

72. Please state whether payment of any settlement amounts to you from any TRUST have been deferred for any reason, including but not limited to, pending the outcome of any other litigation, and if so, state the circumstances of the deferral and IDENTIFY all documents relating to the deferred payment.

**RESPONSE TO NO. 72:**

**Not applicable as no claims have been made to any Bankruptcy Trust.**

73. For each claim identified in response to Interrogatory No. 68, state all facts supporting the claim including, but not limited to, the brand name, manufacturer and supplier of each asbestos-containing product, material and/or compound with which PLAINTIFF/DECEDENT worked, worked around, or to which PLAINTIFF/DECEDENT was otherwise exposed, when the exposure occurred, and how the exposure occurred.

**RESPONSE TO NO. 73:**

**No claims have been made to any Bankruptcy Trust.**

74. For each claim identified in response to Interrogatory No. 68, identify all PERSONS who have knowledge of facts about each asbestos-containing product, material and/or compound with which PLAINTIFF/DECEDENT worked, worked around, or to which PLAINTIFF/DECEDENT was otherwise exposed, which support the claim.

**RESPONSE TO NO. 74:**

**No claims have been made to any Bankruptcy Trust.**

75. For each ASBESTOS BANKRUPT ENTITY, state all facts in YOUR care, custody or control that PLAINTIFF/DECEDENT was exposed to any asbestos from an asbestos- containing product, material and/or compound related to that ASBESTOS BANKRUPT ENTITY, including, but not limited to, identification of the brand name, manufacturer and supplier of each asbestos-containing product, material and/or compound, when the exposure occurred, and how the exposure occurred.

**RESPONSE TO NO. 75:**

**No claims have been made to any Bankruptcy Trust.**

76. For each ASBESTOS BANKRUPT ENTITY referenced in response to Interrogatory No. 75, IDENTIFY all PERSONS who have knowledge of facts about the exposure including, but not limited to, identification of the brand name, manufacturer and supplier of each asbestos-containing product, material and/or compound, when the exposure occurred, and how the exposure occurred.

**RESPONSE TO NO. 76:**

**No claims have been made to any Bankruptcy Trust.**

77. For each ASBESTOS BANKRUPT ENTITY referenced in response to Interrogatory No. 75, IDENTIFY all DOCUMENTS that relate to the exposure including, but not limited to, identification of the brand name, manufacturer and supplier of each asbestos-containing product, material and/or compound, when the exposure occurred, how the exposure occurred, and witnesses to the exposure.

**RESPONSE TO NO. 77:**

**No claims have been made to any Bankruptcy Trust.**

78. IDENTIFY all DOCUMENTS not previously identified in response to Interrogatory Nos. 68 and 77 that relate to any existing claim by PLAINTIFF/DECEDENT against every ASBESTOS BANKRUPT ENTITY including, but not limited to, ballots, declarations, claims, all documents filed, lodged and/or submitted on or after January 1, 2015 pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure, claims or submissions, proofs of claim, and amendments or supplements thereto.

**RESPONSE TO NO. 78:**

**No claims have been made to any Bankruptcy Trust.**

DATED: November 27, 2023 SIMON GREENSTONE PANATIER, PC

By: Erica L. Falkner

Erica L. Falkner
Attorney for Plaintiff

# VERIFICATION TO FOLLOW

# EXPOSURE HISTORY SHEET

**Exhibit "A"**

**NAME:** **Patricia Sneider**

## EXPOSURE HISTORY SHEET

| LOCATIONS AND DATES OF EXPOSURE: | GENERAL DESCRIPTION OF ACTIVITIES: |
|---|---|
| Home Residences, including:<br>• Los Angeles, California (1990 – Present)<br>• Mexico City, Mexico (1976 – 1990)<br>• Pacific Grove, California (1976 – approx. 4 months)<br>• Paris, France (1974 – approx. 5 months)<br>• Mexico City, Mexico (1971)<br>• Quebec, Canada (1970 – 1971)<br>• Mexico City, Mexico (1962 – 1970) | Talc |

EXPOSURES FOR THIS TIME FRAME

Plaintiff Patricia Sneider provides this preliminary information based on her recollection of using products that may have caused her to be exposed to asbestos. Plaintiff's investigation is preliminary at this time and may be supplemented by additional facts recalled by Patricia Sneider and/or by information from witnesses, documentation gathered, and/or other investigation conducted. This investigation continues and Plaintiff will supplement this information upon obtaining additional information. At the present time, Patricia Sneider may have been exposed to asbestos from the following products:

Talcum Powders:
Avon – through 1990s
Chanel – beginning in 1990s
Dr. Scholl's foot powder – beginning in 1972
Johnson's
Yves Saint Laurent Opium – beginning in 1980

Talc-Containing Cosmetics:
Almay
Avon – through 1990s
Chanel – beginning in 1990s
CoverGirl – beginning in 1982
Clinique – 1990s
Dermablend– beginning in 1990s
Estee Lauder – beginning in 1990s
L.A. Girl Cosmetics – beginning in 1990s
L'Oreal – beginning in 1990s
Maybelline – beginning in 1990s
Neutrogena – beginning in 1990s

NYX – beginning in 1990s
Physicians Formula – beginning in 1990s
Revlon
Sephora – beginning in 1990s

# DOCTOR LIST

## Exhibit "B"

**PATRICIA SNEIDER**
**11611 CHENAULT STREET, APT 205**
**LOS ANGELES, CA 90049**
**DOB: 8/31/1962**
**SSN:XXX-XX-XXXX**

**DOCTOR HOSPITAL LIST**

**Cedars Sinai Medical Center**
8700 Beverly Blvd.
Los Angeles, CA 90048

**Dr. Robert B. Cameron**
200 Medical Plaza, Suite B265
Los Angeles, CA 90095

**Ronald Reagan UCLA Medical Center**
757 Westwood Plaza
Los Angeles, CA 90095

**Shrinath Barathan, M.D.**
8635 W. 3rd St., Suite 485W
Los Angeles, CA

**Beverly Hills Wilshire Primary Care**
8641 Wilshire Blvd., Suite 115
Beverly Hills, CA 90211

# HOSPITAL LIST

# Exhibit "C"

**PATRICIA SNEIDER**
**11611 CHENAULT STREET, APT 205**
**LOS ANGELES, CA 90049**
**DOB: 8/31/1962**
**SSN:XXX-XX-XXXX**

**DOCTOR HOSPITAL LIST**

**Cedars Sinai Medical Center**
8700 Beverly Blvd.
Los Angeles, CA 90048

**Dr. Robert B. Cameron**
200 Medical Plaza, Suite B265
Los Angeles, CA 90095

**Ronald Reagan UCLA Medical Center**
757 Westwood Plaza
Los Angeles, CA 90095

**Shrinath Barathan, M.D.**
8635 W. 3rd St., Suite 485W
Los Angeles, CA

**Beverly Hills Wilshire Primary Care**
8641 Wilshire Blvd., Suite 115
Beverly Hills, CA 90211

# AUTHORIZATIONS

## Exhibit "D"

# HIPAA COMPLIANT AUTHORIZATION FORM PURSUANT TO 45 CFR 164.508

Name of the person(s), or class of persons, authorized to make the requested disclosure: ____________________________________________

____________________________________________

____________________________________________

____________________________________________

____________________________________________

____________________________________________

Patient name:__________________________________
aka:____________________________________________
Date of birth:______________ Social Security #: ______________
Address:________________________________________________

I authorize the disclosure of all protected medical information for the purpose of review and evaluation in connection with a legal claim. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information spanning the time period of _______________________ to ___________________________.

Including the following:
-All medical records, including in-patient, out-patient and emergency room treatment, all clinical charts, reports, documents, correspondence, test results, statements, questionnaires/histories, office and doctor's handwritten notes, and records received by other physicians.
-All autopsy, laboratory, histology, cytology, pathology, radiology, CT scan, MRI, echocardiogram and cardiac catheterization reports.
-All radiology films, mammograms, myelograms, CT scans, photographs, bone scans, ~~pathology/cytology/histology/autopsy/immunohistochemistry specimens~~, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos.
-All pharmacy/prescription records including NDC numbers and drug information handouts/monographs.
-All billing records including all statements, itemized bills and insurance records.

Information about alcohol/substance abuse and HIV/AIDS may be disclosed

as follows (check all that apply):

[redacted]

I authorize you to release the protected health information to:

**Lexitas**
7700 Irvine Center Dr., Suite 450
Irvine, CA 92618
(949) 707-5031 Fax: (949) 707-0798

This authorization does not apply to psychotherapy notes, psychiatric or psychological records. I have a right to receive a copy of this authorization. I acknowledge the right to revoke this authorization by writing to the handling attorney or paralegal. However, I understand that any actions already taken in reliance on this authorization cannot be reversed and my revocation will not affect those actions. I acknowledge the potential for information disclosed pursuant to this authorization to be subject to re-disclosure by the recipient and no longer be protected under 45CFR 164.508. I understand that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not I sign the authorization. Any facsimile, copy or photocopy of the authorization shall authorize you to release the records herein. This authorization expires two years from the date below.

Signature: ______________________________ Date: _________________ __

Relationship to the person who is the subject of the records: ______________

Self:______ Other (describe authority):____________________________

# UNION RECORD AUTHORIZATION

TO: ______________________________
______________________________
______________________________
______________________________

RE: ______________________________________________________

You are hereby authorized to produce: ***All papers, documents, notes, memoranda, correspondence, employment reports, evaluations, application forms, employment histories and records of every description pertaining to any and all aspects of the application, employment and termination of the undersigned for their examination, retention, review and photocopying to:***

**Lexitas**
7700 Irvine Center Dr., Suite 450
Irvine, CA 92618
(949) 707-5031 Fax: (949) 707-0798

The aforementioned information is material and relevant to the lawsuit referenced above. Said information may be disclosed by attorneys to any other attorneys in said action and is to be used in the preparation of and for litigation.

This authorization shall remain valid for two (2) years from the date of the signing hereof.

The undersigned acknowledges that they have the right to receive a copy of this authorization.

DATED: ________________ ______________________________
UNION MEMBER

______________________________
MEMBER'S SOCIAL SECURITY NUMBER

# EMPLOYMENT RECORD RELEASE AUTHORIZATION

TO: ______________________________
______________________________
______________________________
______________________________

RE: ______________________________________________________

I AUTHORIZE any employer, business, accountant, bookkeeper or other entity or person to release records of any kind, including but not limited to, employment, personnel, reports, documents, correspondence, notes, ledgers, journals, applications for employment, medical and health records, information regarding raises, promotions, absenteeism, disciplinary actions, evaluations, terminations, and any other records from the first date of employment to the present date regarding the above-named employee.

I AUTHORIZE you to release release any and all such information to:

**Lexitas**
7700 Irvine Center Dr., Suite 450
Irvine, CA 902618
Tel: (949 707-5031 Fax: (949) 707-0798

I UNDERSTAND that the information obtained by use of the Authorization will be used by the aforementioned law firm and other persons and organizations performing business or legal services in connection with the pending claim and/or litigation concerning me, or as may be otherwise lawfully required or as I am otherwise authorize.

I AGREE that a photographic copy of this Authorization shall be as valid as the original.

I AGREE that this Authorization shall be valid for two years from the date shown below as that of my signature, unless revoking IN WRITING.

I CERTIFY that I have read and understand the foregoing; that I agree and consent to the release of information and records as set forth above; that my consent and authorization is freely given; that I have received a copy of this authorization; and I acknowledge that I have the right to receive a copy of this signed authorization pursuant to the provisions of California Civil Code Section 56.10.

DATED: ______________________ ______________________________
Signature of Employee or Legal Representative

Social Security Administration

Form Approved
OMB No. 0960-0566

# Consent for Release of Information

You must complete all required fields. We will not honor your request unless all required fields are completed. (**Signifies a required field. **Please complete these fields in case we need to contact you about the consent form*).

**TO: Social Security Administration**

| ***My Full Name** | ***My Date of Birth (MM/DD/YYYY)** | ***My Social Security Number** |
|---|---|---|
| | | |

I authorize the Social Security Administration to release information or records about me to:

***NAME OF PERSON OR ORGANIZATION:**

Lexitas

***ADDRESS OF PERSON OR ORGANIZATION:**

7700 Irvine Center Dr., Suite 450
Irvine, CA 92618
(949) 707-5031

***I want this information released because:** Asbestos Litigation

We may charge a fee to release information for non-program purposes.

***Please release the following information selected from the list below:**
**Check at least one box. We will not disclose records unless you include date ranges where applicable.**

1. ☐ Verification of Social Security Number
2. ☒ Current monthly Social Security benefit amount
3. ☐ Current monthly Supplemental Security Income payment amount
4. ☒ My benefit or payment amounts from date ___________ to date ___________
5. ☒ My Medicare entitlement from date ___________ to date ___________
6. ☐ Medical records from my claims folder(s) from date___________ to date___________
   If you want us to release a minor child's medical records, do not use this form. Instead, contact your local Social Security office.
7. ☒ Complete medical records from my claims folder(s)
8. ☒ Other record(s) from my file (We will not honor a request for "any and all records" or "the entire file." You must specify other records; e.g., consultative exams, award/denial notices, benefit applications, appeals, questionnaires, doctor reports, determinations.)
   Applications, questionnaires, consultative exams, evaluations, determinations, award / denial notices, appeals, retirement folder, disability benefits.

**I am the individual, to whom the requested information or record applies, or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare under penalty of perjury (28 CFR § 16.41(d)(2004) that I have examined all the information on this form and it is true and correct to the best of my knowledge. I understand that anyone who knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000. I also understand that I must pay all applicable fees for requesting information for a non-program-related purpose.**

***Signature:** [signature] ***Date:** ___________

****Address:** ___________ ****Daytime Phone:** ___________

**Relationship (if not the subject of the record):** ___________ ****Daytime Phone:** ___________

Witnesses must sign this form ONLY if the above signature is by mark (X). If signed by mark (X), two witnesses to the signing who know the signee must sign below and provide their full addresses. Please print the signee's name next to the mark (X) on the signature line above.

| 1.Signature of witness | 2.Signature of witness |
|---|---|
| Address(Number and street,City,State, and Zip Code) | Address(Number and street,City,State, and Zip Code) |

# REQUEST FOR SOCIAL SECURITY EARNING INFORMATION

1. Provide your name as it appears on your most recent Social Security card or the name of the individual whose earnings you are requesting.

First Name: Middle Initial:

Last Name:

Social Security Number (SSN) One SSN per request

Date of Birth: Date of Death:

Other Name(s) Used
Maiden Name

2. What kind of earnings information do you need? (Choose **ONE** of the following types of earnings or SSA must return this request.)

☒ **Itemized Statement of Earnings $100.00**
(Includes the names and addresses of employers)
If you check this box, tell us why you need this information below.
Asbestos Litigation Discovery

Year(s) Requested: to
Year(s) Requested: to

☒ Check this box if you want the earnings information **CERTIFIED** for an additional $44.00 fee.

☐ **Certified Yearly Totals of Earnings $44.00**
(Does not include the names and addresses of employers)Yearly earnings totals are FREE to the public if you do not require certification. To obtain FREE yearly totals of earnings, visit our website at www.ssa.gov/myaccount.

Year(s) Requested: to
Year(s) Requested: to

3. If you would like this information **sent to someone else**, please fill in the information below.
I authorize the Social Security Administration to release the earnings information to:

Name Lexitas

Address 7700 Irvine Center Dr., Suite 450 State CA

City Irvine ZIP Code 92618

4. I am the individual to whom the record pertains (or a person authorized to sign on behalf of that individual). I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.

**Signature AND Printed Name of Individual or Legal Guardian**
[signature]

*SSA must receive this form within 120 days from the date signed*
Date

Relationship (if applicable, you must attach proof) Daytime Phone:

Address State

City ZIP Code

Witnesses must sign this form ONLY if the above signature is by marked (X). If signed by mark (X), two witnesses to the signing who know the signee must sign below and provide their full addresses. Please print the signee's name next to the mark (X) on the signature line above.

1. Signature of Witness
2. Signature of Witness

Address *(Number and Street, City, State and ZIP Code)*
Address *(Number and Street, City, State and ZIP Code)*

Standard Form 180 (Rev. 09/2021) (Page 1)
Prescribed by NARA (36 CFR 1233.18(d))
Authorized for local reproduction
Previous edition unusable
OMB No. 3095-0029 Expires 04/30/2024

# REQUEST PERTAINING TO MILITARY RECORDS

**Requests can be submitted online using eVetRecs at https://www.archives.gov/veterans/military-service-records/**

To ensure the best possible service, please thoroughly review the accompanying instructions before filling out this form. PLEASE PRINT LEGIBLY OR TYPE BELOW.

## SECTION I - INFORMATION NEEDED TO LOCATE RECORDS *(Furnish as much information as possible.)*

| 1. NAME USED DURING SERVICE (last, first, full middle) | 2. SOCIAL SECURITY # | 3. DATE OF BIRTH | 4. PLACE OF BIRTH |
|---|---|---|---|
| | | | |

**5. SERVICE, PAST AND PRESENT** *(For an effective records search, it is important that ALL service be shown below.)*

| | BRANCH OF SERVICE | DATE ENTERED | DATE RELEASED | OFFICER | ENLISTED | SERVICE NUMBER (If unknown, write "unknown") |
|---|---|---|---|---|---|---|
| a. ACTIVE | | | | ☐ | ☐ | |
| b. RESERVE | | | | ☐ | ☐ | |
| c. NATIONAL GUARD | | | | ☐ | ☐ | |

**6. PLEASE LIST LAST FOUR DUTY STATIONS, IF KNOWN:** 1. ________ 2. ________ 3. ________ 4. ________

**7. IS THIS PERSON DECEASED?** ☐ NO ☐ YES - *MUST provide Date of Death if veteran is deceased:* ________

**8. DID THIS PERSON RETIRE FROM MILITARY SERVICE?** ☐ NO ☐ YES

## SECTION II – INFORMATION AND/OR DOCUMENTS REQUESTED

**1. CHECK THE ITEM(S) YOU ARE REQUESTING:**

☒ **DD Form 214 or equivalent:** Year(s) in which form(s) issued to veteran (Date of Separation): ________
This form contains information used to verify military service. **An UNDELETED DD Form 214 is ordinarily required to determine eligibility for benefits**. If you request a DELETED copy, the following items will be blacked out: authority for separation, reason for separation, reenlistment eligibility code, separation (SPD/SPN) code, and, for separations after June 30, 1979, character of separation and dates of time lost. Please note – recent veterans may be able to request a DD Form 214 through milConnect by visiting: https://www.va.gov/records/get-military-service-records/
***An UNDELETED copy will be sent UNLESS YOU SPECIFY A DELETED COPY by checking this box:*** ☐ I want a **DELETED** copy.

☒ **Official Military Personnel File (OMPF):** The OMPF may include duty stations and assignments, training and qualifications, awards and decorations received, disciplinary actions, administrative remarks, enlistment and/or discharge information (including DD Form 214, Report of Separation, or equivalent), and other personnel actions. Detailed information about the veteran's participation in battles and their military engagements is NOT contained in the record.

☒ **Medical Records:** Includes health (outpatient), extended ambulatory, and dental records. If inpatient/hospitalization records are requested, please specify below.
☐ I request inpatient/hospitalization records from ________ (facility), last treated in ________ (year). **(NOTE: Fields are required)**
If available, you may receive copies of inpatient narrative summaries, operative reports, discharge summaries, etc. contained in the record.

☐ **Dental Records:** Please check this box if **ONLY** dental records are needed from the medical record.

☐ **Other (Please Specify):** ________

**2. PURPOSE:** (Providing information about the purpose of the request is **voluntary;** however, it may help to provide the best possible response and may result in a faster reply. Information provided will in no way be used to make a decision to deny the request.)

☐ Benefits (explain) ☐ Employment ☐ VA Loan Programs ☐ Medical ☐ Genealogy ☐ Correction ☐ Personal ☒ Other (explain)

Explain here: ASBESTOS LITIGATION DISCOVERY

## SECTION III - RETURN ADDRESS AND SIGNATURE

**1. REQUESTER NAME:** ________

**2. RELATIONSHIP TO VETERAN:** ________

**3.** ☐ I am the MILITARY SERVICE MEMBER OR VETERAN identified in Section 1, above.
☐ I am the DECEASED VETERAN'S NEXT-OF-KIN **(MUST submit Proof of Death.** See item 2a on instruction sheet.)
☐ I am the VETERAN'S LEGAL GUARDIAN **(MUST submit copy of Court Appointment)** or AUTHORIZED REPRESENTATIVE (MUST submit copy of Authorization Letter or Power of Attorney)
☐ OTHER (Specify): ________

**4. SEND INFORMATION/DOCUMENTS TO:**
(Please print or type. See item 4 on accompanying instructions.)

Lexitas

7700 Irvine Center Dr., Suite 450
Street Address | Apt. #

Irvine | CA | 92618
City | State | ZIP Code

(949) 707-5031 | (949) 707-0798
Daytime Phone | Fax Number

laosd.records@lexitaslegal.com
Email Address

**5. AUTHORIZATION SIGNATURE: I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the information in this Section 3 is true and correct and that I authorize the release of the requested information.** *(See items 2a or 3a on the accompanying instructions sheet. Without the Authorization Signature of the veteran, next-of-kin of deceased veteran, veteran's legal guardian, authorized government agent, or other authorized representative, only limited information can be released unless the request is archival. No signature is required if the request is for archival records.)*

[signature]

Signature Required – Do not print | **Date**

* This form is available at https://www.archives.gov/veterans-military-service-records/standard-form-180.pdf on the National Archives and Records Administration (NARA) web site. *

Form Approved: OMB No. 2900-0028
Respondent Burden: 7.5 minutes

Department of Veterans Affairs

# REQUEST FOR AND CONSENT TO RELEASE OF INFORMATION FROM INDIVIDUAL'S RECORDS

**PRIVACY ACT STATEMENT:** The execution of this form does not authorize the release of information other than that specifically described below. The information requested on this form is solicited under Title 38, United States Code, and will authorize release of the information you specify. The information may also be disclosed outside VA as permitted by law to include disclosure as stated in the "Notices of Systems of VA Records" published in the Federal Register in accordance with the Privacy Act of 1974.

**RESPONDENT BURDEN:** VA may not conduct or sponsor, and the respondent is not required to respond, to this collection of information unless it displays a valid OMB Control Number. The Privacy Act of 1974 (5 U.S.C. 552a) and VA's confidentiality statute (38 U.S.C. 5701) as implemented by 38 CFR 1.526(a) and 38 CFR 1.576(b) require individuals to provide written consent before documents or information can be disclosed to third parties not allowed to receive records or information under any other provision of law. The information requested is approved under OMB Control Number 2900-0028 and is necessary to ensure that the statutory requirements of the Privacy Act and VA's confidentiality statute are met.

Responding to this collection of information is voluntary. However, if the information is not furnished, we may not be able to comply with your request. Public reporting burden for this collection is estimated to average 7.5 minutes per respondent, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspects of this collection of Information, including suggestions for reducing this burden, to the VA Clearance Officer (005E3), 810 Vermont Avenue, NW, Washington, DC 20420. **Send comments only. Do not send** this form or requests for benefits to this address.

TO: **Department of Veterans Affairs**

NAME OF INDIVIDUAL *(Type or print)*:

VA FILE NO. *(Include prefix)*:

SOCIAL SECURITY NUMBER:

NAME AND ADDRESS OF ORGANIZATION OR INDIVIDUAL TO WHOM INFORMATION IS TO BE RELEASED

Lexitas, Tel: (949) 707-5031 Fax: (949) 707-0798

7700 Irvine Center Dr., Suite 450, Irvine, CA 92618

## VETERAN'S REQUEST

I hereby request and authorize the Department of Veterans Affairs to release the following information from the records identified above to the organization, agency, or individual named hereon: ▶ NAME: Lexitas

INFORMATION REQUESTED *(Number each item requested and give the dates or approximate dates - period from and to - covered by each.)*

All documents, all medical records, all applications (including offline applications and online applicatinos via VONAPP), all proofs of claims and all statements in support of claim, including but not limited to VA Forms; 21-526, 21-534, 21-535, 21-4138, 21-4176, 21-8940 and 29-357, submitted in support of any claim for disability compensation benefits.

PURPOSE(S) FOR WHICH THE INFORMATION IS TO BE USED.

Asbestos Litigation Discovery

***NOTE:*** *Additional information may be listed on the reverse side of this form.*

SIGNATURE OF INDIVIDUAL OR PERSON AUTHORIZED TO SIGN FOR INDIVIDUAL *(Attach authority to sign, e.g., POA)*: [signature]

DATE:

OMB Approved No. 2900-0736
Respondent Burden: 5 minutes
Expiration Date: 02/28/2026

Department of Veterans Affairs

VA DATE STAMP
(DO NOT WRITE IN THIS SPACE)

# AUTHORIZATION TO DISCLOSE PERSONAL INFORMATION TO A THIRD PARTY

**INSTRUCTIONS:** Use this form if you want to give the Department of Veterans Affairs (VA) permission to release your personal beneficiary or claim information to a third party. This form ***may not be executed*** by any beneficiary recognized as incompetent for VA purposes, nor can VA ***accept*** this form from any beneficiary recognized as incompetent for VA purposes.

## SECTION I - VETERAN'S IDENTIFICATION INFORMATION

**NOTE:** You may *either* complete the form online or by hand. If completed by hand print the information requested in ink, neatly, and legibly to expedite processing the form.

1. VETERAN'S NAME *(First, Middle Initial, Last)*

2. VETERAN'S SOCIAL SECURITY NUMBER — —

3. VA FILE NUMBER *(If known)*

4. VETERAN'S DATE OF BIRTH *(MM/DD/YYYY)* — —

5. VETERAN'S SERVICE NUMBER *(If applicable)*

## SECTION II - BENEFICIARY/CLAIMANT'S IDENTIFICATION INFORMATION

6. NAME OF BENEFICIARY/CLAIMANT WHO IS ***NOT*** THE VETERAN *(First, Middle Initial, Last)*

7. ADDRESS OF BENEFICIARY/CLAIMANT *(Number and Street or rural route, P.O. Box, City, State, ZIP Code and Country)*

No. & Street

Apt./Unit Number City

State/Province Country ZIP Code/Postal Code —

8. TELEPHONE NUMBER *(Include Area Code)* — —

Enter International Phone Number *(If applicable)* ______

9. EMAIL ADDRESS *(Optional)* ☐ I agree to receive electronic correspondence from VA in regards to my claim.

## SECTION III - CONTACT INFORMATION

10. VA IS AUTHORIZED TO DISCLOSE THE INFORMATION SPECIFIED BELOW TO ONE PERSON ***OR*** ONE ORGANIZATION LISTED BELOW. PROVIDE THE NAME AND ADDRESS OF THE PERSON YOU HAVE CHOSEN TO RECEIVE INFORMATION FROM VA IN ITEMS 10A AND 10B ***OR*** PROVIDE THE NAME AND ADDRESS OF THE ORGANIZATION YOU HAVE CHOSEN AND THE NAME OF THE ORGANIZATION'S REPRESENTATIVE IN ITEMS 10C AND 10D.

A. NAME OF PERSON *(First, Middle Initial, Last Name)*

B. ADDRESS OF PERSON

No. & Street

Apt./Unit Number City

State/Province Country ZIP Code/Postal Code —

**NOTE:** An organization may have more than one representative. Include the first and last name of any additional representatives.

C. NAME OF ORGANIZATION *(Include name of representative(s))*

LUCY SOTO / LEXITAS-COURT
APPROVED VENDOR IN RE LAOSD
ASBESTOS LITIGATION, JCCP CASE 4674

D. ADDRESS OF ORGANIZATION

No. & Street: 7700 IRVINE CENTER DR

Apt./Unit Number: 450 City: IRVINE

State/Province: CA Country: US ZIP Code/Postal Code: 92618 —

VETERAN'S SSN [ ] - [ ] - [ ]

11. I, THE BENEFICIARY/CLAIMANT AUTHORIZE VA TO CONTACT THE PERSON ***OR*** ORGANIZATION LISTED IN ITEM 10A OR 10C FOR THE PURPOSE OF PROVIDING THE FOLLOWING INFORMATION PERTAINING TO MY VA RECORD *(Check only one box below to tell VA the specific benefit or claim information you want disclosed)*

☐ LIMITED INFORMATION *(Go to Item 12)* ☐ ANY INFORMATION *(Go to Item 13)*

12. IF YOU SELECTED "LIMITED INFORMATION", CHECK ALL THAT APPLY:

☐ Status of pending claim or appeal ☐ Amount of money owed VA ☐ Current benefit and rate

☐ Request a benefit payment letter ☐ Payment history ☐ Change of address or direct deposit

☐ Other *(Specify below)*:

13. IF YOU SELECTED "ANY INFORMATION", THE TERMS OF SUCH RELEASE OF INFORMATION WILL BE:

☐ One time only ☐ Ongoing until written notice is given to VA to terminate

☐ From the date of signing below until *(Specify Date (MM/DD/YYYY))*: [ ] - [ ] - [ ]

14. SPECIFY THE SECURITY QUESTION YOU WANT USED WHEN VERIFYING THE IDENTITY OF YOUR DESIGNATED THIRD PARTY. CHECK ONLY ***ONE*** SECURITY QUESTION BOX IN ITEM 14A AND PROVIDE THE ANSWER IN ITEM 14B.

| A. SECURITY QUESTION | B. ANSWER |
|---|---|
| ☐ The city and state your mother was born in | |
| ☐ The name of the high school you attended | |
| ☒ Your first pet's name | F I D O |
| ☐ Your favorite teacher's name | |
| ☐ Your father's middle name | |

## SECTION IV - DECLARATION OF INTENT

**I CERTIFY THAT** the statements on this form are true and correct to the best of my knowledge and belief.

15. CLAIMANT/BENEFICIARY SIGNATURE *(REQUIRED)*

[signature]

16. DATE SIGNED *(MM/DD/YYYY)* [ ] - [ ] - [ ]

**PRIVACY ACT INFORMATION**: VA will not disclose information collected on this form to any source other than what has been authorized under the Privacy Act of 1974 or title 38, Code of Federal Regulations 1.576 for routine uses (i.e., civil or criminal law enforcement, congressional communications, epidemiological or research studies, the collection of money owed to the United States, litigation in which the United States is a party or has an interest, the administration of VA programs and delivery of VA benefits, verification of identity and status, and personnel administration as identified in the VA system of records, 58VA21/22/28 Compensation, Pension, Education, and Veteran Readiness and Employment Records - VA, published in the Federal Register. Your obligation to respond is voluntary. VA uses your SSN to identify your claim file. Providing your SSN will help ensure that your records are properly associated with your claim file. Giving us your SSN account information is voluntary. Refusal to provide your SSN by itself will not result in the denial of benefits. The VA will not deny an individual benefits for refusing to provide his or her SSN unless the disclosure of the SSN is required by Federal Statute of law in effect prior to January 1, 1975, and still in effect.

**RESPONDENT BURDEN:** We need this information to release your private benefit and/or claim information to a designated third party(ies). The execution of this form does not authorize the release of information other than that specifically described. The information requested on this form will authorize release of the information you specify. Title 38, United States Code, allows us to ask for this information. We estimate that you will need an average of 5 minutes to review the instructions, find the information, and complete this form. VA cannot conduct or sponsor a collection of information unless a valid OMB control number is displayed. You are not required to respond to a collection of information if this number is not displayed. Valid OMB control numbers can be located on the OMB Internet Page at www.reginfo.gov/public/do/PRAMain. If desired, you can call 1-800-827-1000 to get information on where to send comments or suggestions about this form.

**Department of Veterans Affairs**

# REQUEST FOR AND AUTHORIZATION TO RELEASE HEALTH INFORMATION

**PRIVACY ACT AND PAPERWORK REDUCTION ACT INFORMATION:** The Paperwork Reduction Act of 1995 requires us to notify you that this information collection is in accordance with the clearance requirements of section 3507 of the Act. We may not conduct or sponsor, and you are not required to respond to, a collection of information unless is displays a valid OMB number. We anticipate that the time expended by all individuals who must complete this form will average 2 minutes. This includes the time it will take to read the instructions, gather the necessary facts and fill out this form. The execution of this form does not authorize the release of information other than that specifically described below.

The information requested on this form is solicited under Title 38 U.S.C. The form authorizes release of information in accordance with the Health Insurance Portability and Accountability Act, 45 CFR Parts 160 and 164; 5 U.S.C. 552a; and 38 U.S.C. 5701 and 7332 that you specify. Your disclosure of the information requested on this form is voluntary. However, if information needed to locate records for release is not furnished completely and accurately, VA will be unable to comply with the request. The Veterans Health Administration may not condition the provision of treatment, payment, enrollment in the VA Health Care Program, or eligibility for benefits on the signing of an authorization, except for research-related treatment where an authorization for the use or disclosure of individually-identifiable health information for such research is required. VA may disclose the information that you put on the form as permitted by law. VA may make a "routine use" disclosure of the information as outlined in the Privacy Act system of records notices identified as 24VA10A7 "Patient Medical Record - VA", 08VA05 "Employee Medical File System Records (Title 38)-VA" and in accordance with the Notice of Privacy Practices. VA may also use this information to identify Veterans and person claiming or receiving VA benefits and their records, and for other purposes authorized or required by law.

TO: DEPARTMENT OF VETERANS AFFAIRS *(Name and Location of the VA Health Care Facility)*

| LAST NAME- FIRST NAME- MIDDLE NAME | DATE OF BIRTH *(mm/dd/yyyy)* |
|---|---|
| | |

PATIENT'S MAILING ADDRESS (*including City, State and Zip Code*)

NAME AND ADDRESS OF ORGANIZATION, INDIVIDUAL, OR TITLE OF INDIVIDUAL TO WHOM INFORMATION IS TO BE RELEASED

Lexitas, 7700 Irvine Center Dr., Suite 450, Irvine, CA 92618 (949) 707-5031

**PURPOSE(S) OR NEED:** Information is to be used by the requestor for:

☐ TREATMENT ☐ BENEFITS ☒ LEGAL ☐ EMPLOYMENT ☐ OTHER *(Please specify below)*:

Asbestos Litigation Discovery

**INFORMATION REQUESTED:** Check applicable box(es) and state the extent or nature of information to be provided:

- ☐ HEALTH SUMMARY *(Prior 2 Years)*
- ☒ PATIENT MEDICAL RECORDS *(Dates)*: ____
- ☒ INPATIENT DISCHARGE SUMMARY *(Dates)*: ____
- ☒ PROGRESS NOTES:
  - ☐ SPECIFIC CLINICS *(Name & Date Range)*: ____
  - ☐ SPECIFIC PROVIDERS *(Name & Date Range)*: ____
  - ☐ DATE RANGE: ____
- ☒ OPERATIVE/CLINICAL PROCEDURES *(Name & Date)*: ____
- ☒ LAB RESULTS:
  - ☐ SPECIFIC TESTS *(Name & Date)*: ____
  - ☐ DATE RANGE: ____
- ☒ RADIOLOGY REPORTS *(Name & Date)*: ____
- ☒ LIST OF ACTIVE MEDICATIONS: ____
- ☐ VACCINATION *(Dose, Lot Number, Date & Location)*: ____
- ☐ ADMINISTRATIVE RECORDS: ____
- ☒ OTHER *(Describe)*: This authorization does not include the release of pathology, cytology, histology, immunohistochemistry, and autopsy specimens.

| LAST NAME- FIRST NAME- MIDDLE NAME | DATE OF BIRTH *(mm/dd/yyyy)* |
|---|---|
| | |

**SENSITIVE DIAGNOSES: REVIEW AND, IF APPROPRIATE, COMPLETE WHEN RELEASE IS FOR ANY PURPOSE OTHER THAN TREATMENT.**

I request and authorize Department of Veterans Affairs to release the information pertaining to the condition(s) below for the non-treatment purpose(s) listed in this authorization.

☐ DRUG ABUSE ☐ ALCOHOLISM OR ALCOHOL ABUSE ☐ SICKLE CELL ANEMIA

☐ HUMAN IMMUNODEFICIENCY VIRUS *(HIV)*

I understand that information on these sensitive diagnoses may be released for treatment purposes without me checking the above boxes, and will be released even if the boxes are unchecked unless I indicate by checking the box below that I do not want this information released for this specific disclosure.

☒ **I do not want sensitive diagnoses released for treatment purposes under this specific authorization. I realize this does not impact other future requests unrelated to this authorization.**

**AUTHORIZATION:** I certify that this request has been made freely, voluntarily and without coercion and that the information given above is accurate and complete to the best of my knowledge. I understand that I will receive a copy of this form after I sign it. I may revoke this authorization in writing, at any time except to the extent that action has already been taken to comply with it. Written revocation is effective upon receipt by the Release of Information Unit at the facility housing records. Any disclosure of information carries with it the potential for unauthorized redisclosure, and the information may not be protected by federal confidentiality rules.

I understand that the VA health care provider's opinions and statements are not official VA decisions regarding whether I will receive other VA benefits or, if I receive VA benefits, their amount. They may, however, be considered with other evidence when these decisions are made at a VA Regional Office that specializes in benefit decisions.

**EXPIRATION:** Without my express revocation, the authorization will automatically expire *(select one of the following)*:

☐ AFTER ONE-TIME DISCLOSURE, IF ALL NEEDS ARE SATISFIED

☐ ON *(mm/dd/yyyy)* ______________ *(enter a future date other than date signed by patient)*

☐ UNDER THE FOLLOWING CONDITION(S): ______________________________

| PATIENT SIGNATURE *(Sign in ink)* [signature] | DATE *(mm/dd/yyyy)* |
|---|---|
| LEGAL REPRESENTATIVE SIGNATURE *(if applicable) (Sign in ink)* | DATE *(mm/dd/yyyy)* |
| PRINT NAME OF LEGAL REPRESENTATIVE | RELATIONSHIP TO PATIENT |

**FOR VA USE ONLY**

TYPE AND EXTENT OF MATERIAL RELEASED

| DATE RELEASED *(mm/dd/yyyy)* | RELEASED BY: |
|---|---|
| | |

# MEDICARE AUTHORIZATION FORM

****ALL SECTIONS REQUIRED****

## SECTION A: BENEFICIARY INFORMATION

Enter beneficiary name as it appears on Medicare card.

| First Name: | Middle Name: | Last Name: |
|---|---|---|
| Date of Birth *(mm/dd/yyyy)* | Medicare Identification Number: | |
| Address: | | |
| City: | State: | Zip code: |

## SECTION B: RECORD DETAILS DEFINITION

Medicare will only disclose the claim information identified below for the individual in Section A.

Select **one** option:
- ☐ Release **all** records to date
- ☐ Release records in timeframe from start date __________ to end date: __________

**NY residents only:**
- ☐ Include all records
- ☒ Exclude information about alcohol and drug abuse, mental health treatment, and HIV

Indicate whether authorization release is for a one-time disclosure, or Identify a future date or event when the authorization will expire.

Select **one** option:
- ☐ One-time disclosure
- ☐ Expiration upon specified date __________
- ☐ Expiration upon specified event __________

## SECTION C: RELEASE INFORMATION TO

Identify the name, address and contact information of the person and/or organization to whom you want Medicare to disclose the claim records. Medicare will only release claim records to those listed.

Release claim records to beneficiary at mailing address above.

| Organization / Individual 1 Name | Recipient 1 Phone / Fax / Email Address |
|---|---|
| Lexitas / Lucy Soto | T: (949) 707-5031 F: (949) 707-0798 laosd.records@lexitaslegal.com |

## SECTION D: PURPOSE FOR REQUEST

This section helps Medicare understand the reason or intent for use for this record request.

| At the request of the individual | ▪ Litigation |
|---|---|

## SECTION E: AUTHORIZATION AGREEMENT

I authorize Medicare to disclose claim records to the person(s) or organization(s) documented in Section C. I understand that these claim records may be re-disclosed by the recipient and may no longer be protected by law.

I understand I have the right to revoke this authorization at any time, in writing, except to the extent that Medicare has already acted based on my permission.

I understand that signing this authorization is voluntary. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on my authorization of this disclosure.

| Signature of Beneficiary or Representative Authorized by Law: [signature] | Date Signed: |
|---|---|

Legal Role of Representative (Requires Additional Documentation):

**AUTHORIZATION FOR RELEASE OF RECORDS OF ASBESTOS BANKRUPTCY TRUSTS[1] AND CLAIMS RESOLUTION FACILITIES**

CALIFORNIA SUPERIOR COURT
CITY AND COUNTY OF LOS ANGELES

To All Asbestos Bankruptcy Trusts and Claims Resolution Facilities (collectively "TRUST"):

Re: Name of Claimant/Holder of Claim ______________________________

Social Security No.: ______________________________

Date of Birth: ______________________________

I, ____________________________________________________ [Name of Plaintiff], hereby authorize the TRUST to release to and/or permit inspection and copying by Lexitas, 7700 Irvine Center Dr., Suite 450, Irvine, CA 92618, Telephone: (949) 707-5031; Facsimile: (949) 707-0798; Email: laosd.records@lexitaslegal.com, or their representatives, any and all documents or information in the TRUST's possession, custody or control relating to the foregoing trust claim, including but not limited to the following:

(1) Any and all documents[2] or information that have been submitted or communicated to the TRUST by the holder of the claim or any representative on his or her behalf, via any method of delivery or communication, whether electronic, facsimile, mail, personal service or otherwise, including but not limited to: death certificate; certificates of official capacity and other representative information; expedited, individualized, extraordinary, secondary, foreign or other proof of claim forms; discounted cash payment claims information; diagnosing reports and any statement by a physician relating to diagnosis or latency; asbestos exposure history reports/summaries or any other documents evidencing the claimant's/injured's alleged exposure to asbestos; work history reports/summaries or any other documents evidencing the claimant's/injured's work history; smoking history records or any other documents concerning the claimant's/injured's exposure to direct, secondhand or sidestream smoke; work or military records; invoices; medical reports /summaries or any other documents.

---

[1] Asbestos Bankruptcy Trust means and includes any entity or agent established for or related to the purpose of compensating asbestos claimants on behalf of a specific company, including but not limited to a trust established or approved in accordance with the asbestos trust and channeling provisions of the U.S. Bankruptcy Code, 11 U.S.C. § 524(g)-(h), a claims handling facility or agent of such a trust, or any Court supervising the bankruptcy of any company caused in part by asbestos liabilities.

[2] "Documents," as used in this Authorization, means and includes "writings" as defined in California Evidence Code section 250 and is used in its broadest sense. California Evidence Code section 250 provides: "Writings means handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

[EXHIBIT 3]

evidencing the claimant's/injured's medical condition(s); medical expenditure/billing information; affidavits or any other sworn and unsworn statements of claimed exposure of the injured party, family members, co-workers or others; sworn and unsworn statements, interrogatory answers, sworn and unsworn work history, or deposition transcripts submitted from any other asbestos related litigation; workers' compensation or disability claims or proceedings; economic reports; W-2 or other documentation of claimed economic loss; any information or documentation submitted in response to any TRUST deficiency notice(s); any information submitted in connection with any binding or non-binding arbitration proceeding with the TRUST; and any records or information obtained or provided relating to this TRUST claim by any other Asbestos Bankruptcy TRUST. This authorization shall be interpreted to include any and all claims, proofs of claim, amendments or supplements, and claims or submissions whether they are incomplete, deferred, unsigned, or subsequently withdrawn, or sent individually or as part of an aggregate submission, and all communications related thereto;

(2) Any and all documents, communications or other information conveyed by the TRUST relating to the foregoing claim, including all such documents, communications, or other information conveyed to the holder of the claim or any of his or her attorneys or representatives, including but not limited to, release letters, deficiency letters, status letters, hold letters, denial letters, and any other correspondence from the TRUST; and

(3) Any and all documents or information relating to any and all offers or payments made on the foregoing claim by the TRUST.

This document should be construed by the TRUST as full authorization to release all records concerning the foregoing claim, consistent with the TRUST's "Distribution Procedures," or any other similar procedures concerning the release of records, and the Trustees are hereby fully released from any complaint the undersigned might otherwise have had for failing to maintain the confidentiality of said materials.

A photocopy of this authorization shall be valid as the original.

This authorization is effective immediately and shall remain in effect for five (5) years.

I understand that I have a right to receive a copy of this authorization upon request.

The language of this authorization has been authorized by Los Angeles County Superior Court. No alteration of or deletion to this form may be made by plaintiff or plaintiff's attorney without order of the Los Angeles County Superior Court on noticed motion.

Date: ______________________ ______________________________
Plaintiff

______________________________
Print Name

[EXHIBIT 3]

EDD Employment Development Department
State of California

# Authorization for Release of Records

Instructions: This form must be completely filled out and mailed to the address selected. See the Instructions Sheet for additional information.

**1. Where to send Authorization:**

**Employment Development Department (EDD)**
P.O. Box 826880, MIC 53, Legal Office Email: LegalRecordsRequest@edd.ca.gov
**Sacramento, CA 94280-0001**

**2. Individual / Claimant / Business Entity Information**

| First Name: | Middle Initial: | Last Name: | |
|---|---|---|---|
| Business Name (if applicable): | | | |
| Address: | City/State: | Zip Code: | Telephone number: |

**3. EDD Unique Identification Number:** Provide one or more below

| | |
|---|---|
| EDDCAN number: | EDD Client number (ECN): |
| EDD Claim Number: | EDD Employer Account Number (EDD EAN): |
| FEIN/SEIN: | SSN*: |

**4. Specific Confidential Information and Period of Records to Be Released**

☐ Unemployment Insurance Records (UI)
From: ____________ To: ____________
MM/DD/YYYY MM/DD/YYYY

☐ Disability Insurance Records (DI)
From: ____________ To: ____________
MM/DD/YYYY MM/DD/YYYY

☐ Wage History Report (PIT) by Quarters
From: ____________ To: ____________
QQ/YYYY QQ/YYYY

☐ Employer Records:
check all that applies ☐ DE 1 ☐ DE 9/DE 9C ☐ DE 88
From: ____________ To: ____________
MM/DD/YYYY MM/DD/YYYY

☐ Other: ______________________________

**5. To Be Released to the Following Requestor:** Check only one below

☑ **Third Party** ☐ **Legal Representative** ☐ **Self**

**6. Requestor / Representative Information (if different from item #2)**

| First Name: Lucy | Middle Initial: | Last Name: Soto | |
|---|---|---|---|
| Business Name: Lexitas | | | |
| Address: 7700 Irvine Center Dr. #450 | City/State: Irvine, CA | Zip Code: 92618 | Telephone number (949) 707-5031 |

**Legal Authority to Request Confidential Information**:**
☐ Power of Attorney ☐ Next of Kin ☐ Administrator of Estate ☐ Executor of Will ☐ Legal Guardian
☑ Other: (list specific CUIC or other law) ______________________________

**7.** I, ______________________________ authorize the above referenced Requestor/Representative to use
Individual/Claimant/Business Entity Name
the information provided by the Employment Development Department only for the following purpose(s) and expected benefit to data subject: Asbestos Litigation Discovery

**8.** This authorization for release of confidential information shall remain in effect for 30 days from the date signed below or until ____________ (no later than one year from the date signature). A copy of this authorization shall be as valid as the original.
MM/DD/YYYY

Signature: [signature] ______________________________ Date: ____________
Individual/Claimant/Business Entity Signature MM/DD/YYYY

***Providing a social security number on this form is voluntary and if you provide a social security number, it will be used solely for the purpose of locating the requested records. If you choose not to provide a social security number, the Employment Development Department may be unable to locate any or all requested records due to the Employment Development Department's use of social security numbers for record identification and filing purposes. Privacy Act of 1974 Section 7(b) (Public Law 93-579).**

****If requestor is not the individual whose data is being requested, provide supporting legal documentation showing that the requestor has legal authority.**

# MEDICAL RECORDS

## Exhibit "E"

UCLA Health
**Department of Pathology and Laboratory Medicine**
**pathology.ucla.edu**

**UCLA Medical Center Clinical and Pathology Laboratories**
10833 LeConte Avenue Los Angeles, CA 90095
Phone: (310) 267-2680 Fax: (310) 267-2685
Bita V. Naini, MD - Laboratory Director

| | | |
|---|---|---|
| **Patient Name: Sneider, Patricia** | **Patient MRN: 3368808** | **Case #: SCO-23-01858** |
| Age: **60 yrs** DOB: **8/31/1962** | Submitter: **Generic Submitter (Participating)** | Ex. Acc. #: |
| Sex: **Female** | | |
| External Patient ID: **060901447** | Ex. Case #: **S-23-33449** | |

**AMENDED REPORT**

**Surgical Pathology Report** (Edited) SCO-23-01858

| | | | |
|---|---|---|---|
| Authorizing Provider: | Cameron, Robert B., MD | Ordering Provider: | |
| Ordering Location: | RONALD REAGAN CLINICAL LAB | Collected: | 06/30/2023 1305 |
| Pathologist: | Rodriguez, Erika F. | Received: | 06/30/2023 1305 |

## AMENDED REPORT
This report was amended to add additional material only. No other section of this report has been altered. The diagnosis remains unchanged.

## CLINICAL INFORMATION
60-year-old female with PMH of 2 parathyroid adenomas s/p removal presenting for a consultation regarding her newly diagnosed mesothelioma. The outside biopsies from right parietal pleura, right sulcus diagphagm (6/8/23) shows epithelioid mesothelioma, low grade. PD-L1 22C3 shows CPS = 1.

## FINAL DIAGNOSIS

A. PLEURA, RIGHT PARIETAL (BIOPSY) [S-23-33449 ; 06/08/2023]:
Malignant epithelioma, epithelioid type (100%)

B. DIAPHRAGM, RIGHT SULCUS (BIOPSY) [S-23-33449 ; 06/08/2023]:
Malignant epithelioma, epithelioid type (100%)

C. PLEURA, RIGHT PARIETAL, #2 (BIOPSY) [S-23-33449 ; 06/08/2023]:
Malignant epithelioma, epithelioid type (100%)

Comment: PDL1 will be reported in addendum.

**Nuclear grade:**

| | |
|---|---|
| Nuclear atypia score: | 2 - moderate |
| Mitotic count score: | 1 - low (less than or equal to 1 mitosis/2 mm²) |
| Sum: | 3 = nuclear grade I |

**Necrosis:** absent

**Overall tumor grade:**

Low grade (nuclear grades I or II without necrosis)

NOTE: *Based on the 2021 WHO (5th ed.) classification of pleural mesotheliomas. Applies to* ***epithelioid mesotheliomas only***.

**GROSS DESCRIPTION**
**REVISED 07/14/23**
Received from Cedars-Sinai Medical Center via UCLA Dr. Cameron Robert are three stained slides, labeled, Cedars-Sinai Med Ctr "SNEIDER, PATRICIA" S-23-33449 H&E A2-1, B1-1 and C1-1.

KPT

Additionally received are 10 unstained slides labeled: Cedars-Sinai Med Ctr "SNEIDER, PATRICIA" S-23-33449 UNSTAINED A2 -11, -12, -13, -14, -15, -16, -17, -18, -19, and -20.

CU

**Signatures**
I certify that I personally conducted a gross and/or microscopic examination(s) of the described specimen(s), and have reviewed the interpretation of this test and diagnosis(es). I agree with the documented findings or edited the findings as necessary.

Amendment electronically signed by Rodriguez, Erika F. on 7/16/2023 at 1328
Electronically signed by Rodriguez, Erika F. on 7/3/2023 at 1246

**CORRECTION HISTORY**
**PREVIOUS**
Received from Cedars-Sinai Medical Center via UCLA Dr. Cameron Robert are three stained slides, labeled, Cedars-Sinai Med Ctr "SNEIDER, PATRICIA" S-23-33449 H&E A2-1, B1-1 and C1-1.

KPT

**SEE REVISED**

**ADDENDUM 1**

**Note: BAP-1 is retained**

**PD-L1 IHC REPORT**

BLOCK: A1
FIXATIVE: Formalin

| ANTIBODY/PROBE: | TUMOR PROPORTION SCORE (TPS) | INTENSITY |
|---|---|---|
| PD-L1 (22C3) | <1% | 1+ |

INTERPRETATION:
NO EXPRESSION (<1%)

Note: The immunoperoxidase stain reported above was performed in compliance with instructions for FDA-approved DAKO PD-L1 22C3 pharmDx kit (#SK006) as indicated as an aid in identifying patients for treatment with KEYTRUDA

(pembrolizumab) and its performance characteristics determined by UCLA Medical Center Clinical Laboratories based on validation with appropriate cancer cases. Appropriate positive and negative controls are included for each case.

Decalcification may adversely affect patient results. This assay has not been validated on decalcified tissues. If the tissue is indicated to have been decalcified, results should be interpreted with caution given the possibility of false negative results on decalcified specimens.

Addendum electronically signed by Rodriguez, Erika F. on 7/13/2023 at 1513

**Specimens**

**A** Consult Review, PLEURA, RIGHT PARIETAL (BIOPSY)

**B** Consult Review, DIAPHRAGM, RIGHT SULCUS (BIOPSY)

**C** Consult Review, PLEURA, RIGHT PARIETAL, #2 (BIOPSY)

**Resulting Labs**

| | |
|---|---|
| **SM BAP LAB** | SANTA MONICA - UCLA MEDICAL CENTER AND ORTHOPAEDIC HOSPITAL, 1250 16th Street, Room #B504, Santa Monica CA 90404<br>Director: Steven D Hart, MD |



**END OF REPORT**

## PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over eighteen years of age and not a party to the within action; my business address is 3760 Kilroy Airport Way, Suite 680 in Long Beach, California, 90806.

On the date set forth below, I served a true and correct copy of the foregoing document(s) described as:

**PLAINTIFF'S RESPONSES TO GENERAL ORDER STANDARD INTERROGATORIES PROPOUNDED BY DEFENDANTS**

On all interested parties in this action stated below via the following means of service:

**[XX] BY E-SERVICE:** I caused such document to be transmitted by electronic service via File&ServeXpress for the same day delivery to the offices of the addressee(s). See File&ServeXpress Service List.

[] BY MAIL: I caused such envelope(s) to be deposited in the mail at Long Beach, California with postage thereon fully prepaid to the office of the addressee(s) as indicated above. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[] BY FACSIMILE: I caused a courtesy copy to be transmitted by facsimile to the facsimile number of the offices of the addressee(s) as indicated above and below (see service list).

[] BY FEDERAL EXPRESS: I caused such envelope to be transmitted by federal express for next day delivery (by 10:30 a.m.) to the offices of the addressee(s).

I declare under penalty of perjury, under the laws of the State of California that the above is true and correct.

Executed on November 27, 2023, Long Beach, California.

*<u>/s/ Linda Garcia</u>*
Linda Garcia